Laurence D. King (SBN 206423)
Linda M. Fong (SBN 124232)
Matthew B. George (SBN 239322)
Mario M. Choi (SBN 243409)
**KAPLAN FOX & KILSHEIMER LLP**
350 Sansome Street, Suite 400
San Francisco, CA 94104
Telephone:  415-772-4700
Facsimile:  415-772-4707
Email: lking@kaplanfox.com
          lfong@kaplanfox.com
          mgeorge@kaplanfox.com
          mchoi@kaplanfox.com

Frederic S. Fox (*pro hac vice* to be filed)
Donald R. Hall (*pro hac vice* to be filed)
**KAPLAN FOX & KILSHEIMER LLP**
850 Third Avenue, 14th Floor
New York, NY 10022
Telephone:  212-687-1980
Facsimile:  212-687-7714

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARTIN SCHNEIDER, SARAH DEIGERT, LAURIE REESE, THERESA GAMAGE, TIFFANIE ZANGWILL, and NADIA PARIKKA, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>CHIPOTLE MEXICAN GRILL, INC., a Delaware Corporation,<br><br>Defendant. | Case No. 16-cv-02200<br><br>**CLASS ACTION**<br><br>**CLASS ACTION COMPLAINT FOR VIOLATION OF:**<br><br>1. California Consumer Protection Laws;<br>2. Maryland Consumer Protection Act;<br>3. Florida Deceptive and Unfair Trade Practices Act;<br>4. New York Consumer Protection Laws;<br>5. Unjust Enrichment;<br>6. Misrepresentation; and<br>7. Declaratory Judgment<br><br>**DEMAND FOR JURY TRIAL** |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Plaintiffs Martin Schneider, Sarah Deigert, Laurie Reese, Theresa Gamage, Tiffanie Zangwill, and Nadia Parikka ("Plaintiffs"), by and through their attorneys, individually and on behalf of all others similarly situated, bring this Class Action Complaint ("Complaint") against Defendant Chipotle Mexican Grill, Inc., a Delaware corporation ("Chipotle" or "Defendant"), and make the following allegations based upon knowledge as to themselves and their own acts, and upon information and belief as to all other matters, as follows:

## **INTRODUCTION**

1.      On April 27, 2015, Chipotle began its highly successful "G-M-Over It" publicity blitz, misrepresenting to consumers that it was giving "a farewell to GMOs" to become the first fast food chain in the United States with a GMO free menu that uses "only non-GMO ingredients."



2.      But Chipotle's "non-GMO" advertising and labeling is misleading and deceptive to consumers, who reasonably understand today that such claims would mean that Chipotle's menu is 100% free of GMOs and that Chipotle does not serve food sourced from animals that have been raised on GMOs or genetically engineered feed.  In fact, Chipotle (1) serves protein products such as beef, chicken, and pork from poultry and livestock that have been raised on GMO feed; (2) serves dairy products such as cheese and sour cream derived from cows raised on GMO feed; and (3) sells beverages such as Coca-Cola and Sprite that are loaded with corn-syrup derived from GMO corn.

Moreover, Chipotle does not disclose any of this information to consumers in its restaurants or on its menus. Accordingly, Chipotle's GMO-free image and non-GMO advertising and labeling is misleading and highly deceptive to reasonable consumers.

3.     Plaintiffs bring this class action alleging that Chipotle's conduct, as described more fully herein, violates California, Maryland, Florida, and New York consumer protection laws, and they assert various common law tort claims. Plaintiffs seek damages, restitution and/or disgorgement of Chipotle's profits, and injunctive and declaratory relief on behalf of themselves and similarly situated consumers.

## PARTIES

4.     Plaintiff Martin Schneider is a resident of Valley Village, California.

5.     Plaintiff Sarah Deigert is a resident of San Francisco, California.

6.     Plaintiff Laurie Reese is a resident of Whittier, California.

7.     Plaintiff Theresa Gamage is a resident of Rockville, Maryland.

8.     Plaintiff Tiffanie Zangwill is a resident of Melbourne, Florida.

9.     Plaintiff Nadia Parikka is a resident of Ardsley, New York.

10.     Defendant Chipotle Mexican Grill, Inc., is a Delaware corporation headquartered in Denver, Colorado. Founded in 1993, Chipotle develops and operates fast-casual and fresh Mexican food restaurants. As of December 31, 2015, Chipotle has over 1,970 restaurants throughout the United States, with approximately 351 restaurants in California, 70 restaurants in Maryland, 116 restaurants in Florida, and 115 in New York. Chipotle has reported revenues of $1.5 billion.

## JURISDICTION AND VENUE

11.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332, as amended by the Class Action Fairness Act of 2005, because the matter in controversy exceeds $5,000,000, exclusive of interest and costs, and is a class action in which some members of the Class are citizens of different states than Chipotle. *See* 28 U.S.C. § 1332(d)(2)(A). This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

12.     This Court has personal jurisdiction over Chipotle because it is authorized to do business and does conduct business in California, has specifically marketed, advertised, and made

1   substantial sales in California, and has sufficient minimum contacts with this state and/or sufficiently

2   avails itself of the markets of this state through its promotion, sales, and marketing within this state

3   to render the exercise of jurisdiction by this Court permissible.

4         13.     Venue in this Court is proper pursuant to 28 U.S.C. § 1391 because Chipotle does

5   substantial business in this District, has intentionally availed itself of the laws and markets within

6   this District through its promotion, marketing, distribution and sales activities in this District, and a

7   significant portion of the facts and circumstances giving rise to Plaintiffs' Complaint occurred in or

8   emanated from this District.

9         14.     Pursuant to Civil Local Rule 3-2(c), an intra-district assignment to the San

10  Francisco/Oakland Division is appropriate because a substantial part of the events or omissions

11  which give rise to the claims asserted herein occurred in this Division, including that Plaintiff Deigert

12  patronized a Chipotle restaurant in San Francisco County.

13  **FACTUAL ALLEGATIONS**

14      **A.**     **Chipotle Markets Its Mexican Fast Food As Healthy Lifestyle Brand**

15        15.     Chipotle owns and operates a nationwide chain of casual Mexican fast-food

16  restaurants that has a fairly limited menu of tacos and burritos served on flour or corn tortillas, burrito

17  bowls (a burrito without the tortilla), and salads. *See* Exhibit 1. Chipotle's menu items can be filled

18  with a selection of proteins such as chicken, steak, beef ("barbacoa"), pork ("carnitas") or vegetables

19  and tofu ("sofritas"). Customers can then select from a cafeteria style selection of toppings or

20  condiments such as cheese, sour cream, salsa, guacamole, rice and beans. Chipotle also serves corn

21  tortilla chips as well as a selection of soft-drinks like Coca-Cola, Diet Coke, Pibb Ultra and Sprite.

22  Some Chipotle stores have alcoholic beverages such as beer and margaritas.

23        16.     Since 2009, Chipotle has marketed itself as serving "Food With Integrity," and sets

24  itself apart from other fast-food chain competitors by claiming to serve locally-sourced produce,

25  antibiotic and hormone free livestock raised in humane conditions, and produce farmed using

26  environmentally-friendly techniques. Chipotle claims that it is "all about simple, fresh food without

27  artificial flavors or fillers," that it serves "more local produce than any restaurant company in the

28  U.S.," that it is "serious about pasture-raised animals that have room to be animals," and that there

is "no place for nontherapeutic antibiotics and synthetic hormones on the farms that produce" Chipotle's ingredients.  Chipotle claims that "[w]ith every burrito we roll or bowl we fill, we're working to cultivate a better world."

17.     In addition to print, outdoor, transit and radio ads, Chipotle engages in special promotions to demonstrate its "Food With Integrity" mission.  Chipotle's video and music programs, events and festivals such as its "Cultivate Festival," and digital, mobile, and social media campaigns (such as its three-minute "The Scarecrow" and two-minute "Back to the Start" Youtube.com campaigns) have permitted Chipotle to differentiate itself from other fast-food companies as its fast food industry leader in being health and environmentally conscious.  In 2014 alone, Chipotle spent over $57 million in advertising and marketing costs in the United States to promote its Food With Integrity brand.

18.     Chipotle has carefully tailored its public image by marketing to healthy-lifestyle and environmentally conscious consumers that it knows are willing to pay premium prices for its food products.  In addition to capitalizing on market trends that fetch high sales and premium prices for local produce and ethically raised animals, in 2013 Chipotle turned its attention to the growing business trend of "non-GMO" and "GMO free" marketing and labeling.

**B.     Consumers' Understanding of Non-GMO and GMO Free Claims**

19.     While the abbreviated term "GMO" may generally refer to genetically modified organisms, when used in food marketing and labeling, terms like "non-GMO" and "GMO free" (which are reasonably understood by consumers to be synonymous) have a broader meaning to consumers in that they convey food products do not contain and are not sourced or derived from genetically engineered foods and methods, such as genetically engineered corn that ends up in corn syrup and beef from a cow that was raised on a diet of genetically engineered or modified food. Consumers have this understanding because of educational efforts by "non-GMO" consumer information sources and certification agencies as well as government authorities.  The successful results of their efforts to develop a consumer understanding of "non-GMO" and related terms in this manner are demonstrated by market research surveys as discussed below.

20.     For example, consumers have been educated by the Non-GMO Project (www.nongmoproject.org), which is North America's "only third party verification and labeling for non-GMO food and products."  It was formed in the early 2000s after GMO use grew with the goal of "creating a standardized meaning of non-GMO for the North American food industry."  Because of the Non-GMO Project's work with companies and food producers, through its Independent Verification Program, its Non-GMO Project Verified seal is now found on over 34,700 plant and animal food products and with 2,200 participating brands.  Further, it makes significant educational outreach efforts through its Non-GMO Project and LivingNonGMO.org websites that get over 200 million visits a year.  Consumers thus readily and understandably associate "non-GMO" marketing and similar terms with definitions set by the Non-GMO Project.

