MESSNER REEVES LLP
Charles C. Cavanagh (CA State Bar No. 198468)
Allison Dodd (*Pro Hac Vice Application*)
1430 Wynkoop Street, Suite 300
Denver, Colorado 80202
Telephone: (303) 623-1800
Facsimile: (303) 623-0552
E-mail: ccavanagh@messner.com
         adodd@messner.com

SHEPPARD, MULLIN, RICHTER & HAMPTON, LLP
Sascha Henry (CA State Bar No. 191914)
333 South Hope Street, 43rd Floor
Los Angeles, California 90071
Telephone: (213) 620-1780
Facsimile: (213) 620-1398
E-mail: shenry@sheppardmullin.com

Attorneys for Defendant
CHIPOTLE MEXICAN GRILL, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARTIN SCHNEIDER, SARAH DEIGERT, LAURIE REESE THERESA GAMAGE, TIFFANIE ZANGWILL, and NADIA PARIKKA, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CHIPOTLE MEXICAN GRILL, INC., a Delaware corporation,<br><br>Defendant. | Case No.: 3:16-cv-02200-HSG<br><br>**NOTICE OF MOTION AND MOTION OF DEFENDANT CHIPOTLE MEXICAN GRILL, INC. TO DISMISS COMPLAINT**<br><br>[Fed. R. Civ. Proc. 12(b)(1) &12(b)(6)]<br><br>Judge: Hon. Haywood S. Gilliam, Jr.<br>Ctrm.: 10 (San Francisco Courthouse)<br>Hearing Date: July 28, 2016<br>Hearing Time: 2:00 p.m.<br><br><br>Action Filed: April 22, 2016<br>Trial Date: Not Set |

1      TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:

2      NOTICE IS HEREBY GIVEN that, on July 28, 2016, at 2:00 p.m., or as soon

3 thereafter as counsel may be heard by the Honorable Haywood S. Gilliam, Jr., in

4 courtroom 10 of the above-titled Court, located at 450 Golden Gate Avenue, San

5 Francisco, California  94102, defendant Chipotle Mexican Grill, Inc. ("Chipotle")

6 will, and hereby does, move the Court for an Order dismissing, without leave to

7 amend, the Complaint ("Complaint") filed by plaintiffs Martin Schneider, Sarah

8 Deigert, Laurie Reese, Theresa Gamage, Tiffanie Zangwill and Nadia Parikka

9 ("Plaintiffs").  In the alternative, Chipotle moves for an Order dismissing, without

10 leave to amend, those portions of the Complaint that fail to state a claim upon which

11 relief can be granted.

12      This Motion is made on the following grounds:

13      1.      Plaintiffs fail to state a claim because no reasonable consumer would be

14 deceived by Chipotle's "Non-GMO Claims."  *See Williams v. Gerber Prods. Co.*,

15 552 F.3d 934 (9th Cir. 2008); *Freeman v. Time, Inc.*, 68 F.3d 285 (9th Cir. 1995);

16 *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496 (2003); *Zlotnick. v. Premier*

17 *Sales Grp., Inc.*, 480 F.3d 1281, 1284 (11th Cir. 2007); *Luskin's, Inc. v. Consumer*

18 *Protection Div.*, 353 Md. 335, 345-358 (1999); *Druyan v. Jagger*, 508 F. Supp. 2d

19 228, 244 (S.D.N.Y. 2007).

20      2.      Plaintiffs fail to state a claim for intentional misrepresentation and

21 negligent misrepresentation because neither claim can be based on alleged omissions.

22 *See Conte v. Wyeth, Inc.*, 168 Cal. App. 4th 89, 101 n.7 (2008); *Apollo Capital Fund,*

23 *LLC v. Roth Capital Partners, LLC*, 158 Cal. App. 4th 226, 243 (2007).

24      3.      Plaintiffs fail to state a claim for intentional misrepresentation and

25 negligent misrepresentation because they have not alleged that Chipotle has made a

26 false statement.  *See Service by Medallion, Inc. v. Clorox Co.*, 44 Cal. App. 4th 1807,

27 1816 (1996); *Diediker v. Peelle Fin. Corp.*, 60 Cal. App. 4th 288, 297 (1997).

28

4.      Plaintiffs lack standing to pursue prospective injunctive relief. *See Wang v. OCZ Tech. Grp., Inc.*, 276 F.R.D. 618 (N.D. Cal. 2011); *Hodgers-Durgin v. de la Vina*, 199 F.3d 1037 (9th Cir. 1999).

5.      Plaintiffs fail to state a claim for unjust enrichment because unjust enrichment is not a recognized cause of action. *Lauriedale Assoc., Ltd. v. Wilson*, 7 Cal. App. 4th 1439, 1448 (1992); *McKell v. Washington Mut., Inc.*, 49 Cal. App. 4th 1457, 1490 (2006).

6.      Plaintiffs fail to state a claim for declaratory relief because they have not alleged an actual controversy between the parties. *See* 28 U.S.C. § 2201(a).

This Motion is based upon this Notice of Motion and Motion; the attached Memorandum of Points and Authorities; the concurrently-filed Request for Judicial Notice; all the pleadings and papers on file in this action; and upon such oral argument and other matters as may be presented to the Court at the time of the hearing.

Dated:  May 17, 2016          MESSNER REEVES, LLP
                              SHEPPARD, MULLIN, RICHTER & HAMPTON, LLP


                              By:   */s/ Sascha Henry*_____
                                    Sascha Henry
                                    Attorneys for Defendant
                                    CHIPOTLE MEXICAN GRILL, INC.

1

## STATEMENT OF THE ISSUES TO BE DECIDED

2       This Motion raises the following issues:

3       1.      Whether the Complaint fails to state a claim under the California

4   Consumers Legal Remedies Act ("CLRA"), the California False Advertising Law

5   ("FAL"), the California Unfair Competition Law ("UCL"), the Florida Deceptive and

6   Unfair Trade Practices Act ("FDUTPA"), the Maryland Consumer Protection Act

7   ("MCPA") and Sections 349 and 350 of the New York General Business Law

8   ("Sections 349 and 350") because no reasonable consumer would be deceived by

9   Chipotle's "Non-GMO Claims."

10      2.      Whether the Complaint fails to state a claim for intentional and/or

11  negligent misrepresentation because Plaintiffs claims are based on alleged omissions.

12      3.      Whether the Complaint fails to state a claim for intentional and/or

13  negligent misrepresentation because Plaintiffs have not alleged that Chipotle has

14  made a false representation.

15      4.      Whether Plaintiffs lack standing to pursue the prospective injunctive

16  relief sought through the Complaint.

17      5.      Whether the Complaint fails to state a claim for unjust enrichment

18  because unjust enrichment is not a recognized cause of action.

19      6.      Whether the Complaint fails to state a claim for declaratory relief

20  because Plaintiffs have not alleged an actual controversy between the parties.

