UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARTIN SCHNEIDER, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>CHIPOTLE MEXICAN GRILL, INC.,<br><br>Defendant. | Case No. 16-cv-02200-HSG (KAW)<br><br>**ORDER REGARDING JOINT DISCOVERY LETTERS**<br><br>Re: Dkt. Nos. 60, 61 |

On April 22, 2016, Plaintiffs Martin Schneider, Sarah Deigert, Laurie Reese, Theresa Gamage, Tiffanie Zangwill, and Nadia Parikka filed the instant putative class action against Defendant Chipotle Mexican Grill, Inc. (Compl., Dkt. No. 1.) Plaintiffs allege that Defendant violated California, Maryland, Florida, and New York consumer protection laws when it began advertising that its foods were free of genetically modified organisms ("GMOs") in April 2015. (Compl. ¶¶ 1-2.)

Currently pending before the Court are the parties' joint discovery letters, Dkt. Nos. 60 and 61. The Court deems the matter suitable for disposition without hearing pursuant to Civil Local Rule 7-1(b). Having reviewed the papers filed by the parties and the relevant legal authority, the Court resolves the parties' discovery disputes as set forth below.

**I.   BACKGROUND**

On April 27, 2015, Defendant began its advertising campaign, "G-M-Over It." (Compl. ¶ 1.) In this campaign, Defendant represented that it was becoming the first fast food chain in the United States to have a "GMO free menu that uses 'only non-GMO ingredients.'" (*Id.*) Defendant produced ads stating, for example, that "'all' of [Defendant's] food is now non-GMO," and that its foods have "No GMO" and were "made with no-GMO ingredients." (Compl. ¶¶ 35-36.)

Defendant also advertised on its store fronts, stating "A Farewell to GMOs" and that "When it comes to our food, genetically modified ingredients don't make the cut;" similarly, Defendant's in-store signs stated: "Only non-GMO ingredients."  (Compl. ¶¶ 37-38.)

Plaintiffs allege that this campaign is misleading because Defendant: "(1) serves protein products such as beef, chicken, and pork from poultry and livestock that have been raised on GMO feed; (2) serves dairy products such as cheese and sour cream derived from cows raised on GMO feed; and (3) sells beverages such as Coca-Cola and Sprite that are loaded with corn-syrup derived from GMO corn."  (Compl. ¶ 2; *see also* Compl. ¶¶ 41-43.)  Plaintiffs now seek to represent four classes, made up of "All persons residing in California[, Maryland, Florida, and New York], during the period April 27, 2015 to the present, who purchased and/or paid for Chipotle Food Products."[1]  (Compl. ¶¶ 56-59.)

On November 30, 2016, the case was assigned to the undersigned for discovery purposes.  (Dkt. No. 39.)  The parties have now submitted two joint discovery letters.  (Dkt. Nos. 60, 61.)

## II.   LEGAL STANDARD

Rule 26(b)(1)  permits discovery of "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  Fed. R. Civ. P. 26(b)(1).  The "[i]nformation within this scope of discovery need not be admissible in evidence to be discoverable."  *Id.*

Rule 34(a) provides:

> A party may serve on any other party a request within the scope of Rule 26(b):
>   (1) to produce and permit the requesting party or its representative to inspect, copy, test, or sample the following items in the responding party's possession, custody, or control:
>     (A) any designated documents or electronically stored information-- including writings, drawings, graphs, charts, photographs, sound recordings,

---

[1] "Food Products" refers to Defendant's "Meat Products, Dairy Products, and/or Soft Drinks."  (Compl. at 23 n.19.)

2

images, and other data or data compilations--stored in any medium from which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form; or
(B) any designated tangible things[.]

Fed. R. Civ. P. 34(a).

All discovery is subject to the limitations imposed by Rule 26(b)(2)(C), which requires the court to limit discovery upon a finding (1) that the discovery sought is unreasonably cumulative or duplicative, or can be obtained from other source that is more convenient, less burdensome, or less expensive, (2) that the party seeking discovery has had ample opportunity to obtain the information sought, or (3) that the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.  Fed. R. Civ. P. 26(b)(2)(C).

### III. DISCUSSION

#### A. First Joint Discovery Letter (Dkt. No. 60)

The parties' first joint letter concerns Plaintiffs' requests for production.

