UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARTIN SCHNEIDER, et al.,<br>　　　　Plaintiffs,<br>　v.<br>CHIPOTLE MEXICAN GRILL, INC.,<br>　　　　Defendant. | Case No. 16-cv-02200-HSG  (KAW)<br><br>**ORDER REGARDING JOINT DISCOVERY LETTER**<br>Re: Dkt. No. 77 |

On April 22, 2016, Plaintiffs Martin Schneider, Sarah Deigert, Laurie Reese, Theresa Gamage, Tiffanie Zangwill, and Nadia Parikka filed the instant putative class action against Defendant Chipotle Mexican Grill, Inc. (Compl., Dkt. No. 1.)  Plaintiffs allege that Defendant violated California, Maryland, Florida, and New York consumer protection laws when it began advertising that its foods were free of genetically modified organisms ("GMOs") in April 2015. (Compl. ¶¶ 1-2.)

On September 8, 2017, the parties filed a joint discovery letter regarding a dispute over Plaintiffs' proposed deposition of Mr. Mark Crumpacker, who is Defendant's Chief Marketing Officer.  (Discovery Letter at 1, Dkt. No. 77.)  The Court deems the matter suitable for disposition without hearing pursuant to Civil Local Rule 7-1(b).  Having reviewed the papers filed by the parties and the relevant legal authority, the Court DENIES Plaintiffs' request to depose Mr. Crumpacker.

## I.　BACKGROUND

On April 27, 2015, Defendant began its advertising campaign, "G-M-Over It."  (Compl. ¶ 1.)  In this campaign, Defendant represented that it was becoming the first fast food chain in the United States to have a "GMO free menu that uses 'only non-GMO ingredients.'"  (*Id.*)  Defendant

produced ads stating, for example, that "'all' of [Defendant's] food is now non-GMO," and that its foods have "No GMO" and were "made with no-GMO ingredients." (Compl. ¶¶ 35-36.) Defendant also advertised on its store fronts, stating "A Farewell to GMOs" and that "When it comes to our food, genetically modified ingredients don't make the cut;" similarly, Defendant's in-store signs stated: "Only non-GMO ingredients." (Compl. ¶¶ 37-38.)

Plaintiffs allege that this campaign is misleading because Defendant: "(1) serves protein products such as beef, chicken, and pork from poultry and livestock that have been raised on GMO feed; (2) serves dairy products such as cheese and sour cream derived from cows raised on GMO feed; and (3) sells beverages such as Coca-Cola and Sprite that are loaded with corn-syrup derived from GMO corn." (Compl. ¶ 2; *see also* Compl. ¶¶ 41-43.) Plaintiffs now seek to represent four classes, made up of "All persons residing in California[, Maryland, Florida, and New York], during the period April 27, 2015 to the present, who purchased and/or paid for Chipotle Food Products."[1] (Compl. ¶¶ 56-59.)

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 30(a)(1) provides that, subject to certain limitations, "[a] party may, by oral questions, depose any person, including a party, without leave of court . . . ." Per Rule 26(c)(1), however, "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . . ." The party seeking the protective order has the burden of showing good cause by "demonstrating harm or prejudice that will result from the discovery." *Rivera v. NIBCO, Inc.*, 364 F.3d 1057, 1063 (9th Cir. 2004).

"When a party seeks the deposition of a high-level executive (a so-called 'apex' deposition), the court may exercise its discretion under the federal rules to limit discovery." *Affinity Labs of Tex. v. Apple, Inc.*, No. C 09-4436 CW, 2011 WL 1753982, at *15 (N.D. Cal. May 9, 2011); *see also Apple Inc. v. Samsung Elecs. Co.*, 282 F.R.D. 259, 263 (N.D. Cal. 2012). Such discretion may be warranted because "such discovery creates a tremendous potential for abuse or

---

[1] "Food Products" refers to Defendant's "Meat Products, Dairy Products, and/or Soft Drinks." (Compl. at 23 n.19.)

