# REDACTED VERSION
sought to be filed
# UNDER SEAL

# Exhibit 42

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| MARTIN SCHNEIDER, SARAH DEIGERT, LAURIE REESE, THERESA GAMAGE, TIFFANIE ZANGWILL, and NADIA PARIKKA, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>    v.<br><br>CHIPOTLE MEXICAN GRILL, INC., a Delaware Corporation,<br><br>Defendant. | Case: 3:16-cv-02200-HSG |

Declaration

of

**COLIN B. WEIR**

August 11, 2017

REFERENCES MATERIALS DESIGNATED "CONFIDENTIAL" AND "CONFIDENTIAL

ATTORNEYS' EYES ONLY" UNDER PROTECTIVE ORDER

I, Colin B. Weir, declare as follows:

I am Vice President at Economics and Technology, Inc. ("ETI"), One Washington Mall, 15th Floor, Boston, Massachusetts 02108.  ETI is a research and consulting firm specializing in economics, statistics, regulation and public policy.

## I.  QUALIFICATIONS, BACKGROUND, AND EXPERIENCE

1.    I hold a Masters of Business Administration, with honors, from the High Technology program at Northeastern University, Boston, Massachusetts.  I hold a Bachelor of Arts degree cum laude in Business Economics from The College of Wooster, Wooster, Ohio.  I have provided expert testimony before federal and state courts, the Federal Communications Commission, and state regulatory commissions, and have contributed research and analysis to numerous ETI publications and expert testimony at the state, federal, and international levels.  I have consulted on a variety of consumer and wholesale products cases, calculating damages relating to food products, household appliances, herbal remedies, health/beauty care products, electronics, and computers.  My Statement of Qualifications, which outlines my professional experience, publications, and record of expert testimony during the last four years, is attached hereto as Exhibit 1.  This includes a list of all cases in which, during the previous four years, I have testified as an expert at trial or by deposition.

## II.  ENGAGEMENT

2.    I provide this declaration in connection with the case filed by Plaintiffs Martin Schneider, Sarah Deigert, Laurie Reese, Theresa Gamage, Tiffanie Zangwill, and Nadia Parikka, ("Plaintiffs") in the above-captioned action against Defendant Chipotle Mexican Grill Inc.



Declaration of Colin B. Weir
August 11, 2017
Page 2 of 18

("Defendant" or "Chipotle") as it relates to certain Chipotle menu items, (the "Chipotle Food").[1] I make this declaration based upon my own personal knowledge and, if called as a witness in this action, I would be able to competently testify as to the facts and opinions set forth herein.

3.    I have been advised by Counsel for Plaintiffs that putative Classes of individuals purchased Chipotle Food that was represented as non-GMO or not containing Genetically Modified Organisms ("GMOs") ("the Claim") when in fact the animal and dairy products that comprise the Chipotle Food are in fact made from animals that were fed a diet of genetically modified feed (the "Misrepresentation").[2]  Plaintiffs allege that that this misrepresentation caused Plaintiffs to pay a price premium for the Chipotle Food.

4.    I have been asked by Counsel for Plaintiffs to ascertain whether it would be possible to determine a method to calculate damages on a class-wide basis using common evidence, and if so, to provide a framework for the calculation of damages suffered by the proposed class of Plaintiffs as a result of the allegedly false and misleading Claim.  I have also been asked to review the work of Jon Krosnick which calculates a price premium factor for use in this litigation.

5.    ETI is being compensated at the rate of $675 per hour for my work on this case.  The opinions expressed in this declaration are my own, and my compensation is not dependent upon the substance of these opinions or the outcome of the litigation.

6.    The documents, data and other materials that I relied upon in forming my opinions are identified throughout my report, and in Exhibit 2, attached hereto.  In addition, I have relied upon my educational background and more than 13 years of experience.

---

[1] Chipotle menu items that include meat or dairy products, including burritos, "bowls," tacos, salads, quesadillas, and quesaritos, hereinafter, the "Chipotle Food".

[2] *See, generally,* Class Action Complaint, April 22, 2016 ("Complaint").

ETI  ECONOMICS AND
TECHNOLOGY, INC.

Declaration of Colin B. Weir
August 11, 2017
Page 3 of 18

**Product Differentiation**

7.    In economics, the concept of product differentiation can be summarized as the introduction of product attributes that allows the consumer to differentiate between otherwise similar products, with the goal of increasing sales and profits.[3]

8.    Defendant itself admits that it attempts to differentiate itself from competitors, including through the use of promotional programs and in-store communications, such as the Misrepresentation in this litigation:

> A great dining experience in our restaurants has always been our most powerful marketing. But there is still a need to introduce our brand to new customers and engage with existing ones in other ways, ***by helping them understand what makes Chipotle different***. Our advertising and ***promotional programs and in-store communications all help to communicate what differentiates Chipotle*** from typical fast food.
>
> Alongside our excellent restaurant teams, these efforts have helped us create considerable word-of-mouth publicity as our customers learn more about us and share with others. This approach allows us to build awareness and loyalty with relatively low advertising expenditures, even in a competitive category, ***and to differentiate Chipotle*** as a company that is committed to doing the right thing in every facet of our business.
>
> The fast-casual, quick-service, and casual dining segments of the restaurant industry are highly competitive with respect to, among other things, taste, price, food quality and presentation, service, location, brand reputation, and the ambience and condition of each restaurant. Our competition includes a variety of restaurants in each of these segments, including locally-owned restaurants and national and regional chains. Many of our competitors offer dine-in, carry-out, catering, and delivery services. In recent years, competition has increased significantly from restaurant formats like ours that serve higher quality food, quickly and at a reasonable price.  We believe that this competition has made it more challenging to maintain or increase the frequency of customer visits, ***but continue to believe that Chipotle can differentiate itself*** with our mission to ensure that better food is accessible to everyone.

---

[3] Case, Fair & Oster, Principles of Microeconomics, 9th Edition, 2009, at 305-316, 449.



Declaration of Colin B. Weir
August 11, 2017
Page 4 of 18

Additionally, although *we continue to believe that Chipotle can differentiate itself* with our mission to ensure that better food is accessible to everyone, competitors have *increasingly made claims related to the quality of their ingredients, or distinctions between artificial and natural flavors, colors and preservatives.* The increasing *use of these claims in the marketplace, even if the substantive basis for some of them may be questionable, may lessen our differentiation*.[4]

9.   Documents internal to Chipotle show that its "non-GMO" misrepresentation was a key part of the Chipotle marketing program.  One document highlights Chipotle's ████████

████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████  NPR covered these events:

Chipotle, the chain whose slogan is "food with integrity," was the first national restaurant chain to eliminate genetically modified ingredients from most of its menu. Now, the company is going a step further: using its anti-GMO stance as a marketing opportunity.

Alex Jessee, a young mother, went through the "GMO Experience," one of the four exhibits. She says she learned from it "that these GMOs could be harmful to us, the environment, but they don't necessarily have to tell us that we're eating them. Which isn't very cool."

That perspective dovetails nicely with Chipotle's marketing plan. And it's the side more consumers are choosing, too: Surveys show the majority of consumers — as much as 93 percent, according to a New York Times poll — want their food labeled with GMO information.

---

[4] Chipotle Mexican Grill, 2016 10-K Annual Report filed with the US Securities and Exchange Commission. ("Chipotle 10-K") [emphasis supplied]

[5] Bates No. CMG/7184-003388 *et seq.*



Declaration of Colin B. Weir
August 11, 2017
Page 5 of 18

> As sales of GMO-free food skyrocket into the billions, savvy companies are noticing. The demand for those foods falls under what the industry calls the "health halo," the perception that a food is healthful.[6]

10.  Another internal marketing document highlights Chipotle's efforts to ███████



11.  This same document specifically highlights ███████████████



---

[6] 'GMO-Free' Is A Boon For Companies Chasing 'Health Halo' Profits, NPR, August 19, 2015, http://www.npr.org/sections/thesalt/2015/08/19/432774389/gmos-are-becoming-a-proxy-for-bigger-concerns-about-the-food-system (last accessed August 10, 2017).

