MESSNER REEVES LLP
Charles C. Cavanagh (CA State Bar No. 198468)
Jacqueline R. Guesno (*Pro Hac Vice*)
1430 Wynkoop Street, Suite 300
Denver, Colorado 80202
Telephone: (303) 623-1800
Facsimile: (303) 623-0552
E-mail: ccavanagh@messner.com
         jguesno@messner.com

SHEPPARD, MULLIN, RICHTER & HAMPTON, LLP
Sascha Henry (CA State Bar No. 191914)
333 South Hope Street, 43rd Floor
Los Angeles, California 90071
Telephone: (213) 620-1780
Facsimile: (213) 620-1398
E-mail: shenry @sheppardmullin.com

Attorneys for Defendant
CHIPOTLE MEXICAN GRILL, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARTIN SCHNEIDER, et al., individually and on behalf of all others similarly situated.<br><br>Plaintiffs,<br><br>v.<br><br>CHIPOTLE MEXICAN GRILL, INC., a Delaware corporation.<br><br>Defendant. | Case No.: 16-CV-02200-HSG<br><br>**DEFENDANT CHIPOTLE MEXICAN GRILL, INC.'S MOTION TO EXCLUDE EXPERT REPORT AND TESTIMONY OF COLIN B. WEIR**<br><br>Judge: Hon. Haywood S. Gilliam, Jr.<br>Ctrm.: 2 (Oakland Courthouse)<br>Hearing Date: February 8, 2018<br>Hearing Time: 2:00 p.m.<br><br>Action Filed: April 22, 2016<br>Trial Date: TBD |

## NOTICE OF MOTION AND MOTION TO EXCLUDE EXPERT REPORT AND TESTIMONY

TO PLAINTIFFS MARTIN SCHNEIDER, NADIA PARIKKA, SARAH DEIGERT, AND THERESA GAMAGE (COLLECTIVELY, "PLAINTIFFS") AND THEIR ATTORNEYS OF RECORD:

Defendant Chipotle Mexican Grill, Inc. ("Chipotle") hereby moves for an order excluding the expert opinions of Plaintiffs' retained expert Colin Weir, disclosed in the Declaration of Colin B. Weir, submitted as Exhibit 42 in support of Plaintiffs' Motion for Class Certification, served by Plaintiffs on August 11, 2017, and explored in Mr. Weir's deposition on September 27, 2017. Mr. Weir's expert opinions should be excluded because they do not meet the requirements of admissibility of expert testimony set forth in Federal Rules of Evidence 403, 702, and 704, as well as in *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993) and its progeny. This Motion is based upon the following Memorandum of Points and Authorities and the evidence cited therein, as well as on any additional arguments and evidence that may be presented on reply or at the hearing of this Motion.

Dated: December 22, 2017         MESSNER REEVES, LLP
                                 SHEPPARD, MULLIN, RICHTER & HAMPTON, LLP

                                 By: _____
                                     Charles C. Cavanagh
                                     Attorneys for Defendant
                                     CHIPOTLE MEXICAN GRILL, INC.

## STATEMENT OF THE ISSUES TO BE DECIDED

This Motion raises the following issues:

1. Whether Mr. Weir's opinions are based on scientific, technical or specialized knowledge, pursuant to Fed. R. Evid. 702(a).

2. Whether Mr. Weir makes improper legal conclusions.

3. Whether Mr. Weir conducted an independent evaluation of the expert opinions on which he relies.

4. Whether Mr. Weir's opinions are based on reliable data.

5. Whether the probative value of Mr. Weir's expert report, if any, is outweighed by the risk of undue prejudice, confusing the issues or misleading the jury, pursuant to Fed. R. Evid. 403.

## TABLE OF CONTENTS

I. INTRODUCTION ........................................................................................................ 1

II. SUMMARY OF EXPERT REPORT ...................................................................... 1

III. GOVERNING LEGAL STANDARDS .................................................................. 3

IV. ARGUMENT .............................................................................................................. 4

    a. Mr. Weir's Opinion Is Not Based On Scientific, Technical, Or Specialized Knowledge. ................................................................................ 4

    b. Mr. Weir's Report Contains Inadmissible Legal Conclusions. ............ 5

    c. Mr. Weir Relies On The Opinions Of Another Expert Without Proper Verification. ............................................................................................. 7

    d. Mr. Weir's Report Is Based On Irrelevant And Unreliable Data. ...... 11

    e. Any Probative Value Of Mr. Weir's Report Is Outweighed By The Danger That It Will Prejudice Chipotle, Confuse The Issues, Or Mislead The Jury. ................................................................................. 13

V. CONCLUSION ........................................................................................................ 14

## TABLE OF AUTHORITIES

**Federal Cases**

*AFMS LLC v. United Parcel Serv. Co.*, 2014 WL 12515335 (C.D. Cal. Feb. 5, 2014) ................ 6

*Apollo Grp. Inc. Securities Litig.*, 527 F. Supp. 2d 957 (D. Ariz. 2007) ........................................ 5

*Beech Aircraft Corp. v. U.S.*, 51 F.3d 834 (9th Cir. 1995) .............................................................. 5

*Chong v. STL Intern., Inc.*, 152 F. Supp. 3d 1305 (D. Ore. 2016) .................................................. 6

*City of Pomona v. SQM N. Am. Corp.*, 866 F.3d 1060 (9th Cir. 2017) ......................................... 3

*Daubert v. Merrell Dow Pharm., Inc.* ("*Daubert II*"), 43 F.3d 1311 (9th Cir. 1995) ............... 4, 5

*Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993) ........................................................ 3, 4

*Druyan v. Jagger*, 508 F. Supp. 2d 228 (S.D.N.Y. 2007) ............................................................. 14

