Laurence D. King (SBN 206423)
Linda M. Fong (SBN 124232)
Matthew B. George (SBN 239322)
Mario M. Choi (SBN 243409)
**KAPLAN FOX & KILSHEIMER LLP**
350 Sansome Street, Suite 400
San Francisco, CA 94104
Telephone: 415-772-4700
Facsimile: 415-772-4707
*lking@kaplanfox.com*
*lfong@kaplanfox.com*
*mgeorge@kaplanfox.com*
*mchoi@kaplanfox.com*

Frederic S. Fox (*pro hac vice*)
Donald R. Hall (*pro hac vice*)
**KAPLAN FOX & KILSHEIMER LLP**
850 Third Avenue, 14th Floor
New York, NY 10022
Telephone: 212-687-1980
Facsimile: 212-687-7714
*ffox@kaplanfox.com*
*dhall@kaplanfox.com*

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### OAKLAND DIVISION

MARTIN SCHNEIDER, SARAH DEIGERT, LAURIE REESE, THERESA GAMAGE, TIFFANIE ZANGWILL, and NADIA PARIKKA, Individually and on Behalf of All Others Similarly Situated,

Plaintiffs,

v.

CHIPOTLE MEXICAN GRILL, INC., a Delaware Corporation,

Defendant.

Case No. 4:16-cv-02200-HSG (KAW)

**NOTICE OF MOTION AND MOTION TO EXCLUDE DEFENDANT'S EXPERTS, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

Judge: Hon. Haywood S. Gilliam, Jr.
Date: April 5, 2018
Time: 2:00 p.m.
Courtroom: 2, 4th Floor

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR RESPECTIVE ATTORNEYS OF RECORD:**

    **PLEASE TAKE NOTICE** that on April 5, 2018, at 2 p.m., or as soon as this motion can be heard, in Courtroom 2 of the United States District Court for the Northern District of California, Ronald V. Dellums Federal Building and U.S. Courthouse, 1301 Clay Street, Oakland, California 94612, the Honorable Haywood S. Gilliam, Jr., presiding, Plaintiffs Martin Schneider, Sarah Deigert, Theresa Gamage, and Nadia Parikka (collectively, "Plaintiffs"), will and hereby do move for an Order excluding the testimonies and reports of Defendant Chipotle Mexican Grill, Inc.'s ("Defendant") experts, Dr. Margaret Mellon ("Mellon"), Sarah Butler ("Butler"), and Dr. Russell W. Mangum, III ("Mangum").

    This motion is based upon this Notice of Motion and Motion to Exclude Defendant's Experts, the Memorandum of Points and Authorities set forth below, the accompanying Declaration of Mario M. Choi in Support of Plaintiffs' Motion to Exclude Defendant's Experts, dated January 17, 2018, and the exhibits thereto, the pleadings and records on file in this action, and other such matters and argument as the Court may consider at the hearing of this motion.

## STATEMENT OF ISSUES TO BE DECIDED

    1.    Whether the testimony and report of Defendant's expert Dr. Mellon should be excluded pursuant to Federal Rule of Evidence 702 as irrelevant and unreliable;

    2.    Whether the testimony and report of Defendant's expert Ms. Butler should be excluded pursuant to Federal Rule of Evidence 702 as unhelpful and unreliable;

    3.    Whether the testimony and report of Defendant's expert Dr. Mangum should be excluded pursuant to Federal Rule of Civil Procedure 26 as outside the proper scope of his expertise and his retention, and pursuant to Federal Rule of Evidence 702 as irrelevant and unreliable, and;

    4.    Whether the testimonies and reports of Defendant's experts should be excluded pursuant to Federal Rule of Evidence 403 as cumulative, confusing, misleading, prejudicial, and a waste of time.

# TABLE OF CONTENTS

Page

I.      INTRODUCTION ................................................................................................ 1

II.     SUMMARY OF EXPERT OPINIONS AND TESTIMONY ........................................... 2

        A.      Dr. Margaret Mellon ........................................................................... 2

        B.      Ms. Sarah Butler ................................................................................. 4

        C.      Dr. Russell Mangum ........................................................................... 5

III.    DEFENDANT'S EXPERTS SHOULD BE EXCLUDED ............................................... 8

        A.      Legal Standard .................................................................................... 8

        B.      Dr. Mellon's Opinions Are Neither Relevant Nor Reliable ............... 10

                1.      None of Dr. Mellon's Opinions are Relevant to this Litigation ............... 10

                2.      Dr. Mellon's Opinions are Not Reliable. .................................... 11

        C.      Ms. Butler's Opinions Are Not Helpful And Are Unreliable ............. 12

                1.      Ms. Butler's Opinions are Based on Faulty Assumptions
                        Concerning Plaintiffs' Theory of Liability. ................................ 12

                2.      Ms. Butler's Opinions are Inconsistent and Therefore Not Reliable. ....... 14

        D.      Dr. Mangum's Opinions Exceed Their Scope And Are Irrelevant ...... 15

                1.      Dr. Mangum is Unqualified to Opine on Dr. Krosnick's Survey and
                        Exceeds the Scope for Rebuttal .................................................. 15

                2.      Dr. Mangum's Opinions are Unhelpful and Irrelevant. ............. 17

                3.      Dr. Mangum's Opinions are Unreliable and does Not "Fit" ...... 19

        E.      Defendant's Expert Opinions Should Be Excluded Under Fed. R. Evid. 403 ...... 21

IV.     CONCLUSION ................................................................................................. 22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amorgianos v. Nat'l R.R. Passenger Corp.*,
303 F.2d 256 (2d Cir. 2002)..................................................................... 12, 13

*Bourjaily v. United States*,
483 U.S. 171 (1987) ........................................................................................ 9

*Brazil v. Dole Packaged Foods, LLC*,
660 Fed. App'x 531 (9th Cir. 2016)................................................. 6, 7, 19, 20

*California v. Altus Finance S.A.*,
540 F.3d 992 (9th Cir. 2008)........................................................................ 19

*Daubert v. Merrell Dow Pharms., Inc.* ("*Daubert II*"),
43 F.3d 1311 (9th Cir. 1995)......................................................... 9, 11, 12, 22

*Daubert v. Merrell Dow Pharms., Inc.*,
509 U.S. 579 (1993) .................................................................... 8, 9, 11, 22

*Downs v. River City Grp., LLC*,
No. 3:11-cv-00885-LRH-WGC, 2014 WL 814303 (D. Nev. Feb. 28, 2014).................... 16

*Dream Games of Ariz., Inc. v. PC Onsite*,
561 F.3d 983 (9th Cir. 2009)................................................................... 21, 22

*Ellis v. Costco Wholesale Corp.*,
657 F.3d 970 (9th Cir. 2011)......................................................................... 9

*Estate of Barabin v. AstenJohnson, Inc.*,
740 F.3d 457 (9th Cir. 2014)...................................................................... 8, 9

*Guido v. L'Oreal, USA, Inc.*,
284 F.R.D. 468 (C.D. Cal. 2012) ............................................................. 14, 18

*Humphreys v. Regents of Univ. of Cal.*,
No. C 04-03808 SI,2006 WL 1867713 (N.D. Cal. July 6, 2006) ...................... 21

*In re Bextra and Celebrex Mkting Sales Practices and Prod. Liab. Litig.*,
524 F. Supp. 2d 1166 (N.D. Cal 2007) ...................................................... 15

*In re Fluidmaster, Inc., Water Connector Components Prods. Liab. Litig.*,
No. 14-cv-5696, 2017 WL 1196990 (N.D. Ill. Mar. 31, 2017)......................... 20

*In re Omeprazole Patent Litig.*,
490 F. Supp. 2d 381 (S.D.N.Y. 2007)......................................................... 12

*In re Steroid Hormone Product Cases*,
181 Cal. App. 4th 145 (2010).................................................................... 18

**TABLE OF CONTENTS**
(cont.)

Page

*Kadas v. MCI Systemhouse Corp.*,
　　255 F.3d 359 (7th Cir. 2001)........................................................ 19

*Kumho Tire Co. v. Carmichael*,
　　526 U.S. 137 (1999) .................................................................... 9

*Lavie v. Procter & Gamble Co.*,
　　105 Cal. App. 4th 496 (2003)........................................................ 10

