UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MARTIN SCHNEIDER, et al.,

        Plaintiffs,

    v.

CHIPOTLE MEXICAN GRILL, INC.,

        Defendant.

Case No. 16-cv-02200-HSG

**ORDER GRANTING PLAINTIFFS' MOTION FOR RECONSIDERATION, DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, GRANTING PLAINTIFFS' MOTION FOR CLASS CERTIFICATION, AND DENYING PLAINTIFFS' AND DEFENDANT'S DAUBERT MOTIONS**

Re: Dkt. Nos. 87, 92, 95, 100, 101, 117

Pending before the Court are: (1) Plaintiffs' unopposed motion for reconsideration, Dkt. No. 87; (2) Defendant's motion for summary judgment, Dkt. No. 92; (3) Plaintiffs' motion for class certification, Dkt. No. 95; (4) Defendant's motion to exclude the expert report and testimony of Colin B. Weir, Dkt. No. 100; (5) Defendant's motion to exclude the expert report and testimony of Dr. Jon A. Krosnick, Dkt. No. 101; and (6) Plaintiffs' motion to exclude testimony of Defendant's experts Dr. Margaret Mellon, Ms. Sarah Butler, and Dr. Russell Mangum, Dkt. No. 117. For the following reasons, the Court **GRANTS** the motion for reconsideration, **DENIES** Defendant's motion for summary judgment, **GRANTS** the motion for class certification, and **DENIES** both parties' Daubert motions.

## I. INTRODUCTION

Plaintiffs Martin Schneider, Sarah Deigert, Theresa Gamage, and Nadia Parikka bring this putative class action against Chipotle Mexican Grill, Inc. ("Chipotle"), alleging that Chipotle's claims that its products were "non-GMO" and "GMO-free" violated California, Maryland, and New York consumer protection laws. Plaintiffs currently identify representations on three in-store

signs displayed during the class period, which state, respectively, (1) "[w]hen it comes to our food, genetically modified ingredients don't make the cut," Dkt. No. 92-34; (2) "all of our food is non-GMO," Dkt. No. 92-21, and; (3) "only non-GMO ingredients," Dkt. No. 92-35. *See* Dkt. No. 131 at 12:21–24. Specifically, Plaintiffs allege that Defendant's advertising and labeling was misleading and deceptive because consumers reasonably understood these representations to mean "that Chipotle does not serve food sourced from animals that have been raised on GMOs or genetically engineered feed." *See* Dkt. No. 1 ("Compl.") ¶¶ 2, 19–26; Dkt. No. 111 at 8. However, Plaintiffs allege that Defendant serves "protein products such as beef, chicken, and pork from poultry and livestock" raised on GMO feed, "dairy products such as cheese and sour cream" produced by milk from such animals, and beverages made with corn-syrup from GMO corn. *Id.*

## II.     MOTION FOR RECONSIDERATION

### A.     Legal Standard

A "court may relieve a party or its legal representative from a final judgment, order, or proceeding for . . . any . . . reason that justifies relief." Fed. R. Civ. Pro. 60(b)(6). Reconsideration is appropriate if . . . there is an intervening change in controlling law." *Sch. Dist. No. 1J, Multnomah Cty., Or. v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993). A motion for reconsideration should be granted "in the face of the existence of new evidence, *an intervening change in the law*, or as necessary to prevent manifest injustice." *Navajo Nation v. Confederated Tribes & Bands of the Yakama Indian Nation*, 331 F.3d 1041, 1046 (9th Cir. 2003) (emphasis added); *see also* Civil Local Rule 7-9(b).

### B.     Discussion

On November 4, 2016, the Court granted Defendant's motion to dismiss Plaintiffs claims for injunctive relief for lack of standing. Dkt. No. 36 at 4. Following the Court's order on Defendant's motion to dismiss, the Ninth Circuit issued its opinion in *Davidson v. Kimberly-Clark Corp.*, 873 F.3d 1103 (9th Cir. 2017), resolving the district court split regarding whether injunctive relief is available to previously deceived consumers in false advertising cases. That decision was amended and superseded by *Davidson v Kimberly-Clark Corp.*, 889 F.3d 956 (9th Cir. May 9, 2018).

*Davidson* involved the advertising and sale of pre-moistened wipes that the plaintiff alleged were falsely marketed as "flushable." *Davidson*, 889 F.3d at 961. The Ninth Circuit reasoned that some set of circumstances may exist where injunctive relief is available to a consumer who learns that a label is false after purchasing a product. *Id.* at 967–972. It held that "a previously deceived consumer may have standing to seek an injunction against false advertising or labeling, even though the consumer now knows or suspects that the advertising was false at the time of the original purchase, because the consumer may suffer an actual and imminent, not conjectural or hypothetical threat of future harm." *Id.* at 969 (citation and internal quotation marks omitted). But the court cautioned that mere knowledge of a label's falsity in the past "does not equate to knowledge that it will remain false in the future." *Id.* Instead, a plaintiff seeking injunctive relief may show, for example, that "she will be unable to rely on the product's advertising or labeling in the future, and so will not purchase the product although she would like to." *Id.* at 970. "In other cases, the threat of future harm may be the consumer's plausible allegations that she might purchase the product in the future, despite the fact it was once marred by false advertising or labeling, as she may reasonably, but incorrectly, assume the product was improved." *Id.* Importantly, the Ninth Circuit's conclusion is narrower than a blanket conclusion that plaintiffs seeking injunctive relief in mislabeling class actions always have standing. The principle set forth in *Davidson* is more accurately cast as the court's "not [being] persuaded that injunctive relief is *never* available for a consumer who learns after purchasing a product that the label is false." *Id.* (quoting *Duran v. Creek*, No. 3:15-cv-05497-LB, 2016 WL 1191685, at *7 (N.D. Cal. Mar. 28, 2016)) (emphasis in original).

In light of *Davidson*, the Court finds that Plaintiffs' allegations, *see* Compl. ¶¶ 50–55, are sufficient on their face to allege standing to seek injunctive relief. The Complaint alleges that Plaintiff Schneider "maintains an interest in continuing as a customer at Chipotle in the future if Chipotle eventually does have a non-GMO and GMO-free menu," and that Plaintiffs Deigert, Gamage, and Parikka all "maintain[] an interest" in purchasing food at Chipotle in the future. Compl. ¶¶ 50–55. Under *Davidson*, this is a sufficient basis to find standing under Rule 23(b)(2).

Accordingly, the Court **GRANTS** Plaintiffs' motion for reconsideration. The Court

**AMENDS** its previous ruling, and **DENIES** Defendants' motion to dismiss Plaintiffs' claims for injunctive relief. Because Plaintiffs did not file an amended complaint following the Court's November 4, 2016 order and both parties have briefed the injunctive relief issues in their summary judgment and class certification papers, Plaintiffs need not file any amended complaint at this time.

## III.    MOTION FOR SUMMARY JUDGMENT

Defendant moves for summary judgment on all of Plaintiffs' claims, contending that there is no dispute of material fact that: (1) Plaintiffs were not deceived or harmed as a result of Chipotle's "non-GMO" claims; (2) no reasonable consumer would be deceived by the "non-GMO" claims, and (3) no consumers paid a price premium due to the "non-GMO" claims. Dkt. No. 92. For the following reasons, the Court DENIES Defendant's motion for summary judgment.