21.     Accordingly, consumers understand that any product or ingredient that is contaminated by or with GMOs is not "non-GMO."  And, the Non-GMO Project specifically extends its definition of "Non-GMO or No-GM" to any "plant, animal, or other organism whose genetic structure has not been altered by gene splicing" *and* to "a process or product that does not employ GM processes or inputs."[1]  Per the consumers' leading industry source, the Non-GMO Project states that "animal feed commonly contains High-Risk Inputs" in the form of genetically modified or engineered feed.  As a result, animal food products (such as meat, poultry, and dairy) are included on the Non-GMO Project's list of High-Risk ingredients.  In order for animal products to be properly labeled as "non-GMO" the products must meet a number of stringent requirements, including that the animals and poultry be fed seed that is less than 5% GMO for various periods of the animal's life (including the entire life for meat animals other than poultry).  Other GMO awareness campaigns similarly advise consumers that in order to avoid GMOs they should avoid "meat, eggs, and dairy products that have eaten GMO feed" furthering the consumer understanding that "non-GMO" and related marketing, labeling and advertising claims indicate to consumers that the animal products were not raised on genetically modified feed.[2]

---

[1] *See* http://www.nongmoproject.org/wp-content/uploads/Non-GMO-Project-Standard.pdf, page 24 (last accessed Mar. 11, 2016).

[2] *See* https://gmo-awareness.com/avoid-list/overview/ (last accessed Mar. 11, 2016); http://nongmoorganicrestaurants.com/gmo-ingredients (last accessed Mar. 11, 2016).

22.     The federal government has also taken steps to adopt standards that assist companies and consumers with understanding that "non-GMO" labeling means animal products are not raised on GMO derived feed.  For example, in mid-2013, the Food Safety and Inspection Service, the division of the U.S. Department of Agriculture charged with regulating the safety and proper labeling of meat, poultry, and egg products, approved the Non-GMO Project Verified label claim for meat and liquid egg products.[3]  The government's efforts are intended to inform consumers that the animal was *not* raised on a diet that consists of genetically engineered ingredients, like corn, soy and alfalfa.  Accordingly, consumers understandably associate advertising or labeling with the terms "non-GMO" or "GMO free" with products whose ingredients have not been tainted by GMOs or sourced from animals fed with GMOs.

23.     More recently, in November 2015, the FDA issued guidelines on the labeling of foods derived from genetically engineered plants and grouped the terms "*GMO free," GE free," "does not contain GMOs," "non-GMO" and similar claims*" (original emphasis) together.[4]  The FDA warned that the term "free" that is associated with these similar claims "conveys zero or total absence" of ingredients derived through biotechnology and that these type of claims are "problematic" due to the challenges of substantiating such claims.  The FDA emphasized that its purpose in issuing its recent guidelines was so that companies' labeling on food derived from genetically engineered plants "be truthful and not misleading" to consumers.  Moreover, the FDA took care to appropriately group these commonly used "non-GMO" related labeling terms in the same fashion consumers do, demonstrating that "non-GMO," "does not contain GMOs," and "GMO free" have an identical and synonymous meaning to consumers.  The FDA also points out that the while the "O" in the acronym GMO generally refers to the word "organism" because an entire organism is generally not contained in a food (microorganisms in the dairy product yogurt being a cited exception), GMO is generally

---

[3] *See* http://www.foodliabilitylaw.com/2013/07/articles/legislation-and-regulation/food-labeling/usda-approves-non-gmo-label-claim-for-meat-and-egg-products/ (last accessed Mar. 4, 2016).

[4] *See* http://www.fda.gov/food/guidanceregulation/guidancedocumentsregulatoryinformation/ucm059098.htm#references (last accessed Mar. 11, 2016).

"read as meaning that the food was not *derived from* a genetically modified organism, such as a plant that has been genetically engineered" (original emphasis).

24.     Market research also supports the fact that consumers understand and expect that advertisements and labeling of "non-GMO," "GMO free," or related claims have similar meanings and would not apply to foods sourced from animals fed with a GMO or genetically engineered diet. For example, a poll of Ohio voters by Public Policy Polling in December 2015 indicated that 76% of consumers would "[e]xpect that a dairy product labeled as "non-GMO" was made using milk from cows that had not been fed any genetically modified feed."[5] Only 11% of respondents would *not* expect such a product to come from cows fed only with non-GMO feed.

25.     Recently, a consumer research survey firm conducted a market survey of 1,003 consumers nationwide on behalf of Plaintiffs that confirms reasonable consumers would also expect and understand that a restaurant claiming its food did not contain GMOs would not serve food from animals fed with GMOs:

| QUESTION | YES | NO |
| --- | --- | --- |
| If a restaurant states that it sells food that does not contain GMOs, would you expect the restaurant to serve food from animals that ate feed containing GMOs? | 23% | 77% |
| If a restaurant states that it serves food that does not contain GMOs, and it does serve food from animals that ate feed containing GMOs, would you say that the restaurant was misleading the public? | 78% | 22% |

When respondents were limited to California consumers, the results were approximately the same.

---

[5]*See* https://www.scribd.com/fullscreen/296829933?access_key=key-CZjpQ4qu9Q6VZ6AYOQvf&allow_share=false&escape=false&show_recommendations=false&view_mode=scroll (last accessed Mar. 11, 2016).

26.     Accordingly, consumers reasonably understand food advertised or labeled as "non-GMO," "GMO free," "does not contain GMOs," or other similar claims only apply to food that (1) does not contain GMOs and is not sourced from, or derived from any GMOs; and (2) does not contain animal products such as meat, poultry, pork and dairy that have a diet of GMO feed, GMO contaminated feed and/or genetically modified or engineered feed.  Consumers also understand that the term "food" applies broadly to food *and* drink, which is also how the FDA defines it.  21 U.S.C. § 321(f)(1).

**C.     Consumers Have a Negative, Unhealthy Perception of GMOs**

27.     Today, genetically modified crops are used in biological and medical research, production of pharmaceutical drugs, experimental medicine, and agriculture.  Such crops are engineered to, among other things, resist certain pests, diseases, or environmental conditions, reduce spoilage, increase size and yield, taste and look better, and resist chemical treatments.  In the United States, as of 2015, 94% of the planted area of soybeans, 95% of cotton, and 92% of corn were genetically modified varieties.[6]

28.     Since 1996, farmers in animal agriculture (including poultry) have optimized GMOs by feeding genetically modified grains (corn) and oilseeds (soybean) to their flocks and herds.[7] Because more than 80% of the corn and soybeans in the United States are raised from genetically modified seeds, almost all corn and soybean used in conventional livestock and poultry feed is genetically modified.  In addition, other genetically modified crops such as cotton, canola, sugar beets, and alfalfa are commonly used in animal feed.[8]  Consequently, most meat and dairy products are contaminated with GMOs due to the feed consumed by livestock and poultry and cannot be labeled as "non-GMO" without deceiving consumers.  Because the safety or health impact of food

---

[6] *Adoption of Genetically Engineered Crops in the U.S.*, United States Department of Agriculture Economic Research Service (July 9, 2015), http://www.ers.usda.gov/data-products/adoption-of-genetically-engineered-crops-in-the-us.aspx.

[7] *See Genetically Modified Organism (GMO) Use in the Chicken Industry*, National Chicken Council (July 5, 2013), http://www.nationalchickencouncil.org/genetically-modified-organism-gmo-use-in-the-chicken-industry/.

[8] *See* Ryan Beville, *How Pervasive are GMOs in Animal Feed?*, GMO Inside Blog (July 16, 2013), http://gmoinside.org/gmos-in-animal-feed/.

and other goods derived from genetically modified crops has been and continues to be hotly debated,[9] it is no surprise that according to a January 29, 2015 Pew Research Center survey, only 37% of the general public believes that "it is generally safe to eat genetically modified (GM) foods."[10]

29.     While the potential environmental and health impact of GMOs has been the subject of much scrutiny and debate within the food and science industries, Chipotle and other businesses know customers attach an unhealthy, negative perception towards them.  Chipotle itself has also fostered consumers' negative perception of GMOs and GMO derived foods by claiming that "[e]evidence suggests that GMOs engineered to produce pesticides or withstand powerful chemical herbicides damage beneficial insect populations and create herbicide resistant super-weeds." Chipotle also claims GMO crops are "fueling an escalating chemical arms race with weeds and insects."  Accordingly, Chipotle advocates that consumers should not support the widespread use of feeding chickens, pigs, and cows with GMO crops that are causing such alleged harm to the environment.  Chipotle's claims (whether founded in fact or not) are specifically intended to manipulate consumers into avoiding GMOs, including animal food products raised on GMO feed, because of health and environmental concerns.

30.     As a result of GMO controversy and consumer concerns, companies have created a $11 billion (and fast growing) market for non-GMO products and consumers are willing to pay the higher costs associated with non-GMO products due to the negative perception of genetically modified foods and because GMO-free ingredients are often more expensive.[11]  And, there is no dispute that GMO labeling is a material and important issue to consumers.  In a November 2015 poll,

---

[9] *Compare, e.g.*, European Commission, *A Decade of EU-funded GMO Research (2001-2010)*, http://ec.europa.eu/research/biosociety/pdf/a_decade_of_eu-funded_gmo_research.pdf (last accessed Mar. 11, 2016), *with GMO Facts*, Non GMO Project, http://www.nongmoproject.org/learn-more/ (last accessed Mar. 11, 2016) ("Meanwhile, a growing body of evidence connects GMOs with health problems, environmental damage and violation of farmers' and consumers' rights.").

[10] Cary Funk and Lee Rainie, *Public and Scientists' Views on Science and Society*, Pew Research Center (Jan. 29, 2015), http://www.pewinternet.org/files/2015/01/PI_ScienceandSociety_Report_012915.pdf.

[11] Mary Beth Schweigert, *GMO Free Comes at a Price*, Gluten-Free Living (Nov. 25, 2014), http://www.glutenfreeliving.com/gluten-free-lifestyle/non-gmo/gmo-free-comes-at-price/;

---

89% of likely voters in 2016 would support labeling of GMO foods.[12]  And, 77% percent of those "strongly favored" such a requirement.  Polls consistently show that Americans want to know if the food they are purchasing are non-GMO.[13]

**D.     Chipotle's April 2015 'G-M-Over It' Announcement and Non-GMO Claims**

31.    In April 2015, Chipotle seized upon the anti-GMO zeitgeist and took the unprecedented step among fast-food restaurants by launching a multi-media publicity and advertising campaign touting that it was the "first national company" in the restaurant industry to serve a menu devoid of GMOs and GMO derived foods.  The announcement was a culmination of two years of Chipotle's declared attention and focus at supposedly ridding its restaurants of GMOs.  Chipotle titled its press release "Chipotle Becomes the First National Restaurant Company to Use Only Non-GMO Ingredients."  Chipotle led its press release with the proclamation that it "achieved its goal of moving to only non-GMO ingredients to make all of the food in its U.S. restaurants."  Among other things, Chipotle claimed its suppliers specially planted "non-GMO corn varieties" to meet its demands and that GMO ingredients in its products had been replaced with "non-GMO alternatives."  Chipotle declared to the American public that it was "G-M-Over It."