21

22

23

24

25

26

27

28

SMRH:477261132.1                                          MOTION TO DISMISS COMPLAINT

# **TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ..................................................................................................1

II.   PLAINTIFFS' ALLEGATIONS ...........................................................................3

    A.    Chipotle's Representations About Its Use Of "Non-GMO Ingredients." ...............................................................................................3

        1.    Representations Quoted Or Depicted In The Complaint............3

        2.    Representations Not Quoted Or Depicted In The Complaint..................................................................................5

    B.    Plaintiffs' Alleged Purchases From Chipotle. ......................................6

III.  PROCEDURAL HISTORY ...................................................................................6

IV.  APPLICABLE LEGAL STANDARDS .................................................................7

V.   ARGUMENT ........................................................................................................8

    A.    Plaintiffs Fail To State A Claim Under The "Reasonable Consumer" Test.......................................................................................8

        1.    The Reasonable Consumer Who Read Chipotle's Website Would Not Be Deceived By Chipotle's "Non-GMO Claims." ..............................................................................10

        2.    The Reasonable Consumer Would Not Be Deceived By The "Non-GMO Claims" Quoted Or Depicted In The Complaint..................................................................................14

        3.    Plaintiffs' Allegations Regarding Consumers' Purported Understanding Of Terms And Representations Other Than Chipotle's "Non-GMO Claims" Are Irrelevant. ......................17

    B.    Plaintiffs Fail To State A Claim For Misrepresentation. ......................19

    C.    Plaintiffs Lack Standing To Pursue Injunctive Relief. .........................20

    D.    Plaintiffs Fail To State A Claim For Unjust Enrichment And Declaratory Relief. ................................................................................21

VI.  CONCLUSION ...................................................................................................22

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

<u>Cases</u>

4

*Apollo Capital Fund, LLC v. Roth Capital Partners, LLC*
    158 Cal. App. 4th 226 (2007) ................................................................ 20

5

6

*Ashcroft v. Iqbal*
    556 U.S. 662 (2009) ............................................................................... 7

7

8

*Balser v. Hain Celestial Group, Inc.*
    -- Fed. App'x --, 2016 WL 696507 (9th Cir. Feb. 22, 2016) ............... 12

9

*Balser v. Hain Celestial Group, Inc.*
    2013 WL 6673617 (C.D. Cal. Dec. 18, 2013) ..................................... 12

10

11

*Bell Atl Corp. v. Twombly*
    550 U.S. 544 (2007) ............................................................................... 7

12

13

*Cafasso v. Gen. Dynamics C4 Sys., Inc.*
    637 F.3d 1047 (9th Cir. 2011) ............................................................... 8

14

15

*Carrea v. Dreyer's Grand Ice Cream*
    475 F. App'x 113 (9th Cir. 2012) ..................................................... 9, 14

16

17

*Conte v. Wyeth, Inc.*
    168 Cal. App. 4th 89 (2008) ................................................................ 20

18

19

*Davis v. HSBC Bank Nev., N.A.*
    691 F.3d 1152 (9th Cir. 2012) ............................................................... 8

20

21

*Diediker v. Peelle Fin. Corp.*
    60 Cal. App. 4th 288 (1997) ................................................................ 20

22

23

*Druyan v. Jagger*
    508 F. Supp. 2d 228 (S.D.N.Y. 2007) ................................................... 8

24

25

*Ebner v. Fresh, Inc.*
    -- F.3d. --, 2016 WL 1056088 (9th Cir. Mar. 17, 2016) ................. 9, 14

26

27

*Erickson v. Pardus*
    551 U.S. 89 (2007) ................................................................................. 7

28

-ii-

*Fink v. Time Warner Cable*
   714 F.3d 739 (2d Cir. 2013) ................................................................ 10

*Gallagher v. Chipotle Mexican Grill*
   2016 WL 454083 (February 5, 2016) ............................... 1, 10, 18, 20, 21

*Hariston v. S. Beach Beverage*
   2012 WL 1893818 (C.D. Cal. May 18, 2012) ..................................... 13

*Hill v. Roll Int'l Corp.*
   195 Cal. App. 4th 1295 (2011) ...................................................... 9, 21

*Ileto v. Glock, Inc.*
   349 F.3d 1191 (9th Cir. 1995) ............................................................. 7

*Kane v. Chobani, Inc.*
   2013 WL 5289253 (N.D. Cal. Sept. 19, 2013) ................................... 12

*Kearns v. Ford Motor Co.*
   567 F.3d 1120 (9th Cir. 2009) ............................................................. 8

*Knievel v. ESPN*
   393 F.3d 1068 (9th Cir. 2005) ........................................................... 11

*Lauriedale Assoc., Ltd. v. Wilson*
   7 Cal. App. 4th 1439 (1992) ............................................................. 21

*Lavie v. Procter & Gamble Co.*
   105 Cal. App. 4th 496 (2003) ............................................................. 9

*Luskin's, Inc. v. Consumer Protection Div.*
   353 Md. 335 (1999) ............................................................................. 8

*Manchouck v. Mondelez Int'l, Inc.*
   2013 WL 5400285 (N.D. Cal. Sept. 26, 2013) ................................... 14

*McKell v. Washington Mut., Inc.*
   142 Cal. App. 4th 1457 (2006) ......................................................... 21

*McKinnis v. Kellogg USA*
   2007 WL 4766060 (C.D. Cal. Sept. 19, 2007) ..................................... 9

*McKinnis v. Sunny Delight Beverages Co.*
   2007 WL 4766525 (C.D. Cal. Sept. 4, 2007) ..................................... 14

SMRH:477261132.1

Case No. 3:16-cv-02200-HSG
MOTION TO DISMISS COMPLAINT

*Pelayo v. Nestle USA, Inc.*
   989 F. Supp. 2d 973 (2013) ...................................................9, 13, 17

*Rooney v. Cumberland Packing Corp.*
   2012 WL 1512106 (S.D. Cal. Apr. 16, 2012) ..................................... 13

*Service by Medallion, Inc. v. Clorox Co.*
   44 Cal. App. 4th 1807 (1996) ............................................................ 20

*Steel Co. v. Citizens for a Better Env't*
   523 U.S. 83 (1998) ............................................................................... 8

*Stuart v. Cadbury Adams USA, LLC*
   458 F. App'x 689 (9th Cir. 2011) ...................................................... 14

*Sugawara v. Pepsico, Inc.*
   2009 WL 1439115 (E.D. Cal. May 21, 2009) ................................... 13

*Videtto v. Kellogg USA*
   2009 WL 1439086 (E.D. Cal. May 21, 2009) ................................... 14

*Viggiano v. Hansen Natural Corp.*
   944 F. Supp. 2d 877 (C.D. Cal. May 13, 2013) ................................ 13

*Williams v. Gerber Prods. Co.*
   552 F.3d 934 (9th Cir. 2008) .......................................................... 8, 12

*Zlotnick. v. Premier Sales Grp., Inc.*
   480 F.3d 1281 (11th Cir. 2007) .......................................................... 8

Statutes

California
   Consumer Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.*..................3, 8, 14
   False Advertising Law, Cal. Bus. & Prof. Code § 17500, *et seq.* ...............3, 8, 14
   Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.* .............3, 8, 14

Connecticut
   2013 Conn. Legis. Serv. p. A. 13-183 ............................................... 16

Federal
   28 U.S.C. § 2201(a) ........................................................................... 21

Florida
   Fla. Stat. § 501.201, *et seq.*............................................................ 3, 12

Maine
    22 MRSA §§ 2591-2596 ..................................................................... 16

Maryland
    Consumer Protection Act, MD. Code Ann. §§ 13-101, *et seq.* ......................... 3, 12

New York
    Gen. Bus. Law § 349, *et seq.* ................................................................ 3
    Gen. Bus. Law § 350, *et seq.* ................................................................ 3

Vermont
    Vt. CP 121.03(a)(i) ............................................................................ 16

Other Authorities

Federal Rule of Civil Procedure
    9(b) .................................................................................................. 8
    12(b)(1) ............................................................................................ 8
    12(b)(6) .......................................................................................... 7, 14
    12(f) ................................................................................................ 7

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## I.  INTRODUCTION

3       This is the second lawsuit filed in this Court against Chipotle Mexican Grill,

4  Inc. ("Chipotle") by Plaintiffs' counsel relating to Chipotle's announcement on

5  April 27, 2015, that it had "'achieved its goal of moving to only non-GMO

6  ingredients to make all of the food in its U.S. restaurants.'"  Previously, Plaintiffs'

7  counsel had filed *Colleen Gallagher v. Chipotle Mexican Grill, Inc.*, 15-CV-3952

8  (HSG), and the Court had dismissed, with leave to amend, Ms. Gallagher's

9  complaint.  In *Gallagher,* the plaintiff had "not alleged that any of the 'ingredients'"

10  in Chipotle's food "have 'been altered using . . . genetic engineering techniques.'"