##### i. Request No. 1 (Documents Produced in *Reilly v. Chipotle Mexican Grill, Inc.*)

First, Plaintiffs request information produced by Chipotle in a prior lawsuit. (Dkt. No. 60 at 1.) The specific request at issue states:

> **Request for Production No. 1:** All Documents produced by Chipotle in the lawsuit entitled *Reilly v. Chipotle Mexican Grill, Inc.*, No. 15-23425-Civ-COOKE/TORRES (S.D. Fla.).

(Dkt. No. 60, Exh. A at 9.)  Like the instant litigation, *Reilly* alleges that Defendant misrepresented "to consumers that its food products contain only non-GMO ingredients," when in fact "Chipotle's meat products come from animals that feed on GMOs, including corn and soy. Additionally, Chipotle serves its meals with sour cream and cheese that come from dairy farms that feed the animals GMOs." (*Reilly v. Chipotle Mexican Grill, Inc.*, Case 1:15-cv-23425-MGC, Dkt. No. 1 ("Reilly Compl.") ¶ 2.)  Both the instant suit and *Reilly* assert that Defendant's non-GMO advertisements violated Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201-501.213.  (Reilly Compl. ¶¶ 24, 35; Compl. ¶¶ 98-101.)  Both suits also brought a claim

3

for unjust enrichment based on Defendant receiving money as a result of its non-GMO advertising. (Reilly Compl. ¶ 41; Compl. ¶¶ 132-133.) *Reilly*, however, sought to certify a class made up only of individuals who purchased Defendant's food products in Florida (rather than in California, Maryland, New York, and Florida), and had an expanded class period starting from September 10, 2011. (Reilly Compl. ¶ 1.)

Defendant objected to Request No. 1 as overbroad and seeking irrelevant information. (Dkt. No. 60, Exh. A at 9.) It also objected to Request No. 1 to the extent it sought information that was subject to a protective order, confidential, or proprietary. (*Id.* at 10.) Finally, Defendant objected that Request No. 1 was vague and ambiguous because it "d[id] not adequately describe the documents requested." (*Id.*) Defendant produced no documents in response, stating that it had already produced responsive and relevant documents not subject to a protective order with its initial disclosures. (*Id.*)

In the joint discovery letter, Defendant does not challenge Request No. 1 on the basis that it is seeking information that is subject to a protective order, confidential, or proprietary. Instead, Defendant primarily argues that the Request is overbroad because it seeks all information produced in the *Reilly* lawsuit, regardless of relevance. (Dkt. No. 60 at 2-3.) In support, Defendant relies on cases in which federal courts rejected "cloned" discovery requests, *i.e.*, requests seeking production of "all documents produced or received during other litigation or investigations . . . ." *Midwest Gas Servs., Inc. v. Ind. Gas Co.*, No. IP99-0690-C-Y/G, 2000 WL 760700, at *1 (S.D. Ind. Mar. 7, 2000). Those cases, however, made clear that the reason for rejecting such discovery requests was because the cases involved *different* facts or claims. For example, in *Oklahoma ex rel. Edmondson v. Tyson Foods, Inc.*, the plaintiff sought to compel production of all documents and materials produced "in a similar poultry waste pollution lawsuit previously brought in this Court." No. 05-CV-329-TCK-SAJ, 2006 WL 2862216, at *1 (N.D. Okla. Oct. 4, 2006) (internal quotation omitted). In denying the motion to compel, the district court acknowledged that there were similarities between the prior and pending cases, as both cases involved governmental agencies suing poultry integrators, the alleged impairment of use of Oklahoma waters, pollution of a watershed, and similar legal arguments and claims. *Id.* The

4

1  district court, however, concluded that these "similarities are not enough to require a *carte blanche*
2  production of all documents from the [prior] lawsuit" because "[t]he two lawsuits involve *two*
3  *separate watersheds*, different water bodies, and different poultry farms located on separate
4  watersheds." *Id.*  Given the difference in the watersheds, and the plaintiff's failure to provide an
5  "explanation for seeking the depositions and documents in an action which dealt with a different
6  watershed and different water bodies," the court concluded that the relevancy of the requested
7  documents was not readily apparent. *Id.*