2

harassment." *Apple Inc.*, 282 F.R.D. at 263 (internal quotation omitted). In deciding whether an apex deposition may proceed, courts consider: (1) whether the deponent has unique, first-hand, non-repetitive knowledge of the facts at issue in the case, and (2) whether the party seeking the deposition has exhausted less intrusive discovery methods. *Id.* Thus, "[w]here a high-level decision maker removed from the daily subjects of the litigation has no unique personal knowledge of the facts at issue, a deposition of the official is improper." *Groupion, LLC v. Groupon, Inc.*, No. 11-870 MEJ, 2012 WL 359699, at *2 (N.D. Cal. Feb. 2, 2012) (internal quotation omitted). This is especially the case where the information sought can be obtained through less intrusive discovery methods, such as by interrogatory or depositions of lower-level employees with more direct knowledge of the facts at issue. *Id.* Courts in this district have, however, reiterated that "it is very unusual for a court to prohibit the taking of a deposition altogether absent extraordinary circumstances. When a witness has personal knowledge of facts relevant to the lawsuit, even a corporate president or CEO is subject to deposition." *Apple Inc.*, 282 F.R.D. at 263 (internal quotation omitted); *see also Powertech Tech., Inc. v. Tessera, Inc.*, No. C 11-6121 CW, 2013 WL 3884254, at *1 (N.D. Cal. July 26, 2013).

### III. DISCUSSION

Plaintiffs seek to depose Mr. Crumpacker, who is Defendant's Chief Marketing Officer.[2] Prior to the filing of the instant letter, Defendant provided Mr. Crumpacker's deposition transcript from a related lawsuit, *Reilly v. Chipotle Mexican Grill, Inc.*, No. 15-23425-Civ-COOKE/TORRES (S.D. Fla.). (Discovery Letter at 1.) Plaintiffs were to review the transcript to determine if Mr. Crumpacker's deposition was necessary in the instant case. (*Id.*) During the parties' meet and confer, Plaintiffs requested a four-hour deposition to cover "numerous areas of inquiry not previously covered (as well as recently produced documents by Chipotle in this action)" in the *Reilly* deposition, but apparently refused to specify what those areas of inquiry were. (*Id.*)

---

[2] Defendant asserts that Plaintiffs have not yet served a notice of deposition, which may prevent the Court from being able to compel his deposition given that he has not been formally subpoenaed. (Discovery Letter at 4 n.4.)

The parties do not dispute that Mr. Crumpacker is an apex officer. (Discovery Letter at 1, 3.) Instead, Plaintiffs argue that Mr. Crumpacker must have relevant, first-hand information based on his prior deposition in *Reilly*. (Discovery Letter at 1.) Plaintiff also contends that Mr. Crumpacker was "closely involved overseeing the development and implementation of the [Non-GMO] campaign that is the heart of this lawsuit." (*Id.*) In support, Plaintiffs point to the deposition testimony of Mr. Joshua Brau, Ms. Anna Tou, Mr. Ryan Murrin, and Mr. William Espey, "all of whom worked at Mr. Crumpacker's direction on the Non-GMO Claims and announcement." (*Id.* at 2.) Plaintiffs assert that these individuals identified Mr. Crumpacker as the ultimate decision-maker. With respect to the *Reilly* transcript, Plaintiffs state that based on their review, "Mr. Crumpacker was not fully examined on the issues relevant to this matter and has not answered questions raised by testimony of other deponents, including Mr. Crumpacker's reasons for bringing this campaign to realization." (*Id.*) Plaintiffs also contend that there is a late production of documents that verify Mr. Crumpacker's participation in "key meetings and decision-making about the GMO announcement, including how Chipotle's announcement conformed with Non-GMO Project standards." (*Id.*)