[7] Bates Nos. CMG/7184-003344 et seq.

ECONOMICS AND
TECHNOLOGY, INC.

Declaration of Colin B. Weir
August 11, 2017
Page 6 of 18

12. The same document highlights Chipotle's efforts to



13. A Chipotle brand tracking study performed on behalf of Chipotle finds that

The study finds that many respondents rank

14. A follow up Chipotle brand tracking study identifies that

15. Defendant regularly attempts to differentiate its Chipotle Food products, used its non-GMO misrepresentation in an attempt to differentiate its Chipotle Food products, and appears to understand that GMO claims, "even if the substantive basis for some of them may be questionable,"[12] can differentiate Chipotle Food from competitors, allowing Defendant to charge a premium for this attribute and derive higher revenues and profits therefrom.

### III. FRAMEWORK FOR DAMAGES

16. As a threshold matter, it is my opinion that there are methods available to determine class-wide damages in this case using the Defendant's own available business records, third-party records, and industry resources.

---

[8] *Id.*

[9] *Id.* [emphasis supplied]

[12] Chipotle 10-K.



Declaration of Colin B. Weir
August 11, 2017
Page 7 of 18

17.   Below, I discuss some of the the economics components of a consumer survey conducted by Jon Krosnick to calculate Price Premium Damages (wherein consumers would receive the value of the price premium they paid solely as a result of Defendant's conduct of Misrepresenting the Chipotle Food with the Claim).[13]

## IV.  CALCULATION OF THE PRICE PREMIUM: KROSNICK SURVEY

**The Krosnick Survey**

18.   I have been provided with the Expert Report of Jon Krosnick.[14]  Krosnick is the Frederic O. Glover Professor of Humanities and Social Sciences and a Professor of Communication, Political Science, and (by courtesy) Psychology at Stanford University in Stanford, California, a Research Psychologist at the U.S. Census Bureau, and a Research Advisor of the Gallup Organization.  He has worked in the field of market research, especially survey research methods, and consumer behavior and opinions since 1986.  Krosnick is widely recognized for his research and authorship.  I understand that Krosnick was asked to assess the price premium that Plaintiffs paid as a result of the Chipotle Food misrepresentation.

19.   The Krosnick Report describes the use of treatment and control experiment included in a consumer survey to determine the price premium paid solely as a result of the Chipotle Food misrepresentation.

---

[13] It would also be possible to evaluate the difference in price attributable to the Misrepresentation for purposes of this litigation using statistical survey techniques such as contingent valuation (a representative survey technique that asks people to directly report their purchase decision for a specified good or product attribute, or to forego a good or product attribute) or conjoint analysis (a representative survey technique where survey panelists are confronted with various choices of product attributes, prices, and other alternatives, and asked either to rank their preferences, or to choose the most preferred attribute or combination thereof) the results of which permits an economist to analyze the value of various product attributes.

[14] Declaration of Jon Krosnick, August 11, 2017, ("Krosnick Declaration").



Declaration of Colin B. Weir
August 11, 2017
Page 8 of 18

20.   Representative survey techniques can permit an economist to analyze the value of various product attributes.  Krosnick embedded an experiment in the Internet data collection according to best scientific practice, which is an extremely strong methodology for documenting causality.[15]  Different respondents were exposed to different sets of information and then reacted to the information given to them.  Statistical analyses compared the responses of these groups of respondents to assess whether changes in the provided information altered respondents' answers.  Such representative surveys have been used in litigation contexts to calculate damages for years.[16]

21.   Krosnick measures the price premium associated with the misrepresentation (measured in dollars and/or percentage terms) through the use of a test and control group[17] and price variables.[18]  Half of the respondents (chosen randomly from among the full set of participating respondents) were shown text from Chipotle Mexican Grill stating that their food is non-GMO.  The other half of the respondents read that same information plus a statement from Chipotle Mexican Grill's website stating that the food eaten by the animals whose meat and dairy are served at Chipotle likely were raised on genetically modified food.[19]  Krosnick's survey includes market-based price points derived from pricing data provided by Defendant, which I

---

[15] *Id.*, at para 39.

[16] *Applying Conjoint Analysis to Legal Disputes: A Case Study*, Wind, Yoram, *et al.*; *see, e.g., Khoday v. Symantec Corp.*, No. 11-180 (JRT/TNL), 2014 WL 1281600, at *10 (March 13, 2014); *Sanchez-Knutson v. Ford Motor Company*, Case No. 14-61344-CIV-DIMITROULEAS, Order, October 6, 2015; *In re: Lenovo Adware Litigation*, Case no. 15-md-02624-RMW (USDC NDC-SJD) DKT 153 (October 27, 2016); *Morales v. Kraft Foods Group, Inc.*, Order Re: Plaintiff's Motion for Class Certification, Case No. 14-cv-04387, Dkt. No. 78 (Kronstadt, J.) (C.D. Cal. Jun. 23, 2015); *Guido v. L'Oreal, USA, Inc.*, 2014 WL 6603730, (C.D. Cal. July 24, 2014);  *Brown v. Hain Celestial Group, Inc.*, 2014 WL 6483216, (N.D. Cal. Nov. 18, 2014);  *Microsoft v. Motorola, Inc.*, 904 F.Supp.2d 1109 (W.D. Wa. 2012); *In re Scotts EZ Seed Litig.*, 304 F.R.D. 397 (S.D.N.Y. 2015).

[17] Krosnick Declaration, at para 45.

[18] *Id.*, at para 46.

[19] *Id.*, at para 41.



Declaration of Colin B. Weir
August 11, 2017
Page 9 of 18

have also reviewed.[20]  Krosnick also considered information about Chipotle Food when selecting the other attributes and elements for inclusion in his survey.[21] Krosnick has also taken into account the fact that the number of units of Chipotle Food sold is a known fact, and is fixed as a matter of history.[22]

22.  Krosnick's misrepresentation attribute draws its detail from Chipotle documents, signage, and from an understanding of Plaintiffs' stated theory of liability.[23]

**Supply Side Considerations**

23.  I understand that Krosnick considered and accounted for supply side factors in the determination of his price premium calculation.[24]

24.  I have also considered supply side factors in my determination of damages.  First, unlike in a Lanham Act or intellectual property litigation where a but-for quantity of sales may need to be determined, in this litigation, the historic number of units sold is a fact (as I have discussed above) and in this litigation, it would be antithetical to the concept of class definition to suggest that the quantity supplied be anything other than the actual number of units sold by Defendant.

25.  Furthermore, as is born out in the Krosnick Survey, if one were to assume, *arguendo*, that Defendant would not have lowered its price in concert with demand (indicating that Defendant priced above the market clearing price), then the economic outcome would be

---

[20] *Id.*, at para 46.

[21] *Id*., at para 40.

[22] *Id.*

[23] *Id.,* at para 10; Section 2 paras 7-8.

[24] *Id.*, at paras 40, 46.



Declaration of Colin B. Weir
August 11, 2017
Page 10 of 18

that many or all of the purchases would not have taken place at all.  As such, the price premium

developed by Krosnick are inherently conservative measures.

26.  It is also an economic perversion for a defendant engaged in a litigation (with

obvious conflict of interest) to simply state that it would never have adjusted its prices or would

not have adjusted them enough so as to meet demand, and therefore damages should be set at

zero or something less than actual economic damages.  If this were permitted, any defendant

could simply postulate its way out of economic damages.[25]

---

[25] To the contrary, Chipotle expressly warns its investors that competitive risk factors could "reduce our sales and profits."