*Dura Auto. Sys. of Ind., Inc. v. CTS Corp.*, 285 F.3d 609 (7th Cir. 2002) ................................... 16

*Ellis v. Costco Wholesale Corp.*, 657 F.3d 970 (9th Cir. 2011) ...................................................... 3

*Estate of Barabin v. AstenJohnson, Inc.*, 740 F.3d 457 (9th Cir. 2014) (en banc), *cert. denied*, 135 S. Ct. 55 (2014) ........................................................................................................................ 3

*Fosmire v. Progressive Max Ins. Co.*, 277 F.R.D. 625 (W.D. Wash. 2011) ................................ 10

*GPNE Corp. v. Apple, Inc.*, 2014 WL 1494247 (N.D. Cal. Apr. 16, 2014) .................................. 4

*Hufnagel v. McGraw-Hill Cos.*, 2014 WL 12527209 (E.D. Wash. July 24, 2014) ..................... 13

*In re ConAgra Foods, Inc.*, 302 F.R.D. 537 (C.D. Cal. 2014) ...................................................... 13

*In re ConAgra Foods, Inc.*, 90 F. Supp. 3d 919 (C.D. Cal. 2015) ................................................ 12

*In re Dial Complete Mktg. & Sales Practices Litig.*, 320 F.R.D. 326 (D.N.H. 2017) .................. 12

*In re Novatel Wireless Sec. Litig.*, 2012 WL 5463214 (S.D. Cal. Nov. 8, 2012) ......................... 16

*In re Silicone Gel Breast Implants Prods. Liab. Litig.*, 318 F. Supp. 2d 879 (C.D. Cal. 2004) ... 4

*In re Toyota Motor Corp. Unintended Mktg., Sales Practices, & Products Liab. Litig.*, 978 F. Supp. 2d 1053 (C.D. Cal. 2013) ............................................................................................. 13, 15

*Klein v. Sec'y of Transp., U.S. Dep't of Transp.*, 807 F. Supp. 1517 (E.D. Wash. 1992) ........... 15

*Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999) .................................................................... 4

*LSQ Funding Grp., L.C. v. EDS Field Servs.*, 879 F. Supp. 2d 1320 (M.D. Fla. 2012) ............... 7

*Lust v. Merrell Dow Pharm., Inc.*, 89 F.3d 594 (9th Cir. 1996) ..................................................... 3

*Mallatier v. Dooney & Bourke, Inc.*, 525 F. Supp. 2d 558 (S.D.N.Y. 2007) ............................... 11

*Moses v. Payne*, 555 F.3d 742 (9th Cir. 2009) ................................................................................. 5

*MySpace, Inc. v. Wallace,* 498 F. Supp. 2d 1293 (C.D. Cal. 2007) ................................................. 9

*Naff v. State Farm Gen. Ins. Co.*, 2016 WL 4095948 (E.D. Cal. Aug. 2, 2016) ............................. 8

*Nationwide Transp. Fin. v. Cass Info. Systems, Inc.*, 523 F.3d 1051 (9th Cir. 2008) ................... 8

*Pellegrini v. Gooder,* 2012 WL 12893745 (C.D. Cal. Dec. 6, 2012) ............................................... 8

*Perry v. Schwarzenegger*, 704 F. Supp. 2d 921 (N.D. Cal. 2010) ..................................................... 6

*Primiano v. Cook*, 598 F.3d 558 (9th Cir. 2010) ............................................................................. 5

*Rogers v. Raymark Indus., Inc.*, 922 F.2d 1426 (9th Cir. 1991) ..................................................... 17

*S.E.C. v. Capital Consultants, LLC*, 397 F.3d 733 (9th Cir. 2005) ................................................. 7

*Travelers Prop. Cas. Ins. Co. v. Electrolux Home Products Inc.*, 2013 WL 12114615 (C.D. Cal. June 7, 2013) ..................................................................................................................... 9

*Viterbo v. Dow Chem. Co.,* 826 F.2d 420 (5th Cir. 1987) ............................................................. 16

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) ..................................................................... 3

*Williams v. Gerber Prods. Co.*, 552 F.3d 934 (9th Cir. 2008) ....................................................... 14

**State Cases**

*Luskin's, Inc. v. Consumer Protection Div.*, 353 Md. 335 (1999) ................................................. 14

**Federal Rules**

**Fed. R. Evid. 403** ............................................................................................................................ 19

**Fed. R. Evid. 702** .............................................................................................................................. 6

**Fed. R. Evid. 704** ............................................................................................................................ 11

**State Statutes and Regulations**

**Cal. Civ. Code § 1780(a)(4)** ............................................................................................................. 7

**Cal. Civ. Code § 1780(b)(1)** ............................................................................................................. 7

**Cal. Civ. Code §§ 1761(f), (g)** ......................................................................................................... 8

**N.Y. Gen. Bus. Law § 350-d** ........................................................................................................... 9

**N.Y. Gen. Bus. Law. § 349(h). Section 350** ................................................................................... 9

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

This action is the latest in a string of unsuccessful challenges to Chipotle's statements regarding the removal of genetically-modified organisms ("GMOs") from the ingredients Chipotle uses in its domestic restaurants. Plaintiffs' claims are premised on a fundamental misunderstanding of GMOs—namely, that the meat and dairy by-products of an animal become genetically-modified if the animal consumed genetically-modified feed. Nonetheless, Plaintiffs retained two experts—Dr. Jon Krosnick and Colin Weir—in an attempt to establish that Chipotle's non-GMO statements resulted in a price premium by way of a fatally flawed consumer survey designed and executed by Dr. Krosnick.