*Macaluso v. Herman Miller, Inc.*,
　　No. 01 Civ. 11496(JGK), 2005 WL 563169 (S.D.N.Y. Mar. 10, 2005)............................ 13

*Makaeff v. Trump Univ., LLC*,
　　No. 3:10-cv-0940-GPC-WVG, 2014 WL 688164 (S.D. Cal. Feb. 21, 2014).................... 10

*McCrary v. Elations Company LLC*,
　　No. EDCV 13-0242 JGB (SPx), 2014 WL 12589137
　　(C.D. Cal. Dec. 2, 2014)........................................................ 2, 14, 17, 18

*Minasian v. Standard Chartered Bank, PLC*,
　　109 F.3d 1212 (7th Cir. 1997)........................................................ 12

*Nilon v. Natural-Immunogenics Corp.*,
　　No. 3:12-CV-00930-LAB (BGS), 2014 WL 12570897 (S.D. Cal. Apr. 15, 2014).......... 18

*People v. Kinder Morgan Energy Partners, L.P.*,
　　159 F. Supp. 3d 1182 (S.D. Cal. 2016) ........................................... 17

*Primiano v. Cook*,
　　598 F.3d 558 (9th Cir. 2010)........................................................ 9

*R.B. Matthews, Inc. v. Transam. Transp. Servs., Inc.*,
　　945 F.2d 269 (9th Cir. 1991)........................................................ 9

*Racies v. Quincy Bioscience, LLC*,
　　No. 15-cv-00292-HSG, 2016 WL 5725079 (N.D. Cal. Sept. 30, 2016)............................ 8

*Raskin v. Wyatt Co.*,
　　125 F.3d 55 (2d Cir. 1997)........................................................ 12

*Sanderson v. Int'l Flavors and Fragrances, Inc.*,
　　950 F. Supp. 981 (C.D. Cal. 1996) ........................................... 11

*Schneider v. Chipotle Mexican Grill, Inc.*,
　　No. 16-cv-02200-HSG, 2016 WL 6563348 (N.D. Cal. Nov. 4, 2016) ................................ 1

*Singleton v. Fifth Generation, Inc.*,
　　No. 5:15-CV-474 (BKS/TWD), 2017 WL 5001444 (N.D.N.Y. Sept. 27, 2017) .............. 15

1

**TABLE OF CONTENTS**
**(cont.)**

2

**Page**

3

4

*Tait v. BSH Home Appliances Corp.*,
    289 F.R.D. 466 (C.D. Cal. 2012) ..................................................................... 10

5

*U.S. v. Hankey*,
    203 F.3d 1160 (9th Cir. 2000)................................................................... 8, 16

6

*U.S. v. Layton*,
    767 F.2d 549 (9th Cir. 1985).......................................................................... 9

7

8

*Wilson v. Woods*,
    163 F.3d 935 (5th Cir. 1999)........................................................................ 16

9

*Zenith Elecs. Corp. v. WH-TV Broad. Corp.*,
    395 F.3d 416 (7th Cir. 2005)........................................................................ 11

10

11

**Rules**

12

Fed. R. Civ. P.
    26.......................................................................................................... 15, 17

13

    26(a)(2)(D)(ii) ............................................................................................. 15

14

Fed. R. Evid.
    104(a) ........................................................................................................... 8

15

    403.................................................................................................... 1, 2, 9, 21

16

    702...................................................................................................... 1, 8, 9

    702(b) ......................................................................................................... 11

17

18

**Other Authority**

19

Fed. R. Civ. P. 26 Advis. Cmte. Notes to 1993 Amends. ............................................. 15

20

Fed. R. Evid. 403, Advis. Cmte. Notes to 1972 Proposed Rules................................. 21

21

Fed. R. Evid. 702, Advis. Cmte. Notes to 2000 Amends. ....................................... 1, 8

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

In its motion for summary judgment [ECF No. 92], and in its opposition to Plaintiffs'[1] motion for class certification [ECF No. 102], Defendant Chipotle Mexican Grill, Inc. ("Defendant" or "Chipotle") cites and puts into evidence the expert opinions of Dr. Margaret Mellon ("Mellon"), Ms. Sarah Butler ("Butler"), and Dr. Russell Mangum ("Mangum"). *See* Decl. of Charles Cavanagh in Supp. of Def. Chipotle Mexican Grill, Inc.'s Opp. to Pls' Mot. for Class Cert. and Mots. To Excl. Expert Testimony, filed Dec. 22, 2017 [ECF Nos. 102-26 – 102-28].[2] But because Chipotle has failed to establish that its experts' opinions are admissible as relevant and reliable under Federal Rule of Evidence ("Rule") 702, and are further objectionable under Rule 403, their opinions should be excluded.

Dr. Mellon offers an opinion on what a genetically modified ("GM") organism is and how it is allegedly created, how the digestion process supposedly works, and claims that there are no GM cows, pigs, or chickens on the commercial market in the United States. *See* Mellon Rep., ¶¶ 8-19. But none of these opinions go to the issue of whether reasonable consumers would likely be deceived by Chipotle's Non-GMO Claims.[3] As such, her conclusions are irrelevant. Moreover, courts require more than simply "taking the expert's word for it." Fed. R. Evid. 702, Advis. Cmte. Notes to 2000 Amends.. Here, other than claiming that her opinions are based on "understanding and expertise," Dr. Mellon does not proffer any foundation for her opinions or provide any citation in support of her conclusions. Because Dr. Mellon fails to produce any evidence as to what or how her "understanding and expertise" informed her opinions, her opinions are unreliable and should be excluded.

Ms. Butler offers plethora of criticisms concerning the survey methodology and results of

---

[1] Plaintiffs Martin Schneider ("Schneider"), Sarah Deigert ("Deigert"), Theresa Gamage ("Gamage"), and Nadia Parikka ("Parikka").

[2] Hereinafter referred to as the "Mellon Report" [ECF No. 102-26], the "Butler Report" [ECF No. 102-27], and the "Mangum Declaration" [ECF No. 102-28], respectively.

[3] "Defendant's Non-GMO Claims consist of Defendant's representations that it prepares its food using 'only non-GMO ingredients,' Compl. ¶ 34, that 'all of [its] food is non-GMO,' *id.* ¶ 35 (quotation marks omitted), and that '[w]hen it comes to [its] food, genetically modified ingredients don't make the cut,' *id.* ¶ 37." *Schneider v. Chipotle Mexican Grill, Inc.*, No. 16-cv-02200-HSG, 2016 WL 6563348, at *2 n.1 (N.D. Cal. Nov. 4, 2016).

Plaintiffs' expert Dr. Jon A. Krosnick ("Krosnick"), essentially arguing that Dr. Krosnick's survey was designed incorrectly and that its results were not "statistically significant." *See* Butler Rep., ¶¶ 9, 23-68. However, Ms. Butler's opinions are unhelpful because they are based on improper factual assumptions concerning Plaintiffs' theory of liability. Moreover, Ms. Butler's opinions are unreliable as hypocritical: in addition to engaging in similar survey designs and analyses that she now criticizes Dr. Krosnick's survey and results for, Ms. Butler's arguments and conclusions are contradicted by her own testimony.

Dr. Mangum makes a number of opinions in his eager desire to rebut the report of Plaintiffs' damages expert, Colin Weir ("Weir"). *See* Mangum Decl., ¶¶ 9-65. However, like Ms. Butler, Dr. Mangum relies on improper factual assumptions and, like Dr. Mellon, makes *ipse dixit* conclusions without any basis or foundation, and, as such, his opinions will not aid the trier of fact. More importantly, Dr. Mangum's opinions go far afield from what Dr. Mangum was retained to do, falling into the same trap that led to the court's partial exclusion of his opinion in *McCrary v. Elations Company LLC*, No. EDCV 13-0242 JGB (SPx), 2014 WL 12589137 (C.D. Cal. Dec. 2, 2014). Indeed, as he did in *McCrary*, Dr. Mangum goes out of his way in his rebuttal report here to *also* disparage Dr. Krosnick's survey and results, even though he was *not* retained to do so, and, moreover, is clearly not qualified to opine on issues relating to marketing, survey design, or survey analysis.