### A.    Summary Judgment Standard

Summary judgment is proper when a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is "genuine" if there is evidence in the record sufficient for a reasonable trier of fact to decide in favor of the nonmoving party. *Id.* The Court views the inferences reasonably drawn from the materials in the record in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986), and "may not weigh the evidence or make credibility determinations," *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997), *overruled on other grounds by Shakur v. Schriro*, 514 F.3d 878, 884–85 (9th Cir. 2008).

The moving party bears both the ultimate burden of persuasion and the initial burden of producing those portions of the pleadings, discovery, and affidavits that show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the moving party will not bear the burden of proof on an issue at trial, it "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the

4

nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). Where the moving party will bear the burden of proof on an issue at trial, it must also show that no reasonable trier of fact could not find in its favor. *Celotex Corp.*, 477 U.S. at 325. In either case, the movant "may not require the nonmoving party to produce evidence supporting its claim or defense simply by saying that the nonmoving party has no such evidence." *Nissan Fire & Marine Ins. Co.*, 210 F.3d at 1105. "If a moving party fails to carry its initial burden of production, the nonmoving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion at trial." *Id.* at 1102–03.

"If, however, a moving party carries its burden of production, the nonmoving party must produce evidence to support its claim or defense." *Id.* at 1103. In doing so, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S. at 586. A nonmoving party must also "identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996). If a nonmoving party fails to produce evidence that supports its claim or defense, courts enter summary judgment in favor of the movant. *Celotex Corp.*, 477 U.S. at 323.

### B. Discussion

#### i. Standing

Defendant contends that Plaintiffs cannot establish Article III standing because there is no issue of material fact that Plaintiffs were neither deceived nor harmed by the "non-GMO" claims. Dkt. No. 92 at 13–16. Defendant additionally contends that Plaintiffs lack standing to pursue injunctive relief because Chipotle has removed the advertisements at issue. *Id.* at 16–17. The Court addresses each argument in turn.

##### a. Legal Standard

To establish Article III standing, a plaintiff must show an injury-in-fact that is: (1) concrete and particularized, as well as actual or imminent; (2) fairly traceable to the challenged action of the defendant; and (3) redressable by a favorable ruling from the court. *Lujan v. Defenders of*

*Wildlife*, 504 U.S. 555, 560-61 (1992).  "A plaintiff must demonstrate standing for each claim he or she seeks to press and for each form of relief sought."  *Wash. Envtl. Council v. Bellon*, 732 F.3d 1131, 1139 (9th Cir. 2013).  "In food-labeling cases such as this one, a plaintiff can satisfy the Article III injury-in-fact requirement by showing that she either: (1) paid a price premium for a mislabeled product; or (2) would not have purchased the product had he or she known about the misbranding."  *Nguyen v. Medora Holdings, LLC*, No. 5:14-cv-00618-PSG, 2015 WL 4932836, at *5 (N.D. Cal. Aug. 18, 2015) (citations omitted); *see also Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 595 (9th Cir. 2012) (stating that, in class action alleging UCL, FAL, and CLRA claims, "[t]o the extent that class members were relieved of their money by [Defendant's] deceptive conduct . . . they have suffered an 'injury in fact'") (citation omitted).

### b.  Deception

Defendant contends that (1) Plaintiffs Deigert, Gamage, and Parikka were motivated to purchase Chipotle products because they were preexisting customers; (2) Plaintiffs Deigert, Gamage, and Schneider cannot have been deceived about GMO content in soft drinks because they have never purchased soft drinks at Chipotle; and, (3) all Plaintiffs believe that they were misled only because they hold the false belief that the meat and dairy ingredients are or contain GMOs.  Dkt. No. 92 at 13–14.

None of these arguments defeats Plaintiffs' standing.  Plaintiffs concede that only Plaintiff Parikka has standing to assert reliance with respect to soft drinks.  Dkt. No. 104 at 10 n.7.  A genuine issue of material fact remains as to whether Named Plaintiffs would have purchased the products at issue had they known about the alleged misbranding, regardless of their motivation to purchase before the "non-GMO" representations appeared or after the in-store campaign concluded.  Further, Defendant's argument that certain Named Plaintiffs may have understood the term "non-GMO" to mean that the meat and dairy products are not, and do not contain, GMOs is inapposite.  *See* Dkt. No. 92 at 14–15.  Plaintiffs' contention that the term "non-GMO" *also* means meat and dairy products from animals who have not consumed GMO feed is not inconsistent with the Named Plaintiffs' understanding, and the Named Plaintiffs' testimony therefore does not preclude them from holding both beliefs.  The cases Defendant cites do not hold otherwise.  *See*

*Wilson v. Frito-Lay N. Am., Inc.*, 260 F. Supp. 3d 1202, 1215 (N.D. Cal. 2017) (granting summary judgment in part because Plaintiff "testified at his deposition that he did not rely on the 'all natural' label when making his purchasing decision"); *Major v. Ocean Spray Cranberries, Inc.*, No. 5:12-CV-03067-EJD, 2015 WL 859491, at *3 (N.D. Cal. Feb. 26, 2015), *aff'd*, 690 F. App'x 564 (9th Cir. 2017) (granting summary judgment where Plaintiff admitted she did not rely to her detriment on the theory of deception proffered in the complaint). Here, taking the evidence in the light most favorable to the nonmovants, no Plaintiff has disavowed the Plaintiffs' proffered misrepresentation theory.

Plaintiffs have offered sufficient evidence to create a disputed issue of material fact that Named Plaintiffs would not have purchased the Chipotle meat and/or dairy products were it not for the allegedly misleading branding. *See, e.g.,* Dkt. No. 95-19 ¶ 7 (Deigert Declaration stating that she continued frequenting Chipotle in part because she "trusted that its representations were truthful"); Dkt. No. 95-21 ¶ 7 (Gamage Declaration stating that she began frequenting Chipotle more often after the representations were made, and believed that the products were "not tainted by GMOs"); Dkt. No. 95-22 ¶ 7 (Parikka Declaration stating that she "rel[ied] on Chipotle's Non-GMO signage" when making her purchases); Dkt. No. 95-20 ¶ 7 (Schneider Declaration stating that he began frequenting Chipotle partly because he saw the "non-GMO" signage).

### c.  Harm

Defendant additionally contends that (1) Plaintiffs lack standing because they cannot establish that the food they purchased entitles them to a full refund; and, (2) because Chipotle did not raise its prices during the Class Period, Plaintiffs cannot establish that they paid a price premium for the items they bought. Dkt. No. 92 at 15–16. Defendant also contends that Plaintiffs are not entitled to restitution under California law because any such restitution "must account for the benefits or value that a plaintiff received at the time of purchase" and "represent a measurable loss supported by the evidence." *Id.* at 15 (quoting *Stathakos v. Columbia Sportswear Co.*, No. 15-CV-04543-YGR, 2017 WL 1957063, at *10 (N.D. Cal. May 11, 2017)).

Defendant's contentions do not establish as a matter of law that Plaintiffs were not harmed by Defendant's alleged misrepresentations. Firstly, Defendant's contention that, because Plaintiffs

received "some value from" their purchases they are not entitled to a full refund addresses a question of damages, not one of standing. Defendant's only cited cases address this question with respect to damages and under California law. *Stathakos*, 2017 WL 1957063, at \*10 (granting summary judgment of no entitlement to a full refund); *Brazil v. Dole Packaged Foods, LLC*, No. 12-CV-01831-LHK, 2014 WL 2466559, at \*15 (N.D. Cal. May 30, 2014) (addressing full refund model during class certification under 12(b)(3)).