32.    As intended, Chipotle's announcement garnered widespread coverage in national and local media throughout the United States, which was unsurprising given consumer interest in GMOs and Chipotle's rapid growth and popularity.  Chipotle's announcement was covered by the national news media, both in print and on television.  Notably, many of the articles and reports contained headlines or phrasing confirming the synonymous nature of the terms "non-GMO" and "GMO free":

> ➢   "Chipotle Goes GMO Free"

> ➢   "Chipotle Says its Finished the Process of Going GMO Free"

> ➢   "Chipotle Declares Its Menu Items GMO Free"

---

[12]*See* The Mellman Group, Inc., "Voters Want GMO Food Labels Printed On Packaging," http://4bgr3aepis44c9bxt1ulxsyq.wpengine.netdna-cdn.com/wp-content/uploads/2015/12/15memn20-JLI-d6.pdf (last accessed Mar.11, 2016).

[13]  *See* The Mellman Group, Inc., "Voters Want GMO Food Labels Printed On Packaging," http://4bgr3aepis44c9bxt1ulxsyq.wpengine.netdna-cdn.com/wp-content/uploads/2015/12/15memn20-JLI-d6.pdf (last accessed Mar. 11, 2016).

This amount of media coverage would likely have reached millions, if not tens of millions, of consumers throughout the United States.

33.  Since its announcement, Chipotle has engaged in a multi-media mass marketing and advertising campaign to inform consumers that it was going "non-GMO" through methods including billboards, social media, store fronts, and in-store signage.

34.  On Twitter, Chipotle announced to its 684,000 followers on Twitter that: "We're now making all of the food at our US restaurants with only non-GMO ingredients[]."[14]  In another tweet, Chipotle noted that it was "literally dropping" the letters G, M, and O from their menu, including taking out the "O" in "Chicken Burrito," thus representing that its chicken burrito is non-GMO and GMO free:



35.  In Chipotle's "A Farewell to GMOs" billboard advertisement of a corn hard-shell taco laced with cheese, it represented that it replaced all of its ingredients "with non-GMO ingredients" and that "all" of Chipotle's "food is non-GMO":

---

[14] *See* @ChipotleTweets, Chipotle,
https://twitter.com/ChipotleTweets/status/592793417652039680 (last accessed Aug. 10, 2015).



36.    In another advertisement, Chipotle represented that its food is "made with no-GMO ingredients":



37.    On store fronts, Chipotle advertised "A Farewell to GMOs," noting that "[w]hen it comes to our food, genetically modified ingredients don't make the cut":

1
2
3
4
5
6
7
8
9
10
11



12      38.      Indeed, inside Chipotle restaurants consumers are presented with a large, colorful

13 billboard mounted behind the store cashiers, which states among things: "ONLY NON-GMO

14 INGREDIENTS."  The in-store sign contains, directly above Chipotle's representation, pictures of

15 the "Ingredients," including lettuce, lemons, limes, onions, tomatoes alongside raw pieces of beef

16 and cheese.   The photographs of cheese and meat placed just above "ONLY NON-GMO

17 INGREDIENTS" are meant to be, and are, interpreted by consumers as a claim that all the ingredients

18 pictured on the in-store board and in the restaurant are non-GMO or GMO free.  Moreover, when

19 read in conjunction with the other statements on the billboard and its placement next to the menu,

20 Chipotle is representing to consumers that all of its ingredients, including its meat "raised without

21 antibiotics or added hormones" and its "pasture-raised dairy" products, are non-GMO or GMO free:

22 / / /

23 / / /

24 / / /

25
26
27
28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15



16        39.    Chipotle's strategic announcement that it would only prepare food with ingredients

17  that are free of GMOs was intended to further its "Food With Integrity" and healthy lifestyle image,

18  while differentiating it from its fast food competitors or other Mexican restaurants.  Its move to

19  becoming "non-GMO" was a strategic marketing campaign to entice new health-minded consumers

20  and retain current ones.

21        40.    Chipotle's announcements, statements, advertising and marketing claims, including

22  but not limited to those set forth in this Complaint that its food is made with "only non-GMO

23  ingredients," that "all of our food is non-GMO," that it is "G-M-Over it," that it made a "Farewell to

24  GMOs," and that "Chipotle: Made With No-GMO Ingredients" are collectively referred to as

25  Chipotle's "Non-GMO Claims."  Chipotle's nationwide campaign supporting its Non-GMO Claims

26  for its restaurants has been extensive and comprehensive throughout the Class Period.  Chipotle has

27  spent substantial time, money, and effort conveying to consumers throughout the United States its

28  Non-GMO Claims.  Chipotle's Non-GMO Claims have been a resounding success for the company,

which saw a 100+ point jump in its stock price on the New York Stock Exchange in the four months after its public announcement.

### E.     Chipotle's False, Misleading and Deceptive Non-GMO Claims

41.     But as Chipotle told consumers it was "G-M-Over it," the opposite was true.  In fact, Chipotle's Non-GMO claims are deceptive and misleading to reasonable consumers because: (1) Chipotle serves protein products such as beef, chicken, and pork from poultry and livestock that is deceptively advertised and labeled as "non-GMO" because the animals have been raised on GMO feed; (2) Chipotle serves dairy products such as cheese and sour cream that is deceptively advertised and labeled as "non-GMO" because they have been derived from cows raised on GMO feed; and (3) Chipotle serves beverages such as Coca-Cola and Sprite that are loaded with corn-syrup – a GMO. Moreover, Chipotle does not disclose any of this information to consumers in its restaurants or on its menus.

42.     <u>Chipotle's Meat and Dairy Is Not Non-GMO:</u>  As set forth above, consumers associate the similar terms "non-GMO," "GMO free," and similar representations, to apply only to meat and dairy products that do not come from animals fed with genetically engineered or GMO derived feed.  Chipotle deceptively advertises, labels, and markets its entire menu as "Non-GMO" or "GMO free" even though its chicken, beef, and pork ("Meat Products"), as well as its sour cream, and cheese ("Dairy Products") are all sourced from animals that are fed with a genetically engineered or GMO derived feed.  Accordingly, Chipotle's Non-GMO Claims about its Meat and Dairy Products are deceptive and misleading to reasonable consumers.  Chipotle's Meat Products are substantially similar to each other and that Chipotle's Dairy Products are substantially similar because each product within its respective group contains similar characteristics and purposes on Chipotle's menu as filling for one of its main menu items such as a burrito or taco, and because each product carries the same deceptive and misleading representations and omissions alleged herein.

43.     <u>Chipotle's Soft Drinks Actually Contain GMOs and Are Not Non-GMO:</u>  Chipotle's Non-GMO Claims about its restaurants extend to the beverages it offers on its menu.  Chipotle serves a variety of soft drinks, such as Coca-Cola, Diet Coke, Fanta Orange, Barq's Root Beer, Pibb Ultra, Minute Maid Lemonade, PowerAde, and Sprite (collectively "Soft Drinks"), that contain GMOs in

the form of high-fructose corn syrup or aspartame (which is manufactured with GMOs).  Moreover, reasonable consumers are likely to be deceived by Chipotle's Non-GMO Claims because they make no attempt to differentiate or distinguish its Soft Drinks from other menu items and the FDA defines "food' to broadly encompass both food *and* drink.  Accordingly, Chipotle's Non-GMO Claims about its Soft Drinks are deceptive and misleading to reasonable consumers.  All of Chipotle's Soft Drinks are substantially similar products because they have similar qualities, characteristics, ingredients, the same manufacturer (Coca-Cola), are intended to be served along with Chipotle's other menu items, and because each product carries the same deceptive and misleading representations and omissions alleged herein.

44.     Some food bloggers and commentators have also pointed out Chipotle's misleading and deceptive conduct with regard to its Non-GMO Claims.  As food writer Julie Kelly points out, "[t]he company's holier-than-thou PR move proclaiming 'Food with Integrity' struck me as the ultimate cynical marketing tactic: feign integrity while you mislead customers to believe that your food is GMO-free when it's not."[15]  Noting that "Chipotle's advertising is purposefully misleading," the *National Review* article, "GMO: Gimmicky Marketing Obfuscations" pointed out the following:

> So you can eat GM-free at Chipotle as long as you don't order the pork, chicken, cheese, sour cream, tortillas, or Coke.  "They conveniently ignore GMO-derived ingredients when they don't have alternatives or it doesn't serve profits," said Kevin Folta, chair of the Horticultural Sciences Department at the University of Florida.  "It is corporate deception in the name of a buck and anti-GMO deception in the name of ideology."  So much for food with integrity.[16]

45.     Moreover, Chipotle has taken no meaningful steps to clarify consumer misconceptions about its Non-GMO Claims that it promulgated through the mass media, social

---

[15] Julie Kelly, *Why Whole Foods and Chipotle's anti-GMO campaigning has lost my business*, Genetic Literacy Project (July 6, 2015), http://www.geneticliteracyproject.org/2015/07/06/why-whole-foods-and-chipotles-anti-gmo-campaigning-has-lost-my-business/; *see also* Sarah Zhang, *Chipotle's Anti-GMO Stance Is Some Anti-Science Pandering Bull[]*, Gizmodo (Apr. 27, 2015, 3:18 PM), http://gizmodo.com/chipotles-anti-gmo-stance-is-some-pandering-bullshit-1700437048.