11  (RJN, Exh. 1, p. 6; *Gallagher v. Chipotle Mexican Grill*, 2016 WL 454083, *4

12  (February 5, 2016).)  Here, Plaintiffs are still unable to allege that the ingredients in

13  Chipotle's food have been altered using genetic engineering techniques.  Thus, as in

14  *Gallagher,* the complaint should be dismissed.

15       Chipotle owns and operates a chain of "fast casual" restaurants that serves a

16  focused menu of Mexican-inspired fare, consisting primarily of burritos, tacos and

17  salads.  (*See* Complaint, ¶ 15.)  Six Plaintiffs – this time not including Ms. Gallagher

18  – purport to assert eight claims on behalf of putative plaintiff classes from four

19  different states.

20       Plaintiffs assert that all of Chipotle's "Non-GMO Claims" – which they define

21  to mean "that its food is made with 'only non-GMO ingredients'…" (Complaint,

22  ¶ 40) – are deceptive because Chipotle uses meat and dairy ingredients sourced from

23  animals that may have consumed GMO feed and because Chipotle serves third-party

24  soft drinks that contain GMOs.  (*See id.* at ¶ 41.)  Plaintiffs' allegations of deception

25  are not plausible because Chipotle's website – which, by definition, is among the

26  "Non-GMO Claims" challenged by Plaintiffs – expressly states:

27       The meat and dairy products we buy come from animals that are not

28       genetically modified.  But it is important to note that most animal feed

1    in the U.S. is genetically modified, which means that the meat and

2    dairy served at Chipotle are likely to come from animals given at least

3    some GMO feed. … [¶]  Many of the beverages sold in our

4    restaurants contain genetically modified ingredients, including those

5    containing high fructose corn syrup, which is almost always made

6    from GMO corn.

7    (*Food With Integrity*, *G-M-Over It*, Chipotle, http://chipotle.com/gmo ["GMO

8    Webpage"] [RJN, Exh. 3] [cited at Complaint, ¶¶ 35, 37].)  The reasonable consumer

9    cannot interpret this language to mean either that Chipotle's ingredients are "not

10   sourced from animals that were raised on GMO" (Complaint, ¶¶ 50-55) or that

11   Chipotle does not serve third-party soft drinks containing GMOs.  Therefore,

12   Plaintiffs cannot plausibly allege that Chipotle's "Non-GMO Claims" are either false

13   or deceptive.

14        Moreover, Plaintiffs' claims fail even if the information contained on Chipotle's

15   website were not considered.  The "Non-GMO Claims" quoted and depicted in the

16   Complaint confirm that Chipotle uses the term "non-GMO" only when talking about

17   the ingredients of its food.  (*See id.* at ¶¶ 1, 31, 34-38.)  Thus, when Plaintiffs allege

18   that they understood Chipotle's "Non-GMO Claims" to mean that its ingredients are

19   "not sourced from animals that were raised on GMO" feed (*id.* at ¶¶ 50-55) or that

20   the third-party soft drinks that it offers for sale do not contain GMOs, what Plaintiffs

21   are really saying is that they understood Chipotle's representations regarding the

22   "non-GMO" nature of the "ingredients" of its "food" to extend beyond the

23   ingredients of its food.  It is simply not plausible that the reasonable consumer would

24   interpret Chipotle's "Non-GMO Claims" in this manner.  Chipotle's "Non-GMO

25   Claims" are phrased in everyday language that is readily understood by the

26   reasonable consumer, and the "Non-GMO Claims" quoted and depicted in the

27   Complaint say nothing – one way or the other – about either the nature of the feed

28

consumed by the animals from which Chipotle sources its meat and dairy ingredients or the third-party soft drinks that it offers.

For these reasons, and for others discussed below, Plaintiffs' claims fail.

## II.  PLAINTIFFS' ALLEGATIONS

Plaintiffs contend that Chipotle's "Non-GMO Claims" are reasonably understood by consumers to "mean that Chipotle's menu is 100% free of GMOs" and that they are deceptive because Chipotle serves meat and dairy ingredients sourced from animals that may have consumed GMO feed and because it offers third-party soft drinks that may contain GMOs.  (Complaint, ¶ 2.)

Plaintiffs allege that their theories support the following causes of action: (1) violation of the California Consumer Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.* (the "CLRA"); (2) violation of the California False Advertising Law, Cal. Bus. & Prof. Code § 17500, *et seq.* (the "FAL"); (3) violation of the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.* (the "UCL"); (4) violation of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201, *et seq.* (the "FDUTPA"); (5) violation of the Maryland Consumer Protection Act, MD. Code Ann. § 13-101, *et seq.* (the "MCPA"); (6) violation of New York Gen. Bus. Law § 349, *et seq.* ("section 349"); (7) violation of New York Gen. Bus. Law § 350, *et seq*. ("section 350"); (8) unjust enrichment; (9) misrepresentation; and (10) declaratory relief.

## A.    Chipotle's Representations About Its Use Of "Non-GMO Ingredients."

### 1.    Representations Quoted Or Depicted In The Complaint.

The Complaint quotes or depicts several examples of Chipotle's "Non-GMO Claims," none of which state or imply anything about either the nature of the feed consumed by the animals from which Chipotle sources its meat and dairy ingredients or the third-party soft drinks that it offers.

In a press release – titled "Chipotle Becomes the First National Restaurant Company to Use Only Non-GMO Ingredients" – Chipotle announced that it had

"'achieved its goal of moving to only non-GMO ingredients to make all of the food in its U.S. restaurants.'"  (Complaint, ¶ 31 [quoting Press Release {RJN, Exh. 4}].)  Chipotle explains that "GMOs, or genetically modified organisms, are crops that have had specific changes introduced to their DNA that don't occur naturally, using the science of genetic engineering."  (Press Release [RJN, Exh. 4].)  Chipotle also invites consumers interested in "more information about Chipotle's ingredients and its move to non-GMO foods, [to] visit www.chipotle.com/gmo."  (*Id.*; *see also* GMO Webpage [RJN, Exh. 3].)

In an overhead menu panel displayed in its restaurants, Chipotle talks of "striving to make *our ingredients* better" by replacing GMOs with "non-GMO ingredients" and directs consumers to "CHIPOTLE.COM/GMO."  (Complaint, ¶ 35 [emphases added].)

The restaurant door graphic depicted in the Complaint announces Chipotle's "Farewell To GMOs" with the statement:  "When it comes to *our food*, genetically modified *ingredients* don't make the cut." and directs consumers interested in learning more to "CHIPOTLE.COM/GMO."  (*Id.* at ¶ 37 [emphasis added].)