8  Similarly, the other cases cited by Defendant all involved pending and prior lawsuits that
9  were factually and legally distinct. *Chen v. Ampco System Parking* concerned a request for
10 documents produced in state court cases that involved longer time periods, broader claims,
11 employees not at issue in the federal case, and different statutes. No. 08-cv-422-BEN (JMA),
12 2009 WL 2496729, at *2 (S.D. Cal. Aug. 14, 2009).  Similarly, *Capital Ventures International v.*
13 *J.P. Morgan Mortgage Acquisition Corp.* involved a request for documents produced in all other
14 lawsuits and prior investigations, regardless of whether those other lawsuits and prior
15 investigations concerned different claims and defenses, securitizations and loans, time frames,
16 loan originators, and representations in the offering documents. No. 12-10085-RWZ, 2014 WL
17 1431124, at *1-2 (D. Mass. Apr. 14, 2014).  *Midwest Gas Services, Inc.* likewise concerned a
18 request for all documents ever received or produced to the United States Department of Justice,
19 where there was no showing that the documents were relevant or related to the pending case.  2000
20 WL 760700, at *1.  Finally, in *In re eBay Seller Antitrust Litigation*, the court specifically found
21 that the prior and pending cases were not collateral because the prior case involved antitrust
22 violations while the pending suit involved violations of usury laws and consumer protection
23 statutes, such that "[t]here is little or no overlap of issues").  *In re eBay Seller Antitrust Litig.*, No.
24 C07-1882 JF (HRL), 2010 WL 2836815, at *3 (N.D. Cal. July 19, 2010).  In short, each of the
25 cases cited by Defendant involved requests for documents from a prior case that was factually and
26 legally distinct from the pending case.

27 In contrast, here the instant lawsuit and *Reilly* have significant factual and legal overlap,
28 with both suits asserting claims under the same Florida statute based on Defendant's non-GMO

5

advertising, in some instances citing the same advertisements. (*Reilly* Compl. ¶¶ 3, 14; Compl. ¶¶ 35-36, 98-99.) Both lawsuits challenge the veracity of the non-GMO advertising based on Defendant's use of meat products from animals who feed on GMOs, as well as the use of sour cream and cheese from dairy farms that use GMO feed. (*Reilly* Compl. ¶ 2; Compl. ¶ 2.) In short, the *Reilly* suit and the instant suit involve the same legal claims based on the same facts, *i.e.* that Defendant violated Florida's Deceptive and Unfair Trade Practices Act because it advertised its products as being non-GMO despite using meat and dairy products from animals who feed on GMOs.

Defendant argues that the cases are distinguishable because it involves "a distinct class of plaintiffs, whose alleged claims arose during a distinct class period, and under a distinct combination of state statutory and common law." (Dkt. No. 60 at 2.) Defendant does not explain why the combination of state statutory and common law are distinct, as both cases involve the same Deceptive and Unfair Trade Practices Act and unjust enrichment claims as to the Florida class.[2] Defendant is correct, however, that *Reilly* involved a longer class period, as it sought to certify a class from September 10, 2011 on, whereas the instant case seeks to certify a class from only April 27, 2015 on, when the "GM-Over-It" campaign began. (*See* Reilly Compl. ¶ 1; Compl. ¶ 58.) Thus, in that limited respect, the *Reilly* case is broader than the instant case, and may involve documents that are not relevant on their face here.

Given the similarities in the *Reilly* and instant case, as well as the different class period, the Court concludes that Plaintiffs are entitled to the documents produced by Defendant in the *Reilly* case, except as to documents that are related only to the *Reilly* claims prior to the April 27, 2015 "GM-Over-It" campaign.[3] Thus, for example, Defendant would not need to produce documents related to advertising efforts completely unrelated to the April 27, 2015 "GM-Over-It" campaign,

---

[2] To the extent that Defendant is arguing that the instant case is broader than the *Reilly* case because it involves more plaintiffs and other state laws, this does not go to the relevance of documents produced in *Reilly*. While the instant case may involve more claims, it would still encompass the claims being brought in *Reilly*.

[3] Notably, it is not clear what pre-"GM-Over-It" advertisements the *Reilly* case was challenging, as the only examples provided in the complaint were part of the "GM-Over-It" campaign. (*Reilly* Compl. ¶ 14.)

although Defendant would need to produce documents related to the April 27, 2015 "GM-Over-It" campaign, even if those documents were created prior to April 27, 2015.  The Court further finds, however, that Defendant is not required to produce transcripts of Defendant's deponents from the *Reilly* case because such transcripts are not encompassed by the Request; the Request seeks documents produced by Defendant, whereas transcripts that were *created* during the litigation based on the production of witnesses by Defendant fall outside of Request No. 1.