Defendant, in turn, does not deny Mr. Crumpacker's first-hand knowledge of Defendant's non-GMO claims. (*Id.* at 4.) Rather, Defendant responds that Plaintiff has not identified any "unique, non-repetitive knowledge that Plaintiffs have not already gained from deposing a number of employees who report directly to Mr. Crumpacker." (*Id.*) Defendant also argues that Plaintiffs have not exhausted less-intrusive discovery methods, such as interrogatories. Finally, Defendant raises concerns about the possibility that Plaintiffs will use the deposition to harass Mr. Crumpacker, pointing to Ms. Tou's deposition, where Plaintiffs' counsel questioned her about her "personal social media accounts, accusing Ms. Tou of transphobia, and generally attacking Ms. Tou's character." (*Id.*; *see also* Discovery Letter, Exh. H ("Tou Dep.") at 122:12-135:20.)

The Court finds that Plaintiffs have failed to identify any unique personal knowledge by Mr. Crumpacker. As an initial matter, Plaintiffs generally fail to identify what information they believe Mr. Crumpacker has that has not been otherwise produced in discovery. Instead, Plaintiffs only state that Mr. Crumpacker has not been fully examined on issues relevant to this case, but do

4

not specify what those issues are. The only exception is "Mr. Crumpacker's reasons for bringing this campaign to realization," but Plaintiffs do not explain why Mr. Crumpacker's personal motivations for the non-GMO campaign have any bearing on whether the non-GMO campaign is misleading.

More significantly, even if Mr. Crumpacker has knowledge on these unidentified issues, Plaintiffs do not explain why Mr. Crumpacker has *unique* personal knowledge of the facts. The evidence cited to by Plaintiffs confirms that Mr. Crumpacker has knowledge, but does not necessarily show that he had unique knowledge. For example, in Mr. Murrin's testimony, he repeatedly identified Mr. Mark Shambura as making decisions with Mr. Crumpacker. (Discovery Letter, Exh. A ("Murrin Dep.") at 80:8-11, 91:1-6, 92:10-12, 105:13-16.) Mr. Espey identified Mr. Crumpacker as making the decision to market Chipotle as going non-GMO, but did not state he was the only decision-maker, instead stating that he did not know if anyone else was involved. (Discovery Letter, Exh. B ("Espey Dep.") at 26:1-3.) Likewise, Mr. Brau explained that he provided Mr. Crumpacker guidance and revisions in drafting language in an advertisement. (Discovery Letter, Exh. F ("Brau Dep.") at 168:25-169:14.) Finally, Ms. Tou testified about her conversations with Mr. Crumpacker about the non-GMO representations on Defendant's website. (Discovery Letter, Exh. G ("Tou Dep.") at 65:9-18.) Plaintiff then points to a number of e-mails that Mr. Crumpacker was a part of, but again, this does not suggest unique knowledge given the other individuals who were on the e-mails, several of whom were deposed by Plaintiffs. (Discovery Letter, Exhs. C-E.) All of this evidence shows that Mr. Crumpacker worked with other individuals, many of whom were deposed by Plaintiffs. Thus, Plaintiffs have failed to show that Mr. Crumpacker has unique, non-repetitive language that would warrant a deposition. Accordingly, Plaintiffs have failed to meet their burden, and the Court DENIES Plaintiffs' request to depose Mr. Crumpacker.[3]

---

[3] The Court notes that Plaintiffs have failed to show that less intrusive means, such as interrogatories, could be used to obtain discovery. The Court also has some concerns over Plaintiffs' motivation for the deposition, given their refusal to specify what issues they seek to depose Mr. Crumpacker on, as well as their troubling line of questioning during Ms. Tou's deposition.

## IV. CONCLUSION

For the reasons stated above, the Court DENIES Plaintiffs' request to depose Mr. Crumpacker.

IT IS SO ORDERED.

Dated: September 19, 2017

_____
KANDIS A. WESTMORE
United States Magistrate Judge