>    ***"Competition could adversely affect us.***
>
>    The fast-casual, quick-service and casual dining segments of the restaurant industry are highly competitive with respect to, among other things, taste, price, food quality and presentation, service, location, brand reputation, and the ambience and condition of each restaurant. Our competition includes a variety of restaurants in each of these segments, including locally owned restaurants and national and regional chains. Many of our competitors offer dine-in, carry-out and delivery services. In recent years, competition has increased significantly from restaurant formats like ours that serve higher quality food, quickly at a reasonable price.  We believe that this competition has made it more challenging to maintain or increase the frequency of customer visits. Additionally, although we continue to believe that Chipotle can differentiate itself with our mission to ensure that better food is accessible to everyone, competitors have increasingly made claims related to the quality of their ingredients, or distinctions between artificial and natural flavors, colors and preservatives.  The increasing use of these claims in the marketplace, even if the substantive basis for some of them may be questionable, may lessen our differentiation.
>
>    Many of our competitors have existed longer than we have and may have a more established market presence with substantially greater financial, marketing, personnel and other resources than we have. Among our main competitors are a number of multi-unit, multi-market Mexican food or burrito restaurant concepts, some of which are expanding nationally. Some of these competitors and other fast casual concepts have sought to duplicate various elements of our business operations, and more chains may copy us to varying degrees in the future. Additionally, our newer concepts, Tasty Made and Pizzeria Locale, operate in markets in which there are numerous competitors, including a number of large and well-known brands. A number of other companies or individuals in the restaurant industry have recently opened or invested in fast-casual pizza concepts or so-called "better burger" restaurants. In addition, our strategy includes opening additional restaurants in existing markets, and as we do so sales may decline in our previously-opened restaurants as customers who frequent our established restaurants begin to visit a newly-opened restaurant instead.
>
>    Several of our competitors compete by offering menu items that are specifically identified as low in carbohydrates, better for customers or otherwise targeted at particular consumer preferences. Many of our competitors in the fast-casual and quick-service segments of the restaurant industry also emphasize lower-cost, "value meal" menu options, a strategy we do not currently pursue. Our sales may be adversely affected by these and other competing products, or by price competition more generally.
>
>    Moreover, we may also compete with companies outside the fast casual and quick service and casual dining segments of the restaurant industry. For example, competitive pressures can come from deli sections and in-store cafés of several major grocery store chains, including those targeted at customers who want higher-quality food, as well as from convenience stores and other dining outlets. These competitors may have, among other things, a more



Declaration of Colin B. Weir
August 11, 2017
Page 11 of 18

27.  I have considered data on actual sales of the Chipotle Food in the real-world marketplace. These real-world transactions occurred at prices that *already* reflect the supply side factors then extant in the marketplace.  I understand that Krosnick relied upon these historical data in setting the prices used in his survey.  I am aware that Chipotle warns its investors that the company is responsive to changing market forces.

28.  I have analyzed Defendant's cost of inputs.

29.  Another important supply-side factor that I considered was the fact that the quantity of the Products supplied is a known quantity, and fixed as a matter of history.

30.  Another important supply-side factor that I considered was the fact that the market for Chipotle Foods was an "ordinary" and "mature" market, subject to competitive pressures that both Defendant and competitors identified as risks to their business.

**Krosnick Survey Results**

31.  Krosnick determines that Class members should only have paid 97.5% of the purchase price of Chipotle Food.[26]  Stated in the reverse, of the prices that Class members actually paid for Chipotle Food, 2.47% of the price constitutes a price premium solely attributable to Chipotle's Misrepresentation.

32.  Consumers do not negotiate the price of the Products in one-off transactions.  The prices are set by the market, by the aggregate effects of all of the factors affecting supply and demand.  Just as a rising tide lifts all boats, a reduction in demand reduces prices market-wide.

---

diverse menu, lower operating costs and prices, better locations, better facilities, better management, more effective marketing and more efficient operations than we have.

Any of these competitive factors may adversely affect us and reduce our sales and profits."

Chipotle Mexican Grill, 2016 10-K annual report filed with the US Securities and Exchange Commission.

[26] Krosnick Declaration, at para 82.



Declaration of Colin B. Weir
August 11, 2017
Page 12 of 18

This is why a market-based price premium percentage applies to all Class Members market-wide regardless of the absolute price they paid, and regardless of any individual Class Member's subjective valuation of the Products.

## V.  TOTAL SALES OF THE PRODUCTS

33.  I have been provided with myriad sales data, as described below.

34.  I have been provided with sales of the Chipotle Foods by Defendant in both units and dollars by year during the Class Period on a state by state basis.[27]

35.  I have summarized the dollar sales of the Products for below in Table 1.

| Table 1. California, Maryland, and New York Dollar Sales May 1st, 2015 - June 30th, 2016 | |
|---|---|
| **Class State** | **Dollar Sales** |
| CA | ▉ |
| MD | ▉ |
| NY | ▉ |
| Total | ▉ |
| Source:  Includes net sales of "All Meat Items" and "Quesadillas without Meat" during the relevant period.  These calculations conservatively assume that net sales of "Quesadillas with Meat" and "Quesaritos" are already accounted for under the "All Meat Items" category.  These calculations also exclude net sales of "Sofritas & Veggie Items," which is a conservative assumption given that some proportion of Chipotle customers purchased "Sofritas & Veggie Items" that included cheese.  See, CMG-7184-001202 CA Sales Data.xlsx; CMG-7184-001200 MD Sales Data.xlsx; CMG-7184-001201 NY Sales Data.xlsx. | |

---

[27] CMG-7184-001202 CA Sales Data.xlsx; CMG-7184-001200 MD Sales Data.xlsx; CMG-7184-001201 NY Sales Data.xlsx.


ECONOMICS AND TECHNOLOGY, INC.

Declaration of Colin B. Weir
August 11, 2017
Page 13 of 18

## VI. CALCULATION OF PRICE PREMIUM

## DAMAGES

36.  Calculating total price premium damages in this litigation will be simple and straightforward.

37.  With the price difference due to the Claims determined on a percentage basis, the calculation of Class-wide damages for any Product will be:

$$\%Price\ Premium\ Factor\colon Claim \times \$Units\ Sold\ = Damages$$

38.  Using the price premium factor calculated by Krosnick, I have summarized the results of these preliminary calculations in Table 2 below.

| Table 2. California, Maryland, and New York Price Premium Damages May 1st, 2015 - June 30th, 2016 | | | |
|---|---|---|---|
| **Class State** | **Dollar Sales** | **Price Premium Factor** | **Price Premium Damages** |
| CA | ███████ | 2.47% | ███████ |
| MD | ███████ | 2.47% | ███████ |
| NY | ███████ | 2.47% | ███████ |
| Total | ███████ | | ███████ |

Source:  Includes net sales of ████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████.  See, CMG-7184-001202 CA Sales Data.xlsx; CMG-7184-001200 MD Sales Data.xlsx; CMG-7184-001201 NY Sales Data.xlsx.

39.  These calculations can be performed for any state, jurisdiction, or other geography, and can be performed over any time period as ultimately determined by the Court.



Declaration of Colin B. Weir
August 11, 2017
Page 14 of 18

## VII.  STATUTORY DAMAGES

40.  In addition to the above damage calculations for the Class, I have been advised by Counsel for Plaintiff that several statutory nuances must be considered.

**New York GBL §§ 349 and 350**

41.  For New York consumers.  I have been advised that New York General Business Law ("GBL") § 349 provides for statutory damages of $50 per violation.  I have been advised that New York GBL § 350 provides for statutory damages of $500 per violation.

42.  Using Defendants' sales records, I have determined that approximately ███████ units of Chipotle Food were sold in New York during the period May 1, 2015 through June 30, 2016.

43.  Table 3 below sets forth the calculations of Statutory Damages under New York GBL §§ 349 and 350.

| Table 3. New York Statutory Damages May 1st, 2015 - June 30th, 2016 | | | |
|---|---|---|---|
| **Statute** | **Number of Units** | **Damages per Violation** | **Total Statutory Damages** |
| GBL § 349 | ███████ | $50 | ███████ |
| GBL § 350 | ███████ | $500 | ███████ |
| GBL §§ 349 & 350 | ███████ | $50 + $500 = $550 | ███████ |
| Source:  CMG-7184-001201 NY Sales Data.xlsx. | | | |


ECONOMICS AND TECHNOLOGY, INC.