Dr. Krosnick's survey and resulting expert report are inadmissible for the reasons outlined in Chipotle's concurrently-filed Motion to Exclude Expert Testimony of Dr. Jon A. Krosnick. Mr. Weir's damages opinion relies entirely on Dr. Krosnick's unreliable methods and conclusions; and, for that reason alone, Mr. Weir's expert report is also inadmissible. Additionally, Mr. Weir's opinions are inadmissible in their own right. Specifically, Mr. Weir's opinions are not helpful to a jury, outside the purview of an expert witness, not based on reliable data or methods, and likely to confuse or mislead the jury. Accordingly, the Court should exclude Mr. Weir's expert report and preclude Mr. Weir from testifying on Plaintiffs' behalf.

## II. SUMMARY OF EXPERT REPORT

Mr. Weir holds a Masters of Business Administration from Northeastern University, and a Bachelor of Arts degree from The College of Wooster. (Weir Decl. [Plaintiffs' Ex. 42], ¶ 1.) Mr. Weir also completed a training course "in conjoint survey design and implementation" through the Boston Economics Club and the Boston Bar Association. (Weir Depo. [Cavanagh Decl., Ex. G], p. 7:8-12.) Mr. Weir is the Vice President of Economics and Technology, Inc., and has acted as an expert witness in numerous civil lawsuits and regulatory proceedings. (Weir Decl. [Plaintiffs' Ex. 42], Ex. 1.) Mr. Weir has "been working conjoint surveys professionally for seven years." (Weir Depo. [Cavanagh Decl., Ex. G], 11:8-9.)

In the present case, Plaintiffs engaged Mr. Weir "to ascertain whether it would be possible to determine a method to calculate damages on a class-wide basis using common evidence, and if so, to provide a framework for the calculation of damages[.]" (Weir Decl. [Plaintiffs' Ex. 42], ¶ 4.) To that end, Mr. Weir reviewed, but did not substantively contribute to, the Report of Dr. Jon A. Krosnick, submitted as Exhibit 41 in support of Plaintiffs' Motion for Class Certification. (*See id.* at Ex. 2.) In other words, Mr. Weir was provided and reviewed Dr. Krosnick's final report as disclosed in this case; Mr. Weir was *not* provided and did *not* review Dr. Krosnick's underlying data. (Weir Depo. [Cavanagh Decl., Ex. G], p. 77:10-14.)

Mr. Weir describes Dr. Krosnick's methodology as a treatment and control experiment or a representative survey. (Weir Decl. [Plaintiffs' Ex. 42], 19, 20.) Mr. Weir avers that Dr. Krosnick's techniques "have been used in litigation contexts to calculate damages for years." (*Id.* at ¶ 20.) Mr. Weir further contends that both he and "[Dr.] Krosnick considered and accounted for supply side factors[.]" (*Id.* at ¶¶ 23, 24.) Dr. Krosnick testified that he did not consider supply side factors. (Krosnick Depo. [Cavanagh Decl., Ex. E], p. 166:20-23.) Mr. Weir, who merely adopts Dr. Krosnick's price premium calculation after-the-fact, purportedly considered the historic number of units sold, Chipotle's cost inputs, real world transactions, the quantity of products supplied, and the marketplace. (Weir Decl. [Plaintiffs' Ex. 42], ¶¶ 23, 27-30.)

Based on the price premium espoused in Dr. Krosnick's expert report—or, 2.47 percent— Mr. Weir calculates damages at over $24.5 million. (*Id.* at ¶¶ 31, 38.) More specifically, Mr. Weir first arrived at the total dollar sales of certain of Chipotle's products in California, Maryland, and New York between May 1, 2015, and June 30, 2016, by simple addition. (*See id*. at ¶¶ 33-35.) Then, Mr. Weir multiplied those sales figures by 2.47 percent to arrive at the price premium damages. (*Id.* at ¶¶ 36-38.) Mr. Weir conducted a similar computation for what he refers to as statutory damages under New York law. (*Id.* at ¶¶ 40-43.) Mr. Weir also opines that certain plaintiffs will be entitled to statutory and punitive damages under California law. (*See id*. at ¶¶ 44-46.) Finally, Mr. Weir asserts that damages can be calculated on a class-wide basis because individual consumers' interpretations of Chipotle's statements, uses of Chipotle's products, and reasons for purchase are irrelevant. (*Id.* at ¶¶ 47-55.)

## III. GOVERNING LEGAL STANDARDS

The opinion of a qualified expert is admissible if it is 1) helpful to the trier of fact; 2) "based on sufficient facts or data;" 3) "the product of reliable principles and methods;" and 4) reliable. Fed. R. Evid. 702. "It is the proponent of the expert who has the burden of proving admissibility." *Lust v. Merrell Dow Pharm., Inc.*, 89 F.3d 594, 598 (9th Cir. 1996). To the end, Rule 702 imposes a duty on the Court to act as the gatekeeper for the admissibility of expert testimony. *Estate of Barabin v. AstenJohnson, Inc.*, 740 F.3d 457 (9th Cir. 2014) (en banc), *cert. denied*, 135 S. Ct. 55 (2014); *see also City of Pomona v. SQM N. Am. Corp.*, 866 F.3d 1060, 1069 (9th Cir. 2017) (holding district court cannot abdicate gatekeeping role with respect to validity of expert testimony). This duty extends fully to expert testimony presented in the context of class-certification proceedings. *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 982 (9th Cir. 2011) (citing *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 354 (2011)).