Accordingly, all three opinions should be excluded under Rule 403 because their opinions are prejudicial, and would otherwise confuse the issues, mislead the trier of fact, waste time, and needlessly present cumulative evidence. For these reasons, the Court should exclude the opinions of Defendant's experts.

## II.      SUMMARY OF EXPERT OPINIONS AND TESTIMONY

### A.      Dr. Margaret Mellon

Dr. Mellon is a science policy consultant at Mellon Associates in Washington D.C. *See* Decl. of Mario M. Choi in Supp. of Pls' Mot. to Excl. Def's Experts, dated January 16, 2018 (hereinafter, "Choi Decl."), Ex. A (Resume 2017 Margaret G. Mellon). Having no background in statistics, economics, market analysis, survey analysis, or consumer behavior, Dr. Mellon instead

submits an expert report – without any citations and based upon her "own personal knowledge" – on what a GM organism purportedly is, how a GM organism is allegedly created, the apparent biology of cows, pigs, and chickens, and the purported process for breaking down food in the digestive system. *See* Mellon Rep., ¶¶ 1, 8-12, 14-19. Dr. Mellon further concludes, without any citations to the deposition transcripts she was provided, *id.* ¶ 2, that "plaintiffs seem to be suggesting that ingestion of GM grain can convert a non-GM chicken, pig or cow into a GM animal." *Id.* ¶ 14. Finally, Dr. Mellon swears under penalty of perjury that she has not testified as an expert in any legal case in the last four years. *Id.* ¶ 6.

At her deposition, Dr. Mellon stated that though she was not preparing a report "as an expert on what consumers know or feel," she also did not expect that a layperson would know "information about how GMO food is ingested by animals." *See* Decl. of Laurence D. King in Opp. to Def's Mot. for Summ J., filed Dec. 22, 2017 ("King SJ Decl."), Ex. 17 (Dep. of Margaret Mellon, dated Sep. 28, 2017 ("Mellon Dep.")) [ECF No. 104-18], at 44:7-12, 44:20-45:4.[4]

Dr. Mellon bases the foundation of her opinions on "understanding and expertise," but did not do any testing or analysis to confirm her statements. *Id.* at 60:24-63:16. Nor did she answer questions concerning her understanding of GMOs or to her background as "outside the scope of Dr. Mellon's expert report." *See* Choi Decl., Ex. B (Mellon Dep.), at 9:24-19:6. Dr. Mellon did not consult any scientific articles, journals, or research, or do any field testing prior to issuing the opinions found in her expert report. *See* King SJ Decl., Ex. 17 (Mellon Dep.), at 80:21-81:15, 86:14-87:9, 93:9-95:17. Dr. Mellon also could not provide any resource or reference to verify the assumptions and assertions she makes in her report, including, for instance, citations to where in Plaintiffs' deposition transcripts she obtained her understanding of Plaintiffs' "suggest[ion] that ingestion of GM grain can convert a non-GM chicken, pig or cow into a GM animal." *Id.* at 57:11-60:9; 145:3-7. Dr. Mellon also did not engage in any research or review any research concerning animals raised on GM feed. *Id.* at 163:25-166:3. Finally, Dr. Mellon had no answer

---

[4] Dr. Mellon also states that while she made a declaration in support of Chipotle's motion for summary judgment in "the Reilly v. Chipotle Grill matter" [*Reilly v. Chipotle Mexican Grill, Inc.*, No. 1:15-cv-23425-MGC (S.D. Fla.)], Dr. Mellon contends that she did not testify in that matter. *Id.* at 52:5-56:6. That was *after* Dr. Mellon first conceded that she did in fact testify in *Reilly* but then abruptly took a break based upon her attorney's prodding. *Id.* at 50:25-51:23.

when counsel asked her how one could rely on her opinions. *Id.* at 145:8-12.

**B.** **Ms. Sarah Butler**

Ms. Butler is a Managing Director at NERA Economic Consulting and is based in San Francisco. Butler Rep., ¶ 1. Ms. Butler was asked to review the survey and report submitted by Dr. Krosnick and to evaluate Dr. Krosnick's conclusion that "Chipotle's failure to disclose … that the food eaten by animals whose meat and dairy were served in their restaurants was probably genetically modified was (1) material to consumers and (2) increased the amount of money consumers paid to Chipotle for food purchased there." *Id.* ¶ 8 (citation omitted). Ms. Butler makes the following five conclusions:

1.  Dr. Krosnick's survey does not address Plaintiffs' legal theory "that consumers paid a 'premium' for Chipotle's food as a result of Chipotle's non-GMO ingredients announcement."

2.  Dr. Krosnick's survey does not test Plaintiffs' claims that Chipotle's non-GMO information was misleading.

3.  Dr. Krosnick's survey results do not show a statistically significant difference in the average willingness to pay, and thus cannot reliably demonstrate any impact.

4.  Even if Dr. Krosnick's study established a statistically meaningful difference, the survey findings could not be used to establish a "price premium" as Dr. Krosnick did not take into account additional factors that influence prices.

5.  Dr. Krosnick's survey has methodological problems, including materiality, failure to replicate marketplace conditions, and that the survey is leading and biased.

*Id.* ¶ 9. Ms. Butler then points to the alleged problems with Dr. Krosnick's survey and results, including that Dr. Krosnick's results were not statistically significant, that Dr. Krosnick did not take into consideration other factors that may have influenced Chipotle's pricing, and other survey design issues. *Id.* ¶¶ 23-68. However, in no part of her report does Ms. Butler undertake her own empirical analysis to determine whether consumers paid a premium for Chipotle's food products or whether the Non-GMO Claims are misleading. Nor does she conclude that Dr. Krosnick's calculations were incorrect.

During her deposition, Ms. Butler concedes that she had not undertaken any "systematic review" or evaluation of any the issues she criticizes Dr. Krosnick for failing to do. *See* Choi

Decl., Ex. C (Dep. of Sarah Butler, dated Nov. 22, 2017 ("Butler Dep.")), at 15:3-16:11, 36:4-37:23, 52:18-53:10, 56:9-57:14. Nor did Ms. Butler undertake her own survey. *See* Decl. of Mario M. Choi in Supp. of Pls' Opp. to Def's Mots. To Excl. Experts Dr. Jon A. Krosnick and Colin B. Weir, filed Jan. 5, 2018 ("Choi Opp. Decl."), Ex. 5 (Butler Dep.) [ECF No. 113-5], at 11:1-22, 31:20-23, 41:13-42:25, 84:3-85:6. However, Ms. Butler concedes that Dr. Krosnick did not "data-dredge[], significance chase[], [or] P-hack[]," and otherwise analyzed his results correctly. *See id.* at 39:19-40:12, 76:25-77:25.

Ms. Butler also retreats from her criticism that Dr. Krosnick's results did not show a "statistically significant difference." Indeed, when provided memoranda by the American Statistical Association ("ASA") – of which Ms. Butler is a member – concerning the issue of "statistical significance," Ms. Butler alters her testimony to highlight that "one of the things that I do in looking at Dr. Krosnick's report is not just look at his P-values, but I look at how the study was designed, what it's purporting to measure." *Id.* at 73:1-77:25. Ms. Butler further acknowledges that she may have also submitted reports that differed from what Defendant has argued is the standard for scientifically validity. *Id.* at 70:3-71:22.

Finally, Ms. Butler concedes that she has also designed internet surveys that have not replicated market conditions. *Id.* at 110:7-11. And Ms. Butler cannot recall any case in which she found an opposing expert's survey to replicate marketplace conditions or found an accurate price premium. *Id.* at 114:24-115:25. Indeed, as Ms. Butler acknowledges, replicating market conditions would "affect consumers' behavior in a survey;" and significant bias could result. *Id.* at 111:12-117:18.

### C.   Dr. Russell Mangum

Defendant's expert Dr. Mangum was engaged "to comment on, and evaluate, Mr. Weir's opinions and analysis. Specifically, [his] assignment is to form opinions about the appropriateness of the methods described by Mr. Weir for measuring common impact and calculating class-wide damages." *See* Mangum Decl., ¶ 1. A senior vice president at Nathan Associates, Inc., Dr. Mangum has "been using econometrics to evaluate and model the effects of anticompetitive behavior for over 20 years." *Id.* ¶ 5; *see also id.*, Ex. A.