Further, under California law, "[f]or each consumer who relies on the truth and accuracy of a label and is deceived by misrepresentations into making a purchase, the economic harm is the same: the consumer has purchased a product that he or she *paid more for* than he or she otherwise might have been willing to pay if the product had been labeled accurately." *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 329 (2011) (emphasis in original). The fact that the price of the product did not change after the representation does not establish that there is no triable issue as to whether Plaintiffs paid a price premium. *See, e.g., McCrary v. Elations Co. LLC*, No. EDCV130242JGBSPX, 2014 WL 12589137, at \*9 (C.D. Cal. Dec. 2, 2014) ("A price premium may exist even though, at some point," the product "was sold at the same price" with and without the alleged misrepresentation).

#### d. Injunctive Relief

The Court has already established that Plaintiffs' pleadings on their face are sufficient to allege standing to pursue injunctive relief. *See* Section II, *supra*. The Complaint alleges that Plaintiff Schneider "maintains an interest in continuing as a customer at Chipotle in the future if Chipotle eventually does have a non-GMO and GMO-free menu," and that Plaintiffs Deigert, Gamage, and Parikka all "maintain[] an interest" in purchasing food at Chipotle in the future. Compl. ¶¶ 50–55.

Defendant contends that Chipotle has "removed from its restaurants each of the 'Non-GMO Claims' allegedly seen by Plaintiffs." Dkt. No. 92 at 17. However, Defendant does not contest that similar statements are still made by Chipotle on its website, in its ingredients guide, and by Chipotle employees in stores, including the claim that "[w]hen it comes to [its] food, genetically modified ingredients don't make the cut," which "has appeared on [Chipotle's]

United States District Court
Northern District of California

homepage and continues to be one of the first things consumers see on the GMO Webpage." Dkt. No. 120 at 2–3. Defendant contends that, because these statements are (or, in the case of employee representations, are designed to be) accompanied by an explanation that "much of the meat and dairy we serve come from animals fed at least some GMO grain," Plaintiffs are not likely to be further misled. *Id.* at 2.

Defendant cites to *Kane v. Chobani, Inc.*, No. 12-CV-02425-LHK, 2013 WL 5289253 (N.D. Cal. Sept. 19, 2013), in which the court dismissed similar California law claims of misrepresentation. In *Kane*, the representation at issue appeared on a label that also disclosed information that clarified the meaning of the representation such that it was "not plausible" for Plaintiffs to interpret the representation as misleading. *Kane*, 2013 WL 5289253, at *10.

The *Kane* court dismissed California law claims due to lack of standing under the UCL and FAL, which require a demonstration of actual reliance. *Id.* at *5. Here, Plaintiffs seek injunctive relief under California, Maryland, and New York law. Compl. ¶¶ 78, 115, 124. To establish Article III standing "[w]here standing is premised entirely on the threat of repeated injury, a plaintiff must show a sufficient likelihood that he will again be wronged in a similar way." *Davidson*, 889 F.3d at 967. (internal quotation marks omitted). To establish standing for injunctive relief, a plaintiff may show, for example, that "she will be unable to rely on the product's advertising or labeling in the future, and so will not purchase the product although she would like to." *Davidson*, 889 F.3d at 970.

Plaintiffs' current position is that "1) reasonable consumers understood Non-GMO to include meat and dairy ingredients that were not sourced from animals fed GM feed; 2) Defendant failed to include that information on its in-store billboards and other marketing materials in a deceptive manner; and 3) Defendant misrepresented its Non-GMO claims by omitting to include this clarifying information." Dkt. No. 111 at 8 (internal footnote omitted); *see also* Compl. ¶ 41; Dkt. No. 104 at 12 ("Plaintiffs believed that all of Defendant's ingredients were non-GMO, meaning that none of the ingredients came from animals that fed on GM feed.").

The disclaimer on Defendant's website and handbooks does not ensure that Plaintiffs will be able to rely on Chipotle labeling or advertisements in the future such that Plaintiffs are deprived

9

of standing. *See Davidson*, 889 F.3d at 970.

Neither are Plaintiffs' claims for injunctive relief rendered moot simply because Chipotle has removed the in-store signage. A demonstration of mootness requires that "the reform of the defendant must be irrefutably demonstrated and total." *Polo Fashions, Inc. v. Dick Bruhn, Inc.*, 793 F.2d 1132, 1135 (9th Cir. 1986). Defendant has not met this high burden by demonstrating that the alleged misrepresentations have totally and irrefutably ceased. The Court therefore DENIES Defendant's motion for summary judgment as to Plaintiffs' claims for injunctive relief.

### ii. Reasonable Consumer

Defendant contends that that there is no issue of material fact that a reasonable consumer would not be deceived by Chipotle's "non-GMO" claims. Dkt. No. 92 at 17.

#### a. Legal Standard

Plaintiffs' claims under California, Maryland, and New York law are evaluated under a "reasonable consumer" test. *See Williams v. Gerber Prod. Co.*, 552 F.3d 934, 938 (9th Cir. 2008); *Luskin's, Inc. v. Consumer Prot. Div.*, 353 Md. 335, 357–58 (1999); *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 26 (1995). "Under the reasonable consumer standard, [a plaintiff] must show that members of the public are likely to be deceived." *Williams*, 552 F.3d at 938 (internal quotation marks omitted).

#### b. Website Disclaimer

Defendant first contends that, because Plaintiffs challenge all of Defendant's "non-GMO" advertising and marketing claims, the challenged claims necessarily include statements made on Chipotle's website that, even during the Class Period, included a disclaimer that "the meat and dairy served at Chipotle are likely to come from animals given at least some GMO feed." Dkt. No. 92 at 17–18. Defendant cites several cases supporting the proposition that a disclaimer or clarifying language can defeat a claim of deception. *Id.* at 18 (citing *Ebner v. Fresh, Inc.*, 838 F.3d 958 (9th Cir. 2016); *Freeman v. Time, Inc.*, 68 F.3d 285, 290 (9th Cir. 1995); *Fink v. Time Warner Cable*, 714 F.3d 739, 742 (2d Cir. 2013); *Broder v. MBNA Corp.*, 281 A.D.2d 369, 371, 722 N.Y.S.2d 524 (2001)). But none of the cases Defendant cites establishes that a disclaimer appearing as part of one advertisement is sufficient to defeat claims that other, wholly separate

advertisements are misleading. It would not be reasonable to expect a consumer to search for disclaimers on a website to clarify a purported misrepresentation on in-store signage. *See Williams*, 552 F.3d at 939 ("[R]easonable consumers should [not] be expected to look beyond misleading representations on the front of the box to discover the truth from the ingredient list in small print on the side of the box."). The Court therefore finds that Defendant's disclosures on the website do not establish as a matter of law that a reasonable consumer could not have been misled by the "non-GMO" in-store advertisements.

### c. Deception

Defendant next contends that Plaintiffs have not presented any evidence that a reasonable consumer would be deceived by Chipotle's "non-GMO" claims. Dkt. No. 92 at 18–22. Defendant contends that, because the in-store advertisements do not specifically address the feed consumed by the animals that produce Chipotle's meat and dairy ingredients or the soft drinks offered in the restaurants, it would not be reasonable for a consumer to be misled by the "non-GMO" representations. *Id.* at 21.