[16] Julie Kelly and Jeff Stier, *GMO: Gimmicky Marketing Obfuscations; Perhaps Chipotle should have learned from Starbucks*, National Review (May 1, 2015, 5:30 PM), http://www.nationalreview.com/article/417801/gmo-gimmicky-marketing-obfuscations-julie-kelly-jeff-stier; *see also* Tim McDonnell, *Chipotle Says It's Getting Rid of GMOs. Here's the Problem.*, Mother Jones (Apr. 28, 2015, 4:08 PM), http://www.motherjones.com/blue-marble/2015/04/chipotle-gmos-anti-science.

media, its menus, on its store signage where its customers actually make their purchases, and in advertisements and on its billboards, both in stores and in print, which say "all" of the ingredients used in its food are "non-GMO". Instead, to attempt to unravel Chipotle's deception, a fast food consumer is purportedly required to log onto Chipotle's website and search it through the use of various links for further information. Customers are not obligated to search ingredient lists or websites for additional information for products that are otherwise advertised, marketed, or labeled in a deceptive or misleading way.[17] And, even if they were, Chipotle's website contains misleading and deceptive information, such as Chipotle's own contradictory and inconsistent usage of the term "non-GMO." For example, on its advertising it says "all" of its ingredients and "all our food" is "non-GMO" but on its website it only uses the term "Non-GMO" in connection with some ingredients and food like its "Corn Masa Flour," "Corn Starch," and "Baking Soda" but not with the vast majority of other ingredients such as its chicken, beef, sour cream, garlic, tomato, pork, black beans, etc. As a result, reasonable consumers attempting to discern Chipotle's own marketing representations and in-store information with supposed clarifications on its website are only likely to be further confused and deceived by Chipotle's conduct and its amorphous, misleading, inconsistent, self-interested definition of "Non-GMO."

46. Of course, as a restauranteur, Chipotle is well aware its customers are unlikely to have seen its website anyway because its fast-food consumers never need to visit Chipotle's website to buy food (as opposed to a purchase on Amazon.com for example), and are highly unlikely to seek out this information when simply deciding where to get lunch or dinner. Chipotle has purposefully chosen to only disclose further information about its Non-GMO Claims only on its website while concealing that information from its advertisements and in its stores in a way that amounts to conduct

---

[17] On February 22, 2016, the Ninth Circuit Court of Appeals clarified and extended its holding in *Williams v. Gerber Prods. Co*., 552 F.3d 934 (9th Cir. 2008), in overturning the District Court's decision in *Balser v. Hain Celestial Grp*., No. 13-cv-05604-MR, 2013 WL 6673617 (C.D. Cal. Dec. 18, 2013). *See Balser v. Hain Celestial Grp.*, No. 14-55074, ___ Fed. App'x ___, 2016 WL 696507 (9th Cir. Feb. 22, 2016).

purposefully intended, or at a minimum reasonably likely, to deceive consumers.  As explained above, a "Chipotle meal was, and remains, the very definition of a GMO meal…."[18]

### E.    Chipotle Had A Duty To Disclose to Plaintiffs and Class Members

47.    Chipotle is and remains under a duty to Plaintiffs and Class Members to disclose the true facts, as alleged herein.  The duty to disclose the true facts arises because, as marketer and seller, Chipotle is in a superior position to know the true character and quality of its food in relation to its Non-GMO Claims and the true facts are not something that Plaintiffs and putative class members could, without reasonable diligence, have discovered independently prior to purchase.  As a result of Chipotle's omissions about its Non-GMO Claims, conveyed directly through its announcements, statements, marketing and advertising campaigns, it has been able to charge consumers a significant price premium for its food over other fast-food restaurants by convincing consumers to pay for a purportedly superior product, as its advertising and marketing misleadingly convey.

48.    Chipotle actively concealed and/or not disclosed material facts to Plaintiffs and the Classes about its Non-GMO claims as set forth herein that are material facts in that a reasonable person would have considered them important in deciding whether or not to purchase (or pay the same price for) Chipotle.  Were Chipotle's Non-GMO Claims not material to consumers, Chipotle would not focus its marketing and advertising to claim that it is the first non-GMO and GMO-free fast-food restaurant, and Chipotle would not be able to charge customers premium prices for its purportedly "non-GMO" menu.  Chipotle's deceptive and misleading Non-GMO claims, and its omissions regarding the true facts surrounding its Non-GMO Claims, have been, and continue to be, material to consumers, including Plaintiffs and other members of the putative classes, and Chipotle knows that its misleading and deceptive representations are material in nature.

49.    Chipotle intentionally concealed and/or failed to disclose to consumers its Non-GMO Claims were deceptive and misleading as described in this Complaint for the purpose of inducing Plaintiffs and putative class members to act thereon.  Plaintiffs and the putative class members

---

[18] Jon Entine, *Chipotle's GMO Gimmick Turned Them Into The Public Face Of Science Illiteracy*, Science 2.0 (May 5, 2015, 7:30 AM), http://www.science20.com/jon_entine/chipotles_gmo_gimmick_turned_them_into_the_public_face_of_science_illiteracy-155328.

1    justifiably acted upon, or relied upon to their detriment, the concealed and/or non-disclosed material

2    facts as evidenced by their purchases at Chipotle.  Had Plaintiffs known of the true character and

3    quality of the ingredients used in Chipotle's restaurants, they and the putative class members would

4    not have purchased (or would have paid less for) such products.  As a direct and proximate cause of

5    Chipotle's misconduct, Plaintiffs and the putative class members have suffered actual damages,

6    Chipotle has been unjustly enriched, and Plaintiffs and class members are entitled to appropriate

7    relief.  Chipotle's conduct has been and is malicious, wanton and/or reckless and/or shows a reckless

8    indifference to the interests and rights of others.

9                            **PLAINTIFFS' EXPERIENCES**

10         50.    Plaintiff Martin Schneider is a resident of Valley Village, California.  He and his

11   girlfriend Sandra Coller made regular Chipotle purchases during the Class Period at various

12   locations, including most frequently at Chipotle's location at 5600 Van Nuys Blvd. in Van Nuys,

13   California.  During the Class Period he would usually purchase a chicken or beef burrito that included

14   cheese, sour cream, and other condiments, and sometimes would order a side of chips and

15   guacamole.  He also sometimes purchased Coca-Cola beverages.  Prior to his purchases, Plaintiff

16   Schneider was aware of and was exposed to Chipotle's "Food With Integrity" campaign and believed

17   that its food was a healthy non-GMO alternative to other fast food chains based on Chipotle's

18   representations, which he understood to mean that Chipotle's menu did not contain GMOs and was

19   not sourced from animals that were raised on GMO feed.  In particular, Plaintiff Schneider was

20   exposed to and relied on Chipotle's media campaign, the representation that Chipotle's menu was

21   non-GMO and GMO free, having seen or heard advertisements, including store signage, that

22   Chipotle used "only non-GMO ingredients," in deciding to continue his purchases at

23   Chipotle.  Plaintiff Schneider would not have purchased Chipotle's menu items at the price he had

24   paid, or purchased it at all, had he known that Chipotle's non-GMO and GMO-free representations

25   made were materially deceptive and misleading.  Plaintiff Schneider stopped going to Chipotle after

26   learning of its deceptive advertising and conduct but maintains an interest in continuing as a customer

27   at Chipotle in the future if Chipotle eventually does have a non-GMO and GMO-free menu.

28

CLASS ACTION COMPLAINT                                                                      -19-
Case No. 16-cv-02200

51.     Plaintiff Sarah Deigert is a resident of San Francisco, California.  She made a few purchases during the Class Period, including at Chipotle's 211 Sutter Street location in San Francisco, California.  One such purchase was made for herself on or about September 9, 2015, in the amount of $10.77.  During the Class Period she usually purchased a chicken burrito that included cheese, sour cream, and other condiments, but sometimes would get chicken or pork tacos with guacamole, cheese, and sour cream.  On or about June 26, 2015, Plaintiff Deigert hosted a party for her co-workers and staff during which she made a purchase in the hundreds of dollars, some of which was reimbursed by her employer and the remainder she recalls paying cash for.  For the party, Plaintiff Deigert ordered burritos that included chicken, pork, and beef, as well as cheese and sour cream and sides of corn chips and guacamole and salsa.  Prior to her purchases, Plaintiff Deigert was aware of and was exposed to Chipotle's "Food With Integrity" campaign and believed that its food was a healthy non-GMO alternative to other fast food chains based on Chipotle's representations, which she understood to mean that Chipotle's menu did not contain GMOs and was not sourced from animals that were raised on GMO or genetically engineered feed.  In particular, Plaintiff Deigert was exposed to and relied on Chipotle's media campaign, the representation that Chipotle's menu was non-GMO and GMO-free, having seen or heard advertisements, including store signage, that Chipotle used "only non-GMO ingredients," in deciding to continue her purchases at Chipotle. Plaintiff Deigert would not have purchased Chipotle's menu items at the price she had paid, or purchased it at all, had she known that Chipotle's non-GMO and GMO free representations made were materially deceptive and misleading.  Plaintiff Deigert also would not have served Chipotle at her staff party had she known Chipotle was making misleading and deceptive claims about its menu. Plaintiff Deigert also sometimes makes purchases at Taco Bell, but understood when making purchases at Chipotle that she was paying premium prices for non-GMO and GMO-free food. Plaintiff Deigert maintains an interest in continuing as a customer at Chipotle in the future.

52.     Plaintiff Laurie Reese is a resident of Whittier, California.  She made purchases approximately twice a month during the Class Period at either Chipotle's 15528 Whittier Blvd. or 10121 Carmenita Road locations in Whittier, California.  During the Class Period she regularly purchased chicken and beef burritos, tacos, and salad bowls that included cheese, sour cream, and

other condiments.  She also sometimes purchased a side of corn chips and guacamole and salsa.  She sometimes paid cash and sometimes paid with a card.  Prior to her purchases, Plaintiff Reese was aware of and was exposed to Chipotle's "Food With Integrity" campaign and believed that its food was a healthy non-GMO alternative to other fast food chains based on Chipotle's representations, which she understood to mean that Chipotle's menu did not contain GMOs and was not sourced from animals that were raised on GMO or genetically engineered feed.  In particular, Plaintiff Reese was exposed to and relied on Chipotle's media campaign, the representation that Chipotle's menu was non-GMO and GMO-free, having seen or heard advertisements, including store signage, that Chipotle used "only non-GMO ingredients," in deciding to continue her purchases at Chipotle. Plaintiff Reese would not have purchased Chipotle's menu items at the price she had paid, or purchased it at all, had she known that Chipotle's non-GMO and GMO-free representations made were materially false and misleading.  However, Plaintiff Reese maintains an interest in continuing as a customer at Chipotle in the future.