On another overhead menu panel, around pictures only of ingredients used in food products prepared in its restaurants, Chipotle explains:  "We *prepare our* delicious *ingredients* simply, using classic *cooking* techniques, without added sugar, artificial sweetener, flavors, or colors.  This includes … only non-GMO ingredients."  (*Id.* at ¶¶ 1 & 38 [emphases added].)

"On Twitter, Chipotle announced … :  'We're now making all of the food at our US restaurants with only non-GMO ingredients….'"  (*Id.* at ¶ 34.)[1]

As Plaintiffs admit, another graphic depicted in the Complaint represents that Chipotle's "food is 'made with no-GMO ingredients.'"  (*Id.* at ¶ 36.)

---

[1] It is apparent that the language tweet depicted in paragraph 34 that refers to Chipotle having a "GMO free menu" originated from "BUSINESSINSIDER.COM," not Chipotle.

2.    Representations Not Quoted Or Depicted In The Complaint.

Because the "Non-GMO Claims" challenged by Plaintiffs expressly are "not limited to those set forth in this Complaint" (Complaint, ¶ 40), Chipotle's representations outside the Complaint must also be considered.

On the GMO Webpage that is specifically called out in the Press Release, restaurant door graphic and one of the overhead menu panels relied upon in the Complaint, Chipotle defines "GMO" as an organism "created by inserting genes from one species (typically bacteria or a virus) into the DNA of another."  (GMO Webpage [RJN, Exh. 3].)  Chipotle explains that, "as we have learned more about GMO's, we've decided that using them in *our food* doesn't align with [our] vision."  (*Id.* [emphasis added].)  Accordingly, Chipotle announced that, "[w]hen it comes to *our food*, genetically modified *ingredients* don't make the cut."  (*Id.* [emphasis added]; *see also id.* ["Why did we remove GMOs from *our food*?"; "Which *ingredients* in *Chipotle's food* were previously genetically modified?"] [emphases added].)

On that same webpage, under the heading "What About Beverages and Animal Feed?," Chipotle states:

> The meat and dairy products we buy come from animals that are not genetically modified.  But it is important to note that most animal feed in the U.S. is genetically modified, which means that the meat and dairy served at Chipotle are likely to come from animals given at least some GMO feed.  We are working hard on this challenge, and have made substantial progress:  for example, the 100% grass-fed beef served in many Chipotle restaurants was not fed GMO grain—or any grain, for that matter.  [¶]  Many of the beverages sold in our restaurants contain genetically modified ingredients, including those containing high fructose corn syrup, which is almost always made from GMO corn.

(*Id.*)

**B.      Plaintiffs' Alleged Purchases From Chipotle.**

Plaintiffs allege that, collectively, they purchased from Chipotle during the Class Period differing combinations of food items that included various meat and dairy ingredients, as well as some third-party soft drinks.  (*See* Complaint, ¶¶ 50-55.)

Plaintiffs further allege that, prior to their respective purchases, each of them "was aware of and was exposed to Chipotle's 'Food With Integrity' campaign" and that each of them was "exposed to and relied on Chipotle's media campaign…."  (*Id.*) None of Plaintiffs deny that the "'Food With Integrity' campaign" and the "media campaign" to which each of them was exposed, and on which each of them relied, included Chipotle's website.  Nevertheless, Plaintiffs further allege that each of them interpreted these campaigns "to mean that Chipotle's menu did not contain GMOs and was not sourced from animals that were raised on GMO" feed.  (*Id.*)

### III.  PROCEDURAL HISTORY

Colleen Gallagher filed her Complaint on August 28, 2015 against Chipotle in the captioned *Gallagher v. Chipotle Mexican Grill, Inc.* 15-CV-3952 (HSG).

Chipotle's Motion to Dismiss the Complaint was heard on January 14, 2016. At the hearing, the Court raised concerns regarding Ms. Gallagher's failure to allege what she actually purchased from Chipotle, and the Court and Plaintiffs' counsel agreed that Ms. Gallagher would be afforded leave "to amend to address that issue specifically."  (Hearing Transcript [RJN, Exh. 2], p. 5:21-22; *see also id.* at 8:10-15.) After noting that Plaintiff Gallagher had "pled a definition of 'GMO' means that seems inconsistent with [Chipotle's] ingredients being GMOs," the Court also stated:  "I may well be sending you back on this question of whether you can plead a definition of 'GMO' that encompasses what you're saying…."  (*Id.* at 11:22-23 & 19:13-17.)

On February 5, 2016, the Court issued the Order.  Consistent with the statements made during the hearing, the Court dismissed the Complaint, but granted Ms. Gallagher leave to file an amended complaint only "if she can in good faith

1  plausibly and specifically allege (1) injury-in-fact, and (2) why and how Defendant's

2  GMO Claims are false or misleading."  (Order, p. 7:18-21.)

3       On March 11, 2016, Gallagher and Plaintiffs here filed the FAC, which,

4  beyond attempting to address the deficiencies identified in the Order, added eight

5  new claims and six new Plaintiffs, who purported to represent plaintiff classes in four

6  different states.

7       On March 28, 2016, Plaintiff Gallagher filed a Notice of Voluntary Dismissal

8  and Withdrawal as Named Plaintiff.  [Dkt. #42.]  On April 4, 2016, the Court struck

9  the new plaintiffs and claims as they exceeded the scope of the leave to amend that

10  the Court had granted.  [Dkt. #44.]

11       On April 22, 2016, Plaintiffs filed this action, and the Court issued its Related

12  Case Order on May 2, 2016.  [Dkt. #9.]

13      **IV.  APPLICABLE LEGAL STANDARDS**

14       Under Federal Rule of Civil Procedure 12(f), a court may strike a pleading or

15  any portion of a pleading that is "redundant, immaterial, impertinent, or scandalous."

16       A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the

17  legal sufficiency of the claims alleged in a complaint.  *See Ileto v. Glock, Inc.*, 349

18  F.3d 1191, 1199-1200 (9th Cir. 1995).  A plaintiff must plead "enough facts to state a

19  claim to relief that is plausible on its face."  *Bell Atl Corp. v. Twombly*, 550 U.S. 544,

20  570 (2007).  "The plausibility standard is not akin to a probability requirement, but it

21  asks for more than a sheer possibility that a defendant has acted unlawfully."

22  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Thus, a plaintiff must allege facts

23  sufficient to "raise a right to relief above the speculative level."  *Twombly*, 550 U.S.

24  at 555.  Although all allegations of material fact are taken as true (*see Erickson v.

25  Pardus*, 551 U.S. 89, 93-94 (2007)), conclusory statements not supported by factual

26  allegations may be disregarded.  *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at

27  555.  Likewise, a court need not accept as true allegations contradicted by judicially

28

SMRH:477261132.1

1   noticeable facts.  *See Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152, 1160 (9th Cir.

2   2012) (taking judicial notice of defendant's website and dismissing complaint).

3         Because Plaintiffs' claims are premised on allegedly fraudulent conduct,

4   Rule 9(b) also applies.  *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir.

5   2009).  Rule 9(b) requires a plaintiff to "state with particularity the circumstances

6   constituting fraud," including "the who, what, when, where, and how of the

7   misconduct charged."  *Id.* at 1124.  Allegations of fraud must meet both Rule 9(b)'s

8   particularity requirement and *Iqbal's* plausibility standard.  *See Cafasso v. Gen.*

9   *Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011).

10         A defendant may also move to dismiss an action for lack of subject matter

11   jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1).  If the plaintiff

12   lacks standing under Article III of the U.S. Constitution, then the court lacks subject

13   matter jurisdiction, and the case must be dismissed.  *See Steel Co. v. Citizens for a*

14   *Better Env't*, 523 U.S. 83, 101-102 (1998).