### ii. Request Nos. 17 and 18 (Investigations Related to Accuracy of the Non-GMO Claims)

Second, Plaintiffs request information concerning Defendant's investigation or attempts to investigate the accuracy and/or truthfulness of its non-GMO advertising.  The specific requests at issue state:

> **Request for Production No. 17:** All Documents concerning Your investigation or attempt to investigate the accuracy and/or truthfulness of Your Non-GMO Claims, including but not limited to any testing, inspections, audits, and/or meetings with any third-party entity.
>
> **Request for Production No. 18:** All Documents supporting Your statement that Your Food Products are made with "only non-GMO ingredients" including, but not limited to, testing, reports, recipes, and academic or scientific studies.

(Dkt. No. 61, Exh. A at 23.)

Defendant objected to Requests No. 17 and 18 as vague and ambiguous because they did not adequately describe the documents requested, and because they were overbroad and requested non-relevant documents.  (*Id.*)  It also objected to the extent the Requests sought production of confidential or proprietary information.[4]  (*Id.*)

First, the parties dispute whether Plaintiffs' Requests seek relevant information.  Plaintiff argues that the Requests seek relevant information because it goes to the "extent Defendant knew that its marketing would be misleading to reasonable consumers and how it developed a common plan to employ that marketing scheme . . . ."  (Dkt. No. 61 at 4.)  Defendant in turn contends that the Requests only ask for information related to Defendant's investigations or attempts to

---

[4] Defendant does not raise the confidential and proprietary objections in the joint discovery letter. (Dkt. No. 60 at 5.)

7

investigate the accuracy and/or truthfulness of its non-GMO claims, as well as documents supporting Defendant's statement that its food products are made only with non-GMO ingredients. (*Id.* at 5.) Documents concerning Defendant's investigation of the truthfulness of its non-GMO claims and supporting Defendant's statements regarding its food products only being made with non-GMO ingredients, however, goes directly to Defendant's knowledge about whether its Non-GMO advertising would be misleading, as Plaintiff alleges. Thus, the Court finds that such information is relevant.

Similarly, the parties dispute whether Plaintiffs' Requests are proper, given that Defendant has admitted that its meat and dairy products are derived from animals that may consume GMO feed, and that the soft drinks sold in its stores may contain GMO ingredients. (Dkt. No. 61 at 5.) Defendant argues that in light of this admission, Plaintiffs' Requests seek irrelevant information because the information sought concerns Defendant's knowledge, not the consumers' knowledge. (*Id.*) As Plaintiffs point out, however, such information is still relevant to Plaintiffs' claims even with Defendant's admission; for example, Plaintiffs' damages under New York consumer protection law can be trebled when there is proof of scienter. (*Id.* at 4.)

Next, Defendant argues that under California law, only prosecuting authorities may demand substantiation of an entity's advertising claims, not private plaintiffs. (*Id.* at 5.) Defendant relies, however, on a case that concerns the burden of proof, namely who is required to prove that advertising claims are false or misleading at trial. *Nat'l Council Against Health Fraud, Inc. v. King Bio Pharm., Inc.*, 107 Cal. App. 4th 1336, 1340 (2003). In *National Council*, judgment in favor of the defendant was entered after the close of the plaintiff's case-in-chief at trial; on appeal, the plaintiff admitted that the trial court correctly applied the law, but that the law itself should be changed so that the defendant had the burden of proof in a false advertising action. *Id.* The Court of Appeal rejected this argument, concluding that the plaintiff had the burden of producing evidence that the challenged advertising claims were false or misleading. *Id.* at 1344. This holding, however, was in the context of who had the burden of producing evidence at *trial*; it did not affect a defendant's obligations to produce documents during *discovery*. The Court therefore finds that *National Council* does not prevent Plaintiff from seeking documents

8

substantiating an entity's advertising claims.

Finally, Defendant argues that the Requests are "vague and overbroad because they do not describe the category of items to be produced with reasonable particularity, as required by Fed. R. Civ. P. 34(b)(1)(A)." (Dkt. No. 60 at 5.) "The test for reasonable particularity is whether the request places a party upon reasonable notice of what is called for and what is not." *Mailhoit v. Home Depot U.S.A., Inc.*, 285 F.R.D. 566, 570 (C.D. Cal. 2012) (internal quotation omitted). Defendant does not explain, however, why the Requests are not reasonably specific when they seek all documents related to specified subjects. While Defendant points to Plaintiff's request for "internal communications" as showing that Plaintiff's Requests do not sufficiently describe the items to be produced with reasonable particularity, "internal communications" are a type of document, and therefore encompassed by the request for "all documents." Defendant cites no authority that requires parties to identify every category of document they seek in a discovery request, and the Court declines to impose such a requirement.