Declaration of Colin B. Weir
August 11, 2017
Page 15 of 18

**California CLRA**

44.  I have been advised by Counsel for Plaintiffs that the California Consumer Legal Remedies Act ("CLRA") provides for both statutory damages for senior citizens and those with disabilities, as well as punitive damages.

45.  I have been informed by Counsel that CLRA § 1780(b) provides for statutory damages of up to $5,000 per consumer who is a senior citizen or a disabled person, provided certain criteria are met.  I have been informed that named Plaintiff Martin Schneider is 72 (qualifying as a senior citizen) and is a disabled person due to ongoing health issues.  Based upon my research and analysis in this case, Mr. Schneider, and indeed all class members, have suffered substantial economic damage resulting from the Defendant's conduct.  Should the other requirements be met, and trier of fact believes that an additional award is appropriate, Mr. Schneider and others similarly situated would be eligible to receive up to five thousand dollars ($5,000).

46.  I have been advised by Counsel that CLRA § 1780(a)(4) provides for the award of punitive damages for any consumer who suffers any damage as a result of a practice declared to be unlawful by CLRA § 1770, in an amount to be determined by the judge or the jury, as appropriate.  Based upon my research and analysis in this litigation, all Class members have suffered economic damage resulting from Defendant's conduct.

## VIII.  INDIVIDUAL INQUIRY IS NOT REQUIRED

**Variations in purchase price do not alter the calculation of total, class-wide damages**

47.   Variations in purchase price do not prevent the calculation of class-wide damages. Such variations in price are captured in the sales data used for analysis and price variations are an element of typical market valuation surveys.  Such variations are also inapposite to the



Declaration of Colin B. Weir
August 11, 2017
Page 16 of 18

calculation of class-wide damages, because the ultimate method of distribution or allocation of damages to individuals during claims administration or a settlement does not alter the calculation of total, class-wide damages.

48.   Class-wide damages under a price premium model can be calculated from the bottom up as the sum of individual damages (as defendants often assert), or can be calculated from the top down, without individual inquiry, by finding the percentage price difference resulting from the Misrepresentation and then multiplying the premium by the dollars sold (as discussed in detail above).  As outlined above, I propose to use the latter technique, obviating the need for individual inquiry.

49.   Ultimately, no matter the method by which damages are distributed, it does not affect the calculation of, or the total amount of class-wide damages in this litigation.

**Individual interpretation of the Claim is irrelevant to the determination of class-wide damages**

50.   Individual interpretation of the Claim is irrelevant to the determination of class-wide price premium damages here.  Individual interpretations of the Claim does not change the price paid by an individual.

51.   Calculating a price premium does not depend on an individual interpretation of the Claim because there is no middle ground.  If the market price for the Chipotle Foods was higher as a result of the Claim, then ALL consumers will have paid a higher price than if the Claim was not made, regardless of their personal interpretations.

**Individual behavior or use of the Chipotle Foods is irrelevant to the determination of class-wide damages**

52.   Calculating a price premium does not depend on individual behaviors or uses of the Chipotle Foods.  As I have discussed at length, if the market price for the Chipotle Foods was

Declaration of Colin B. Weir
August 11, 2017
Page 17 of 18

higher as a result of the Claim, then ALL consumers will have paid a higher price than if the Claim had not been made.

**Individual reasons for purchase do not change the price, or price premium paid by an individual**

53.   Individual reasons for purchase are irrelevant in this case, because a consumer's individual reasons for purchase do not change the price paid by that individual.  Consumers do not negotiate the price of the Chipotle Foods at retail.  Shelf prices do not adjust themselves for individual consumers.

54.   As I have discussed above, if there is a market price premium included in the price of the Chipotle Foods as a result of the Claim and a consumer buys a unit of Chipotle Food, they will pay that premium regardless of their reasons for purchase, because their individual reasons for purchase do not change the price they will pay.

55.   Even if a consumer bought Chipotle Food with the intention to immediately throw that Food in the garbage, the consumer has been harmed because he paid more for the Chipotle Food than he would have but for the Claim.

## IX.  RESERVATION OF RIGHTS

My testimony is based upon the information and data presently available to me. Additional, different and/or updated data including market research data may be obtained in advance of trial.  I therefore reserve the right to amend or modify my testimony.

Declaration of Colin B. Weir
August 11, 2017
Page 18 of 18

VERIFICATION

I declare under penalty of perjury that the foregoing is true and correct to the best of my

knowledge, information, and belief, and that this declaration was executed at Eveline, Michigan,

this 11th day of August, 2017.

Colin B. Weir

ECONOMICS AND
TECHNOLOGY, INC.

**Exhibit 1**

**Statement of Qualifications
of**

**COLIN B. WEIR**

## Statement of Qualifications

## COLIN B. WEIR

Colin B. Weir is Vice President at Economics and Technology, Inc.  Mr. Weir conducts economic, statistical, and regulatory research and analysis, and testifies as an expert witness. Mr. Weir's work involves econometric and statistical analysis, multiple regression, surveys, statistical sampling, micro- and macroeconomic modeling, accounting and other economic analysis.  Such analysis often involves analysis of databases, call detail records, and other voluminous business records.  Mr. Weir is familiar with common statistical and econometric software packages such as STATA and Sawtooth Software.  Mr. Weir assists with analysis of economic, statistical and other evidence; and preparation for depositions, trial and oral examinations.  Mr. Weir has provided expert testimony before federal and state courts, the FCC, and state regulatory commissions, and has contributed research and analysis to numerous ETI publications and testimony at the state, federal, and international levels.  Prior to joining ETI, Mr. Weir worked at Stop and Shop Supermarkets as a cash department head, grocery/receiving clerk, and price-file maintenance head.

Mr. Weir's experience includes work on a variety of issues, including: economic harm and damage calculation; liquidated damages provisions; lost profits; false claims; diminution in value; merger/antitrust analysis; Early Termination Fees (ETFs); Late Fees; determination of Federal Excise Tax burden; and development of macroeconomic analyses quantifying the economic impact of corporate actions upon the US economy and job markets.

Mr. Weir has conducted research and analysis in numerous litigation and regulatory matters on behalf of corporate, government and individual clients, including AT&T, MTS Allstream (Canada), The US Department of Justice, Office of the Attorney General of Illinois, Pennsylvania Department of Revenue,  Thomas v. Global Vision, (class action litigation, Superior Court, County of Alameda), Ayyad v. Sprint (class action litigation,  Superior Court, County of Alameda), Forcellati v. Hylands (class action, U.S. District Court, Central District of California), and Ebin v. Kangadis Foods (class action, U.S. District Court, Southern District of New York).

Mr. Weir holds an MBA with honors from Northeastern University.  He also holds a Bachelor of Arts degree *cum laude* in Business Economics from The College of Wooster.

Mr. Weir is a member of the Boston Economic Club, a business member of the Boston Bar Association, serves on the Board of Trustees of the Waring School, and serves as the comptroller for the Sybaris Investment Partnership.

ECONOMICS AND
TECHNOLOGY, INC.

**Publications and Testimony of Colin B. Weir**

Mr. Weir has co-authored the following:

*Interoperability and Spectrum Efficiency: Achieving a Competitive Outcome in the US Wireless Market* (with Lee L. Selwyn) Economics and Technology, Inc., prepared on behalf of United States Cellular Corporation, July 2012.

*The Price Cap LECs' "Broadband Connectivity Plan": Protecting Their Past, Hijacking the Nation's Future* (with Lee L. Selwyn and Helen E. Golding) Economics and Technology, Inc., prepared on behalf of United States Cellular Corporation, September 2011.