"The trial court's gatekeeping function requires more than simply 'taking the expert's word for it.'" Fed. R. Evid. 702, advisory cmte. note (2000) (internal citation omitted). Rather, the district court is tasked with "ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993). All aspects of the expert work must be subject to this rigorous analysis. "[A]ny step that renders [the expert's] analysis unreliable . . . renders the expert's testimony inadmissible. This is true whether the step completely changes a reliable methodology or merely misapplies that methodology." *In re Silicone Gel Breast Implants Prods. Liab. Litig.*, 318 F. Supp. 2d 879, 890 (C.D. Cal. 2004) (internal citation omitted).

Reliable testimony is grounded in the methods and procedures of science and signifies something beyond "subjective belief or unsupported speculation." *Daubert*, 509 U.S. at 590. An expert cannot be a "black box into which data is fed at one end and from which an answer emerges at the other;" there must be a discernable methodology that can be evaluated and tested. *GPNE Corp. v. Apple, Inc.*, 2014 WL 1494247, at *4 (N.D. Cal. Apr. 16, 2014) (internal citation omitted). The task "is to analyze not what the experts say, but what basis they have for saying it." *Daubert v. Merrell Dow Pharm., Inc.* ("*Daubert II*"), 43 F.3d 1311, 1316 (9th Cir. 1995). The

court must subject the proposed testimony to rigorous analysis, including but not limited to, considerations of: (1) whether it can be tested; (2) whether the techniques or theories have been subject to peer review or publication; (3) the standards or controls used in the analysis; and (4) general acceptance of techniques or theories within the relevant scientific community. *Daubert*, 509 U.S. at 589-93; *see Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999) (*Daubert* requires the trial court assure itself that the expert "employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.").

In addition to "scientific" reliability, the trial court "must ensure that the proposed expert testimony is 'relevant to the task at hand,' i.e., that it logically advances a material aspect of the proposed party's case." *Daubert II*, 43 F.3d at 1315; *see also Primiano v. Cook*, 598 F.3d 558, 565 (9th Cir. 2010) ("Expert opinion testimony is relevant if the knowledge underlying it has a valid connection to the pertinent inquiry."). Thus, a court must exclude expert evidence if it is not convinced that the evidence speaks clearly and directly to an issue in dispute in the case and will not mislead. *Id.* at 1321, n.17.

## IV. ARGUMENT

### a. Mr. Weir's Opinion Is Not Based On Scientific, Technical, Or Specialized Knowledge.

First and foremost, an expert's opinion must be based on "scientific, technical, or other specialized knowledge [that] will help the trier of fact to understand the evidence or to determine a fact in issue[.]" Fed. R. Evid. 702(a). "Under Rule 702, expert testimony is helpful to the jury if it concerns matters beyond the common knowledge of the average layperson[.]" *Moses v. Payne*, 555 F.3d 742, 756 (9th Cir. 2009); *see also re Apollo Grp. Inc. Securities Litig.*, 527 F. Supp. 2d 957, 961-62 (D. Ariz. 2007) ("[E]xpert testimony is inadmissible if it concerns factual issues with the knowledge and experience of ordinary lay people, because it would not assist the trier of fact in analyzing the evidence.").

A district court must exclude evidence that is not helpful to the jury. *See, e.g., Beech Aircraft Corp.* v. U.S., 51 F.3d 834, 842 (9th Cir. 1995) (affirming decision to exclude expert testimony concerning what could be heard on recording because "hearing is within the ability and

experience of the trier of fact"); *Chong v. STL Intern., Inc.*, 152 F. Supp. 3d 1305, 1316 (D. Ore. 2016) (finding feasibility of alternative design for machine within common knowledge of jury); *Perry v. Schwarzenegger*, 704 F. Supp. 2d 921, 947 (N.D. Cal. 2010) (holding reading within ability and experience of trier of fact); *In*; *AFMS LLC v. United Parcel Serv. Co.*, 2014 WL 12515335, at *4 (C.D. Cal. Feb. 5, 2014) (excluding expert opinion "that coincidences are unlikely").

Here, Mr. Weir arrives at his compensatory damages opinion by way of simple multiplication using Dr. Krosnick's price premium percentage and the dollar amount of some of Chipotle's sales between May 1, 2015, and June 30, 2016, in California, Maryland, and New York. (Weir Decl. [Plaintiffs' Ex. 42], ¶¶ 37, 38.) The sales figures used by Mr. Weir are easily ascertainable from Chipotle's own sales data—which is already sorted by state and product—and requires little more than basic addition. (Sales Data [Cavanagh Decl., Ex. U].) Likewise, Mr. Weir calculates statutory damages by merely multiplying the number of units of some of Chipotle's products sold in New York between May 1, 2015, and June 30, 2016, by the maximum amount of damages per violation under New York's deceptive practices and false advertising statutes.[1] (Weir Decl. [Plaintiffs' Ex. 42], ¶¶ 41-43.); *see* N.Y. Gen. Bus. Law §§ 349, 350.

Mr. Weir has done nothing that the common layperson with elementary math skills could not also do; nor does Mr. Weir's opinion stem from any scientific, technical or specialized knowledge. In fact, by Mr. Weir's own admission, calculating the purported damages is "simple and straightforward." (Weir Decl. [Plaintiffs' Ex. 42], ¶ 36.) Thus, Mr. Weir's opinion concerning damages is not helpful to a jury and must be excluded. *See LSQ Funding Grp., L.C. v. EDS Field Servs.*, 879 F. Supp. 2d 1320, 1336 (M.D. Fla. 2012) (excluding damages opinion arrived at by "simple arithmetic calculation").

### b. Mr. Weir's Report Contains Inadmissible Legal Conclusions.

Mr. Weir opines regarding statutory damages under New York and California law. (*See* Weir Decl. [Plaintiffs' Ex. 42], ¶¶ 40-46.) Specifically, Mr. Weir claims to "have been advised" by

---

[1] For the reasons explained below, Mr. Weir's assertions concerning statutory damages under New York law are also erroneous and constitute improper legal conclusions.