In his declaration, Dr. Mangum makes the following four opinions:

1.   Dr. Krosnick and Mr. Weir's analyses represent little more than speculative guesswork as to what actual harm, if any, members of the proposed Class sustained as a result of the alleged wrongdoing.

2.   Mr. Weir's damages calculations is based on a metric that has no relationship whatsoever to the Plaintiffs' theory of damages, or to any economically appropriate measure of damages.

3.   Dr. Krosnick and Mr. Weir have not demonstrated that the impact of the alleged wrongdoing would be common to all members of the proposed Class; in fact, the methods used in arriving at damages estimates identify substantial and economically meaningful differences across class members, then remove the clear information about these differences by utilizing averages.

4.   The analyses and conclusions by Dr. Krosnick and Mr. Weir in this case cannot be appropriately utilized to calculate damages on a common basis.

*Id.* ¶ 9. Dr. Mangum then goes on to note the purported flaws in Mr. Weir's report as well as that in Dr. Krosnick's analyses. *Id.* ¶¶ 26-66. For instance, Dr. Mangum opines that Mr. Weir's analysis failed to take into consideration "individual subjective valuation." *Id.* ¶ 29. Further, Dr. Mangum argues that Mr. Weir cannot rely upon Dr. Krosnick's survey results due to what Dr. Mangum sees as "flawed results" from the survey. *Id.* ¶¶ 51, 52. Dr. Mangum also points out that Mr. Weir failed to "investigate the existence of an actual price premium" as defined by the court in *Brazil v. Dole Packaged Foods, LLC*, 660 Fed. App'x 531 (9th Cir. 2016), and states in conclusory fashion that there was no price premium because the prices of Chipotle's products did not change before, during, or after the Non-GMO Claims were made. *Id.* ¶¶ 30-32. Specifically, Dr. Mangum points out that "an obvious prerequisite for any claim that Chipotle charged consumers a price premium because of the accused statements is that Chipotle actually charged higher prices once the accused statements were introduced." *Id.* ¶ 33. And, Dr. Mangum opines that Mr. Weir failed to take into consideration the likelihood that some consumers did not see the statements or that some consumers were not deceived. *Id.* ¶¶ 55-61. Accordingly, Dr. Mangum posits, Mr. Weir's damages analysis fails.

And though Dr. Mangum states that he is not providing any "expert opinions on the appropriateness of any particular survey design or construction, nor do[es he] have any expert opinions on the acceptability of specific survey methods in litigation," Dr. Mangum nonetheless

submits a rebuttal report with respect to Dr. Krosnick's survey, allegedly as "to 1) certain statistical or econometric outcomes in his analysis and 2) Dr. Krosnick's economic interpretations of his own analysis." *Id.* ¶ 14. Dr. Mangum then purportedly describes Dr. Krosnick's survey methodology, and, among other things, posits that Dr. Krosnick "represents the results in a misleading fashion," that the estimates do not "establish the existence or magnitude of a difference in price or a price premium," that Dr. Krosnick "has inappropriately inconsistent views and approaches when it comes to excluding various survey respondents," and, to Dr. Mangum, "it is unclear why Dr. Krosnick would not design his experiment to account for the more plausible test group scenario…." *Id.* ¶¶ 14-21, 34-51, 61-65. However, nowhere does Dr. Mangum actually question the validity of Dr. Krosnick's calculations or his analysis.

During his deposition, Dr. Mangum points out that the only assumption he made was that his analysis of damages "is relevant only if there is a finding of liability." *See* Choi Decl., Ex. D (Dep. of Russell W. Mangum, III, Ph.D., dated Oct. 20, 2017 ("Mangum Dep.")), at 68:13-69:6. And, Dr. Mangum concludes that Mr. Weir accurately calculated damages based on the price premium provided by Dr. Krosnick. *See* Choi Opp. Decl., Ex. 8 (Mangum Dep.), at 101:18-103:17. But, Dr. Mangum then describes Dr. Krosnick's survey as he understands it, noting that Dr. Krosnick "uses many people's single data point responses and says, you know, when can I estimate what price would be too high where people would then say, ah, that is too high for me. That's the maximum price, right, where I am still willing to pay." *See* Choi Decl., Ex. D at 74:21-80:9. Dr. Mangum then argues that, because the prices did not change, the Non-GMO Claims had no effect based upon his interpretation of *Brazil*. *Id.* at 152:21-157:11. That is because, to Dr. Mangum, the price premium is "the concept being the difference between the price paid in the market, in the context of litigation like this one, when the price premium is the difference between what was paid less the value of the produce. Well, if there wasn't a change, if we know what the market price was before the allegations of the wrongdoing occurred and then afterwards, then we can look at both those items." *Id.* at 84:21-85:1. Dr. Mangum then points to Dr. Krosnick's survey to note its numerous limitations, including, for instance, "we have two versions of the world, the accused version and the non-accused, but that's not the two that Mr. – Dr.

Krosnick looks at and it's not clear why he doesn't focus on that, but instead asks a different question which addresses a different issue." *Id.* at 97:20-98:3, 109:23-110:17, 111:4-118:23, 119:20-122:9, 149:4-150:24; 186:2-187:17.

Finally, in noting that "[e]ach consumer has their own valuation of the importance (if at all) of non-GMO ingredients in their purchasing decisions, and their own perception of what was meant by the accused non-GMO statement," Dr. Mangum states that "[i]f you are willing to remove the evidence of the differences and hide that and say I don't want to give evidence of the differences … [y]ou can do that. That doesn't help in my opinion but anyone can calculate an average from widely different numbers." *Id.* at 184:4-185:25. Dr. Mangum also opines that "advertising may influence demand, but it depends what that advertising is." *Id.* at 213:15-23; *see also id.*, 134:10-135:14. And, Dr. Mangum states that "it is an overreaching assumption to even say people saw [the advertisement] or read it" and references Chipotle's survey to make the point that not everyone saw or knew about the Non-GMO Claims. *Id.* at 91:9-93:6.

## III.   **DEFENDANT'S EXPERTS SHOULD BE EXCLUDED**

### A.   **Legal Standard**

Federal Rule of Evidence 702 governs the admission of testimony of expert witnesses:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

*Id.* For expert testimony to be admissible, the expert must be qualified, and the testimony must be both relevant and reliable. *Racies v. Quincy Bioscience, LLC*, No. 15-cv-00292-HSG, 2016 WL 5725079, at *3 (N.D. Cal. Sept. 30, 2016) (citing *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993); *Estate of Barabin v. AstenJohnson, Inc.*, 740 F.3d 457, 463 (9th Cir. 2014); *U.S. v. Hankey*, 203 F.3d 1160, 1168 (9th Cir. 2000)). "[T]he admissibility of all expert testimony is governed by the principles of Rule 104(a). Under that Rule, the proponent has the burden of establishing that the pertinent admissibility requirements are met by a preponderance of the evidence." Fed. R. Evid. 702, Advis. Cmte. Notes to 2000 Amends. (citing *Bourjaily v. United*

*States*, 483 U.S. 171 (1987)).

Relevancy "requires that the evidence logically advance a material aspect of the party's case." *AstenJohnson*, 740 F.3d at 463 (internal marks omitted). "Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." *Daubert*, 509 U.S. at 591 (internal quotations and citation omitted). Reliability requires that an expert's testimony have "a reliable basis in the knowledge and experience of the relevant discipline." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999) (internal marks and citation omitted). Courts are concerned "not with the correctness of the expert's conclusions but the soundness of his methodology." *Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010) (quoting *Daubert v. Merrell Dow Pharms., Inc.* ("*Daubert II*"), 43 F.3d 1311, 1318 (9th Cir. 1995)); *see also Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 982 (9th Cir. 2011) ("[T]he trial court must act as a 'gatekeeper' to exclude junk science that does not meet Federal Rule of Evidence 702's reliability standards…." (quoting *Kumho Tire*, 526 U.S. at 145)). A court must determine "whether the reasoning or methodology underlying the testimony is scientifically valid". *Daubert*, 509 U.S. at 592-93.

A court may exclude evidence where "its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. "Trial judges have wide discretion to exclude evidence given their presence at the trial and because the considerations arising under Rule 403 are 'susceptible only to case-by-case determinations, requiring examination of the surrounding facts, circumstances, and issues.'" *R.B. Matthews, Inc. v. Transam. Transp. Servs., Inc.*, 945 F.2d 269, 272 (9th Cir. 1991) (quoting *U.S. v. Layton*, 767 F.2d 549, 554 (9th Cir. 1985)).