Plaintiffs have provided extrinsic evidence that the "non-GMO" representations at least could be misleading, making all inferences in their favor as required here. Plaintiffs support their allegations with definitions used by the Non-GMO Project and the federal government, as well as market research and surveys into consumers' interpretations of the phrases. Dkt. Nos. 95-28, 94-24, 94-26, 94-28, 94-38. Additionally, Plaintiffs point to several emails directed to Chipotle indicating that at least some customers may have believed the representations to be misleading. *See* Dkt. No. 94-10, 94-12, 94-14, 94-16, 94-18, 94-20, 94-22. Viewed in the light most favorable to Plaintiffs, there is a triable issue of fact as to whether a reasonable consumer could find that Chipotle's "non-GMO" claims implied that the animals that produce Chipotle's meat and dairy ingredients were not fed GMO grain. Plaintiffs' have submitted sufficient evidence to present a genuine issue of material fact as to whether Defendant's representations would have deceived a reasonable consumer.

### iii. Economic Harm

Defendant again contends that there is no genuine issue of material fact that Plaintiffs did

11

not suffer an economic harm because: (1) Chipotle did not change the price of its products during the Class Period; (2) Plaintiffs' expert report does not appropriately measure the harm Plaintiffs allege; and (3) Plaintiffs' expert report finds no price premium among a group of all respondents. Dkt. No. 92 at 23–25. The Court addresses each argument in turn.

### a. Change in Price

The fact that the price of the allegedly mislabeled products did not change during the Class Period does not by itself demonstrate as a matter of law that Plaintiffs cannot prove economic harm caused by the misrepresentations. *See Brazil v. Dole Packaged Foods, LLC*, No. 12-CV-01831-LHK, 2014 WL 5794873, at *10 (N.D. Cal. Nov. 6, 2014) (noting that producer pricing does not necessarily correlate with value to the consumer when calculating restitution). Defendant cites no law in support of its proposition that "Chipotle's own pricing behavior provides a perfect before-and-after scenario for observing whether consumers did, in fact, pay a price premium." Dkt. No. 92 at 23. Such a test does not take into account economic harm or the potential benefit to a defendant in increased market share caused by a misrepresentation that induces consumers to purchase a product they otherwise would not have purchased. *See Kwikset*, 51 Cal. 4th 310, 329. A reasonable jury could find that, despite no change in price during the Class Period, Plaintiffs suffered economic harm as a result of Defendant's alleged misrepresentations.

### b. Dr. Krosnick's Methodology

The parties agree that the proper measure of restitution in this case is "the difference between the market price actually paid by consumers and the true market price that reflects the impact of the unlawful, unfair, or fraudulent business practices." Dkt. No. 104 at 22; Dkt. No. 120 at 13; *see also Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979, 989 (9th Cir. 2015) ("[R]estitution is based on what a purchaser would have paid at the time of purchase had the purchaser received all the information.").

Defendant contends that Plaintiffs have failed to present any evidence of a difference between the price paid by consumers and the true market price of the Chipotle products. Dkt. No. 120 at 13. Plaintiffs' expert Dr. Krosnick offers a report based on a questionnaire comparing the price respondents would pay for food items after having been presented with the text of Chipotle's

1    "non-GMO" in-store advertisements against the price respondents would pay after having seen

2    both the "non-GMO" advertisements and a corrective statement about animals eating GMO feed.

3    Dkt. No. 92-9 ("Krosnick Report") ¶¶ 1–15.  Defendant contends that, because the report does not

4    directly measure the difference in a consumer's willingness to pay with and without the "non-

5    GMO" representations, it cannot be relied upon as evidence that Plaintiffs paid a price premium.

6    Dkt. No. 92 at 24.

7         The Court is not persuaded.  Dr. Krosnick's report is relevant to Plaintiffs' theory that

8    Chipotle, by displaying "non-GMO" representations, misled consumers into believing that the

9    meat and dairy products came from animals that did not consume GMO feed.  The report therefore

10   provides extrinsic evidence of some weight that a reasonable consumer would pay less for

11   Defendant's products if not for the alleged misrepresentation.  Whether or not a jury is likely to

12   find the evidence persuasive, this is sufficient to present a genuine issue of material fact as to

13   whether Plaintiffs have suffered economic harm.

14                    c.  Dr. Krosnick's Results

15        Defendant notes that Dr. Krosnick's survey results only show that customers who have

16   purchased and/or eaten at Chipotle would pay more without the clarifying disclaimer, whereas Dr.

17   Krosnick's results for *all* respondents (including those who are not Chipotle customers) indicate

18   an increased willingness to pay for food when shown the "GMO feed" disclaimer.  Dkt. No. 92 at

19   24–25.  Defendant contends that this discrepancy proves that Plaintiffs cannot establish that a

20   reasonable consumer would have paid more given the corrective statement.  *Id.*  Defendant cites to

21   no legal precedent holding that analysis focusing on a defendant's actual customers cannot be

22   probative of the economic harm suffered by a reasonable consumer.  Though the Court

23   acknowledges that the import of Dr. Krosnick's survey results is ambiguous at best, viewing the

24   report in the light most favorable to the nonmoving party, an issue of material fact remains as to

25   whether Plaintiffs or a reasonable consumer suffered economic harm as a result of the alleged

26   misrepresentations.

27   **C.    Conclusion**

28        For the foregoing reasons, the Court DENIES Defendant's motion for summary judgment.

## IV.  PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

### A.  Background

#### i.  Class Allegations

Plaintiffs Martin Schneider, Sarah Deigert, Theresa Gamage, and Nadia Parikka seek to certify three classes of consumers who purchased Defendant's food products between April 27, 2015, and June 30, 2016 (the "Class Period").  Dkt. No. 95 at 1.

Plaintiffs bring causes of action under California, Maryland, and New York consumer protection laws.  Plaintiffs seek certification under Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3).  More specifically, Plaintiffs allege that they purchased food products manufactured and sold by Defendant that falsely and misleadingly-advertised as "non-GMO" when, in fact, those food products contained ingredients that came from animals that fed on genetically modified feed. Dkt. No. 95 at 1.  They accordingly seek to certify three separate classes corresponding to these violations that include all California, Maryland, and New York consumers who Defendant's products at any time during the Class Period.  The proposed class definitions are as follows:

> California:  All persons in California who purchased Chipotle's Food Products containing meat and/or dairy ingredients during the Class Period.
>
> Maryland: All persons in Maryland who purchased Chipotle's Food Products containing meat and/or dairy ingredients during the Class Period.
>
> New York: All persons in New York who purchased Chipotle's Food Products containing meat and/or dairy ingredients during the Class Period.

*See* Dkt. No. 95 at i.

#### ii.  Procedural Posture

Plaintiffs filed the operative complaint on April 22, 2016.  Compl.  On November 4, 2016, the Court granted in part Defendant's motion to dismiss the complaint, narrowing the claims for which Plaintiffs could seek relief.  *See* Dkt. No. 36.  Defendant answered the complaint on December 1, 2016.  Dkt. No. 40.

On November 17, 2017, Plaintiffs filed this motion for class certification.  Dkt. No. 95.

On December 22, Defendant moved to exclude the testimony of Plaintiffs' expert witnesses. Dkt. Nos. 100, 101. Defendant filed its opposition on December 27, 2017, Dkt. No. 106. On January 19, 2018, Plaintiffs replied. Dkt. No. 121. On January 17, 2018, Plaintiffs filed a motion to exclude testimony of Defendant's experts Drs. Mellon, Dr. Mangum, and Ms. Butler. Dkt. No. 117. The Court heard argument on the class certification motion on February 8, 2018. Dkt. No. 127.