53.     Plaintiff Theresa Gamage is a resident of Rockville, Maryland.  She made regular purchases approximately once a week during the Class Period, including at Chipotle's 865 Rockville Pike and 564 N. Frederick Avenue locations in Maryland.  She always pays in cash.  During the Class Period she usually purchased a burrito bowl with chicken or beef that included cheese, sour cream, and other condiments.  She sometimes purchased a side of corn chips and guacamole.  Prior to her purchases, Plaintiff Gamage was aware of and was exposed to Chipotle's "Food With Integrity" campaign and believed that its food was a healthy non-GMO alternative to other fast food chains based on Chipotle's representations, which she understood to mean that Chipotle's menu did not contain GMOs and was not sourced from animals that were raised on GMO or genetically engineered feed.  In particular, Plaintiff Gamage was exposed to and relied on Chipotle's media campaign, the representation that Chipotle's menu was non-GMO and GMO-free, having seen or heard advertisements, including store signage, that Chipotle used "only non-GMO ingredients," in deciding to continue her purchases at Chipotle.  Plaintiff Gamage increased the frequency of her purchases from about once every two-three weeks to once a week after learning of Chipotle's claims that its menu was now non-GMO and GMO-free.  Plaintiff Gamage would not have purchased

Chipotle's menu items at the price she had paid, or purchased it at all, had she known that Chipotle's non-GMO and GMO-free representations made were materially deceptive and misleading.  Plaintiff Gamage maintains an interest in continuing as a customer at Chipotle in the future but believes its conduct is misleading to consumers such as herself.

54.     Plaintiff Tiffanie Zangwill is a resident of Melbourne, Florida.  She made regular purchases approximately once a week at Chipotle for her and her son during the Class Period, including at Chipotle's 1563 W. New Haven Ave. location on Highway 192 in Melbourne, Florida. She usually, if not always, paid in cash.  During the Class Period her and her son usually purchased chicken burritos with cheese and sour cream and other condiments.  She sometimes purchased a side of corn chips and guacamole, and sometimes purchased soft drinks including Coca-Cola, Diet Coke and Sprite.  Prior to her purchases, Plaintiff Zangwill was aware of and was exposed to Chipotle's "Food With Integrity" campaign and believed that its food was a healthy non-GMO alternative to other fast food chains based on Chipotle's representations, which she understood to mean that Chipotle's menu did not contain GMOs and was not sourced from animals that were raised on GMO or genetically engineered feed.  In particular, Plaintiff Zangwill was exposed to and relied on Chipotle's media campaign, the representation that Chipotle's menu was non-GMO and GMO-free, having seen or heard articles, advertisements, including store signage, that Chipotle used "only non-GMO ingredients," in deciding to continue her purchases at Chipotle.  Plaintiff Zangwill began frequenting Chipotle specifically after learning of Chipotle's claims that its menu was now non-GMO and GMO-free.  Prior to that she would go to a Tijuana Flats restaurant which served similar items but was not non-GMO or GMO-free.  Plaintiff Zangwill would not have purchased Chipotle's menu items at the price she had paid, or purchased it at all, had she known that Chipotle's non-GMO and GMO free representations made were materially deceptive and misleading.  Plaintiff Zangwill has discontinued going to Chipotle since learning that its claims are deceptive and misleading because she feels duped, but she maintains an interest in continuing as a customer at Chipotle in the future should Chipotle actually have a GMO-free or non-GMO menu.

55.     Plaintiff Nadia Parikka is a resident of Ardsley, New York.  During the Class Period, she made at least eight purchases at Chipotle for herself, her husband, and two daughters, at Chipotle

restaurants located at 250 Main Street, White Plains, New York, and 5510 Xavier Drive, Yonkers, New York. During these visits, she paid by both cash or credit/debit card. During the Class Period, her and her family usually purchased burritos and bowls (chicken, steak and vegetables) along with cheese, sour cream and other condiments. She also purchased soft drinks including Coca-Cola, Diet Coke and Sprite. Prior to her purchases, Plaintiff Parikka was aware of and was exposed to Chipotle's "Food With Integrity" campaign and believed that its food was a healthy non-GMO alternative to other fast food chains based on Chipotle's representations, which she understood to mean that Chipotle's menu did not contain GMOs and was not sourced from animals that were raised on GMO or genetically engineered feed. In particular, Plaintiff Parikka was exposed to and relied on Chipotle's media campaign, the representation that Chipotle's menu was non-GMO and GMO-free, having seen or heard articles, advertisements, including store signage, that Chipotle used "only non-GMO ingredients," in deciding to continue her purchases at Chipotle. Plaintiff Parikka began frequenting Chipotle specifically after learning of Chipotle's claims that its menu was now non-GMO and GMO-free. Plaintiff Parikka would not have purchased Chipotle's menu items at the price she had paid, or purchased it at all, had she known that Chipotle's non-GMO and GMO-free representations made were materially deceptive and misleading. Plaintiff Parikka has discontinued going to Chipotle since learning that its claims are deceptive and misleading because she feels duped, but she maintains an interest in continuing as a customer at Chipotle in the future should Chipotle actually have a GMO-free or non-GMO menu.

## CLASS ACTION ALLEGATIONS

56.     Plaintiffs Schneider, Deigert, and Reese ("California Plaintiffs") bring a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and all members of the following class (the "California Class"):

> All persons residing in California, during the period April 27, 2015 to the present, who purchased and/or paid for Chipotle's Food Products.[19]

---

[19] "Food Products" hereinafter means Chipotle's Meat Products, Dairy Products, and/or Soft Drinks.

57.     Plaintiff Gamage brings a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of herself and all members of the following class (the "Maryland Class"):

> All persons residing in Maryland, during the period April 27, 2015 to the present, who purchased and/or paid for Chipotle Food Products.

58.     Plaintiff Zangwill brings a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of herself and all members of the following class (the "Florida Class"):

> All persons residing in Florida, during the period April 27, 2015 to the present, who purchased and/or paid for Chipotle Food Products.

59.     Plaintiff Parikka brings a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of herself and all members of the following class (the "New York"):

> All persons residing in New York, during the period April 27, 2015 to the present, who purchased and/or paid for Chipotle Food Products.

60.     Excluded from the California, Maryland, Florida and New York Classes (collectively "Class" or "Classes") are: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Chipotle, Chipotle's subsidiaries, parents, successors, predecessors, and any entity in which Chipotle has a controlling interest, and its current or former employees, officers, and directors; (3) counsel for Plaintiffs and Chipotle; and (4) legal representatives, successors, or assigns of any such excluded persons.

61.     The Classes meet all of the criteria required by Federal Rule of Civil Procedure 23(a).

62.     **Numerosity:**  The Class members are so numerous that joinder of all members is impracticable.  Though the exact number and identities of Class members are unknown at this time, Chipotle's sales as of December 31, 2015 resulted in revenues of $1.5 billion.  Moreover, Defendant has over 1,970 restaurants throughout the United States, with approximately 351 restaurants in California, 70 restaurants in Maryland, 116 restaurants in Florida, and 115 in New York.  Based on these figures, it appears that the membership of the Classes is in the tens of thousands.  The identities of Class members are also ascertainable through records of store purchases and store patronage, social media accounts, publication notice, self-identification, and other means.

63.     **Commonality:** Common questions of law and fact exist as to all Class members. These common questions of law or fact predominate over any questions affecting only individual members of the Classes.  Common questions include, but are not limited to, the following:

(a)     Whether Chipotle's Non-GMO Claims violated California, Maryland, Florida, and New York consumer protection statutes;

(b)     Whether Chipotle concealed or omitted material information from Plaintiffs and Class members concerning its Non-GMO Claims;

(c)     Whether Chipotle's Non-GMO Claims constitute intentional or negligent misrepresentations;

(d)     Whether Chipotle was unjustly enriched by its unlawful conduct regarding its Non-GMO Claims;

(e)     Whether Plaintiffs and Class Members have been injured by virtue of Chipotle's unlawful conduct regarding its Non-GMO Claims;

(f)     Whether Plaintiffs and Class Members are entitled to restitution or other relief from Chipotle, and if so, in what amounts;

(g)     Whether Plaintiffs and Class members are entitled to monetary damages and, if so, what is the measure of those damages; and

(h)     Whether Class members are entitled to injunctive and/or declaratory relief.

64.     Common sources of evidence may also be used to demonstrate Chipotle's unlawful conduct on a class-wide basis, including, but not limited to documents and testimony about its public statements, advertising, marketing, and other media; Chipotle's records of the factual basis for its Non-GMO Claims; testing and other methods that can prove or disprove Chipotle's conduct regarding its Non-GMO Claims was unlawful; and records of sales and transactions.

65.     **Typicality:** Plaintiffs' claims are typical of the claims of the respective Classes they seek to represent, in that the named Plaintiffs and all members of the proposed Classes have suffered similar injuries as a result of the same practices alleged herein.  Plaintiffs have no interests adverse to the interests of the other members of the Classes.

66.   **Adequacy:**  Plaintiffs will fairly and adequately protect the interests of the Classes, and have retained attorneys well experienced in class actions and complex litigation as their counsel, including cases alleging consumer protection claims arising from corporate conduct that is deceptive and misleading to consumers.

67.   The Classes also satisfy the criteria for certification under Federal Rule of Civil Procedure 23(b) and 23(c).  Among other things, Plaintiffs aver that the prosecution of separate actions by the individual members of the proposed classes would create a risk of inconsistent or varying adjudication which would establish incompatible standards of conduct for Chipotle; that the prosecution of separate actions by individual class members would create a risk of adjudications with respect to them which would, as a practical matter, be dispositive of the interests of other class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; that Chipotle has acted or refused to act on grounds that apply generally to the proposed classes, thereby making final injunctive relief or declaratory relief described herein appropriate with respect to the proposed classes as a whole; that questions of law or fact common to the Classes predominate over any questions affecting only individual members and that class action treatment is superior to other available methods for the fair and efficient adjudication of the controversy which is the subject of this action.  Plaintiffs also aver that certification of one or more subclasses or issues may be appropriate for certification under Federal Rule of Civil Procedure 23(c).  Plaintiffs further state that the interests of judicial economy will be served by concentrating litigation concerning these claims in this Court, and that the management of the Classes will not be difficult.