15                 **V.  ARGUMENT**

16   **A.**    **Plaintiffs Fail To State A Claim Under The "Reasonable Consumer" Test.**

17         Claims under the FAL, UCL, CLRA, FDUTPA, MCPA and Sections 349 and

18   350 are all "governed by the 'reasonable consumer' test," which focuses on whether

19   "members of the public are likely to be deceived."  *Williams v. Gerber Prods. Co.*,

20   552 F.3d 934, 938 (9th Cir. 2008); *see also Zlotnick. v. Premier Sales Grp., Inc.*, 480

21   F.3d 1281, 1284 (11th Cir. 2007) (Under the FDUTPA, a plaintiff must allege that

22   there is a "representation, omission, or practice that is likely to mislead the consumer

23   acting reasonably in the circumstances, to the consumer's detriment."); *Luskin's, Inc.*

24   *v. Consumer Protection Div.*, 353 Md. 335, 345-358 (1999) (adopting reasonable

25   consumer standard under the MCPA); *Druyan v. Jagger*, 508 F. Supp. 2d 228, 244

26   (S.D.N.Y. 2007) ("To state a claim for false advertising or deceptive business

27   practices, a plaintiff must allege … that the subject advertisement 'is likely to mislead

28   a reasonable consumer acting reasonably under the circumstances.'").

1    "[T]he reasonable consumer standard requires a probability 'that a significant

2    portion of the general consuming public or of targeted consumers, acting reasonably

3    in the circumstances, could be misled.'"  *Ebner v. Fresh, Inc.*, -- F.3d. --, 2016 WL

4    1056088, *4 (9th Cir. Mar. 17, 2016).  The "reasonable consumer" is not the "least

5    sophisticated consumer" or an "unwary consumer."  *Hill v. Roll Int'l Corp.*, 195 Cal.

6    App. 4th 1295, 1304 (2011); *see also Lavie v. Procter & Gamble Co.*, 105 Cal. App.

7    4th 496, 508 (2003) ("'Likely to deceive' implies more than a mere possibility that

8    the advertisement might conceivably be misunderstood by some few consumers

9    viewing it in an unreasonable manner.")

10    Although "[t]he question of whether a business practice is deceptive in most

11    cases presents a question of fact not amenable to resolution on a motion to dismiss,

12    … dismissal is appropriate … where a Court can conclude as a matter of law that

13    members of the public are not likely to be deceived…."  *Pelayo v. Nestle USA, Inc.*,

14    989 F. Supp. 2d 973, 978 (2013) (finding allegation that claim that pasta products

15    were "All Natural" was misleading to be implausible, and granting motion to dismiss,

16    because "the reasonable consumer is aware that [the pasta products] are not springing

17    fully formed from Ravioli trees and Tortellini bushes").  Accordingly, several courts

18    in this circuit have granted motions to dismiss false advertising claims on the basis of

19    the reasonable consumer standard.  *See*, *e.g.*, *Carrea v. Dreyer's Grand Ice Cream*,

20    475 F. App'x 113, 115 (9th Cir. 2012) (affirming dismissal because "[i]t is

21    implausible that a reasonable consumer would interpret 'Original Sundae Cone,'

22    'Original Vanilla,' and 'Classic,' to imply that [the defendant's product] is more

23    wholesome or nutritious than competing products"); *McKinnis v. Kellogg USA*, 2007

24    WL 4766060, *6 (C.D. Cal. Sept. 19, 2007) (dismissing, without leave to amend,

25    claims based on allegations that consumers were misled into believing that "Froot

26    Loops" cereal contained real fruit).

27    Here, the Court can conclude as a matter of law that members of the public are

28    not likely to be deceived by Chipotle's "Non-GMO Claims."  Plaintiffs allege that the

"Non-GMO Claims" are deceptive because Chipotle prepares its food with meat and dairy ingredients sourced from animals that may have consumed GMO feed and because Chipotle offers third-party soft drinks that contain GMOs.  First, Plaintiff defines "Non-GMO Claims" so broadly that it necessarily include statements made by Chipotle on its website, and no reasonable consumer who has reviewed Chipotle's website could plausibly share Plaintiffs' alleged interpretation of Chipotle's "Non-GMO Claims."  Second, even ignoring Chipotle's website, the reasonable consumer could not plausibly interpret the "Non-GMO Claims" quoted or depicted in the Complaint in the manner alleged by Plaintiffs.

      1.    <u>The Reasonable Consumer Who Read Chipotle's Website Would Not Be Deceived By Chipotle's "Non-GMO Claims."</u>

As this Court has noted, "'[t]he primary evidence in a false advertising case is the advertising itself.'" (RJN, Exh. 1, p. 5; 2016 WL 454083 at *3 [quoting *Brockey v. Moore*, 107 Cal. App. 4th 86, 100 (2003)]; *see also Fink v. Time Warner Cable*, 714 F.3d 739, 742 (2d Cir. 2013) ["The primary evidence in a consumer-fraud case arising out of allegedly false advertising is, of course, the advertising itself."].)  Moreover, as the Second Circuit explained in *Fink*, "in determining whether a reasonable consumer would have been misled by a particular advertisement, context is crucial."  714 F.3d at 742.  For example, "under certain circumstances, the presence of a disclaimer or similar clarifying language may defeat a claim of deception."  *Id.* (citing *Freeman v. Time, Inc.*, 68 F.3d 285, 289-290 (9th Cir. 1995) [upholding dismissal of a challenge to a sweepstakes mailer because it explicitly stated that the plaintiff would win only if he had the winning number]; *Broder v. MBNA Corp.*, 722 N.Y.S.2d 524, 526 (2001) ["[T]here can be no section 349(a) claim when the allegedly deceptive practice was fully disclosed…."]).  In addition, "[a] plaintiff who alleges that he was deceived by an advertisement may not misquote or misleadingly excerpt the language of the advertisement in his pleadings and expect his action to survive a motion to dismiss, or, indeed, to escape admonishment."  *Id.*

1    ("easily conclud[ing] that Plaintiffs' claims lack the facial plausibility necessary to

2    survive a motion to dismiss" where "the allegations of the Complaint are materially

3    inconsistent with the sole advertisement Plaintiffs have submitted").

4         Here, Plaintiffs allege that Chipotle's broadly-defined "Non-GMO Claims"

5    are, as a whole, deceptive because Chipotle's meat and dairy ingredients are sourced

6    from animals that may have consumed GMO feed and because Chipotle offers third-

7    party soft drinks that may contain GMOs.  (*See* Complaint, ¶¶ 42, 43.)

8         This allegation is not plausible because, as Ms. Gallagher had admitted, but as

9    Plaintiffs now disingenuously try to ignore, "Chipotle concedes in disclaimers that

10   some of its soft drinks contain GMOs, and that its meat and dairy supplies come from

11   animals fed with GMO grains."  (Complaint, ¶ 35 [citing GMO Webpage {RJN, Exh.

12   3}])[2]  Indeed, Chipotle's GMO Webpage could not be more clear that "the meat and

13   dairy served at Chipotle are likely to come from animals given at least some GMO

14   feed" or that "[m]any of the beverages sold in [its] restaurants contain genetically

15   modified ingredients, including those containing high fructose corn syrup, which is

16   almost always made from GMO corn."  (GMO Webpage [RJN, Exh. 3].)