The Court, therefore, ORDERS Defendant to respond to Requests for Production Nos. 17 and 18.

**B.   Second Joint Discovery Letter (Dkt. No. 61)**

The parties' second joint letter concerns Plaintiff's response to Defendant's requests for production, specifically Plaintiffs' General Objection 15. (Dkt. No. 61 at 1.) In this objection, Plaintiffs state:

> Plaintiff objects to the extent the Requests do not specify a time period on the grounds that those Requests are overbroad, unduly burdensome, oppressive, beyond the proper scope of discovery, and seeks documents that are neither relevant to the subject matter of the action nor likely to lead to the discovery of admissible evidence. Unless otherwise specified, the relevant time period is April 1, 2015 through the present.

(Dkt. No. 61, Exh. A at 3.)

In its final compromise, Plaintiffs proposed that the relevant time period would be from January 1, 2012 through the present. (Dkt. No. 61 at 4.) This time period would also be "with the understanding that Plaintiffs would supplement their productions if [Defendant] learned of relevant documents outside the agreed-upon time period during Plaintiffs' depositions." (*Id.* at 2.)

9

1   Defendant indicated that it would "be amenable to such a suggestion, provided that [Defendant]
2   would be able to re-open, if necessary, Plaintiffs' depositions to address any later-discovered
3   documents." (*Id.*) Plaintiffs refused. (*Id.*)

4   The Court agrees with Defendant that the Requests should not be limited to April 1, 2015,
5   as "documents evidencing Plaintiffs' understanding of 'non-GMO' and purchases prior to the class
6   period are pertinent to Plaintiffs' understanding of, and reliance on, [Defendant's] representations."
7   (*Id.*) Further, "documents pertaining to purchases and pricing before and after April 1, 2015, are
8   necessary to determine Plaintiffs' purported damages." (*Id.*) Notably, Plaintiff does not dispute
9   the relevancy of documents prior to April 1, 2015, but only argues that some limitation is
10  necessary so that Defendant's Requests are not burdensome and disproportionate to the needs of
11  the case. (*Id.* at 4.)

12  Based on the joint letter, it appears that the parties are in agreement that limiting
13  Defendant's Requests to the time period from January 1, 2012 to the present, with the
14  understanding that Plaintiffs will supplement their productions as necessary, is appropriate in this
15  case. (*See id.* at 2-3.) This time period is based on Plaintiffs' proposal, and Defendant does not
16  argue that an expanded period is required in this case, so long as they are able to re-open Plaintiffs'
17  deposition to address any later-discovered documents. (*See id.*) Plaintiff, in turn, does not explain
18  why Defendant should not be permitted to re-open Plaintiffs' deposition to address any later-
19  discovered documents.

20  Accordingly, the Court will limit Defendant's Requests to the time period from January 1,
21  2012 to the present, with Plaintiffs to supplement their productions if Defendant learns of relevant
22  documents outside this period during Plaintiffs' depositions. Further, in the event Plaintiffs
23  produce any such supplemental documents, Defendant will be permitted to re-open Plaintiffs'
24  deposition to address these supplemental documents only.

### IV.   CONCLUSION

26  For the reasons set forth above, Plaintiffs' Request No. 1 for documents produced in the
27  *Reilly* action is granted, subject to the limitations articulated above. Plaintiffs' Requests No. 17
28  and 18 for documents related to Defendant's investigation or attempts to investigate the accuracy

and/or truthfulness of its non-GMO claims, as well as documents that support its statement that all of its ingredients are non-GMO, is granted.  Finally, as to Defendant's Requests for documents, Plaintiff is required to produce documents for the time period of January 1, 2012 to the present, with the understanding that Plaintiff will supplement their production if Defendant learns of relevant documents outside of this time period during Plaintiffs' deposition.  In the event of such supplemental production, Defendant may re-open Plaintiffs' deposition to address the supplemental production only.

IT IS SO ORDERED.

Dated: March 24, 2017

_____
KANDIS A. WESTMORE
United States Magistrate Judge