*Regulation, Investment and Jobs: How Regulation of Wholesale Markets Can Stimulate Private Sector Broadband Investment and Create Jobs* (with Lee L. Selwyn, Susan M. Gately, and Helen E. Golding) Economics and Technology, Inc., prepared on behalf of Cbeyond, Inc., Covad Communications Company, Integra Telecom, Inc., PAETEC Holding Corp, and tw telecom inc., February 2010.

*Revisiting Us Broadband Policy: How Re-regulation of Wholesale Services Will Encourage Investment and Stimulate Competition and Innovation in Enterprise Broadband Markets*, (with Lee L. Selwyn, Susan M. Gately, and Helen E. Golding) Economics and Technology, Inc., prepared on behalf of MTS Allstream, February 2010.

*Longstanding Regulatory Tools Confirm BOC Market Power: A Defense of ARMIS* (with Lee L. Selwyn, Susan M. Gately, and Helen E. Golding) Economics and Technology, Inc., prepared on behalf of the AdHoc Telecommunications Users Committee, January 2010.

*Choosing Broadband Competition over Unconstrained Incumbent Market Power: A Response to Bell and TELUS* (with Lee L. Selwyn, Susan M. Gately, and Helen E. Golding) Economics and Technology, Inc., prepared on behalf of MTS Allstream, April 2009.

*The Role of Regulation in a Competitive Telecom Environment: How Smart Regulation of Essential Wholesale Facilities Stimulates Investment and Promotes Competition* (with Lee L. Selwyn, Susan M. Gately, and Helen E. Golding) Economics and Technology, Inc., prepared on behalf of MTS Allstream, March 2009.

*Special Access Overpricing and the US Economy: How Unchecked RBOC Market Power is Costing US Jobs and Impairing US Competitiveness* (with Lee L. Selwyn, Susan M. Gately, and Helen E. Golding) Economics and Technology, Inc., prepared on behalf of the AdHoc Telecommunications Users Committee, August 2007.

*The AWS Spectrum Auction: A One-Time Opportunity to Introduce Real Competition for Wireless Services in Canada* (with Lee L. Selwyn and Helen E. Golding) Economics and Technology, Inc., prepared on behalf of MTS Allstream, June 2007.

*Comparison of Wireless Service Price Levels in the US and Canada* (with Lee L. Selwyn) Economics and Technology, Inc., prepared on behalf of MTS Allstream, May 2007.



*Hold the Phone! Debunking the Myth of Intermodal Alternatives for Business Telecom Users In New York* (with Susan M. Gately and Lee L. Selwyn) Economics and Technology, Inc., prepared for the UNE-L CLEC Coalition, August 2005.

Mr. Weir has submitted the following testimony:

**United States District Court, Southern District Of Ohio,** *Tom Kondash, on behalf of himself and all others similarly situated, v. Kia Motors America, Inc., and Kia Motors Corporation*, Case No. 1:15-cv-00506-SJD, on behalf of Gibbs Law Group, LLP, Declaration submitted July 10, 2017.

**United States District Court, Northern District Of Illinois, Eastern Division,** *Ryan Porter and Haarin Kwon, individually and on behalf of all others similarly situated, v. NBTY, Inc., United States Nutrition Inc., Healthwatchers (DE), Inc., and MET-RX Nutrition, Inc.*, Case No. 15-cv-11459, on behalf of Bursor & Fisher, P.A., Settlement Declaration submitted June 22, 2017.

**United States District Court, Northern District Of California,** *Sandra McMillion, Jessica Adekoya And Ignacio Perez, on Behalf of Themselves and all Others Similarly Situated, v. Rash Curtis & Associates*, Case No. 16-cv-03396-YGR, on behalf of Bursor & Fisher, P.A., Declaration submitted May 30, 2017.

**United States District Court, Northern District of California,** *Vincent D. Mullins, et al., v. Premier Nutrition Corporation,* Case No. 13-cv-01271-RS, on behalf of Blood, Hurst, & O'Reardon, LLP, Reply Declaration submitted May 19, 2017; Deposition on July 20, 2017.

**United States District Court, Southern District of California,** *Preston Jones and Shirin Delalat, on behalf of themselves, all others similarly situated, and the general public, v. Nutiva Inc.*, Case No. 16-cv-00711 HSG, on behalf of Law Offices of Jack Fitzgerald, PC, Declaration submitted May 9, 2016.

**United States District Court, Central District of California, Southern Division,** *Billy Glenn, Kathy Warburton, Kim Fama, and Corinne Kane, on behalf of themselves and all others similarly situated, v. Hyundai Motor America And Hyundai Motor Company*, Case No. 15-cv-02052-DOC-KES, on behalf of Gibbs Law Group, LLP, Declaration submitted May 1, 2017; Deposition on July 27, 2017.

**United States District Court, Southern District Of California,** *Sherry Hunter, on behalf of herself, all others similarly situated, and the general public, v. Nature's Way Products, LLC, and Schwabe North America, Inc.,* Case No. 3:16-cv-00532-WQH-BLM, on behalf of Law offices of Jack Fitzgerald, PC, Declaration submitted March 24, 2017; Reply Declaration submitted May 26, 2017; Reply Declaration submitted on July 11, 2017.



**United States District Court, Southern District Of New York,** *Joanne Hart, and Sandra Bueno, on behalf of themselves and all others similarly situated, v. BHH, LLC d/b/a Bell + Howell and Van Hauser LLC*, Case No. 1:15-cv-04804-WHP, on behalf of Bursor & Fisher, P.A., Declaration submitted March 16, 2017.

**United States District Court, Eastern District Of New York, Brooklyn Division,** *Reply All Corp., v. Gimlet Media, Inc.,* Case No. 15-cv-04950-WFK-PK, on behalf of Wolf, Greenfield & Sacks, P.C., Declaration submitted March 15, 2017; Deposition on April 26, 2017.

**United States District Court, Northern District of California,** *James P. Brickman, individually and as a representative of all others similarly situated, v. Fitbit, Inc.*, Case No. 3:15-cv-02077-JD, on behalf of Dworken & Bernstein LPA, Declaration submitted February 28, 2017; Deposition on March 8, 2017.

**United States District Court, Northern District of California,** *Jamie Pettit, an individual, on behalf of herself, the general public and those similarly situated, v. Procter & Gamble Company; and Does 1 Through 50*, Case No. 15-cv-02150-RGS, on behalf of Gutride Safier LLP, Declaration submitted February 14, 2017; Deposition on March 3, 2017; Reply Declaration submitted May 11, 2017.

**United States District Court, Southern District of New York,** *Alan Gulkis, individually and on behalf of all others similarly situated, Zicam LLC and Matrixx Initiatives, Inc.*, Case No. 7:15-cv-09843-CS, on behalf of Bursor & Fisher, P.A., Declaration submitted on February 8, 2017.

**United States District Court, Central District of California,** *Elisabeth Martin, on behalf of herself, all others similarly situated, and the general public, v. Monsanto Company*, Case No. 16-02168-JFW (SPx), on behalf of the Law Office of Jack Fitzgerald, PC, Declaration submitted February 6, 2017; Deposition on February 9, 2017; Reply Declaration on February 27, 2017.

**United States District Court, Southern District of New York,** *Walt Famular, on behalf of himself and all others similarly situated, v. Whirlpool Corporation*, Case No. 16-cv-00944, on behalf of Bursor & Fisher, P.A., Declaration submitted February 3, 2017.

**United States District Court, Central District of California,** *In re: 5-Hour Energy Marketing and Sales Practices Litigation*, Case No. 2:13-ml-02438 PSG, on behalf of Bursor & Fisher, P.A., Declaration submitted September 26, 2016; Reply Declaration submitted October 14, 2016; Deposition on October 27, 2016; Declaration submitted on December 22, 2016; Rebuttal Declaration submitted on March 15, 2017.