5

Plaintiffs' counsel that N.Y. Gen. Bus. Law § 349 and § 350 allow for damages of $50 per violation and $500 per violation, respectively. (*Id*. at ¶ 41.) Mr. Weir then proceeds to calculate statutory damages allegedly owed to New York consumers based on total units sold by Chipotle between May 1, 2015, and June 30, 2016. (*Id*. at ¶ 43.) Mr. Weir further opines that Plaintiff Schneider "and others similarly situated would be eligible to receive up to five thousand dollars" pursuant to Cal. Civ. Code § 1780(b)(1). (*Id*. at ¶ 45.) Finally, Mr. Weir avers that "all Class members have suffered economic damage resulting from [Chipotle's] conduct" such that Plaintiffs can seek a punitive damages award under Cal. Civ. Code § 1780(a)(4).[2] (*Id*. at ¶ 46.) These portions of Mr. Weir's report are entirely inappropriate as expert opinions.

"Experts may interpret and analyze factual evidence but may not testify about the law." *S.E.C. v. Capital Consultants, LLC*, 397 F.3d 733, 749-50 (9th Cir. 2005). In other words, an expert cannot "tell the jury what 'the law' is or what it requires." *Naff v. State Farm Gen. Ins. Co.*, 2016 WL 4095948, at *12 (E.D. Cal. Aug. 2, 2016). That is the responsibility of the district court. *Nationwide Transp. Fin. v. Cass Info. Systems, Inc.*, 523 F.3d 1051, 1058 (9th Cir. 2008) ("[I]nstructing the jury as to the applicable law is the distinct and exclusive province of the court."). Mr. Weir's report, however, presumes to declare which laws govern this dispute, and even asserts that Plaintiffs will prevail on their substantive claims.

For example, Mr. Weir maintains that Plaintiff Schneider qualifies as both a senior citizen and "a disabled person due to ongoing health issues" under § 1780(b). (Weir Decl. [Plaintiffs' Ex. 42], ¶ 45.) Mr. Weir's opinion is nothing more than a bald and unsubstantiated legal conclusion, as "senior citizen" and "disabled person" are terms of art defined by statute. *See* Cal. Civ. Code §§ 1761(f), (g) (defining "senior citizen" and "disabled person"). Moreover, Mr. Weir's contention that Plaintiff Schneider and others "have suffered substantial economic damage" is particularly unhelpful because it invades the province of the jury and offers no substantive information. (Weir Decl. [Plaintiffs' Ex. 42], ¶ 45); *see Pellegrini v. Gooder,* 2012 WL 12893745, at *2 (C.D. Cal.

---

[2] Mr. Weir's characterization of the alleged affected persons is both procedurally and factually inaccurate. At this time, there are no "Class members" as Plaintiffs' proposed classes have not been certified by the Court.

Dec. 6, 2012) ("An expert's legal conclusions are unhelpful to the jury because they provide no information other than the witness's view of how the verdict should read.") (internal quotations omitted); *see also* Fed. R. Evid. 704, advisory cmte. note (cautioning "against the admission of opinions which would merely tell the jury what result to reach").

In addition to being improper legal conclusions, Mr. Weir's statements as to statutory damages under New York law are misleading, at best, and wholly inaccurate, at worst. (*See* Weir Decl. [Plaintiffs' Ex. 42], ¶¶ 41-43.) Section 349 permits an injured party to recover *either* actual damages or $50, but not both. *See* N.Y. Gen. Bus. Law. § 349(h). Section 350 does not provide for any damages whatsoever. Rather, Section 350-d imposes a civil penalty up to $5,000 for each violation "which shall accrue *to the state of New York*" and may be recovered by the attorney general.[3] N.Y. Gen. Bus. Law § 350-d (emphasis added). There is no scenario under which Section 350-d—or Section 350 for that matter—allows an individual plaintiff to collect statutory damages in the amount of $500 per violation, as Mr. Weir opines.

Mr. Weir's opinions as to the purported statutory damages at issue constitute both improper legal conclusions and incorrect statements of law, and are therefore inadmissible. *See, e.g., Cass Info.,* 523 F.3d at 1059 (affirming exclusion of expert testimony and report containing erroneous statements of law as "not only superfluous but mischievous") (internal quotations omitted); *MySpace, Inc. v. Wallace,* 498 F. Supp. 2d 1293, 1299 (C.D. Cal. 2007) (rejecting expert declaration giving legal conclusions on interpretation of statutes at issue in lawsuit).

### c. Mr. Weir Relies On The Opinions Of Another Expert Without Proper Verification.

"Experts may…rely on information prepared by other experts, if they verify the validity and reliability of that data." *Travelers Prop. Cas. Ins. Co. v. Electrolux Home Products Inc.*, 2013 WL 12114615, at *4 (C.D. Cal. June 7, 2013); *see also Fosmire v. Progressive Max Ins. Co*., 277 F.R.D. 625, 630 (W.D. Wash. 2011) ("The rules do not permit an expert to rely upon opinions developed by another expert for purposes of litigation without independent verification of the

---

[3] On July 3, 2007, Section 350-d was amended to increase the applicable civil penalty from $500 to $5,000. *See* 2007 Sess. Law News of N.Y. Ch. 208 (S. 4306) (McKinney's).

underlying expert's work."). In this case, Mr. Weir did not undertake any efforts to substantiate Dr. Krosnick's methodology or conclusions, although Mr. Weir singularly relies on them as the bases for his own expert opinion.