Defendant's experts have not provided opinions that are either relevant or reliable. Moreover, the opinions of Defendant's experts are prejudicial, misleading, cumulative, a waste of time, and confusing. The Court should exclude their opinions.

1

**B.**      <u>**Dr. Mellon's Opinions Are Neither Relevant Nor Reliable**</u>

2

     1.      <u>None of Dr. Mellon's Opinions are Relevant to this Litigation.</u>

3

Dr. Mellon contends that Plaintiffs "seem to be suggesting" that the animals themselves

4

are genetically modified. *See, e.g.*, Mellon Rep. ¶ 14. Based upon this faulty assumption, and in

5

addition to opining on what a GM organism is and how the digestive process allegedly works, Dr.

6

Mellon asserts in conclusory fashion that there are no GM cows, pigs, or chickens on the U.S

7

commercial market and that Chipotle does not serve meat or milk products from GM animals

8

because "[s]cientifically, that is impossible." Mellon Rep. ¶¶ 14-15. Even assuming *arguendo* that

9

all of Dr. Mellon's opinions are true, which is questionable given Dr. Mellon's lack of

10

substantiation as to any of her opinions, Dr. Mellon's opinions do not go to any relevant issue in

11

this litigation and should thus be excluded.

12

Notwithstanding Dr. Mellon's failure to cite to any portion of Plaintiffs' testimonies (or to

13

any other source) to validate her claims, Dr. Mellon completely misstates the relevant issue. The

14

pertinent inquiry is whether Plaintiffs and reasonable consumers would likely be deceived by

15

Chipotle's Non-GMO Claims describing Defendant's *ingredients*, not whether the *animals*

16

themselves are genetically modified. The relevant issue is whether Defendant's Non-GMO

17

Claims would likely to deceive consumers "acting reasonably in the circumstances." *Lavie v.*

18

*Procter & Gamble Co.*, 105 Cal. App. 4th 496, 508 (2003); *Tait v. BSH Home Appliances Corp.*,

19

289 F.R.D. 466, 483 (C.D. Cal. 2012) (equating Maryland's consumer protection act to

20

California's Consumer Legal Remedies Act); *Makaeff v. Trump Univ., LLC*, No. 3:10-cv-0940-

21

GPC-WVG, 2014 WL 688164, at *14 (S.D. Cal. Feb. 21, 2014) (equating New York consumer

22

protection act claims to California's Unfair Competition Law).

23

Here, the parties' theories have never deviated from this question. Indeed, Defendant's

24

argument has been that it is "careful and specific" in limiting its Non-GMO Claims "to the

25

'ingredients' of its 'food'." *See* Def's Mot. for Summ. J., filed Nov. 17, 2017 [ECF No. 92], at

26

20:13-21:10; *see also* Def's Mot. to Dismiss, filed May 17, 2016 [ECF No. 15], at 15:1-16:10.

27

And Plaintiffs' theory has always been that Defendant deceived consumers when it stated that all

28

its ingredients are Non-GMO when, in fact, its meat and dairy ingredients are derived from

animals fed GM feed. *See, e.g.*, Pls' Opp. to Def's Mot. to Excl. Expert Testimony of Pls' Expert Dr. Jon A. Krosnick, filed Jan. 5, 2018 [ECF No. 111], at 8:15-23; *see* Pls' Opp. to Mot. for Summ. J., filed Dec. 22, 2017 [ECF No. 104], at 20:2-19.

Thus, even if the animals are themselves not genetically modified, it is not an issue in dispute. Accordingly, Dr. Mellon's "scientific facts" and opinions are not relevant or helpful to the finder of fact. *Daubert*, 509 U.S. at 591.

### 2.   Dr. Mellon's Opinions are Not Reliable.

Rule 702(b) of the Federal Rules of Evidence requires expert testimony to be "based on sufficient facts or data." Unlike her colleagues who have at least attempted to cite to various sources in support of their opinions, Dr. Mellon here fails to offer *any* evidence to corroborate the reliability of her opinions. Indeed, Dr. Mellon could not show where she obtained the information for her report or how she gained such knowledge. *See* Mellon Rep.; *see also* King SJ Decl., Ex. 17 (Mellon Dep.), at 50:25-56:10, 58:20-69:7, 80:21-81:15, 86:14-87:9, 93:9-95:17, 145:3-7, 163:25-166:3. Dr. Mellon did not perform any experiments or review any tests, and could not cite to any preexisting research or the published works of others to reinforce her opinions. *Id.* Dr. Mellon could not even name a secondary resource such as a learned treatise, a scientific article, or a science textbook, to validate the veracity of her views. *Id.*; *see Sanderson v. Int'l Flavors and Fragrances, Inc.*, 950 F. Supp. 981, 993-95 (C.D. Cal. 1996) (finding expert testimony unreliable for expert's failure to show reliability on "own research, on published research by others, or on other objective sources"). Other than claim that she has a biology background, Dr. Mellon fails to present any substantiation for her otherwise conclusory opinions.

An expert's "bald assurance of validity is not enough." *See Daubert II*, 43 F.3d at 1316; *see also Zenith Elecs. Corp. v. WH-TV Broad. Corp.*, 395 F.3d 416, 418 (7th Cir. 2005) ("Asked repeatedly during his deposition what methods he *had* used to generate projections, [expert] repeatedly answered 'my expertise' or some variant ('my industry expertise', '[my] awareness,' and 'my curriculum vitae')—which is to say that he either had no method or could not describe one."). But here, "[a]pparently we are supposed to take [expert's opinions] on faith, because [expert] did not gather any data on the subject, survey the published literature, or do any of the

1    other things that a genuine expert does before forming an opinion." *Minasian v. Standard*

2    *Chartered Bank, PLC*, 109 F.3d 1212, 1216 (7th Cir. 1997). "[S]omething doesn't become

3    'scientific knowledge' just because it's uttered by a scientist." *Daubert II*, 43 F.3d at 1315-16. Dr.

4    Mellon's "report that does nothing to substantiate this opinion is worthless, and therefore

5    inadmissible." *Minasian*, 108 F.3d at 1216.

6         **C.**     **Ms. Butler's Opinions Are Not Helpful And Are Unreliable**

7              **1.**     <u>Ms. Butler's Opinions are Based on Faulty Assumptions Concerning
     Plaintiffs' Theory of Liability.</u>

8

9         An expert's testimony "should be excluded if the data relied upon by the expert is

10   materially different from the data relevant to the facts of the case." *In re Omeprazole Patent*

11   *Litig.*, 490 F. Supp. 2d 381, 401 (S.D.N.Y. 2007) (citing *Raskin v. Wyatt Co.*, 125 F.3d 55, 67-68

12   (2d Cir. 1997)). Indeed, where "the expert has failed to consider the necessary factors, or *if the*

13   *analysis is premised upon a faulty assumption*, his testimony may be excluded for lack of

14   probative value." *Id.* (citing *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.2d 256, 268-69 (2d

15   Cir. 2002)) (emphasis added).

16        Ms. Butler's first opinion is that

17        Dr. Krosnick's survey does not address Plaintiffs' legal theory. Plaintiffs claim
     that consumers paid a 'premium' for Chipotle's food as a result of Chipotle's non-

18        GMO ingredients announcement. But, the Krosnick survey does not compare
     ingredients described as non-GMO relative to food sold absent this description.

19        Instead, Dr. Krosnick compares one set of non-GMO descriptions to the same set
     of non-GMO descriptions with additional information added….