### B. Legal Standard

Plaintiffs bear the burden of showing by a preponderance of the evidence that class certification is appropriate under Federal Rule of Civil Procedure 23. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350-51 (2011). First, the plaintiffs must establish that each of the four requirements of Rule 23(a) are met: numerosity, commonality, typicality, and adequacy of representation. *Id.* at 349. Where the plaintiffs "succeed[] in establishing all four of the 23(a) elements, [they] must then satisfy one of the three requirements of Rule 23(b)." *Civil Rights Educ. & Enforcement Ctr. v. Hospitality Props. Trust*, 867 F.3d 1093, 1103 (9th Cir. 2017).

As relevant here, Rule 23(b)(2) requires that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief . . . is appropriate respecting the class as a whole." Rule 23(b)(3), on the other hand, requires a finding "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." To determine whether a putative class action satisfies the requirements of Rule 23(b)(3), courts consider:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3)(A)–(D).

While a court's "class-certification analysis must be rigorous and may entail some overlap with the merits of the plaintiff's underlying claim, Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage." *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 465-66 (2013) (internal citations and quotation marks omitted). "Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Id.* at 466 (citation omitted). A trial court's "broad discretion to certify a class . . . must be exercised within the framework of Rule 23." *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001), *reh'g denied*, 273 F.3d 1266 (9th Cir. 2001) (citation omitted).

## C. Discussion

Before considering whether Plaintiffs have satisfied the requirements of Rule 23, the Court turns to two threshold issues: Plaintiffs' standing and the parties' evidentiary objections.

### i. Standing

Plaintiffs must show they have standing to bring their claims in order to represent the putative class. *See Lierboe v. State Farm Mut. Auto. Ins. Co.*, 350 F.3d 1018, 1022 (9th Cir. 2003). Defendant contends that Plaintiffs do not have standing to assert any of their claims because they have "been neither deceived nor harmed by Chipotle's 'non-GMO ingredients' announcement." Dkt. No. 106 at 7. Defendant relies solely on the arguments made in their motion for summary judgment to contest Plaintiffs' standing. *Id.* The Court has fully addressed these standing arguments in Section III(B)(i) above, and finds that Plaintiffs have adequately established standing for all claims.

### ii. Evidentiary Objections

Defendant objects to seven email exchanges Plaintiffs offer as evidence (Exs. 7–13) as inadmissible hearsay. *See* Dkt. No. 106 at 25, 11. The statements in these emails made by Chipotle employees are non-hearsay party admissions. Fed. R. Evid. 801(d)(2). The statements made by non-Chipotle employees are admitted not for their underlying truth, but as evidence of what customers may have believed and communicated to Chipotle. Fed. R. Evid. 801(c)(2). Defendant additionally objects to Plaintiffs' exhibits 23–27, 29, and 32–42 without establishing a

16

basis for the objection.  These objections made without specific grounds are DENIED.  *See* Fed. R. Evid. 103(a).

### iii.    Rule 23(a)

Having resolved these threshold issues, the Court next considers whether Plaintiffs have satisfied the requirements of Rule 23(a).

#### a.   Numerosity

Rule 23(a)(1) requires that the putative class be "so numerous that joinder of all members is impracticable."  Plaintiffs contend that the numerosity requirement is satisfied because, based on the "millions of units" sold by Chipotle, "each of the Classes consists of hundreds of thousands of consumers."  Dkt. No. 95 at 11.  Defendant does not contest that numerosity requirement is satisfied.

"[C]ourts have routinely found the numerosity requirement satisfied when the class comprises 40 or more members."  *Villalpando v. Exel Direct Inc.*, 303 F.R.D. 588, 605-06 (N.D. Cal. 2014) (citation omitted).  Although Plaintiffs do not provide an exact estimate of how many proposed class members there are, based on Plaintiffs' estimation and Chipotle's sales numbers, *see* Dkt. No. 95 at 11, the Court is satisfied that the putative class members are sufficiently numerous to make joinder impracticable within the meaning of Rule 23(a)(1).

#### b.   Commonality

Rule 23(a)(2) requires that "there are questions of law or fact common to the class."  Plaintiffs contend that claims of all members of the proposed classes share common questions of law as to whether Chipotle's advertising was misleading and likely to deceive a reasonable consumer, and as to the appropriate measure of relief.  Dkt. No. 95 at 12.

Defendant points to individualized issues involved in determining which consumers were exposed to which specific representations (including the disclaimer on the website), which consumers paid attention to the claims to which they were exposed, which consumers understood the term "non-GMO" to mean food products that are not sourced from animals that have consumed GMO feed, which consumers found the "non-GMO" claims to be material, and which consumers relied on the claims.  Dkt. No. 106 at 8–14.

Defendant's arguments regarding common exposure, attention, understanding, materiality, and reliance are inappropriate here at the 23(a)(1) determination. The individualized issues raised by the question of "*which* buyers saw or heard *which* advertisements . . . go to preponderance under Rule 23(b)(3), not to whether there are common issues under Rule 23(a)(2)." *Mazza*, 666 F.3d at 589.

Further, misrepresentation claims under California, Maryland, and New York law must be proved based on a "reasonable consumer" standard. *See Williams*, 552 F.3d at 938; *Luskin's, Inc.*, 353 Md. at 357–58; *Oswego Laborers' Local 214 Pension Fund*, 85 N.Y.2d at 26. This reasonable consumer inquiry encompasses materiality and reliance. *See In re ConAgra Foods, Inc.*, 90 F. Supp. 3d 919, 983 (C.D. Cal. 2015), *aff'd sub nom. Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121 (9th Cir. 2017), and *aff'd sub nom. Briseno v. ConAgra Foods, Inc.*, 674 F. App'x 654 (9th Cir. 2017) ("[A] California class suing under the state's consumer protection statutes need not show individualized reliance if it can establish the materiality of ConAgra's '100% Natural' label to a reasonable consumer."); *see also In re Tobacco II Cases*, 46 Cal. 4th 298, 327 (2009) ("A misrepresentation is judged to be 'material' if 'a reasonable man would attach importance to its existence or nonexistence in determining his choice of action in the transaction in question.").

The Court agrees that the legal issue highlighted by Plaintiffs is appropriate for class treatment. A contention is sufficiently common where "it is capable of classwide resolution— which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S at 350. Commonality exists where "the circumstances of each particular class member vary but retain a common core of factual or legal issues with the rest of the class." *Parra v. Bashas', Inc.*, 536 F.3d 975, 978–79 (9th Cir. 2008). "What matters to class certification . . . is not the raising of common 'questions'—even in droves—but rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Dukes*, 564 U.S at 350 (citation omitted) (emphasis in original). Because the identified common issues are sufficient for purposes of commonality, the Court finds this requirement satisfied.

c.   Typicality

18

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Defendant contends that Plaintiffs fail to satisfy the typicality requirement because: (1) Plaintiffs' have not specified which of Chipotle's GMO-related representations they were exposed to; (2) Named Plaintiffs' belief that the "non-GMO" claims are false because animals that eat GMO feed "become, or contain, GMOs" is contrary to the liability theory presented by Plaintiffs' counsel; (3) only Plaintiff Schneider relied upon the "non-GMO" representations when making his purchase; and (4) Named Plaintiffs have stated a desire for a full refund, which does not match the price premium damages model presented by Plaintiffs' counsel. Dkt. No. 106 at 15–16.