68.   Plaintiffs and other members of the Classes have suffered damages as a result of Chipotle's unlawful and wrongful conduct.  Absent a class action, Chipotle will retain substantial funds received as a result of its wrongdoing, and such unlawful and improper conduct shall, in large measure, not go remedied.  Absent a class action, the members of the Class will not be able to effectively litigate these claims and will suffer further losses, as Chipotle will be allowed to continue such conduct with impunity and retain the proceeds of its ill-gotten gains.

**CLAIMS FOR RELIEF**
**COUNT I**

**Violation of the California Consumer Legal Remedies Act, Cal. Civil Code §§ 1750,** *et seq.*

**On Behalf of the California Class**

69.     California Plaintiffs reallege each and every allegation contained above, and incorporate by reference all other paragraphs of this Complaint as if fully set forth herein.  California Plaintiffs bring this claim on behalf of the California Class.

70.     The California Consumer Legal Remedies Act ("CLRA"), Civil Code section 1750, *et seq.*, was designed and enacted to protect consumers from unfair and deceptive business practices. To this end, the CLRA sets forth a list of unfair and deceptive acts and practices in Civil Code section 1770.

71.     The CLRA applies to Chipotle's actions and conduct described herein because it extends to the transactions involving the sale of goods or services for personal, family, or household use within the meaning of Civil Code section 1761.

72.     At all relevant times, California Plaintiffs and members of the California Class were "consumers" as that term is defined in Civil Code section 1761(d).

73.     Chipotle's practices in connection with the marketing and sale of its Food Products violate the CLRA in at least the following respects:

a)     In violation of section 1770(a)(5), Chipotle's Non-GMO Claims knowingly misrepresented the character, ingredients, uses and benefits of its products and menu;

b)     In violation of section 1770(a)(7), Chipotle's Non-GMO Claims represented that its products and menu are of a particular standard, quality or grade, which they are not; and

c)     In violation of section 1770(a)(9), Chipotle knowingly advertised its Non-GMO Claims regarding its menu and products with the intent not to sell the products as advertised.

74.     As set forth above, Chipotle's Non-GMO claims are deceptive and misleading to reasonable consumers in violation of the CLRA because: (1) Chipotle's Meat Products have been raised on GMO or genetically engineered feed and are not "non-GMO"; (2) Chipotle's Dairy Products are sourced from cows raised on GMO or genetically engineered feed and are not "non-GMO"; and (3) Chipotle's Soft Drinks contain GMOs and are not "non-GMO".  Moreover, Chipotle intentionally does not disclose any of this information to consumers in its restaurants or on its menus.

75.     By way of the foregoing, Chipotle engaged in the knowing concealment, suppression, and omission of material facts with intent that others act upon such concealment, suppression, and omission, in connection with the sale and advertisement of its goods and services.  Through Chipotle's uniform concealment and suppression of material facts, Chipotle engaged in misleading and deceptive conduct that created a likelihood of confusion or misunderstanding on the part of California Plaintiffs and Class members.

76.     Chipotle's conduct described here in was undertaken in transactions intended to result and which did result in the purchase of its products by consumers, which caused harm to California Plaintiffs and Class members who would not have purchased (or paid as much for) its Chipotle's products had they known the truth.  California Plaintiffs were in fact injured by purchasing or overpaying for Chipotle's products.

77.     The CLRA is, by its express terms, a cumulative remedy, such that remedies under its provisions can be awarded in addition to those provided under separate statutory schemes and/or common law remedies, such as those alleged in the other Counts of this Complaint.  *See* Cal. Civ. Code § 1752.

78.     In accordance with Civil Code section 1780, California Plaintiffs and Class members seek injunctive and equitable relief for Chipotle's violations of the CLRA necessary to bring them in compliance with the CLRA by, among other things, discontinuing the dissemination of its deceptive, and misleading Non-GMO Claims.[20]

---

[20] Courts in this District are divided as to whether plaintiffs lack Article III standing to assert injunctive relief under the CLRA.  To the extent this Court finds that Plaintiffs lack Article III standing, Plaintiffs respectfully disagree and assert claims for injunctive relief, including in order to maintain an appropriate record for appeal, if necessary.

79.     In accordance with Civil Code section 1780, the California Plaintiffs served a notice pursuant to Civil Code section 1782 on Chipotle, via a certified letter, return receipt requested, requesting appropriate relief on or about March 14, 2016.  Chipotle failed to respond to California Plaintiffs' demand and fully satisfy the requirements therein to bring their conduct into compliance with the law and provide California Plaintiffs and the Class the relief requested under the CLRA.  Accordingly, California Plaintiffs request actual and punitive damages for Chipotle's conduct alleged in this Complaint.

80.     California Plaintiffs also request attorneys' fees and costs provided in Civil Code section 1780, as well as any other relief the Court deems appropriate provided in Civil Code section 1780 and the Prayer for Relief.

## COUNT II

**Violation of California False Advertising Law, Cal. Bus. & Prof. Code §§ 17500,** *et seq.*

**On Behalf of the California Class**

81.     California Plaintiffs reallege each and every allegation contained above, and incorporate by reference all other paragraphs of this Complaint as if fully set forth herein.  California Plaintiffs bring this claim on behalf of the California Class.

82.     Each of the above deceptive and misleading advertising practices of Chipotle set forth above constitutes untrue or misleading advertising under the California False Advertising Law ("FAL").  Cal. Bus. & Prof. Code §§ 17500, *et seq.*

83.     At all material times, Chipotle's statement, marketing, and advertising materials misrepresented or omitted to state material facts regarding Chipotle's Non-GMO Claims as set forth herein this Complaint.  Chipotle is disseminating statements, marketing and advertising concerning its Non-GMO Claims that are unfair, untrue, deceptive, or misleading within the meaning of California Business & Professions Code section 17500, *et seq.*  Chipotle's acts and practices have deceived and/or are likely to continue to deceive California Plaintiffs, members of the Class, and the public.  As set forth above, Chipotle's Non-GMO claims are deceptive and misleading to reasonable consumers because: (1) Chipotle's Meat Products have been raised on GMO or genetically engineered feed and are not "non-GMO"; (2) Chipotle's Dairy Products are sourced from cows raised

on GMO or genetically engineered feed and are not "non-GMO"; and (3) Chipotle Soft Drinks contain GMOs and are not "non-GMO". Moreover, Chipotle intentionally does not disclose any of this information to consumers in its restaurants or on its menus.

84.     In making and disseminating the statements alleged herein, Chipotle knew or should have known its advertisements were deceptive and misleading. California Plaintiffs and members of the Class based their decisions to purchase Chipotle's products because of Chipotle's misrepresentations and omissions of material facts.

85.     California Plaintiffs and Class members are entitled to relief, including enjoining Chipotle to cease and desist from engaging in the practices described herein, as well as a declaration of rights that Chipotle's Non-GMO Claims are deceptive and misleading.

## COUNT III

**Violation of California Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.***

**On Behalf of the California Class**

86.     California Plaintiffs reallege each and every allegation contained above, and incorporate by reference all other paragraphs of this Complaint as if fully set forth herein. California Plaintiffs bring this claim on behalf of the California Class.

87.     Chipotle has engaged in unfair competition within the meaning of California Business & Professions Code section 17200, *et seq.*, because Chipotle's conduct is unlawful, misleading and unfair as herein alleged.

88.     California Plaintiffs, the members of the Class, and Chipotle are a "person" or "persons," within the meaning of Section 17201 of the California Unfair Competition Law ("UCL").

89.     The UCL prohibits any unlawful, unfair, or fraudulent business practices or acts. Chipotle's conduct, as alleged herein, constitutes an unlawful, unfair and fraudulent business practice that occurred in connection with the marketing, advertisement and sale of its products. As set forth above, Chipotle's Non-GMO claims are deceptive, and misleading to reasonable consumers because: (1) Chipotle's Meat Products have been raised on GMO or genetically engineered feed and are not "non-GMO"; (2) Chipotle's Dairy Products are sourced from cows raised on GMO or genetically engineered feed and are not "non-GMO"; and (3) Chipotle's Soft Drinks contain GMOs and are not

"non-GMO".   Moreover, Chipotle intentionally does not disclose any of this information to consumers in its restaurants or on its menus.

90.     Chipotle's misleading and deceptive misrepresentations and omissions, concealment and suppression of material fact, as described within, violated the UCL's unlawful, unfair, and fraudulent prongs.

91.     **Unlawful prong:**  Chipotle's conduct, as described within, violated the UCL's unlawful prong because it violates the CLRA in connection with the sale of goods and services, has unlawfully and unjustly enriched Chipotle, and has constituted actionable intentional or negligent misrepresentation torts, at the expense of California Plaintiffs and the Class, who have spent money purchasing Chipotle's products (or paid more for them) they would not have otherwise purchased.

92.     **Unfair prong:**  Chipotle's conduct, as described within, violated the UCL's unfair prong because its conduct violates established public policy intended to regulate the fair and ethical sale of goods and services to consumers as set forth in the CLRA, and because it is immoral, unethical, oppressive, or unscrupulous and has caused injuries to the California Plaintiffs and the Class that outweigh any purported benefit.  At all times relevant herein, Chipotle's conduct of misrepresenting and concealing material facts regarding Chipotle's Non-GMO Claims from the California Plaintiffs and consumers caused them injury by inducing them to purchase Chipotle's products (or paid more for them) they would not have otherwise purchased.  The utility of Chipotle's conduct in misrepresenting and concealing material facts from the California Plaintiffs and the Class is far outweighed by the gravity of harm to consumers who have now spent money they would not have otherwise spent and that has resulted in Defendants being unjustly enriched.

93.     **Fraudulent prong:**  Chipotle's conduct, as described within, violated the UCL's fraudulent prong by misrepresenting and concealing material information that caused, or would likely cause, the California Plaintiffs and the Class to be deceived into purchasing Chipotle's products (or paid more for them) they would not have otherwise purchased.  California Plaintiffs and the Class did, in fact, purchase Chipotle's products (or paid more for them) they would not have otherwise purchased but for Chipotle's fraudulent conduct misrepresenting and concealing material information about its Non-GMO Claims.  California Plaintiffs and the Class have been harmed and

sustained injury as a result of Chipotle's fraudulent conduct in violation of the UCL as explained herein.