17        It is not plausible that a consumer who had reviewed these statements could

18   reasonably interpret Chipotle's "Non-GMO Claims" to mean either that the animals

19   from which its meat and dairy ingredients are sourced had never consumed GMO

20   feed or that the third-party soft drinks that Chipotle offers are necessarily "non-

21   GMO."  *See Ebner*, 2016 WL 1056088, at *5 (holding it was "not plausible" that the

22   reasonable consumer would be deceived as to the amount of lip product in a tube

_____

[2] Because Plaintiffs challenge the representations made on Chipotle's website, their
claims necessarily depend upon Chipotle's website.  Therefore, Plaintiffs cannot
object to the Court's consideration of the website.  *See Knievel v. ESPN*, 393 F.3d
1068, 1079 (9th Cir. 2005) (The Ninth Circuit has "extended the 'incorporation by
reference' doctrine to situations in which the plaintiff's claim depends on the contents
of the document, the defendant attaches the document to its motion to dismiss, and
the parties do not dispute the authenticity of the document, even though the plaintiff
does not explicitly allege the contents of that document in the complaint.").

where the label disclosed the correct weight of the included product.); *Kane v. Chobani, Inc.*, 2013 WL 5289253, at *10 (N.D. Cal. Sept. 19, 2013) ("Because the labels clearly disclose the presence of the [allegedly unnatural ingredients] it is not plausible that Plaintiffs believed … that the [product] did not contain" them.).

While Plaintiffs complain that these details are not set forth in writing inside Chipotle's restaurants (*see* Complaint, ¶ 45), that fact is irrelevant where Plaintiffs are challenging *all* of Chipotle's "Non-GMO Claims" as a whole and in their entirety (Complaint, ¶ 40).

Moreover, the Complaint demonstrates how Chipotle encourages consumers to review this information – one of the overhead menu panels, the restaurant door graphic and the press release quoted or depicted in the Complaint each expressly refer consumers to Chipotle's GMO Webpage. (*Id.* at ¶¶ 35 & 37; Press Release [RJN, Exh. 4].)[3]

The broad scope of Plaintiffs' challenges to all of Chipotle's "Non-GMO Claims" renders the Ninth Circuit's recent reversal of *Balser v. Hain Celestial Group, Inc.*, 2013 WL 6673617 (C.D. Cal. Dec. 18, 2013) irrelevant. *Balser* involved a challenge to a defendant's use of the word "natural" on cosmetic products. Relying on the defendant's website, the district court concluded, "Defendant actively defines what its use of natural means, so that no reasonable consumer could be deceived." *Id.* at *1. On appeal, the Ninth Circuit reversed dismissal, in part by relying on *Williams* to conclude that "product information on a website … cannot override as a matter of law any misimpressions created by the label." *Balser v. Hain Celestial Group, Inc.*, -- Fed. App'x --, 2016 WL 696507, *2 (9th Cir. Feb. 22, 2016) (citing *Williams*, 552 F.3d at 939-940).

The reasoning of the Ninth Circuit in *Williams* and *Balser* has no application here for at least two reasons. First, the Court must consider Chipotle's website

_____

[3] Chipotle's explicit disclosures necessarily defeat any purported concealment theory of liability. (*See* Complaint, ¶¶ 47-49.)

Case No. 3:16-cv-02200-HSG
MOTION TO DISMISS COMPLAINT

because the statements made thereon are among the "Non-GMO Claims" that Plaintiffs challenge as deceptive.  Second, the reasoning that defendants cannot rely upon disclaimers to "cure" otherwise deceptive statements does not apply where, as here, the challenged representations do not create any "misimpressions" in the first place.  In such situations, where another source simply provides additional details regarding a statement that is not otherwise deceptive, it is appropriate for a court to consider that other source.  *See Pelayo*, 989 F. Supp. 2d at 978 ("[T]o the extent there is any ambiguity regarding the definition of 'All Natural' with respect to each of the [challenged products], it is clarified by the detailed information contained in the ingredient list."); *Hariston v. S. Beach Beverage*, 2012 WL 1893818, at *5 (C.D. Cal. May 18, 2012) ("the ingredient list is consistent with the front label statement"); *Rooney v. Cumberland Packing Corp.*, 2012 WL 1512106, *3-5 (S.D. Cal. Apr. 16, 2012) (holding that no reasonable consumer could be deceived by the label "Sugar in the Raw" because the package stated in several places that the sugar was processed); *Viggiano v. Hansen Natural Corp.*, 944 F. Supp. 2d 877, 892 n.38 (C.D. Cal. May 13, 2013) ("In cases where a product's front label is accurate and consistent with the statement of ingredients, courts routinely hold that no reasonable consumer could be misled by the label, because a review of the statement of ingredients makes the composition of the [product] clear."); *Sugawara v. Pepsico, Inc.*, 2009 WL 1439115, at *1 (E.D. Cal. May 21, 2009) ("If the consumer takes the box from the shelf and examines the fine print of the ingredient list, he or she will discover that the only fruit content is a touch of strawberry fruit concentrate, twelfth in order on the ingredient list.").

Because Chipotle explicitly discloses the facts that Plaintiffs allege were misrepresented, no reasonable consumer could be deceived.

SMRH:477261132.1

1        2.      The Reasonable Consumer Would Not Be Deceived By The "Non-GMO

2                Claims" Quoted Or Depicted In The Complaint.

3        Even without looking at the information contained on Chipotle's website, it is

4 not plausible that the reasonable consumer would interpret Chipotle's "Non-GMO

5 Claims" in the manner alleged by Plaintiffs.

6        The Ninth Circuit has stated that "common sense" should be used to resolve

7 false advertising cases at the pleading stage.  *See Ebner*, 2016 WL 1056088, at *2

8 ("Determining whether a complaint states a plausible claim for relief is 'a context-

9 specific task that requires the reviewing court to draw on its judicial experience and

10 common sense.'") (quoting *Iqbal*, 556 U.S. at 679); *Carrea*, 475 F. App'x 113 at

11 *115 (dismissing false advertising complaint where theory of liability "strain[ed]

12 credulity"); *Stuart v. Cadbury Adams USA, LLC*, 458 F. App'x 689, 690-691 (9th

13 Cir. 2011) (affirming district court's conclusion that plaintiff's claims "defy common

14 sense").  Accordingly, district courts routinely dismiss false advertising claims

15 pursuant to Rule 12(b)(6).  *See Manchouck v. Mondelez Int'l, Inc.*, 2013 WL

16 5400285, at *2 (N.D. Cal. Sept. 26, 2013) ("Plaintiff has not plausibly alleged why

17 the statement 'made with real fruit' would not include mechanically separated fruit

18 puree."); *Videtto v. Kellogg USA*, 2009 WL 1439086, at *1-3 (E.D. Cal. May 21,

19 2009) (dismissing, without leave to amend, CLRA, FAL and UCL claims based on

20 allegations that consumers were misled by images of fruits into believing that "Froot

21 Loops" cereal contained "real, nutritious fruit"); *McKinnis v. Sunny Delight

22 Beverages Co.*, 2007 WL 4766525, at *4 (C.D. Cal. Sept. 4, 2007) ("no reasonable

23 consumer, upon review of the label as a whole … would conclude Defendant's

24 products contain significant quantities of fruit or fruit juice").

25        Here, Plaintiffs have not proffered a single representation by Chipotle that its

26 "Non-GMO Claims" extend to either the feed consumed by the animals from which it

27 sources its meat and dairy ingredients or the third-party soft drinks that it offers.