**United States District Court, Southern District of Florida,** *Benjamin Hankinson, James Guerra, Jeanette Gandolfo, Lisa Palmer, Donald Anderson, Catherine Long, and Lisa Prihoda, individually and on behalf of others similarly situated, v. R.T.G. Furniture Corp., d/b/a Rooms to Go, RTG America, LLC, The Jeffrey Seaman 2009 Annuity Trust, RTG Furniture Corp. of Georgia, d/b/a Rooms to Go, Rooms to Go North Carolina Corp., d/b/a Rooms to Go, RTG Furniture of Texas, L.P., d/b/a Rooms to Go, RTG Texas Holdings, Inc., and R.T.G. Furniture Corp. of Texas*, Case No. 9:15-cv-81139-COHN/SELTZER, on behalf of Cohen Milstein, Declaration submitted September 1, 2016; Declaration submitted October 3, 2016; Deposition on November 4, 2016; Declaration submitted on January 5, 2017.

**Circuit Court Of Cook County, Illinois County Department, Chancery Division,** *Amy Joseph, individually and on behalf of all others similarly situated, Benjamin Perez, individually and on behalf of all others similarly situated, Intervening Plaintiff, v. Monster Inc., a Delaware Corporation, and Best Buy Co., Inc., a Minnesota Corporation*, Case No. 2015 CH 13991, on behalf of Interveners, Declaration submitted August 8, 2016.

**United States District Court, Central District of California, Eastern Division,** *Jeff Looper, Michael Bright, Scott Johnson, individuals on behalf of themselves and all others similarly situated, v. FCA US LLC, f/k/a Chrysler Group LLC, a Delaware limited liability company, and DOES 1-100 inclusive*, Case No. 14-cv-00700-VAP-DTB, on behalf of Gibbs Law Group, LLP; Declaration submitted August 7, 2016; Deposition on September 29, 2016.

**United States District Court, Eastern District of California,** *Chad Herron, individually, on behalf of himself and all others similarly situation, v. Best Buy Stores, LP, a Virginia limited partnership*, Case No. 12-cv-02103-TLN-CKD, on behalf of Stonebarger Law, A Professional Corporation; Declaration submitted June 24, 2016; Deposition on July, 29; Supplemental Declaration submitted September 8, 2016.

**United States District Court for the Southern District of Florida,** *Angela Sanchez-Knutson v. Ford Motor Company*, Case No. 14:61344-CIV DIMITROULEAS, on behalf of Kelley Uustal Trial Attorneys; Deposition on June 1, 2016.

**United States District Court, Central District of California,** *Jacqueline Dean, on behalf of herself and all others similarly situated, v. Colgate-Palmolive Co.*, Case No. 5:15-cv-00107, on behalf of Bursor & Fisher, P.A.; Declaration submitted April 29, 2016; Deposition on July 13, 2016; Reply Declaration submitted on May 2, 2017.

**United States District Court, District of New Jersey,** *In re: AZEK Decking Marketing & Sales Practices Litigation*, Case No. 12-cv-06627-MCA-MAH, on behalf of Seeger Weiss, LLP; Declaration submitted February 26, 2016; Declaration submitted May 16, 2016; Deposition on July 6, 2016; Reply Declaration submitted August 29, 2016.

**United States District Court. Northern District of California,** *In re: Nest Labs Litigation*, Case No. 5:14-cv-01363-BLF, on behalf of Bursor & Fisher, P.A.; Declaration submitted on January 22, 2016; Deposition on March 2, 2016; Reply Declaration submitted on June 3, 2016.



**United States District Court, Northern District of California,** *Rohini Kumar, an individual, on behalf of herself, the general public and those similarly situated, v. Salov North America Corp.; And Italfoods, Inc.*, Case No. 4:14-cv-02411-YGR, on behalf of Gutride Safier LLP; Declaration submitted on January 19, 2016; Deposition on February 24, 2016; Reply Declaration submitted on May 10, 2016; Declaration submitted on April 11, 2017, Declaration submitted on May 16, 2017.

**United States District Court, Northern District of Ohio, Eastern Division,** *Christopher Meta, On Behalf Of Himself And All Others Similarly Situated v. Target Corporation, et al.*, Case No. 4:14-0832-DCN, on behalf of Tycko & Zavareei, LLP, Declaration submitted January 6, 2016; Deposition on March 15, 2016; Reply Declaration submitted on March 18, 2016.

**United States District Court, District of New Jersey,** *Charlene Dzielak, Shelley Baker, Francis Angelone, Brian Maxwell, Jeffery Reid, Kari Parsons, Charles Beyer, Jonathan Cohen, Jennifer Schramm, and Aspasia Christy on behalf of themselves and all others similarly situated, v. Whirlpool Corporation, Lowe's Home Center, Sears Holdings Corporation, The Home Depot, Inc., Fry's Electronics, Inc., And Appliance Recycling Centers Of America, Inc.,* Case No. 12-cv-0089-KM-JBC, on behalf of Bursor & Fisher, P.A., Declaration submitted December 28, 2015; Deposition on April 22, 2016; Rebuttal Declaration submitted June 10, 2016.

**United States District Court, District of New Jersey,** *In re: Tropicana Orange Juice Marketing and Sales Practices Litigation,* Case No. 12-cv-7382-WJM-JBC, on behalf of Carella, Byrne, Cecchi, Olstein, Brody & Agnello, PC.; Declaration submitted on November 6, 2015; Deposition on January 28, 2016.

**United States District Court, Northern District of California**, *Scott Koller, an individual, on behalf of himself, the general public and those similarly situated v. Deoleo USA, Inc. and Med Foods, Inc.*, Case No. 3:14-cv-02400-RS, on behalf of Gutride Safier LLP; Declaration submitted on October 29, 2015; Deposition on December 21, 2015; Reply Declaration submitted on April 3, 2017.

**United States District Court, Eastern District Of New York,** *Patrick Hughes and Nafisé Nina Hodjat, individually and on behalf of others similarly situated, v. The Ester C Company; NBTY, Inc.; and Naturesmart, LLC*, Case No. 12-cv-00041-JFB-ETB, on behalf of Reese LLP and WhatleyKallas LLP; Declaration submitted October 22, 2015; Deposition on December 1, 2015; Reply Declaration submitted on January 28, 2016; Surrebuttal Declaration submitted on April 20, 2016; oral testimony and cross examination on September 20, 2016.

**United States District Court, District Of Connecticut,** *Glen Grayson, and Doreen Mazzanti, individually and on behalf of themselves and all others similarly situated, v. General Electric Company*, Case No. 3:13-cv-01799-WWE, on behalf of Izard Nobel LLP; Declaration submitted October 15, 2015; Deposition on November 17, 2015; Rebuttal Declaration submitted March 23, 2016.



**United States District Court, District of New Jersey,** *Lynne Avram, on behalf of herself and all others similarly situated, v. Samsung Electronics America Inc., and Lowe's Home Centers, Inc.*, Case No. 11-cv-6973-KM-MCA, on behalf of Faruqi & Faruqi LLP; Declaration filed July 15, 2015; Deposition September 29, 2015.

**United States District Court, District of Connecticut,** *Heidi Langan, on behalf of herself and all others similarly situated, v. Johnson & Johnson Consumer Companies, Inc.*, Case No. 3:13-cv-01471-RNC, on behalf of Izard Nobel LLP; Declaration filed June 23, 2015; Deposition on July 21, 2015; Reply Declaration filed October 15, 2015.

**United States District Court, Eastern District of California,** *Yesenia Melgar, on behalf of herself and all others similarly situated, v. Zicam LLC, and Matrixx Initiatives, Inc.*, Case No. 2:14-cv-00160-MCE-AC, on behalf of Bursor & Fisher, PA; Declaration filed June 8, 2015.

**United States District Court, Central District of California, Eastern Division-Riverside** *Michael J. Otto, individually, and on behalf of other members of the general public similarly situated, v. Abbott Laboratories, Inc.*, Case No. 12-01411-SVW(DTBx), on behalf of Baron & Budd; Declaration filed May 25, 2015; Deposition on June 2, 2015; Supplemental Declaration filed July 6, 2015.