In connection with his engagement for Plaintiffs, Mr. Weir spoke with Dr. Krosnick by telephone approximately four times; the two did not exchange any emails.[4] (Weir Depo. [Cavanagh Decl., Ex. G], pp. 53:2-6, 54:11-20; *see also* Krosnick Depo. [Cavanagh Decl., Ex. E], p. 191:7-23.) During their conversations, Mr. Weir and Dr. Krosnick discussed "[c]ertain elements of the design of the survey" and Mr. Weir "provided input into the practical design of the survey." (Weir Depo. [Cavanagh Decl., Ex. G], p. 58:1-24.) But the only attempt Mr. Weir made to verify Dr. Krosnick's opinions was to "check[] in" with Dr. Krosnick "about his feeling of the reliability of the design" of the survey and its results. (*Id*. at 74:19-24.)

According to Mr. Weir, Dr. Krosnick was "very confident" that the "results [were] reliable for use in this litigation." (*Id*. at 19:22-25.) However, Dr. Krosnick did not confirm the reliability of his methods with any "statistical details," nor did Dr. Krosnick explain why he was purportedly "confident." (*Id*. at 76:9-10, 77:3-8.) Mr. Weir did not receive Dr. Krosnick's survey results, and, by Mr. Weir's own admission, it was "beyond the scope of [his] assignment to analyze them[.]" (*Id*. at 81:16-22.) Indeed, Dr. Krosnick did not provide the survey results or "anything" to Mr. Weir. (Krosnick Depo. [Cavanagh Decl., Ex. E], p. 246:6-18.) Mr. Weir also did not endeavor in any way to test the reliability of Dr. Krosnick's treatment and control survey, despite the fact that there are "many things that [Mr. Weir] know[s] how to do that could be used to test the reliability of such a survey[.]" (Weir Depo. [Cavanagh Decl., Ex. G], pp. 84:17-25, 87:14-23.)

Moreover, Mr. Weir and Dr. Krosnick do not even agree on key aspects of Dr. Krosnick's survey and report. Mr. Weir claims both he and Dr. Krosnick considered various "supply side factors" in arriving at their respective expert conclusions. (*See* Weir Decl. [Plaintiffs' Ex. 42],

---

[4] Notably, this case marks the first time Mr. Weir and Dr. Krosnick have ever worked together. (Weir Depo. [Cavanagh Decl., Ex. G], p. 53:15-17.)

8

¶¶ 23, 24.) However, Dr. Krosnick did *not* consider supply side factors.[5] (Krosnick Depo. [Cavanagh Decl., Ex. E], p. 166:20-23.) It is a basic tenant of economics that prices reflect supply considerations *and* demand preferences, such that a price premium evaluation must account for both. (*See* Mangum Decl. [Cavanagh Decl., Ex. M], ¶ 27.) Mr. Weir avers that Dr. Krosnick is actually mistaken as to his own work product. (Weir Depo. [Cavanagh Decl., Ex. G], p. 70:3-8.) This position is untenable, as Mr. Weir cannot testify to the consideration of supply side factors in an analysis he did not conduct. *See, e.g., Mallatier v. Dooney & Bourke, Inc.*, 525 F. Supp. 2d 558, 668 (S.D.N.Y. 2007) (rejecting expert's testimony about analysis conducted by another expert). Regardless, by his own admission, Dr. Krosnick *only* measured willingness to pay—or, consumer (demand) preference—which cannot be used to calculate a price premium. (Krosnick Depo. [Cavanagh Decl., Ex. E], pp. 81:9-82:16, 123:19-124:3, 136:2-6, 201:22-202:13, 203:19-204:14, 205:23-206:11; *see* Butler Decl. [Cavanagh Decl., Ex. L], ¶ 36.)

Mr. Weir further suggested that Dr. Krosnick include "prices actually paid by consumers at Chipotle," which is considered a "best practice" for survey design. (Weir Depo. [Cavanagh Decl., Ex. G], pp. 58:4-11, 59:24-60:9; *see also* Mangum Decl. [Cavanagh Decl., Ex. M], ¶ 35.) Contrary to what Mr. Weir believes about the prices included in Dr. Krosnick's survey, the respondents were randomly assigned one of eleven different price points, which had no connection to the market prices of products chosen by the respondents. (*See id.* at ¶ 21; Butler Decl. [Cavanagh Decl., Ex. L], ¶ 39.) The price points did not reflect prices actually paid by consumers or actually charged by Chipotle. (*Id.* at ¶ 40.)

Finally, according to Dr. Krosnick, his survey calculated respondents' "average willingness to pay" for Chipotle products upon receiving a corrective statement concerning Chipotle's non-GMO claims. (Krosnick Depo. [Cavanagh Decl., Ex. E], pp. 81:9-21, 202:2-13, 204:1-14, 208:3-22.) Mr. Weir understands the term "willingness to pay" to mean "maximum

---

[5] It is generally accepted that an expert opinion which fails to consider supply side factors does not satisfy the *Comcast* requirements for class certification. *See In re NJOY, Inc. Consumer Class Action Litig.*, 120 F. Supp. 3d 1050, 1119 (C.D. Cal. 2015).

9

willingness to pay"—or, the most a consumer is willing to pay for a product.[6] (Weir Depo. [Cavanagh Decl., Ex. G], 109:8-10.) Dr. Krosnick did not measure, nor could he have measured, the "maximum willingness to pay." (*Id*. at 109:15-23, 112:1-7.) Thus, Dr. Krosnick's survey either lacks any semblance of scientific reliability because it purports to measure that which is unmeasurable; or Dr. Krosnick understands "willingness to pay" to mean something different from Mr. Weir and that understanding was never communicated to or confirmed by Mr. Weir.[7] (*See id*. at 112:8-15.)