20

21   Butler Rep., ¶¶ 9, 23-25.[5] Ms. Butler's second opinion is that Dr. Krosnick's survey did not test

22   _____

23   [5] Ms. Butler refers to paragraph 47 of the Class Action Complaint in support of her contentions
     here, but the paragraph does not provide Ms. Butler the factual assumptions she makes:

24        Chipotle is and remains under a duty to Plaintiffs and Class Members to disclose
     the true facts, as alleged herein. The duty to disclose the true facts arises because,

25        as marketer and seller, Chipotle is in a superior position to know the true character
     and quality of its food in relation to its Non-GMO Claims and the true facts are not

26        something that Plaintiffs and putative class members could, without reasonable
     diligence, have discovered independently prior to purchase. As a result of

27        Chipotle's omissions about its Non-GMO Claims, conveyed directly through its
     announcements, statements, marketing and advertising campaigns, it has been able

28        to charge consumers a significant price premium for its food over other fast-food

Plaintiffs' claims that Chipotle's Non-GMO information was misleading. *Id.* ¶¶ 9, 26-28. But, in making these determinations, Ms. Butler – as does Defendant[6] – mistakes and misstates Plaintiffs' theory of liability. Indeed, Ms. Butler's criticism of Dr. Krosnick's survey methodology and its results presupposes that Plaintiffs are challenging Defendant's Non-GMO Claims as to *all* of its ingredients, when, in fact, Plaintiffs' theory of liability is that Defendant failed to inform consumers that its meat and dairy ingredients – and only the meat and dairy ingredients – are sourced from animals fed GM grain. And, that is exactly what Dr. Krosnick tested. *See* Decl. of Laurence D. King in Supp. of Mot. for Class Cert., dated Nov. 17, 2017 ("King CC Decl."), Ex. 41 (Report of Jon A. Krosnick, dated Aug. 11, 2017) [ECF No. 95-42]; *see also* Pls' Opp. to Def's Mot. to Excl. Expert Testimony of Pls' Expert Dr. Jon A. Krosnick, dated Jan. 5, 2018 [ECF No. 111].

Only when proceeding on this faulty assumption can Ms. Butler reasonably conclude that Dr. Krosnick's survey did not address Plaintiffs' legal theory or that his survey did not test Plaintiffs' claims. But in assuming this incorrect fact, Ms. Butler has failed to carefully study Dr. Krosnick's survey design and its results. More disconcertingly, Ms. Butler failed to consider the facts as actually alleged and made assumptions that are not found anywhere in the Complaint or anywhere else. Because Ms. Butler bases her opinions on improper factual assumptions, her opinions are purely speculative and lack probative value. *See Macaluso v. Herman Miller, Inc.*, No. 01 Civ. 11496(JGK), 2005 WL 563169, at *8 (S.D.N.Y. Mar. 10, 2005); *see also Amorgianos*, 303 F.3d at 269 ("Because [the expert's] opinion rested on a faulty assumption … [his] expert opinion … was not based on 'good grounds'").

---

restaurants by convincing consumers to pay for a purportedly superior product, as its advertising and marketing misleadingly convey.

Indeed, nowhere in this paragraph 47 do Plaintiffs allege that all of Chipotle's ingredients are not non-GMO, nor has that ever been Plaintiffs' theory of liability.

[6] Indeed, Defendant misinterprets and misconstrues Plaintiffs' factual allegations and theory of liability in order to "fit" its own theories for summary judgment purposes. *See, e.g.*, Def. Chipotle Mexican Grill, Inc.'s Mot. to Excl. Expert Testimony of Dr. Jon A. Krosnick, filed Dec. 22, 2017 [ECF No. 101], at 8:16-9:27; Not. of Mot. and Mot. of Def. Chipotle Mexican Grill, Inc. for Summ. J., filed Nov. 17, 2017 [ECF No. 92], at 23:17-24:19.

In addition, Ms. Butler makes irrelevant observations and analyses concerning individual decision-making factors as part of her reasons underlying opinions 4 and 5. *See* Butler Rep., ¶¶ 9, 41-59. Specifically, Ms. Butler complains that Dr. Krosnick did not take into consideration other factors that would lead a consumer to purchase at Chipotle. But these arguments are specious at best. "Once liability is assumed, it becomes irrelevant whether various factors affected the individual class members' decisions to purchase" the product. *McCrary*, 2014 WL 12589137, at *13. "Only factors that affected them as a group, or on average, remain relevant." *Id.*; *see also Guido v. L'Oreal, USA, Inc.*, 284 F.R.D. 468, 475 n.6 (C.D. Cal. 2012) (excluding as irrelevant expert opinion on the impact to consumers of a lack of a warning label "because the [materiality] standard is an objective one").

### 2.     Ms. Butler's Opinions are Inconsistent and Therefore Not Reliable.

In addition to applying incorrect factual assumptions to her opinions, which undermines the reliability of her conclusions, Ms. Butler's opinions should also be rejected for the simple reason that Ms. Butler takes inconsistent and hypocritical positions.

Ms. Butler's third opinion criticizes Dr. Krosnick's results as failing to show a "statistically significant difference" in willingness to pay. *See* Butler Rep., ¶¶ 9, 29-34. But, Ms. Butler's third opinion is contradictory to her background and knowledge concerning the scientific and analytical issues surrounding the term "statistical significance." Indeed, in the face of evidence provided to her concerning the stance taken by the ASA (of which Ms. Butler is a member) over the "statistical significance" debate, Ms. Butler clearly retreats from her third conclusion. *See* Choi Opp. Decl., Ex. 5 (Butler Dep.), at 73:1-77:25. Ms. Butler acknowledges the ASA's stance on the issue and does not disagree with its position. Instead, Ms. Butler revises her testimony to highlight that "one of the things that I do in looking at Dr. Krosnick's report is not just look at his P-values, but I look at how the study was designed, what it's purporting to measure." *Id.* at 75:13-76:12. In addition, Ms. Butler fully acknowledges that such values "can be misused and misinterpreted like many statistics," *id.* at 74:17-75:11, and recognizes that Dr. Krosnick did not "data-dredge[], significance chase[], P-hack[]. *Id.* at 77:18-20. And Ms. Butler concedes that she may have also submitted reports that differed from what Defendant has argued

is the "standard" for scientifically validity. *Id.* at 70:3-71:22. Her inconsistent stance on this issue makes Ms. Butler's third opinion unreliable. *Cf. In re Bextra and Celebrex Mkting Sales Practices and Prod. Liab. Litig.*, 524 F. Supp. 2d 1166, 1179 (N.D. Cal 2007) (noting the inconsistency in expert's reliance of studies as a reason to exclude expert testimony).

Similarly, Ms. Butler's fourth and fifth opinions that Dr. Krosnick did not take into account additional factors that influence prices or that Dr. Krosnick's survey has methodological problems such as failing to replicate marketplace conditions, suffer from the same problem as Ms. Butler's third opinion. *See* Butler Rep., ¶¶ 9, 35-64. In addition to the fact that these opinions are irrelevant, Ms. Butler concedes that she has also designed surveys that have not replicated market conditions. *See* Choi Opp. Decl., Ex. 5 (Butler Dep.), at 110:7-11. After all, as Ms. Butler acknowledges, replicating market conditions would "affect consumers' behavior in a survey;" and significant bias could result. *Id.* at 111:12-117:18. And, Ms. Butler cannot recall any case in which she found an opposing expert's survey to replicate marketplace conditions or found an accurate price premium. *Id.* at 114:24-115:25. More to the point, Ms. Butler's opinions are inconsistent with her work in prior engagements in which she did not replicate market conditions or otherwise take into consideration all the other factors that may lead one to purchase a product. *See, e.g.*, *Singleton v. Fifth Generation, Inc.*, No. 5:15-CV-474 (BKS/TWD), 2017 WL 5001444, at *10 (N.D.N.Y. Sept. 27, 2017) (conducting an internet survey of 353 consumers, targeting men and women 21 years of age or older who have purchased a bottle of Tito's in the past six months). Ms. Butler's criticisms of Dr. Krosnick's survey and results are unfounded and unreliable, and thus should be excluded.

### D.     Dr. Mangum's Opinions Exceed Their Scope And Are Irrelevant

#### 1.     Dr. Mangum is Unqualified to Opine on Dr. Krosnick's Survey and Exceeds the Scope for Rebuttal.

Rule 26 of the Federal Rules of Civil Procedure characterizes rebuttal testimony as "evidence [which] is intended solely to contradict or rebut evidence on the same subject matter identified by another party." Fed. R. Civ. P. 26(a)(2)(D)(ii); *see also* Fed. R. Civ. P. 26 Advis. Cmte. Notes to 1993 Amends. "Rebuttal experts are not allowed to put forth their own theories;

instead, they must restrict their testimony to attacking the theories offered by the adversary's experts." *Downs v. River City Grp., LLC*, No. 3:11-cv-00885-LRH-WGC, 2014 WL 814303, at *5 (D. Nev. Feb. 28, 2014) (internal quotation and citation omitted). That is exactly what Dr. Mangum has done.