"The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (internal quotation marks omitted). Under the "permissive standards" of Rule 23(a)(3), the claims need only be "reasonably co-extensive with those of absent class members," rather than "substantially identical." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998). In other words, typicality is "satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2010) (internal quotation marks omitted).

None of Defendant's contentions defeats typicality. The question of exposure, as addressed above, "go[es] to preponderance under Rule 23(b)(3)." *Mazza*, 666 F.3d at 589. The Court addressed Defendant's contention that Plaintiffs' beliefs are misaligned with Plaintiffs' theory of liability in Section III(B)(i)(b), above. Named Plaintiffs' testimony regarding their own understanding is not inconsistent with Plaintiffs' theory, and therefore does not, in itself, defeat typicality.

Defendant's contention that only Plaintiff Schneider relied on the "non-GMO" statements in making his purchases is not supported by the evidence in the record. *See, e.g.,* Dkt. No. 95-19 ¶ 7 (Deigert Declaration stating that she continued frequenting Chipotle in part because she "trusted

that its representations were truthful"); Dkt. No. 95-21 ¶ 7 (Gamage Declaration stating that she began frequenting Chipotle more often based on the representations, and believed that the products were "not tainted by GMOs"); Dkt. No. 95-22 ¶ 7 (Parikka Declaration stating that she "rel[ied] on Chipotle's Non-GMO signage" when making her purchases); Dkt. No. 95-20 ¶ 7 (Schneider Declaration stating that he began frequenting Chipotle partly because he saw the "non-GMO" signage).

Finally, Defendant cites no legal basis for its contention that Named Plaintiffs' statements in depositions that they desire a full refund prevents their claims from being typical of those of the class. The class allegations all aver injury based on Defendant's "non-GMO" claims. For typicality purposes, this is sufficient, even though Plaintiffs may believe themselves entitled to damages larger than Plaintiffs currently seek. *See Hopkins v. Stryker Sales Corp.*, No. 5:11-CV-02786-LHK, 2012 WL 1715091, at *7 (N.D. Cal. May 14, 2012) (finding that "differences between [named plaintiffs'] damages and the damages of other putative class members do not defeat typicality because 'each of the Plaintiffs' claims stem from the same allegedly unlawful policies and practices.'").

### d. Adequacy

Rule 23(a)(4) requires that the "representative parties will fairly and adequately represent the interests of the class."

On the question of adequacy, the Court must address two legal questions: (1) whether the named plaintiffs and their counsel have any conflicts of interest with other putative class members, and (2) whether the named plaintiffs and their counsel will prosecute the action vigorously on behalf of the proposed class. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 462 (9th Cir. 2000). This inquiry "tend[s] to merge" with the commonality and typicality criteria. *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 158 n.13 (1982). In part, these requirements determine whether "the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Id.*

Defendant does not contend that named Plaintiffs and their counsel have any conflicts of interest, or that they have not prosecuted the action vigorously. Rather, Defendant contends that

Plaintiffs' counsel has acted unethically in a variety of ways.  Dkt. No. 106 at 16–17.  Defendant identifies a representation made by Plaintiffs regarding Dr. Krosnick's expert report, a separate representation regarding the availability of a witness for deposition, and alleges that Plaintiffs' counsel "improperly solicited" Plaintiff Parikka.  *Id.*

"The degree of unethical conduct justifying a finding of inadequacy is high, and often turns on counsel's integrity and candor."  *Victorino v. FCA US LLC*, 322 F.R.D. 403, 408 (S.D. Cal. 2017) (internal quotation marks omitted).  Here, Defendant's allegations do not rise to the level required to find Plaintiffs' counsel inadequate.  Defendant's contentions are insufficiently supported to persuade the Court that Plaintiffs made knowing misrepresentations, or that Plaintiffs' counsel communicated improperly with Plaintiff Parikka.

Defendant additionally contends that the Named Plaintiffs are not adequate class representatives because they have no role in the case beyond "furnishing their names as plaintiffs." Dkt. No. 106 at 18.  Defendant repeats its arguments regarding Named Plaintiffs' understanding of the term "non-GMO" and damages, and adds that Plaintiffs are indemnified from an attorneys' fees award against them, and that Plaintiffs' counsel had begun preparing this litigation before being retained.  *Id.*

"To establish adequacy lead plaintiffs need only be familiar with the basis for the suit and their responsibilities as lead plaintiffs."  *In re Lendingclub Sec. Litig.*, 282 F. Supp. 3d 1171, 1182 (N.D. Cal. 2017).  Plaintiffs have engaged in this litigation by answering discovery requests and providing testimony at deposition.  *See* Dkt. No. 121 at 10.  Plaintiffs are not required to meet the high burden presented by Defendant in order to satisfy Rule 23(a)(4).

Because the Court is unaware of any conflicts among Plaintiffs and proposed class members, and finds that Plaintiffs have, to date, vigorously prosecuted the action on behalf of the alleged classes, the Court is satisfied that Plaintiffs can adequately represent the various classes as pled.

### iv.    Rule 23(b)(2)

#### a.  Standing

In its opposition to the motion for class certification, Defendant contends that Plaintiffs

lack standing to seek injunctive relief under Rule 23(b)(2). Dkt. No. 106 at 19. Defendant presents the same argument made in its motion for summary judgment. For the same reasons discussed in Section III(B)(i)(d) above, the Court finds that Plaintiffs have standing to pursue claims for injunctive relief.

### b. Discussion

"Rule 23(b)(2) applies only when a single injunction . . . would provide relief to each member of the class." *Dukes*, 564 U.S. at 360. The "key" to finding a class under Rule 23(b)(2) "is the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined . . . only as to *all* of the class members or as to *none* of them." *Id.* (citation and internal quotation marks omitted) (emphasis added). Rule 23(b)(2) "does not authorize class certification when each individual class member would be entitled to a *different* injunction . . . against the defendant," or "to an individualized award of monetary damages." *Id.* at 360–61 (emphasis in original).

Defendant contends that Plaintiffs' claims for restitution are "predominantly for money damages," and therefore improper for 23(b)(2) certification. Dkt. No. 106 at 19–20. Initially, Plaintiffs purported to seek "all incidental monetary relief" in addition to declaratory and injunctive relief under 23(b)(2). Dkt. No. 95 at 15. In reply, however, they appear to pursue only a claim for injunctive relief under Rule 23(b)(2). Dkt. No. 121 at 10–11.

Defendant appears to argue that Plaintiffs' attempt to certify a damages class pursuing restitution under Rule 23(b)(3) bars certification under Rule 23(b)(2). The Court finds no such bar to 23(b)(2) certification. *See In re ConAgra Foods, Inc.*, 302 F.R.D. 537, 573 (C.D. Cal. 2014) ("Ninth Circuit precedent indicates that the court can separately certify an injunctive relief class and if appropriate, also certify a Rule 23(b)(3) damages class.").

The only remaining question, then, is whether "a single injunction . . . would provide relief to each member of the class." *Dukes*, 564 U.S. at 360. Based on the alleged mislabeling, the Court finds that it would, and grants certification of all four classes under Rule 23(b)(2). The Court remains mindful, however, that a showing of irrefutable and total cessation of the challenged conduct prior to a final judgment in this litigation may be grounds for a decertification

motion. *See* Fed. R. Civ. P. 23(c)(1)(C) ("An order that grants or denies class certification may be altered or amended before final judgment.").