94.     California Plaintiffs have standing to pursue this claim because they have been injured by virtue of suffering a loss of money and/or property as a result of the wrongful conduct alleged herein.  California Plaintiffs would not have purchased Chipotle's products (or paid as much for it) had they known the truth, though they have an interest in purchasing such products in the future.  As a direct result of Chipotle's actions and omissions of material facts, California Plaintiffs and Class members did not obtain the value of the products for which they paid; were unlawfully, unfairly, and fraudulently induced to make purchases that they otherwise would not have; and lost their ability to make informed and reasoned purchasing decisions.

95.     The UCL is, by its express terms, a cumulative remedy, such that remedies under its provisions can be awarded in addition to those provided under separate statutory schemes and/or common law remedies, such as those alleged in the other Counts of this Complaint.  *See* Cal. Bus. & Prof. Code § 17205.

96.     As a direct and proximate cause of Chipotle's conduct, which constitutes unlawful, unfair, and fraudulent business practices, as herein alleged, California Plaintiffs and Class members have been damaged and suffered ascertainable losses measured by the cost of their Chipotle purchases or some portion thereof, thereby entitling them to recover restitution and equitable relief, including disgorgement or ill-gotten gains, refunds of moneys, interest, reasonable attorneys' fees, filing fees, and the costs of prosecuting this class action, as well as any and all other relief that may be available at law or equity.

## COUNT IV

**Violation of Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201, *et seq*.**

**On Behalf of the Florida Class**

97.     Plaintiff Zangwill realleges each and every allegation contained above, and incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.  Plaintiff Zangwill brings this claim on behalf of the Florida Class.

98.     This cause of action is brought pursuant to the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA").  Fla. Stat. §§ 501.201, *et seq.*  The express purpose of the FDUPTA is to "protect the consuming public . . . from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce."  Fla. Stat. § 501.202(2).

99.     Chipotle's sale of products at issue in this cause are a "consumer transaction" within the scope of the FDUTPA.  Fla. Stat. §§ 501.201-501.213.  Plaintiff Zangwill is a "consumer" as defined by the FDUTPA.  Fla. Stat. § 501.203.  Chipotle's products are "goods" within the meaning of the FDUTPA.  Chipotle is engaged in trade or commerce within the meaning of the FDUTPA.

100.    The FDUTPA declares as unlawful "unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce."  Fla. Stat. § 501.204(1).

101.    The FDUPTA provides that "due consideration be given to the interpretations of the Federal Trade Commission and the federal courts relating to Section 5(a)(1) of the Trade Commission Act."  Fla. Stat. § 501.204(2).  Chipotle's unfair and deceptive practices are likely to mislead -- and have misled -- the consumer acting reasonably under the circumstances.  Fla. Stat. § 500.04; 21 U.S.C. § 343.  As set forth above, Chipotle's Non-GMO claims are deceptive and misleading to reasonable consumers because: (1) Chipotle's Meat Products have been raised on GMO or genetically engineered feed and are not "non-GMO"; (2) Chipotle's Dairy Products are sourced from cows raised on GMO or genetically engineered feed and are not "non-GMO"; and (3) Chipotle's Soft Drinks contain GMOs and are not "non-GMO".  Moreover, Chipotle intentionally does not disclose any of this information to consumers in its restaurants or on its menus.

102.    Chipotle has violated the FDUPTA by engaging in the unfair and deceptive practices described above, which offend public policies and are immoral, unethical, unscrupulous and substantially injurious to consumers.

103.    Plaintiff Zangwill has standing to pursue this claim because she has been injured by virtue of suffering a loss of money and/or property as a result of the wrongful conduct alleged herein.  Plaintiff Zangwill would not have purchased Chipotle's products (or paid as much for it) had she

known the truth, though she has an interest in purchasing such products in the future.  As a direct result of Chipotle's actions and omissions of material facts, Plaintiff Zangwill and Class members did not obtain the value of the products for which they paid; were induced to make purchases that they otherwise would not have; and lost their ability to make informed and reasoned purchasing decisions.

104.    The damages suffered by Plaintiff Zangwill and the Florida Class were directly and proximately caused by the deceptive, misleading and unfair practices of Chipotle, as described above.

105.    Plaintiff Zangwill and the Florida Class seek a declaratory judgment that Chipotle's Non-GMO Claims are deceptive and misleading in violation of the FDUTPA and court order enjoining the above described wrongful acts and practices of the Chipotle.  Fla. Stat. § 501.211(1).

106.    Additionally, Plaintiff Zangwill and the Florida Class make claims for actual damages, attorney's fees and costs.  Fla. Stat. §§ 501.2105, 501.211(2).

<u>COUNT V</u>

**Violation of Maryland Consumer Protection Act, MD. Code Ann. §§ 13-101, *et seq*.**

**On Behalf of the Maryland Class**

107.    Plaintiff Gamage realleges each and every allegation contained above, and incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.  Plaintiff Gamage brings this claim on behalf of the Maryland Class.

108.    This cause of action is brought pursuant to the Maryland Consumer Protection Act ("MCPA").  MD Code Ann. §§ 13-101, *et seq.*  The express purpose of the MCPA is to "set certain minimum statewide standards for the protection of consumers across the State" because "consumer protection is one of the major issues which confront all levels of government, and that there has been mounting concern over the increase of deceptive practices in connection with sales of merchandise, real property, and services and the extension of credit.  MD Code Ann. §§ 13-102.

109.    Plaintiff Gamage is a "consumer" as defined by the MCPA.  MD Code Ann. §§ 13-101(c)(1).  Chipotle's products are "consumer goods," "consumer services," and "merchandise" within the meaning of the MCPA.  MD Code Ann. §§ 13-101(d)(1)-(2),(f).  Chipotle is a "merchant"

1    engaged in sales, advertising, and commerce within the meaning of the MCPA.  MD Code Ann.

2    §§ 13-101.

3          110.    The MCPA declares as unlawful "unfair or deceptive trade practices."  MD Code

4    Ann. §§ 13-102.  Chipotle's unfair or deceptive trade practice in violation of the MCPA includes

5    making "[f]alse, falsely disparaging, or misleading oral or written statement, visual description, or

6    other representation of any kind which has the capacity, tendency, or effect of deceiving or

7    misleading consumers"; representing that its "goods and services have a sponsorship, approval,

8    accessory, characteristic, ingredient, use, benefit, or quantity which they do not have"; that it has "a

9    sponsorship, approval, status, affiliation, or connection which he does not have"; advertising

10   consumer goods without the intent to sell them as advertised; and engaging in "[d]eception, fraud,

11   false pretense, false premise, misrepresentation, or knowing concealment, suppression, or omission

12   of any material fact with the intent that a consumer rely on the same in connection" with the

13   promotion or sale of its consumer goods and services.  MD Code Ann. §§ 13-103.

14         111.    As set forth above, Chipotle's Non-GMO claims are deceptive, and misleading to

15   reasonable consumers because: (1) Chipotle's Meat Products have been raised on GMO or

16   genetically engineered feed and are not "non-GMO"; (2) Chipotle's Dairy Products are sourced from

17   cows raised on GMO or genetically engineered feed and are not "non-GMO"; and (3) Chipotle's

18   Soft Drinks contain GMOs and are not "non-GMO".  Moreover, Chipotle intentionally does not

19   disclose any of this information to consumers in its restaurants or on its menus.

20         112.    Chipotle has violated the MCPA by engaging in the unfair and deceptive trade

21   practices described above, which offend Maryland's public policies and are immoral, unethical,

22   unscrupulous and substantially injurious to consumers.

23         113.    Plaintiff Gamage has standing to pursue this claim because she has been injured by

24   virtue of suffering a loss of money and/or property as a result of the wrongful conduct alleged herein.

25   Plaintiff Gamage would not have purchased Chipotle's products (or paid as much for it) had she

26   known the truth.  As a direct result of Chipotle's actions and omissions of material facts, Plaintiff

27   Gamage and Class members did not obtain the value of the products for which they paid; were

28

induced to make purchases that they otherwise would not have; and lost their ability to make informed and reasoned purchasing decisions.

114.     The damages suffered by Plaintiff Gamage and the Maryland Class were directly and proximately caused by the deceptive, misleading and unfair practices of Chipotle, as described above.

115.     Plaintiff Gamage and the Maryland Class seek a declaratory judgment that Chipotle's Non-GMO Claims are deceptive and misleading in violation of the FDUTPA and court order enjoining the above described wrongful acts and practices of Chipotle.

116.     Additionally, Plaintiff Gamage and the Maryland Class make claims for actual damages, attorney's fees and costs.  MD Code Ann. §§ 13-408.

## COUNT VI

### Violation of New York's Consumer Protection Statute, N.Y. Gen. Bus. Law § 349

### On Behalf of the New York Class

117.     Plaintiff Parikka realleges each and every allegation contained above, and incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.  Plaintiff Parikka brings this claim on behalf of the New York Class.

118.     This cause of action is brought pursuant to the New York General Business Law, Section 349 which declares that all "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful."

119.     Plaintiff, the New York Class members, and Chipotle are "persons" within the meaning of Section 349.  Chipotle's products are goods and services offered for sale to the public and thus, constitutes conduct involving the "business, trade, and commerce" within the meaning of Section 349.

120.     Chipotle's Non-GMO claims are deceptive acts and practices in violation of Section 349 because: (1) Chipotle's Meat Products have been raised on GMO or genetically engineered feed and are not "non-GMO"; (2) Chipotle's Dairy Products are sourced from cows raised on GMO or genetically engineered feed and are not "non-GMO"; and (3) Chipotle's Soft Drinks contain GMOs and are not "non-GMO".  Moreover, Chipotle intentionally does not disclose any of this information to consumers in its restaurants or on its menus.

121.    Chipotle has violated Section 349 by engaging in the unfair and deceptive trade acts and practices described above, which offend New York's public policies and are immoral, unethical, unscrupulous and substantially injurious to consumers.