28

To the contrary, the representations quoted or depicted in the Complaint convey to the reasonable consumer that Chipotle's "Non-GMO Claims" apply only to the *ingredients* of the *food* prepared by it in its restaurants:

- In the title of the press release – "Chipotle Becomes the First National Restaurant Company to Use Only Non-GMO Ingredients" – through which it announced its move to only "non-GMO ingredients," Chipotle used the term "non-GMO" to qualify only the word "ingredients." (Complaint, ¶ 31; RJN, Exh. 4.) Likewise, in the first sentence of that press release, Chipotle announces that it had "achieved its goal of moving to only non-GMO ingredients to make all of the food in its U.S. restaurants…." (*Id.*) Nothing in either statement – or in any of the other statements made in the press release – suggests that Chipotle's "non-GMO" representation extends to anything other than the "ingredients" of its "food."

- On Twitter, Chipotle announced:  "We're now making all of the food at our US restaurants with only non-GMO ingredients." (Complaint, ¶ 34.)

- One of the overheard menu panels depicted in the Complaint contains pictures only of ingredients used in food products Chipotle prepares in its restaurants and explains:  "We *prepare our* delicious *ingredients* simply, using classic *cooking* techniques, without added sugar, artificial sweetener, flavors, or colors.  This includes … only non-GMO ingredients." (*Id.* at ¶¶ 1 & 38 [emphases added].)  No reasonable consumer would interpret this representation to extend beyond the "ingredients" of the food "prepared" or "cooked" at Chipotle.

- In another overhead menu panel, Chipotle talks of "striving to make *our ingredients* better" by replacing GMOs with "non-GMO ingredients." (*Id.* at ¶ 35 [emphasis added].)

- The "Farewell To GMOs" announcement affixed to Chipotle's restaurant doors explains that GMOs "don't make the cut" "[w]hen it comes to *our food."* (*Id.* at ¶ 37 [emphasis added].)

These examples demonstrate that Chipotle is careful and specific about what it says to consumers and that its use of the term "non-GMO" is consistently limited to the "ingredients" of *its* "food." None of these statements – all of which are written in simple, everyday language – says anything about either the nature of the feed consumed by the animals from which Chipotle sources its meat and dairy ingredients or the third-party soft drinks that it offers. Therefore, it would not be reasonable for a consumer to read into these representations statements that are not there.

This straightforward interpretation of Chipotle's "Non-GMO Claims" is supported by each of the domestic GMO labeling laws that have been enacted to date. Vermont passed a law (currently set to become effective July 1, 2016) requiring foods containing GMOs above a certain threshold amount to be labeled as GMO. One of the exemptions from that labeling obligation is for "[f]oods consisting entirely of or derived entirely from an animal that is itself not produced with genetic engineering, regardless of whether the animal has been fed or injected with any food, drug, or other substance produced with genetic engineering." Vt. CP 121.03(a)(i). Connecticut and Maine have followed suit. 2013 Conn. Legis. Serv. P.A. 13-183 (H.B. 6527); 22 MRSA §§2591-2596.

Some of the literature relied upon by Plaintiffs further supports the conclusion that meat and dairy products sourced from non-GMO animals that merely consume GMO feed should not be regarded as GMOs. (*See Genetically Modified Organism (GMO) Use in the Chicken Industry* [RJN, Exh. 5] [cited at Complaint, ¶ 28, fn. 7] [explaining that, despite the fact that "almost all corn and soybean used in conventional livestock and poultry feed is genetically modified … chickens and chicken meat are not genetically modified."]; Ryan Beville, *How Pervasive are GMOs in Animal Feed?*, GMO Insider Blog (July 16, 2013) (RJN, Exh. 6, cited at

-16-

Complaint, ¶ 28, fn. 8) ("[M]any countries that have food labeling laws do not have labeling requirements for animal feed, or for animal products produced from animals fed GMO crops.")

> 3.   <u>Plaintiffs' Allegations Regarding Consumers' Purported Understanding Of Terms And Representations Other Than Chipotle's "Non-GMO Claims" Are Irrelevant.</u>

Implicitly recognizing that no reasonable consumer could be deceived by Chipotle's "Non-GMO Claims" as they actually appear in context, Plaintiffs attempt to cobble together an interpretation of those representations by ignoring, misstating and misleadingly truncating Chipotle's actual "Non-GMO Claims."

To state a claim for deceptive advertising, Plaintiffs must proffer an objective or plausible definition of the challenged term.  *See Pelayo*, 989 F. Supp. 2d at 978.

In *Pelayo*, a consumer alleged that labeling that packaged pasta products were "all natural" was false and deceptive because the products contained ingredients that were unnatural, artificial or synthetic.  The district court held that the plaintiff had not shown "how the term 'All Natural' could be deceptive to a consumer acting reasonably under the circumstances," in part, because she "failed to allege either a plausible objective definition of the term 'All Natural' or her subjective definition of the term 'All Natural' that is shared by the reasonable consumer."  *Id.* at 980.

Here, Plaintiffs do not attempt to proffer a plausible definition of Chipotle's "Non-GMO Claims," in which, as the Complaint demonstrates, Chipotle consistently limits its use of the term "non-GMO" to the "ingredients" of *its* "food."  Rather, Plaintiffs devote several pages at the beginning of the Complaint to analyzing terms that Chipotle does not use and representations that it does not make.

While admitting that "the abbreviated term 'GMO' may generally refer to genetically modified organisms," Plaintiffs nevertheless contend that, "when used in food marketing and labeling, terms like 'non-GMO' and 'GMO free' … have a broader meaning to consumers in that they convey food products do not contain and

are not sourced or derived from genetically engineered foods and methods, such as genetically engineered corn that ends up in corn syrup and beef from a cow that was raised on a diet of genetically engineered or modified food."  (Complaint, ¶ 19.)

This allegation alone is problematic in at least two respects.  First, the Court has already questioned the plausibility of Plaintiffs' position that "GMO" can mean "any organism whose genetic material has been altered using … genetic engineering techniques" but that the term "non-GMO" can take on an inconsistent and broader meaning in the limited context of food marketing and labeling.  (*See* RJN, Exh. 1, p. 6; 2016 WL 454083, *4.)[4]  Second, even if Plaintiffs' interpretation were plausible, they have not cited the Court to a single instance of Chipotle using the terms "non-GMO" or "GMO free" in isolation.

Undeterred in their misguided analysis, Plaintiffs devote a number of paragraphs of their Complaint to alleging how consumers and others purportedly interpret the terms "GMO," "non-GMO" and "GMO free" when they are considered in a vacuum.  (*See* Complaint, ¶¶ 19-23.)  Chipotle has its doubts regarding whether the reasonable consumer actually espouses the interpretations discussed by Plaintiffs.[5]  However, even setting those concerns aside, the fundamental flaw with Plaintiffs' allegations is that they are irrelevant to an analysis of Chipotle's "Non-GMO Claims" because Chipotle does not use the term "non-GMO" in isolation.  As reflected in the Complaint, Chipotle's use of the term "non-GMO" is consistently

---

[4] Indeed, as the Court has recognized, and as Plaintiff Gallagher has previously admitted, the term "organic" better describes "non-GMO meat and dairy products sourced from animals that did not consume genetically modified feed."  (Order, p. 7 [citing *Gallagher* Complaint, ¶ 38 {"Chipotle could use only meat and dairy products certified 'Organic,' which is labeled on products that come from animals *not* fed with genetically modified crops."}].)