**United States District Court, Central District of California,** *Russell Minoru Ono, individually and on behalf of others similarly situated, v. Head Racquet Sports USA, a corp. and Head USA Inc.*, Case No. 13-04222-FMO, on behalf of Baron & Budd; Declaration filed April 24, 2015, Deposition on June 30, 2015; Reply Declaration filed July 2, 2015.

**United States District Court, Southern District of Florida,** *Vanessa Lombardo, on behalf of herself and all others similarly situated, v. Johnson & Johnson Consumer Companies and Neutrogena Corporation*, Case No. 13-60536-SCOLA, on behalf of Morgan & Morgan; Declaration filed March 31, 2015.

**United States District Court, Eastern District of New York,** *D. Joseph Kurtz, individually and on behalf all others similarly situated, v. Kimberly-Clark Corporation and Costco Corporation*, Case No. 14-01142-JBW, on behalf of Robbins Geller Rudman & Dowd LLP; Declaration filed February 27, 2015; Rebuttal Declaration filed March 27, 2015.

**United States District Court, Eastern District of New York,** *Anthony Belfiore, on behalf of himself and all others similarly situated, v. Procter & Gamble*, Case No. 14-04090-JBR, on behalf of Wolf Popper LLP; Declaration filed February 27, 2015; Rebuttal Declaration filed April 30, 2015.

**United States District Court, Northern District of California,** *Patrick Hendricks, individually and on behalf of all others similarly situated, v. StarKist Co.*, Case No. 13-0729-YGR, on behalf of Bursor & Fisher, PA; Declaration filed January 20, 2015; Deposition on February 10, 2015; Reply Declaration filed April 7, 2015.



**United States District Court, Northern District of California, San Francisco Division,** *Scott Miller and Steve Leyton, individually and on behalf  themselves, the general public and those similarly situated v. Ghirardelli Chocolate Company*, Case No. 12-04936-LB, on behalf of Gutride Safier LLP, Declaration filed January 8, 2015; Reply Declaration filed February 5, 2015.

**United States Bankruptcy Court, Eastern District of New York,** *In re: Kangadis Food Inc., d/b/a The Gourmet Factory, Debtor*, Case No. 14-72649-REG, on behalf of Bursor & Fisher, PA; Declaration filed August 5th, 2014; Oral testimony on November 24, 2014.

**United States District Court, Southern District of New York,** *Joseph Ebin and Yeruchum Jenkins, individually and on behalf of all others similarly situated v. Kangadis Family Management LLC, Aristidia Kangadis a/k/a "Mr. Aris," Andromahi Kangadis a/k/a "Mrs. Mahi," and Themis Kangadis*, Case No. 14-cv-1324-JSR, on behalf of Bursor & Fisher, PA; Declaration filed August 5, 2014; Deposition on October 9, 2014.

**United States District Court, Northern District of California, San Francisco Division,** *Erin Allen, on behalf of herself and all others similarly situated, v. Con Agra Foods, Inc.*, Case No. 13-cv-01279-VC, on behalf of Hagens Berman Sobol Shapiro LLP and The Eureka Law Firm; Declaration filed August 11, 2014; Deposition on September 30, 2014.

**United States District Court, Eastern District of California,** *Kyle Dei Rossi and Mark Linthicum, on behalf of themselves and those similarly situated, v. Whirlpool Corporation*, Case No. 12-cv-00125-TLN-CKD, on behalf of Bursor & Fisher, P.A.; Declaration filed July 31, 2014, Deposition on August 20, 2014.

**United States District Court, Northern District of Illinois, Eastern Division,** *In re: Southwest Airlines Voucher Litigation.*, Case No. 11-cv-8176, Hon. Matthew Kennelly, on behalf of Siprut PC; Declaration filed June 4, 2014; Oral testimony and cross examination on June 16, 2014.

**United States District Court, Central District of California, Western Division,** *In re: ConAgra Foods, Inc.*, Case No. 11-cv-05379-MMM, MDL No. 2291, on behalf of Milberg LLP and Grant & Eisenhofer, P.A.; Declaration filed May 5, 2014; Deposition on May 23, 2014; Declaration filed June 30, 2014; Declaration filed September 8, 2014; Deposition on September 16, 2014, Declaration filed October 27, 2014.

**United States District Court, Southern District of New York,** *In re: Scotts EZ Seed Litigation*, Case No. 12-cv-4727-VB, on behalf of Bursor & Fisher, PA; Declaration filed March 31, 2014; Deposition on May 21, 2014; Declaration filed on January 8, 2016; Deposition on February 10, 2016; Reply Declaration submitted June 30, 2016; Declaration submitted September 1, 2016; Declaration submitted on October 20, 2016.



**United States District Court, Central District of California,** *Julie Fagan, Michael Fagan, Melissa Pennalatore, Amy Sapeika and Shelley Trinchero, individually and on behalf of all others similarly situated v. Neutrogena Corporation*, Case No. 13-cv-01316-SVW, on behalf of Izard Nobel LLP; Declaration filed March 21, 2014; Deposition on April 3, 2014; Supplemental Declaration filed August 4, 2014; Deposition on August 13, 2014; Declaration filed September 9, 2014.

**United States District Court, Central District of California,** *Enzo Forcellati and Lisa Roemmich, individually and on behalf of all others similarly situated v. Hyland's Inc., Standard Homeopathic Laboratories, Inc. and Standard Homeopathic Company*, Case No. 12-cv-01983-GHK, on behalf of Faruqi and Faruqi; Declaration filed December 13, 2013; Deposition on February 27, 2014.

**United States District Court, Southern District of Florida,** *Adam Karhu, on behalf of himself and all others similarly situated, v. Vital Pharmaceuticals, Inc., d/b/a VPX Sports*, Case No. 13-cv-60768-JIC, on behalf of Thornton, Davis, & Fein, P.A., Declaration filed December 13, 2013; Declaration filed January 6, 2014; Declaration filed March 31, 2014.

**Trial Court of Massachusetts, District of Edgartown,** *Schepici v. JetBlue Airways Corp.,* on behalf of plaintiff; Mediation on December 4, 2013.

**Superior Court of California, County of Alameda,** *In re: Cellphone Termination Fee Cases, Ramzy Ayyad, et al, v. Sprint Spectrum, L.P.,* JCCP No. 4332, Case No. RG03-121510, on behalf of the Executive Committee; Declaration filed September 18, 2013.

**United States District Court, Northern District of California,** *Maria Torres, Gabriel Rojas, and Ian Kerner, individually and on behalf of all others similarly situated v. JC Penney Corporation, Inc.; and JC Penney Company, Inc.,,* Case No. cv-12-01105-RS, on behalf of Bramson, Plutzik, Mahler and Birkhaeuser; Declaration filed September 13, 2013; Deposition on October 2, 2013.

**United States District Court, Southern District of New York,** *Joseph Ebin and Yeruchum Jenkins, individually and on behalf of all others similarly situated v. Kangadis Foods Inc*, Case No. 13-cv-02311-JSR, on behalf of Bursor & Fisher, PA; Declaration filed August 26, 2013; Deposition on October 21, 2013.

**United States District Court, Northern District of California,** *Desiree Moore, on behalf of themselves, the general public, and all those similarly situated, v. Verizon Communications*, Case No. 4:09-cv-01823-SBA, on behalf of David Schachman and Associates PC, Jacobs Kolton Chtd., and Keller Grover, LLP; Declaration filed June 24, 2013.

**American Arbitration Association,** *[Redacted for public inspection]*, on behalf of Claimant; Oral testimony and cross examination on March 1, 2013.

**American Arbitration Association,** *[Redacted for public inspection]*, on behalf of Claimant; Oral testimony and cross examination on February 20, 2013.

**American Arbitration Association,** *[Redacted for public inspection]*, on behalf of Claimant; Oral testimony and cross examination on February 19, 2013.