In fact, while Dr. Krosnick describes his survey as an exercise in determining the "average willingness to pay," Mr. Weir insists that he must mean the "marginal willingness to pay." (*Id*. at 109:16-110:4.) Courts have recognized that the two concepts are not interchangeable and the distinction is "important." *In re Dial Complete Mktg. & Sales Practices Litig.*, 320 F.R.D. 326, 335-36 (D.N.H. 2017). Even more concerning than Mr. Weir's apparent unfamiliarity with the basic components of the survey on which he relies, are Mr. Weir's attempts to bolster a methodology he did not design, implement, or test. (*See* Weir Depo. [Cavanagh Decl., Ex. G], pp. 104:2-5, 105:1-6, 121:17-23, 141:22-142:1.); *see, e.g., In re ConAgra Foods, Inc.*, 90 F. Supp. 3d 919, 948-52 (C.D. Cal. 2015) (finding expert "not sufficiently familiar with the methodology used to design and administer the survey to opine" on it).

Mr. Weir's statements evidence a complete failure to verify Dr. Krosnick's opinions. Mr. Weir did not analyze any data, but blindly accepted Dr. Krosnick's assertions as to the scientific reliability of his findings.  As such, Mr. Weir's expert report is unreliable and inadmissible. *See, e.g., Hufnagel v. McGraw-Hill Cos.*, 2014 WL 12527209, at *4 (E.D. Wash. July 24, 2014) ("An expert's failure to assess the validity of the opinions of the experts she relied upon along with reliance on those experts' opinions renders the expert's opinion unreliable.") (excluding expert report).

---

[6] In this regard, Mr. Weir and Chipotle's rebuttal expert, Russell Mangum, agree. (*See* Mangum Decl. [Cavanagh Decl., Ex. M], ¶ 27, n.29.)

[7] Indeed, Mr. Weir testified to the importance of a "common definition" of the term "willingness to pay." (Weir Depo. [Cavanagh Decl., Ex. G], p. 108:16-21.)

### d. Mr. Weir's Report Is Based On Irrelevant And Unreliable Data.

"An expert's sole or primary reliance on the opinions of other experts raises serious reliability questions." *In re ConAgra Foods, Inc.*, 302 F.R.D. 537, 556 (C.D. Cal. 2014). Here, the entirety of Mr. Weir's expert report is based on the purported price premium opinion of Dr. Krosnick, which itself was created for the sole purpose of Plaintiffs' lawsuit against Chipotle. (*See* Weir Decl. [Plaintiffs' Ex. 42], ¶¶ 18-32; Mangum Decl. [Cavanagh Decl., Ex. M], ¶ 22; *see generally* Krosnick Report [Plaintiffs' Ex. 41].) "[M]ore scrutiny will be given to an expert's reliance on the information or analysis of another expert where the other expert opinions were developed for the purpose of litigation." *In re Toyota Motor Corp. Unintended Mktg., Sales Practices, & Products Liab. Litig.*, 978 F. Supp. 2d 1053, 1066 (C.D. Cal. 2013). Neither Dr. Krosnick's survey nor Mr. Weir's reliance on it can withstand this scrutiny.

First, Dr. Krosnick's expert report is irrelevant and misleading. Plaintiffs contend that consumers understand the term "non-GMO" to exclude products derived from animals that consumed GMO feed. (Complaint, ¶ 26.) According to Plaintiffs, this understanding is based on information from the Non-GMO Project, the federal government, and the Food and Drug Administration. (*Id.* at ¶¶ 19-26.) Plaintiffs claim entitlement to a full refund. (*Id.* at ¶ 136; *see also* Schneider Depo. [Cavanagh Decl., Ex. B], p. 210:13-16; Deigert Depo. [Cavanagh Decl., Ex. A], pp. 205:20-207:4, 210:21-211:15 & 214:1-18; Parikka Depo. [Cavanagh Decl., Ex. D], pp. 214:14-216:18 & 221:15-18; Gamage Depo. [Cavanagh Decl., Ex. C], pp. 88:15-90:8 & 118:17-120:22.) Most recently, in their Motion for Class Certification, Plaintiffs also seek an injunction requiring Chipotle to cease its alleged "Non-GMO claims." (Motion for Class Certification, pp. 14-15) Dr. Krosnick's calculation of a price premium based on the purported impact of adding a "corrective statement" to Chipotle's "Non-GMO Claims" has no discernible connection to Plaintiffs' own theory of the case, in which they request a full refund and an injunction prohibiting the publication of the "Non-GMO Claims."

Nor does Dr. Krosnick's survey measure the deceptiveness, or the reasonable consumer's understanding, of Chipotle's "Non-GMO Claims." Instead, Dr. Krosnick only identifies the impact of a "corrective statement." (Krosnick Report [Plaintiffs' Ex. 41], pp. 36-39; Krosnick Depo.

[Cavanagh Decl. Ex. E], 64:12-65-8.) Although all of the survey respondents were reasonable consumers,[8] (*id.* at 75:24-76:2), Dr. Krosnick only considered the reported willingness to pay of two distinct subgroups he believed to be relevant. (*Id.* at 74:10-22.) All of Plaintiffs' substantive claims are governed by a reasonable consumer standard. *See Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008); *Luskin's, Inc. v. Consumer Protection Div.*, 353 Md. 335, 345-358 (1999); *Druyan v. Jagger*, 508 F. Supp. 2d 228, 244 (S.D.N.Y. 2007). In the absence of any insight into deceptiveness as to the reasonable consumer, Dr. Krosnick's opinions are irrelevant to the case at hand. Likewise, Mr. Weir's expert report, which adopts Dr. Krosnick's work in its entirety, is irrelevant and inadmissible.