Here, Dr. Mangum states at the outset of his expert opinion that his engagement was "specifically" limited to "form[ing] opinions about the appropriateness of the methods described by Mr. Weir for measuring common impact and calculating class-wide damages." Mangum Decl., ¶ 1. However, Dr. Mangum then proceeds to analyze Dr. Krosnick's results and draw his own conclusions about Dr. Krosnick's data, including whether the results are "statistically significant" or are otherwise "meaningful." *See* Mangum Decl., ¶¶ 34-51. Dr. Mangum further opines on Dr. Krosnick's "inconsistent views and approaches when it comes to excluding various survey respondents," and questions "why Dr. Krosnick would not design his experiment to account for the more plausible test group scenario." *Id.* ¶¶ 61-65. And, Dr. Mangum makes a myriad of marketing opinions and consumer perception statements, including how Chipotle marketed its Non-GMO Claims and whether consumers actually saw the Non-GMO Claims. *See, e.g.*, Choi Decl., Ex. D (Mangum Dep.), at 134:10-135:14, 213:15-23. None of this was the focus of Mr. Weir's damages report. *See* King CC Decl., Ex. 42 (Decl. of Colin B. Weir, dated Aug. 11, 2017 ("Weir Decl.") [ECF No. 95-43].

A court must determine whether an expert has "appropriate qualifications–i.e., some special knowledge, skill, experience, training or education on that subject matter." *Hankey*, 203 F.3d at 1168 (citations omitted). The fact that an expert is qualified in a particular field does not automatically qualify that expert in related disciplines. *Id.*; *see also Wilson v. Woods*, 163 F.3d 935, 937-38 (5th Cir. 1999) (finding expert in fire reconstruction unqualified as expert in auto accident reconstruction). Here, Dr. Mangum, an economist, is not simply qualified to render opinions 1, 3, and 4 as it relates to Dr. Krosnick's report or his conclusions, or as to Chipotle's marketing or a consumer's perceptions. While Dr. Mangum asserts that he is opining on the alleged "economic interpretations" of Dr. Krosnick's opinions, Dr. Mangum's analysis and conclusions go far beyond the boundaries of an expert rebuttal report. Instead, Chipotle is using

Dr. Mangum's rebuttal on damages as a vehicle to introduce new expert evidence with respect to materiality. That is improper. Dr. Mangum was not designated to rebut the expert opinions of Dr. Krosnick, and is otherwise not competent to opine on Dr. Krosnick's survey results or on marketing and consumer preferences.

Because Dr. Mangum's opinions are outside the boundaries of a Federal Rule of Civil Procedure 26 rebuttal report, those opinions should be excluded. *See McCrary*, 2014 WL 12589137, at *10-13 (finding that Dr. Mangum's "expertise is in economics and not survey research or consumer behavior" and excluding portion of his report that analyzed survey expert's results and drawing his own conclusions when Dr. Mangum was not designated to rebut survey expert's report and was not otherwise qualified to do so); *see also People v. Kinder Morgan Energy Partners, L.P.*, 159 F. Supp. 3d 1182, 1190 (S.D. Cal. 2016) (excluding expert's opinion in part as to the issue of damages as "he was not hired to opine on damages").

> ### 2.   Dr. Mangum's Opinions are Unhelpful and Irrelevant.

In addition to submitting opinions that are beyond his expertise and outside the boundaries of an appropriate rebuttal report, Dr. Mangum makes observations and analyses that are irrelevant and unhelpful to a trier of fact.

Dr. Mangum first opines that "Mr. Weir's damages calculations is based on a metric that has no relationship whatsoever to the Plaintiffs' theory of damages, or to any economically appropriate measure of damages." *See* Mangum Decl., ¶ 9. But Dr. Mangum does not actually indicate or describe what "metric" Mr. Weir is allegedly using or explain how Mr. Weir's calculations have "no relationship whatsoever to Plaintiffs' theory of damages." Instead, Dr. Mangum only points to Dr. Krosnick's survey and its flaws, which, as noted above, is outside the purview of his rebuttal report and is thus irrelevant. Importantly, Dr. Mangum did not find any actual errors in Mr. Weir's actual damages calculations based upon Dr. Krosnick's finding of a price premium. *See* Choi Opp. Decl., Ex. 8 (Mangum Dep.), at 101:18-103:17. And, as demonstrated by Mr. Weir's expert opinion, Mr. Weir clearly took into consideration the relevant factors for his damages analysis. *See* Weir Decl., ¶¶ 7-52. As such, Dr. Mangum's opinion concerning Mr. Weir's "metric" is unhelpful.

Similarly, Dr. Mangum's third opinion criticizing Dr. Krosnick's survey results and, correspondingly, Mr. Weir's analysis, as failing to show common impact should also be excluded. Dr. Mangum essentially posits that Dr. Krosnick and Mr. Weir failed to take into consideration other reasons for one's decision to purchase at Chipotle. *See* Mangum Decl., ¶¶ 9, 34-65. But arguments such as the "inappropriateness of Mr. Weir's assumption that all consumers actually saw the accused statements and made decisions based on the content of those accused statements" or that consumers may have gone to Chipotle for other reasons are irrelevant and unfounded. First of all, Dr. Mangum is not a marketing or consumer behavior expert, and thus is not qualified to opine on what, if anything, a consumer would or should perceive as important or would or could take into consideration when purchasing a product. Secondly, Dr. Mangum was not retained to make an opinion on whether Chipotle's Non-GMO statements were material. And, in any case, a determination on liability is based upon Plaintiffs' showing of reliance on the Non-GMO Claims. "Once liability is assumed, it becomes irrelevant whether various factors affected the individual class members' decisions to purchase" the product. *McCrary*, 2014 WL 12589137, at *14. "Only factors that affected them as a group, *on average*, remain relevant." *Id.* (emphasis added); *see also Guido*, 284 F.R.D. at 475 n.6; *Nilon v. Natural-Immunogenics Corp.*, No. 3:12-CV-00930-LAB (BGS), 2014 WL 12570897, at *7 (S.D. Cal. Apr. 15, 2014) (noting that "while a named plaintiff in a UCL class action now must show that he or she suffered injury in fact and lost money or property as a result of the unfair competition, once the named plaintiff meets that burden, no further individualized proof of injury or causation is required to impose restitution liability against the defendant in favor of absent class members." *In re Steroid Hormone Product Cases*, 181 Cal. App. 4th 145, 154 (2010)).

And, Dr. Mangum's opinion concerning statistical significance should be excluded as irrelevant and unhelpful. First, Dr. Mangum does not actually object to Dr. Krosnick's data or calculations. Indeed, Dr. Mangum takes Dr. Krosnick's data and results at face value and does not find any actual fault in his analysis, except to complain that Dr. Krosnick did not do enough. However, Dr. Mangum is imposing his own interpretation on Dr. Krosnick's data and survey methodology, which is beyond the scope of his rebuttal report and, further, is on a topic that is

outside his expertise. Moreover, Dr. Mangum's view is but an "arbitrary" assessment of Dr. Krosnick's data. *Kadas v. MCI Systemhouse Corp.*, 255 F.3d 359, 362 (7th Cir. 2001) (noting that "[t]he 5 percent test is arbitrary [and] is influenced by the fact that that scholarly publishers have limited space and don't want to clog up their journals and books with statistical findings that have a substantial probability of being a product of chance rather than of some interesting underlying relation between the variables of concern"). Such opinions are unhelpful to the finder of fact.