### v. Rule 23(b)(3)

Plaintiffs also seek certification under Rule 23(b)(3), which requires Plaintiffs to show predominance and superiority. As detailed below, the Court finds that Plaintiffs have met both requirements.

#### a. Predominance

##### 1. Legal Standard

"The predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (internal quotation marks omitted). The Supreme Court has defined an individual question as "one where members of a proposed class will need to present evidence that varies from member to member, while a common question is one where the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof." *Id.* (citation and internal quotation marks omitted; brackets in original). This "inquiry asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Id.* (citation and internal quotation marks omitted).

The Supreme Court has made clear that Rule 23(b)(3)'s predominance requirement is "even more demanding" than the commonality requirement of Rule 23(a). *See Comcast*, 569 U.S. at 34 (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623–24 (1997)). Accordingly, the Court will apply this rigorous standard in determining whether Plaintiffs have shown that restitution owed is "capable of measurement on a classwide basis." *See Just Film, Inc. v. Buono*, 847 F.3d 1108, 1120 (9th Cir. 2017).

##### 2. Exposure

In cases alleging misrepresentation, "common issues predominate when plaintiffs are exposed to [a] common set of representations about a product." *Butler v. Porsche Cars N. Am., Inc.*, No. 16-CV-2042-LHK, 2017 WL 1398316, at *10 (N.D. Cal. Apr. 19, 2017); *see also*

*Solomon v. Bell Atl. Corp.*, 777 N.Y.S.2d 50, 55 (2004) ("[C]ertification of a class for purposes of an action brought under GBL §§ 349 and 350 may be appropriate where the plaintiffs allege that all members of the class were exposed to the same misrepresentations."). "[T]he relevant class must be defined in such a way as to include only members who were exposed to advertising that is alleged to be materially misleading." *Mazza*, 666 F.3d at 596.

This case does not involve the type of massive advertising campaign that gives rise to a presumption of exposure to all class members. *See id.* (distinguishing *Tobacco II*, which involved a "'decades-long' tobacco advertising campaign where there was little doubt that almost every class member had been exposed to defendants' misleading statements"). Here, the in-store advertising campaign lasted 430 days, and involved two signs displayed on the in-store menus and one sign displayed in the outward-facing store window. *See* Dkt. No. 94-7 at 25:12–28:2. Plaintiffs therefore must show classwide exposure to the misleading statements/omissions.

Plaintiffs rely primarily on the advertisements and statements issued and installed in all of Chipotle's stores, which include: (1) a sign displayed in the window of all Chipotle locations between April 27, 2015 and June 15, 2015 reading in relevant part "[w]hen it comes to our food, genetically modified ingredients don't make the cut," Dkt. No. 92-34; (2) a sign displayed on the in-store menu between April 27, 2015 and June 15, 2015 reading in relevant part "all of our food is non-GMO," Dkt. No. 92-21, and; (3) a sign displayed on the in-store menu between June 15, 2015 and June 30, 2016 reading in relevant part "only non-GMO ingredients," Dkt. No. 92-35. *See* Dkt. No. 94-7 at 25:12–28:2. Some combination of these signs was present in all Chipotle restaurants for the entire class period, and every store displayed the in-store menu in use during the time periods at issue. *See id.*; Dkt. No. 92-21; Dkt. No. 92-35; Dkt. No. 121 at 2. Based on Plaintiffs' theory that "reasonable consumers understood Non-GMO to include meat and dairy ingredients that were not sourced from animals fed GM feed," Dkt. No. 111 at 8, the Court finds that the representations made on these three in-store signs are not so disparate as to preclude cohesion among class members. *Cf. Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1020 (9th Cir. 2011).

Neither party has offered any evidence or argument that members of the proposed classes

24

could have purchased Chipotle meat and/or dairy products without setting foot inside the restaurants, and therefore without having been exposed to any of this signage. The Court therefore concludes that Plaintiffs have sufficiently alleged class-wide exposure.

### 3. Damages

With respect to the monetary relief sought by a putative class, predominance requires that "damages are capable of measurement on a classwide basis, in the sense that the whole class suffered damages traceable to the same injurious course of conduct underlying the plaintiffs' legal theory." *Just Film*, 847 F.3d at 1120 (quoting *Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013)) (internal quotation marks omitted); *see also Bruton v. Gerber Prods. Co.*, No. 12-CV-02412-LHK, 2018 WL 1009257, at *8–12 (N.D. Cal. Feb. 13, 2018) (applying *Comcast*'s damages predominance requirement to proposed restitution calculation methods); *Jones v. ConAgra Foods, Inc.*, No. C 12-01633 CRB, 2014 WL 2702726, at *19–23 (N.D. Cal. June 13, 2014) (same). As such, "a model purporting to serve as evidence of damages in [a] class action must measure only those damages attributable" to the relevant theory of liability. *Comcast*, 569 U.S. at 35. While a proffered model "need not be exact" at the class certification stage, it "must be consistent with [the plaintiff's] liability case." *Id.* (citations and internal quotation marks omitted); *see also Cal. v. Infineon Techs. AG*, No. C 06-4333 PJH, 2008 WL 4155665, at *9 (N.D. Cal. Sept. 5, 2008) (stating that at class certification stage, court's role is to "discern only whether plaintiffs have advanced a *plausible* methodology to demonstrate that . . . injury can be proven on a class-wide basis") (emphasis added). Moreover, while predominance is not shown where "[q]uestions of individual damage calculations . . . inevitably overwhelm questions common to the class," *Comcast*, 569 U.S. at 34, the "presence of individualized damages" on its own is insufficient to defeat class certification, *Just Film*, 847 F.3d at 1120 (quoting *Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 514 (9th Cir. 2013)).

Defendant again contends that Dr. Krosnick's survey does not measure the impact of the "non-GMO" claims because it instead focuses on the impact of the "non-GMO" claims with and without a corrective statement. *See* Dkt. No. 106 at 22. The Court previously addressed this argument in Section III(B)(iii)(b) above. Even though Dr. Krosnick's survey does not compare a

25

consumer's willingness to pay with and without having seen the allegedly misleading representations, it does produce some measure of the price differential attributable to the "non-GMO" statements. It is therefore not inconsistent with Plaintiffs' liability case.

Defendant next contends that Dr. Krosnick's report only measures consumers' willingness to pay without taking into account supply-side factors, and therefore does not determine the difference "between the market values of the product as advertised and as delivered." Dkt. No. 106 at 23–24. Defendant also contends that Mr. Weir's report, which relies on Dr. Krosnick's findings, does not correct this issue because Mr. Weir "did nothing more than apply Dr. Krosnick's willingness-to-pay numbers to Chipotle's sales." *Id.* Defendant cites *In re NJOY, Inc. Consumer Class Action Litig.*, in which the court rejected Plaintiffs' proposed damages model because it "completely ignore[d] the price for which [defendant] is willing to sell its products, what other e-cigarette manufacturers say about their products, and the prices at which those entities are willing to sell their products." *In re NJOY, Inc. Consumer Class Action Litig.*, 120 F. Supp. 3d 1050, 1120 (C.D. Cal. 2015).

Here, Dr. Krosnick's report bases its price options on "actual prices that Chipotle charged for their food items." Krosnick Report ¶ 46. This is sufficient to tie the measured willingness to pay to the real-world marketplace in which Chipotle's products are sold. Dr. Krosnick's report, though subject to myriad challenges on cross-examination, does demonstrate that a price premium model is "consistent with" Plaintiffs' liability case. *See Comcast,* 569 U.S. at 35.