122.    Plaintiff Parikka has standing to pursue this claim because she has been injured by virtue of suffering a loss of money and/or property as a result of the wrongful conduct alleged herein. Plaintiff Parikka would not have purchased Chipotle's products (or paid as much for it) had she known the truth.  As a direct result of Chipotle's actions and omissions of material facts, Plaintiff Parikka and Class members did not obtain the value of the products for which they paid; were induced to make purchases that they otherwise would not have; and lost their ability to make informed and reasoned purchasing decisions.

123.    The damages suffered by Plaintiff Parikka and the New York Class were directly and proximately caused by the deceptive, misleading and unfair practices of Chipotle, as described above.

124.    Plaintiff Parikka and the New York Class seek a declaratory judgment that Chipotle's Non-GMO Claims are deceptive and misleading in violation of Section 349 and court order enjoining the above described wrongful acts and practices of Chipotle.

125.    Additionally, Plaintiff Gamage and the New York Class make claims for compensatory, actual damages or $50 per claim (whichever is greater), treble and/or punitive damages up to $1,000 for each claim for Chipotle's knowing and willful violation of Section 349, restitution, disgorgement, refunds, attorneys' fees and costs, as well as any other relief available at law or equity.

## COUNT VII

**Violation of New York's False Advertising Law, N.Y. Gen. Bus. Law §§ 350, *et seq.***

**On Behalf of the New York Class**

126.    Plaintiff Parikka realleges each and every allegation contained above, and incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.  Plaintiff Parikka brings this claim on behalf of the New York Class.

127.    Under New York's General Business Law, Section 350, "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby

declared unlawful." Each of the above deceptive, and misleading advertising practices of Chipotle set forth above constitutes untrue or misleading advertising under Section 350. Plaintiff, the New York Class members, and Chipotle are "persons" within the meaning of Section 350. Chipotle's products are goods and services offered for sale to the public and thus, constitute conduct involving the "business, trade, and commerce" within the meaning of Section 350.

128.    At all material times, Chipotle's statement, marketing, and advertising materials misrepresented or omitted to state material facts regarding Chipotle's Non-GMO Claims as set forth herein this Complaint. Chipotle is disseminating statements, marketing and advertising concerning its Non-GMO Claims that are unfair, untrue, deceptive, or misleading within the meaning of Section 350. Chipotle's acts and practices have deceived and/or are likely to continue to deceive Plaintiff Parikka, members of the Class, and the public. As set forth above, Chipotle's Non-GMO claims are deceptive, and misleading to reasonable consumers because: (1) Chipotle's Meat Products have been raised on GMO or genetically engineered feed and are not "non-GMO"; (2) Chipotle's Dairy Products are sourced from cows raised on GMO or genetically engineered feed and are not "non-GMO"; and (3) Chipotle's Soft Drinks contain GMOs and are not "non-GMO". Moreover, Chipotle intentionally does not disclose any of this information to consumers in its restaurants or on its menus.

129.    In making and disseminating the statements alleged herein, Chipotle knew or should have known its advertisements were untrue, deceptive and misleading. Plaintiff Parikka and members of the New York Class based their decisions to purchase Chipotle's products because of Chipotle's misrepresentations and omissions of material facts.

130.    Plaintiff Parikka and New York Class members are entitled to relief, including enjoining Chipotle to cease and desist from engaging in the practices described herein, as well as a declaration of rights that Chipotle's Non-GMO Claims are deceptive and misleading.

## COUNT VIII

### Unjust Enrichment

### On Behalf of All Classes

131.    Plaintiffs reallege each and every allegation contained above, and incorporate by reference all other paragraphs of this Complaint as if fully set forth herein. Plaintiffs bring this claim

on behalf of all Classes.

132.   Chipotle engaged in deceptive and misleading conduct regarding its Non-GMO Claims as set forth above.

133.   As a result of Chipotle's conduct alleged herein, Plaintiffs conferred a benefit on Chipotle by patronizing its establishments and spending money purchasing Chipotle's products.

134.   Chipotle accepted and retained the benefit in the amount of the sales and/or profits it earned from sales of its products to Plaintiffs and Class members.

135.   Chipotle has monetarily benefitted from its unlawful, unfair, misleading, and deceptive practices and advertising at the expense of Plaintiffs and Class members, under circumstances in which it would be unjust and inequitable for Chipotle to be permitted to retain the benefit of its wrongful conduct.

136.   Plaintiffs and the Class Members are entitled to full refunds, restitution and/or damages from Chipotle and/or an order of this Court proportionally disgorging all profits, benefits, and other compensation obtained by Chipotle from its wrongful conduct.   If necessary, the establishment of a constructive trust from which the Plaintiffs and Class members may seek restitution or compensation may be created.

137.   Additionally, Plaintiff Zangwill and the Florida Class Members may not have an adequate remedy at law against Chipotle, and accordingly plead this claim for unjust enrichment in addition to or, in the alternative to, other claims pleaded herein.

## COUNT IX

### Misrepresentation (Intentional or Negligent)

### On Behalf of All Classes

138.   Plaintiffs reallege each and every allegation contained above, and incorporate by reference all other paragraphs of this Complaint as if fully set forth herein.   Plaintiffs bring this claim on behalf of all Classes.

139.   Chipotle's Non-GMO Claims have omitted materials fact to the public, including Plaintiff and Class Members, about its products.   Through its advertising and other means, Chipotle failed to disclose that (1) Chipotle's Meat Products have been raised on GMO or genetically

engineered feed and are not "non-GMO"; (2) Chipotle's Dairy Products are sourced from cows raised on GMO or genetically engineered feed and are not "non-GMO"; and (3) Chipotle's Soft Drinks contain GMOs and are not "non-GMO".

140.    At all relevant times Chipotle was aware that its Non-GMO Claims were deceptive and misleading, and purposefully omitted material facts regarding its Non-GMO Claims in order to induce reliance by Plaintiffs and Class members and influence their decisions to purchase Chipotle's products.  At a minimum, Chipotle negligently misrepresented and omitted material facts regarding its Non-GMO Claims.

141.    Plaintiffs and the Class members justifiably reasonably relied on Chipotle's representations and omissions as set forth herein, and, in reliance thereon, purchased Chipotle's products they would not have otherwise purchased or paid the same amount for.  Had Plaintiffs known all material facts regarding Chipotle's Non-GMO Claims they would have acted differently, and would not have been damaged by Chipotle's conduct.

142.    As a direct and proximate result of Chipotle's misrepresentations and omissions, Plaintiffs and Class members were induced to purchase and consume Chipotle's products, and have suffered damages to be determined at trial in that, among other things, they have been deprived of the benefit of their bargain in that they bought products that were not what they were represented to be, and they have spent money on products that had less value than was reflected in the premium purchase price they paid.

## COUNT X

### Declaratory Relief, 28 U.S.C. § 2201

### On Behalf of All Classes

143.    Plaintiffs reallege each and every allegation contained above, and incorporate by reference all other paragraphs of this Complaint as if fully set forth herein.  Plaintiffs bring this claim on behalf of all Classes.

144.    An actual controversy has arisen and now exists between Plaintiffs and the putative Classes on the one hand, and Chipotle on the other, concerning the misleading and deceptive nature of Chipotle's Non-GMO Claims.  Plaintiffs and Class members contend that Chipotle's Non-GMO

Claims are deceptive and misleading because (1) Chipotle's Meat Products have been raised on GMO or genetically engineered feed and are not "non-GMO"; (2) Chipotle's Dairy Products are sourced from cows raised on GMO or genetically engineered feed and are not "non-GMO"; and (3) Chipotle's Soft Drinks contain GMOs and are not "non-GMO". Plaintiffs contend Chipotle's Non-GMO Claims are inconsistent with reasonable consumers' understanding of such representations. On the other hand, Chipotle contends that it can promulgate deceptive, confusing, misleading, inconsistent, and amorphous Non-GMO Claims to suit its market and profit driven objectives. Chipotle contends its use of Non-GMO Claims is not deceptive, and misleading to reasonable consumers.

145. Accordingly, Plaintiffs are entitled to and seek a judicial determination of whether Chipotle's Non-GMO Claims are deceptive and misleading to reasonable consumers.

146. A judicial determination of the rights and responsibilities of the parties over Chipotle's Non-GMO Claims is necessary and appropriate at this time so (1) that the rights of the Plaintiffs and the Classes may be determined with certainty for purposes of resolving this action; and (2) and so that the Parties and the marketplace will have a consistent understanding of what Non-GMO Claims mean in the absence of applicable regulations.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and on behalf of the Class, pray for relief as follows:

A. For an Order certifying this case as a class action pursuant to Federal Rule of Civil Procedure 23 against Chipotle, appointing Plaintiffs as Class Representatives of their respective Classes, and Kaplan Fox & Kilsheimer LLP as Class Counsel;

B. Awarding monetary, punitive and actual damages and/or restitution, as appropriate;

C. Awarding declaratory and injunctive relief as permitted by law or equity to assure that the Class have an effective remedy, including enjoining Chipotle from continuing the unlawful practices as set forth above;

D. Prejudgment interest to the extent allowed by the law;

1   E.   Awarding all costs, experts' fees and attorneys' fees, expenses and costs of

2   prosecuting this action; and

3   F.   Such other and further relief as the Court may deem just and proper.

4   **<u>JURY TRIAL DEMAND</u>**

5   Plaintiffs demand a trial by jury on all issues so triable.

6   DATED:  April 22, 2016                    **KAPLAN FOX & KILSHEIMER LLP**

7   By:   __/s/ Laurence D. King__
                    Laurence D. King
8   Linda M. Fong
    Matthew George
9   Mario M. Choi
    350 Sansome Street, Suite 400
10   San Francisco, CA  94104
    Telephone:  (415) 772-4700
11   Facsimile:   (415) 772-4707

12   **KAPLAN FOX & KILSHEIMER LLP**
    Frederic S. Fox (*pro hac vice* to be filed)
13   Donald R. Hall (*pro hac vice* to be filed)
    850 Third Avenue, 14th Floor
14   New York, NY 10022
    Telephone: (212) 687-1980
15   Facsimile: (212) 687-7714

16   *Attorneys for Plaintiffs*

17

18

19

20

21

22

23

24

25

26

27

28