[5] Notably, despite alleging that "consumers readily and understandably associate 'non-GMO' marketing and similar terms with definitions set by the Non-GMO Project" (Complaint, ¶ 20), none of Plaintiffs allege that they were aware of, or relied upon, Non-GMO Project definitions at the time of their respective purchases from Chipotle.  (*See id.* at ¶¶ 50-55.)

-18-

1   limited to the "ingredients" of *its* "food."  Therefore, even if it were plausible that,

2   when used in a vacuum, the term "non-GMO" could be reasonably interpreted to

3   extend to the nature of the feed consumed by animals from which meat and dairy

4   ingredients are sourced, that fact is irrelevant where, as here, the term "non-GMO" is

5   not used in a vacuum.

6          Similarly, Plaintiffs discuss in their Complaint consumer research regarding

7   hypothetical representations that Chipotle does not make.  (*See id.* at ¶¶ 24-25.)

8   Specifically, Plaintiffs rely upon a consumer survey, apparently conducted on their

9   behalves, asking consumers about their expectations if faced with a representation

10  that a restaurant sells "food that does not contain GMOs."  (*Id.* at ¶ 25.)  Plaintiffs

11  also point to a poll of Ohio voters asking about their expectations in response to "a

12  dairy product labeled as 'non-GMO'…."  (*Id.* at ¶ 24.)  This research is meaningless

13  in the context of this lawsuit because none of the questions posed to the consumers in

14  the surveys mirrors Chipotle's "Non-GMO Claims."  Specifically, Plaintiffs have not

15  identified a single representation by Chipotle regarding what its food "contains" or

16  using the term "non-GMO" in isolation.

17         Given the disconnect between Plaintiffs' allegations and Chipotle's actual

18  "Non-GMO Claims," Plaintiffs' conclusion that "consumers reasonably understand

19  food advertised or labeled as 'non-GMO,' 'GMO free,' 'does not contain GMOs,' or

20  other similar claims only apply to food" that does not contain animal products that

21  have a diet of GMO feed is irrelevant.

22         Because Plaintiffs have not proffered a plausible definition of the "Non-GMO

23  Claims" that they are challenging, they have failed to state a claim for deceptive

24  advertising.

25  **B.     Plaintiffs Fail To State A Claim For Misrepresentation.**

26         Plaintiffs assert claims for intentional misrepresentation and negligent

27  misrepresentation, both predicated exclusively upon alleged omissions.  (*See*

28  Complaint, ¶¶ 139-142.)

SMRH:477261132.1

1    Plaintiffs' misrepresentation claims fail because an affirmative

2  misrepresentation is an essential element of each claim.  *See Conte v. Wyeth, Inc.*,

3  168 Cal. App. 4th 89, 101 n.7 (2008) ("intentional misrepresentation requires an

4  assertion of fact by one not believing it to be true"); *Apollo Capital Fund, LLC v.*

5  *Roth Capital Partners, LLC*, 158 Cal. App. 4th 226, 243 (2007) (To state a claim for

6  negligent misrepresentation, "a positive assertion is required; an omission or an

7  implied assertion or representation is not sufficient.").

8    Another essential element of Plaintiffs' misrepresentation claims is that the

9  defendant must have made a false statement.  *See Service by Medallion, Inc. v.*

10  *Clorox Co.*, 44 Cal. App. 4th 1807, 1816 (1996) (The tort of intentional

11  misrepresentation requires "a knowingly false representation by the defendant.");

12  *Diediker v. Peelle Fin. Corp.*, 60 Cal. App. 4th 288, 297 (1997) ("Where the

13  defendant makes false statements, honestly believing that they are true, but without

14  reasonable ground for such belief, he may be liable for negligent misrepresentation, a

15  form of deceit.").  For the reasons set forth above, Chipotle's "Non-GMO Claims"

16  are not false.  Indeed, Plaintiffs do not allege that they are literally false.

17  **C.    Plaintiffs Lack Standing To Pursue Injunctive Relief.**

18    Despite acknowledging (*see* Complaint, ¶ 78 fn. 20) that the Court already

19  determined that it was "entirely implausible" that Plaintiff Gallagher "risks being

20  harmed by Defendant's alleged misrepresentations again" and, therefore, "does not

21  have standing to seek injunctive relief" (RJN, Exh.1, p. 4; 2016 WL 454083 at *3),

22  Plaintiffs have prayed for injunctive relief.  (*See* Complaint, Prayer for Relief, ¶ C.)

23    Plaintiffs lack standing to pursue injunctive relief.  "To have standing to seek

24  prospective injunctive relief under Article III of the United States Constitution, a

25  plaintiff must 'demonstrate a real and immediate threat of repeated injury in the

26  future.'"  (RJN, Exh.1, p. 4; 2016 WL 454083 at *3 [quoting *Chapman v. Pier 1*

27  *Imports (U.S.), Inc.*, 631 F. 3d 939, 946 (9th Cir. 2011)].)  "In false advertising cases,

28  'where a plaintiff has no intention of purchasing the product in the future, a majority

of district courts have held that the plaintiff has no standing to seek prospective injunctive relief, and some have also held that a plaintiff who is aware of allegedly misleading advertising has no standing to seek prospective injunctive relief.'" (*Id.* at 4-5 [quoting *Davidson v. Kimberly-Clark Corp.*, 2014 WL 7247398, *4 (N.D. Cal. Dec. 19, 2014)].)

Plaintiffs do not allege that they intend to purchase products from Chipotle again in the future. To the contrary, Plaintiffs allege that they "would not have purchased Chipotle's menu items at the price [they] had paid, or purchased it at all, had [they] known that Chipotle's non-GMO and GMO free representations made were materially deceptive and misleading." (Complaint, ¶¶ 50-55.) Thus, "[i]t is entirely implausible that Plaintiff[s] risk[] being harmed by Defendant's alleged misrepresentations again." (RJN, Exh.1, p. 5; 2016 WL 454083 at *3 [citing *Gershman v. Bayer HealthCare, LLC*, 2015 WL 2170214, *8 (N.D. Cal. May 8, 2015)].) Therefore, Plaintiffs have "not alleged 'a real and immediate threat' of future injury and do[] not have standing to seek injunctive relief." (*Id.*)

## D.     Plaintiffs Fail To State A Claim For Unjust Enrichment And Declaratory Relief.

Plaintiffs fail to state a claim for unjust enrichment against Chipotle because unjust enrichment is not a recognized cause of action. Specifically, "[t]he phrase 'unjust enrichment' does not describe a theory of recovery, but an effect: the result of a failure to make restitution under circumstances where it is equitable to do so." *Lauriedale Assoc., Ltd. v. Wilson*, 7 Cal. App. 4th 1439, 1448 (1992); *accord McKell v. Washington Mut., Inc.*, 142 Cal. App. 4th 1457, 1490 (2006); *see also Hill v. Roll Int'l Corp*, 195 Cal. App. 4th 1295, 1307 (2011) (affirming sustaining of demurrer to unjust enrichment cause of action).

Plaintiffs also fail to state a claim for declaratory relief against Chipotle because, for the several reasons set forth above, they have not alleged an actual controversy between the parties. *See* 28 U.S.C. § 2201(a).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## VI.  CONCLUSION

For the foregoing reasons, Chipotle respectfully requests that the Complaint be dismissed, with prejudice.


Dated:  May 17, 2016

MESSNER REEVES, LLP
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP


By _____/s/ Sascha Henry_____
SASCHA HENRY

Attorneys for Defendant
CHIPOTLE MEXICAN GRILL, INC.

SMRH:477261132.1