9



**American Arbitration Association,** *[Redacted for public inspection]*, on behalf of Claimant; Oral testimony and cross examination on February 13, 2013.

**American Arbitration Association,** *[Redacted for public inspection]*, on behalf of Claimant; Oral testimony and cross examination on February 7, 2013.

**American Arbitration Association,** *[Redacted for public inspection]*, on behalf of Claimant; Oral testimony and cross examination on February 4, 2013.

**American Arbitration Association,** *[Redacted for public inspection]*, on behalf of Claimant; Oral testimony and cross examination on January 24, 2013.

**American Arbitration Association,** *[Redacted for public inspection]*, on behalf of Claimant; Oral testimony and cross examination on December 12, 2012.

**American Arbitration Association,** *[Redacted for public inspection]*, on behalf of Claimant; Oral testimony and cross examination on December 10, 2012.

**American Arbitration Association,** *[Redacted for public inspection]*, on behalf of Claimant; Oral testimony and cross examination on November 28, 2012.

**American Arbitration Association,** *[Redacted for public inspection]*, on behalf of Claimant, Declarations filed October 4, 2012 and November 5, 2012; Oral testimony and cross examination on November 27, 2012.

**American Arbitration Association,** *[Redacted for public inspection]*, on behalf of Claimant, Declaration filed April 16, 2012; Oral testimony and cross examination on May 11, 2012.

**United States District Court, District of Massachusetts,** *Marcy Cruz v. Justin Kagan, Arthur Hegarty, Ronald Teachman, and the City of New Bedford*, Case No. 1:09-cv-11793-RGS, on behalf of Marcy Cruz, Expert Report filed February 28, 2011; Oral testimony and cross examination on December 1, 2011.

**United States District Court, Southern District of New York,** *Bursor & Fisher P.A., v. Federal Communications Commission*, Case No. 1:11-cv-05457-LAK, on behalf of Bursor & Fisher P.A., Declaration filed August 17, 2011.

**United States District Court, District of New Jersey,** *In Re: Sprint Premium Data Plan Marketing and Sales Practices Litigation,* Master Case No. 10-6334 (SDW) MDL No. 2228**,** on behalf of Thornton, Davis, & Fein, P.A., Declaration filed August 11, 2011.

**United States District Court, Northern District of California,** *Patrick Hendricks, on behalf of himself and all others similarly situated, v. AT&T Mobility LLC,* Case No. C11-00409, on behalf of Bursor & Fisher, P.A., Declaration filed August 7, 2011.

**Federal Communications Commission,** *In the Matter of Applications of AT&T Inc. & Deutsche Telekom AG for Consent to Assign or Transfer Control of Licenses and Authorizations*, WT Docket No. 11-65, on behalf of Butch Watson, Declaration filed June 20, 2011.



**California Public Utilities Commission,** *Pacific Bell Telephone Company d/b/a AT&T California (U1001C) Complainant, vs. O1 Communication, Inc. (U 6065 C), Defendant*, Case No. C.08-03-001, on behalf of the O1 Communications, Inc., Reply Testimony filed November 6, 2009; Oral testimony and cross examination on November 16, 2009.

**Superior Court of California, County of Alameda**, *James Thomas, on behalf of themselves, the general public, and all those similarly situated, v. Global Vision Products, Inc., Anthony Imbriolo, Derrike Cope, David L. Gordon, Powertel Technologies, Inc., Craig Dix, Henry Edelson and Robert Debenedictis,* Case No. RG03-091195, on behalf of the Law Offices Of Scott A. Bursor, Oral testimony and cross examination on November 9, 2009.

**United States District Court, District of New Jersey,** *Judy Larson, Barry Hall, Joe Milliron, Tessie Robb, and Willie Davis, individually and on behalf of all others similarly situated, v. AT&T Mobility LLC f/k/a Cingular Wireless LLC and Sprint Nextel Corporation and Sprint Spectrum L.P. d/b/a Sprint Nextel and Nextel Finance Company, Civ. Act. No. 07-5325 (JLL)*, on behalf of PinilisHalpern, LLP and Law Offices of Scott A. Bursor, Declaration filed *under seal* October 19, 2009.

**California Public Utilities Commission,** *Pacific Bell Telephone Company d/b/a AT&T California (U1001C) Complainant, vs. Pac-West Telecomm, Inc. (U 5266 C), Defendant*, Case No. C.08-09-017, on behalf of the Pac-West Telecomm, Inc., Rebuttal Testimony filed May 1, 2009.

**Illinois Commerce Commission,** Illinois Bell Telephone Company Annual Rate Filing for Non-Competitive Services Under an Alternative Form of Regulation, Ill. C. C. Docket No. 08-0249, on behalf of the People of the State of Illinois, Declaration filed May 2, 2008.

**Federal Communications Commission,** Qwest Petition for Forbearance Under 47 U.S.C. §160(c) From Title II and *Computer Inquiry Rules* with Respect to Broadband Services, Petition of AT&T Inc, For Forbearance Under 47 U.S.C. §160(c) From Title II and *Computer Inquiry Rules* with Respect to Broadband Services, Petition of BellSouth Corporation For Forbearance Under 47 U.S.C. §160(c) From Title II and *Computer Inquiry Rules* with Respect to Broadband Services, Petition of the Embarq Local Operating Companies for Forbearance Under 47 U.S.C. §160(c) From Application of *Computer Inquiry* and certain Title II Common Carriage Requirements; WC Docket Nos. 06-125 and 06-147, on behalf of the AdHoc Telecommunications Users Committee, Declaration filed October 9, 2007.

**Superior Court of California, County of Alameda**, *James Thomas, on behalf of themselves, the general public, and all those similarly situated, v. Global Vision Products, Inc., Anthony Imbriolo, Derrike Cope, David L. Gordon, Powertel Technologies, Inc., Craig Dix, Henry Edelson and Robert Debenedictis,* Case No. RG03-091195, on behalf of the Law Offices Of Scott A. Bursor, Declaration filed January 5, 2007; Deposition on November 13, 2007; Oral testimony and cross-examination on December 19, 2007; Oral testimony on January 9, 2008.

Mr. Weir has served as a consultative expert in numerous proceedings that did not result in testimony, and has contributed research and analysis to numerous additional publications and testimony at the state, federal, and international levels.



# Exhibit 2

# Documents Reviewed

- Class Action Complaint, April 22, 2016

- Declaration of Jon Krosnick, August 11, 2017

- CMG-7184 - 001112 to 1195

- CMG-7184-001200 MD Sales Data

- CMG-7184-001201 NY Sales Data

- CMG-7184-001202 CA Sales Data

- CMG-7184 - 001203 to 3949

- 2017_06_29_15_03_33.pdf

- Chipotle_Brand Tracking_Q2_7.15.15 FINAL

- Chipotle_Q1_2015_Tracking_04132015 FINAL

- CMG -7184 - 004261-4368

- CMG -7184 - 3344 - 3387

- CMG -7184 - 3388 - 3435

- 'GMO-Free' Is A Boon For Companies Chasing 'Health Halo' Profits, NPR, August 19, 2015, http://www.npr.org/sections/thesalt/2015/08/19/432774389/gmos-are-becoming-a-proxy-for-bigger-concerns-about-the-food-system

- Case, Fair & Oster, Principles of Microeconomics, 9th Edition, 2009

- Applying Conjoint Analysis to Legal Disputes: A Case Study, Wind, Yoram, et al.

- Khoday v. Symantec Corp., No. 11-180 (JRT/TNL), 2014 WL 1281600, at *10 (March 13, 2014)

- Sanchez-Knutson v. Ford Motor Company, Case No. 14-61344-CIV-DIMITROULEAS, Order, October 6, 2015

- In re: Lenovo Adware Litigation, Case no. 15-md-02624-RMW (USDC NDC-SJD) DKT 153 (October 27, 2016)

- Chipotle Mexican Grill, 10-K Annual Reports filed with the US Securities and Exchange Commission

- Chipotle.com

- SEC.GOV