Furthermore, Dr. Krosnick's methodology is not reliable. Dr. Krosnick did not ascertain the materiality of non-GMO claims to any of the survey respondents, but nonetheless concludes that the decreased willingness to pay he reported among some subsets of his survey respondents was motivated by the "corrective statement." (Butler Decl.[Cavanagh Decl., Ex. L], ¶¶ 42-47). Likewise, Dr. Krosnick does not account for a single external variable that could affect a buyer's willingness to pay, including geographic location, household income, family size, or any number of real world considerations which influence consumer decisions. Dr. Krosnick also did not expose survey respondents to actual Chipotle messaging they would encounter in the marketplace. (Id. at ¶¶ 48-56.) To the contrary, Dr. Krosnick utilized focused questioning and a biased corrective statement. (Id. at ¶¶ 57-64.)

Finally, the results of Dr. Krosnick's survey are not statistically significant. (*Id.* at ¶¶ 29-24.) For the subgroup of Chipotle purchasers, if one were to conduct Dr. Krosnick's survey 100 times, it would yield the same or higher results only 57 percent of the time. (*See* Krosnick Depo., [Cavanagh Decl., Ex. E], 217:4-18.) "A .05 level of statistical significance indicates that the demonstrated relationship between the variables would occur in a random sample five times out of one hundred and is generally recognized as the point at which statisticians draw conclusions."

---

[8] With respect to the entire group of respondents, Dr. Krosnick's survey actually indicates an *increased* willingness to pay among those who saw the "corrective statement." (Krosnick Depo. [Cavanagh Decl., Ex. E], 208:18-22, 244:8-11.)

1  *Klein v. Sec'y of Transp., U.S. Dep't of Transp.*, 807 F. Supp. 1517, 1523 (E.D. Wash. 1992) Thus,
2  the very data on which Mr. Weir relies are not generally accepted as reliable by the scientific
3  community. (*See* Mangum Decl. [Cavanagh Decl., Ex. M], ¶¶ 49, 50.) In sum, because Dr.
4  Krosnick's opinions are inadmissible, Mr. Weir's opinions are necessarily unreliable and similarly
5  inadmissible. *See In re Toyota*, 978 F. Supp. 2d at 1066 ("Where the 'soundness of the underlying
6  expert judgment is in issue,' the testifying expert cannot merely act as a conduit for the underlying
7  expert's opinion.") (quoting *Dura Auto. Sys. of Ind., Inc. v. CTS Corp.*, 285 F.3d 609, 613-14 (7th
8  Cir. 2002)); *see also Viterbo v. Dow Chem. Co.,* 826 F.2d 420, 422 (5th Cir. 1987) ("If an opinion
9  is fundamentally unsupported, then it offers no expert assistance to the jury.") (excluding expert
10 opinion based solely on unsupported statements of plaintiff)  (Mangum Decl. [Cavanagh Decl.,
11 Ex. M], ¶ 52.)

### e. **Any Probative Value Of Mr. Weir's Report Is Outweighed By The Danger That It Will Prejudice Chipotle, Confuse The Issues, Or Mislead The Jury.**

14 Even a qualified expert opinion may be excluded if its probative value is outweighed by
15 the danger of unfair prejudice, confusing the issues, or misleading the jury.  Fed. R. Evid. 403.
16 Initially, Mr. Weir's opinions as to statutory damages under New York and California law are
17 particularly apt to cause undue prejudice and mislead the jury because they are erroneous and
18 incomplete. (*See* Weir Decl. [Plaintiffs' Ex. 42], ¶¶ 40-46.) The Court will instruct the jury on the
19 controlling law, and Mr. Weir's rival testimony—whether accurate or not—will also confuse the
20 jury. *See In re Novatel Wireless Sec. Litig.*, 2012 WL 5463214, at *3 (S.D. Cal. Nov. 8, 2012)
21 ("Rule 403 bars expert testimony purporting to interpret the governing law, because such
22 testimony will necessarily confuse the jury by providing competing interpretations of the law.").
23 As such, these portions of Mr. Weir's expert report must be excluded.
24 Furthermore, the crux of Mr. Weir's entire opinion is that the proposed classes (including
25 persons unknown) have, in fact, suffered damages at the hands of Chipotle, and are entitled to
26 recover monetary damages without ever having offered a single piece of evidence in a court of
27 law. In no uncertain terms, Mr. Weir opines that Plaintiffs must prevail: "Based on my research
28 and analysis in this litigation, all Class members have suffered economic damage resulting from

Defendant's conduct." (Weir. Decl. [Plaintiffs' Ex. 42], ¶ 46.) This is precisely the type of evidence Rule 403 prohibits because of the inherent persuasiveness of expert witnesses. "Jurors may well assume that an expert, unlike an ordinary mortal, will offer an authoritative view of the issues addressed*." Rogers v. Raymark Indus., Inc.*, 922 F.2d 1426, 1431 (9th Cir. 1991) (excluding expert opinion on tangential issue under Rule 403). Therefore, the probative value of Mr. Weir's report and the wholesale adoption of Dr. Krosnick's survey are outweighed by the danger of undue prejudice, confusion, and or misleading the jury.

## V. CONCLUSION

For the aforementioned reasons, Chipotle requests that the Court exclude the expert report and all testimony of Colin B. Weir; and order any such other relief as the Court deems just and proper.

Dated: December 22, 2017    MESSNER REEVES, LLP
SHEPPARD, MULLIN, RICHTER & HAMPTON, LLP

By: _____
Charles C. Cavanagh
Attorneys for Defendant
CHIPOTLE MEXICAN GRILL, INC.