### 3.    Dr. Mangum's Opinions are Unreliable and does Not "Fit".

Dr. Mangum's opinions are not only irrelevant, but are also unreliable. First, Dr. Mangum's conclusions contradict his assumptions. While Dr. Mangum assumes – as he must – that his analysis "is relevant only if there is a finding of liability," *see* Choi Decl., Ex. D (Mangum Dep.), at 68:13-69:6, Dr. Mangum goes on to conclude that there is no harm because there was no price premium, and further, that there is no evidence of common impact. *See* Mangum Decl., ¶¶ 30-33, 55-61. Essentially, Dr. Mangum opines that, as there is no evidence of harm or materiality, there is no liability. But Dr. Mangum's conclusions do not make any sense. If the finder of fact undertakes a damages analysis, it necessarily follows that the fact finder has already determined liability. *Cf. California v. Altus Finance S.A.*, 540 F.3d 992, 1005 (9th Cir. 2008) (noting that, without a finding of harm, there was no complete finding of liability). And if a fact-finder is asked to determine class-wide damages, the Court must have already held that damages may be determined on a class-wide basis. Thus, Dr. Mangum's conclusions are highly inconsistent and contradictory, and his opinions unreliable.

Dr. Mangum's price premium analysis should also be rejected as unreliable. Here, Dr. Mangum refers to the Ninth Circuit opinion in *Brazil*, 660 Fed. App'x at 534, for the proposition that a price premium means "the difference between the prices customers paid and the value of the [product] they brought." *See* Mangum Decl., ¶¶ 30-33. But then, Dr. Mangum asserts that there are no damages because Chipotle's prices did not change before, during, or after the relevant class period. *Id.* That is because, Dr. Mangum opines, "an obvious prerequisite for any claim that Chipotle charged consumers a price premium because of the accused statements is that Chipotle actually charged higher prices once the accused statements were introduced." *Id.* ¶ 33.

Essentially, Dr. Mangum claims that the *value* of Chipotle's food products are the same as the prices consumers paid. *Id.*

Notwithstanding the fact that Dr. Mangum's opinion walks a very fine line between making an expert opinion and forming an improper legal conclusion, Dr. Mangum's "price premium" opinion is unreliable as it is based on a faulty, unsubstantiated premise that has no foundation in fact or in the actual analysis of Dr. Krosnick's data or survey methodology. First, Dr. Mangum is neither a marketing nor a business expert, and has no expert knowledge on how businesses determine the pricing of their products. As such, his opinion that higher prices are "an obvious prerequisite" for a price premium is totally irrelevant. Moreover, Dr. Mangum completely ignores Dr. Krosnick's analysis and instead imposes his own interpretation on what Dr. Krosnick's survey and Mr. Weir's damages analyses should have done, which is not even relevant except in Dr. Mangum's worldview. Indeed, Dr. Krosnick's survey was not to designed to evaluate the value of Chipotle's products themselves, but the value of one of the *attributes* Chipotle claims its products have, based upon the Lewbel-Watanabe estimating approach. *See* Krosnick Rep., Sec. 2, Part 1, ¶ 16; *see also* Weir Decl., ¶¶ 20-22. That Dr. Mangum would like to alter Dr. Krosnick's study to fit his understanding on how to determine a price premium is entirely outside his purview as a damages rebuttal expert and plainly demonstrates Dr. Mangum's lack of qualifications to opine on issue such as Dr. Krosnick's survey methodology and corresponding results.

More importantly, other than citing to *Brazil*, Dr. Mangum does not proffer any references to validate this alleged precondition. Indeed, Plaintiffs have no idea where this requirement comes from, and Dr. Krosnick clearly did not employ Dr. Mangum's definition to create his survey or analyze his data. Other than a conclusory statement that higher prices are an "obvious prerequisite" to determining a price premium, Dr. Mangum lacks any articulable facts to corroborate that conclusion and completely fails to explain how or where he came upon this so-called requirement. *In re Fluidmaster, Inc., Water Connector Components Prods. Liab. Litig.*, No. 14-cv-5696, 2017 WL 1196990, at *7 (N.D. Ill. Mar. 31, 2017) (citations omitted) (noting the types of *ipse dixit* testimony that should be excluded by a court). Thus, not only are his price

premium arguments irrelevant, they are also unreliable as being based on a faulty assumption with no foundation other than Dr. Mangum's saying so.

**E.     Defendant's Expert Opinions Should Be Excluded Under Fed. R. Evid. 403**

Rule 403 of the Federal Rules of Evidence provides that courts may exclude relevant evidence "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Because the opinions of Defendant's experts are irrelevant and unreliable, their "probative value is substantially outweighed by" the unfair prejudice, confusion of the issues, misleading of a trier of fact, wasting of time, and presentation of cumulative evidence, and, as such, should be excluded under Rule 403.

As demonstrated above, Dr. Mellon's opinions should be excluded because they are irrelevant and unreliable. Dr. Mellon's testimony on topics that are plainly irrelevant to this case "would create a strong risk of confusion of the issues, misleading the jury, and waste of time." *Humphreys v. Regents of Univ. of Cal.*, No. C 04-03808 SI, 2006 WL 1867713, at *3 (N.D. Cal. July 6, 2006). Moreover, Dr. Mellon's opinions would improperly influence the trier of fact when questioning their own perceptions of the Non-GMO Claims, improperly causing unfair prejudice. *Dream Games of Ariz., Inc. v. PC Onsite*, 561 F.3d 983, 993 (9th Cir. 2009) (noting that unfair prejudice means an "undue tendency to suggest decision on an improper basis" (quoting Fed. R. Evid. 403, Advis. Cmte. Notes to 1972 Proposed Rules)).

Ms. Butler's report is also irrelevant and speculative, and, as such, would mislead the jury and confuse the issues. Indeed, Ms. Butler's conclusions, which are based on faulty assumptions as to Plaintiffs' theory of liability, would totally confuse a finder of fact and would be prejudicial to Plaintiffs' case. Similarly, Ms. Butler's contradictory and inconsistent opinions would further confuse the issues, mislead a trier of fact, and would otherwise waste time. Any probative value that Ms. Butler's opinions may have is clearly outweighed by the confusion and prejudice Ms. Butler's distorted arguments would make.

Finally, Dr. Mangum's opinions on Dr. Krosnick's report is ostensibly cumulative of what Ms. Butler was retained to do, and, as such, should be excluded. Moreover, Dr. Mangum's

1  opinions confuse the issues. For instance, Dr. Mangum opines on whether Dr. Krosnick's survey

2  results are "meaningful" statistically, but, as noted above, Dr. Mangum was not retained to opine

3  on the results of the survey, and is otherwise not qualified to testify as to issues relating to the

4  survey or to marketing. More importantly, Dr. Mangum's opinions would mislead the jury and

5  would be prejudicial as suggesting a decision on an improper basis, namely, that there is no

6  liability because there was no harm, which is totally inconsistent given Dr. Mangum's assumption

7  that there is liability. *Dream Games of Ariz., Inc.*, 561 F.3d at 993.

8       The opinions of Defendant's experts should be excluded.

9  **IV.    CONCLUSION**

10       Under *Daubert*, courts must now "determine nothing less than whether the experts'

11  testimony reflects 'scientific knowledge,' whether their findings are 'derived by the scientific

12  method,' and whether their work product amounts to 'good science.'" *Daubert II*, 43 F.3d at 1315

13  (quoting *Daubert*, 509 U.S. at 590). Courts must also "ensure that the proposed expert testimony

14  is 'relevant to the task at hand,'" or, in other words, "fit." *Id.* (quoting *Daubert*, 509 U.S. at 591).

15       For the reasons discussed herein, none of Defendant's experts provide either relevant or

16  reliable opinions as required under *Daubert*. Instead, Defendants' experts confuse the issues,

17  would mislead the trier of fact and cause unfair prejudice, provide cumulative testimony, and

18  would waste time.

19       The Court should exclude each of Defendant's experts.

20                           Respectfully submitted,

21                           **KAPLAN FOX & KILSHEIMER, LLP**

22  DATED:  January 17, 2018     By:  _/s/ Laurence D. King_
                               Laurence D. King

23

24                           Laurence D. King
                         Linda M. Fong
                         Matthew B. George

25                           Mario M. Choi
                         350 Sansome Street, Suite 400

26                           San Francisco, CA 94104
                         Telephone:  415-772-4700

27                           Facsimile:  415-772-4707

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**KAPLAN FOX & KILSHEIMER LLP**
Frederic S. Fox (*pro hac vice*)
Donald R. Hall (*pro hac vice*)
850 Third Avenue, 14th Floor
New York, NY 10022
Telephone:  212-687-1980
Facsimile:   212-687-7714

*Counsel for Plaintiffs*

Notice of Mot. and Mot. to Exclude Def's Experts; MPA iso Thereof