### 4. Conclusion

Because Plaintiffs have demonstrated common exposure to the alleged misrepresentations and Plaintiffs' damages model is sufficient at this stage to show that damages traceable to the "non-GMO" claims can be measured in some way on a classwide basis, the Court finds that common questions of law predominate.

### b. Superiority

The superiority requirement tests whether "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The Court considers four non-exclusive factors: (1) the interest of each class member in individually

controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against the class; (3) the desirability of concentrating the litigation of the claims in the particular forum; and (4) the difficulties likely to be encountered in the management of a class action. *Id.* "Where classwide litigation of common issues will reduce litigation costs and promote greater efficiency, a class action may be superior to other methods of litigation." *Valentino v. Carter-Wallace, Inc.*, 97 F.3d. 1227, 1234–35 (9th Cir. 1996).

Defendant focuses here on the fourth factor, stating that "Chipotle does not possess records that would make it easy to identify and notify class members and determine the extent of damages, if any, that each has suffered." Dkt. No. 106 at 25.

That there may be some difficulty in identifying all class members is not dispositive: the Ninth Circuit rejected a similar argument that plaintiffs must identify an administratively feasible way to determine who is in the class in order to satisfy the requirements of Rule 23. *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1126 (9th Cir. 2017) ("[T]he language of Rule 23 does not impose a freestanding administrative feasibility prerequisite to class certification."). Therefore, given the weight of the other three factors, the Court finds that class action is the superior method to adjudicate this matter.

Under the Rule 23(b) factors, therefore, the Court is compelled to certify the classes proposed here.

## V. DAUBERT MOTIONS

### A. Legal Standard

Federal Rule of Evidence 702 allows a qualified expert to testify "in the form of an opinion or otherwise" where:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

United States District Court
Northern District of California

Fed. R. Evid. 702.

Expert testimony is admissible under Rule 702 if it is both relevant and reliable. *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993). "[R]elevance means that the evidence will assist the trier of fact to understand or determine a fact in issue." *Cooper v. Brown*, 510 F.3d 870, 942 (9th Cir. 2007); *see also Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010) ("The requirement that the opinion testimony assist the trier of fact goes primarily to relevance.") (internal quotation marks omitted).

Under the reliability requirement, the expert testimony must "ha[ve] a reliable basis in the knowledge and experience of the relevant discipline." *Primiano*, 598 F.3d at 565. To ensure reliability, the court must "assess the [expert's] reasoning or methodology, using as appropriate such criteria as testability, publication in peer reviewed literature, and general acceptance." *Id.* at 564. These factors are "helpful, not definitive," and a court has discretion to decide how to test reliability "based on the particular circumstances of the particular case." *Id.* (internal quotation marks and footnotes omitted). "When evaluating specialized or technical expert opinion testimony, the relevant reliability concerns may focus upon personal knowledge or experience." *United States v. Sandoval-Mendoza*, 472 F.3d 645, 655 (9th Cir. 2006).

The inquiry into the admissibility of expert testimony is "a flexible one" where "[s]haky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion." *Primiano*, 598 F.3d at 564. "When the methodology is sound, and the evidence relied upon sufficiently related to the case at hand, disputes about the degree of relevance or accuracy (above this minimum threshold) may go to the testimony's weight, but not its admissibility." *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 852 (Fed. Cir. 2010). The burden is on the proponent of the expert testimony to show, by a preponderance of the evidence, that the admissibility requirements are satisfied. *Lust By & Through Lust v. Merrell Dow Pharm., Inc.*, 89 F.3d 594, 598 (9th Cir. 1996); *see also* Fed. R. Evid. 702 Advisory Cttee. Notes.

## B. Dr. Kroskick

Defendant moves to exclude Dr. Krosnick's report and testimony as inadmissible under Federal Rule of Evidence 702. Dkt. No. 101. Defendant raises the same arguments addressed above in Section III(B)(iii) with respect to the relevance of Dr. Krosnick's report to Plaintiffs' theory of liability and the applicability of the report's results. The Court need not repeat its analysis of these issues. For the same reasons discussed in Section III(B)(iii), above, the Court finds that Dr. Krosnick's report is relevant to the claims at issue.

Defendant additionally contends that Dr. Krosnick's report is unreliable because: (1) the results presented are not statistically significant; (2) the survey failed to question respondents about the materiality of the "non-GMO" claims; (3) the survey did not account for outside factors affecting willingness to pay; (4) the survey did not present the "non-GMO" claims in the same visual context as they appeared in Chipotle stores; and (4) the survey did not present the corrective statement messaging verbatim from Chipotle's website.

Given the established relevance of Dr. Krosnick's report to Plaintiffs' damages theory, all of Defendant's challenges go to the weight of Dr. Krosnick's opinions, rather than to their admissibility. *See Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1263 (9th Cir. 2001) (after deeming a survey admissible, "follow-on issues of methodology, survey design, reliability, the experience and reputation of the expert, critique of conclusions, and the like go to the weight of the survey rather than its admissibility").

## C. Mr. Weir, Dr. Mellon, Ms. Butler, and Dr. Mangum

Defendant additionally moves to exclude Mr. Weir's testimony as inadmissible under Federal Rule of Evidence 702. Dkt. No. 100. Plaintiffs move to exclude the testimony and expert opinions of Dr. Mellon, Ms. Butler, and Dr. Mangum. Dkt. No. 117. Because the Court finds that the expert opinions of Mr. Weir, Dr. Mellon, Ms. Butler, and Dr. Mangum would not alter the outcome of the Court's analysis and the Court does not rely on any of these opinions, the Court DENIES as moot the motions to exclude the testimony of Mr. Weir, Dr. Mellon, Ms. Butler, and Dr. Mangum. The Court's denial of these motions is made without prejudice to the parties reasserting these objections in their pretrial filings.

## VI. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Plaintiffs' motion for reconsideration, **DENIES** Defendant's motion for summary judgment, **DENIES** Defendant's motion to exclude the testimony and opinions of Dr. Krosnick, and **DENIES** as **MOOT** Plaintiffs' and Defendant's remaining Daubert motions.

The Court finds that all the requirements of Federal Rule of Civil Procedure 23(a), Rule 23(b)(2), and Rule 23(b)(3) have been met in this case. Accordingly, the Court **GRANTS** Plaintiff's motion for class certification and certifies the following classes:

> <u>California</u>: All persons in California who purchased Chipotle's Food Products containing meat and/or dairy ingredients during the Class Period.
>
> <u>Maryland</u>: All persons in Maryland who purchased Chipotle's Food Products containing meat and/or dairy ingredients during the Class Period.
>
> <u>New York</u>: All persons in New York who purchased Chipotle's Food Products containing meat and/or dairy ingredients during the Class Period.

The Court appoints Plaintiffs Martin Schneider, Sarah Deigert, Theresa Gamage, and Nadia Parikka as Class representatives and the law firm of Kaplan Fox as Class Counsel in this action. The Court also **SETS** a further case management conference on October 30 2018, at 2:00 p.m. The parties shall meet and confer and submit a joint case management statement by October 23, 2018. The joint statement should include a proposed case schedule through trial.

**IT IS SO ORDERED.**

Dated:

HAYWOOD S. GILLIAM, JR.
United States District Judge