MESSNER REEVES LLP
Charles C. Cavanagh (CA State Bar No. 198468)
1430 Wynkoop Street, Suite 300
Denver, Colorado 80202
Telephone: (303) 623-1800
Facsimile: (303) 623-0552
E-mail: ccavanagh@messner.com

DLA PIPER LLP (US)
Angela Agrusa (CA State Bar No. 131337)
2000 Avenue of the Stars, Suite 400N
Los Angeles, California 90067
Telephone: (310) 500-3500
Facsimile: (310) 500-3300
E-mail: angela.agrusa@dlapiper.com

Attorneys for Defendant
CHIPOTLE MEXICAN GRILL, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARTIN SCHNEIDER, et al., individually and on behalf of all others similarly situated.<br><br>Plaintiffs,<br><br>v.<br><br>CHIPOTLE MEXICAN GRILL, INC., a Delaware corporation.<br><br>Defendant. | Case No.: 16-CV-02200-HSG<br><br>**NOTICE OF MOTION AND MOTION OF DEFENDANT CHIPOTLE MEXICAN GRILL, INC. TO MODIFY SCHEDULING ORDER TO RE-OPEN DISCOVERY**<br><br>Judge: Hon. Haywood S. Gilliam, Jr.<br>Ctrm.: 2 (Oakland Courthouse)<br>Hearing Date: January 10, 2019<br>Hearing Time: 2:00 p.m.<br><br>Action Filed: April 22, 2016<br>Trial Date: TBD |

TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:

NOTICE IS HEREBY GIVEwestN that, on January 10, 2019, at 2:00 p.m., or as soon thereafter as counsel may be heard by the Honorable Haywood S. Gilliam, Jr., in courtroom 2 of the above-titled Court, located at 1301 Clay Street, Oakland, California, 94612 defendant Chipotle Mexican Grill, Inc. ("Chipotle") will, and hereby does, move the Court for an order modifying the operative scheduling order to re-open discovery for the limited purposes of permitting Chipotle to serve document subpoenas on its third-party delivery partners and allowing Chipotle to depose third-party percipient witness and class member Paul Primozich.

This Motion is made on the following grounds:

1.      Good cause exists for allowing Chipotle to depose Mr. Primozich because Chipotle has been diligent in seeking to depose him. Within the applicable deadlines set by this Court, Chipotle disclosed Mr. Primozich as a potential witness and subpoenaed his deposition. Plaintiffs Martin Schneider, Sarah Deigert, Theresa Gamage, and Nadia Parikka ("Plaintiffs") moved to quash Chipotle's subpoena, primarily on the grounds that, despite the fact that he sometimes patronizes Chipotle, he would never be a member of any class that would be certified by this Court. Magistrate Judge Westmore granted Plaintiffs' motion to quash. Contrary to Plaintiffs' assurances, Mr. Primozich is a member of the California class certified by this Court through its September 29, 2018 Order (D.E. 136, referred to herein as the "Order"). Therefore, Chipotle, promptly renewed its request to depose Mr. Primozich.

2.      Good cause exists for allowing Chipotle to subpoena documents from its third-party delivery partners because Chipotle's need to develop evidence that consumers may purchase its food products without setting foot inside its restaurants was not foreseeable. As this Court has found, "[t]his case does not involve the type of massive advertising campaign that gives rise to a presumption of exposure to all class members." (Order [D.E. 136], p. 24.) Therefore, it was Plaintiffs' burden to "show classwide exposure to the misleading statements/omissions." (*Id.*) Nevertheless, this Court concluded that Plaintiffs had "sufficiently alleged class-wide exposure" to Chipotle's in-restaurant signage, despite the fact that "[n]either party has offered any evidence or argument that members of the proposed classes could have purchased Chipotle meat and/or dairy

products without setting foot inside the restaurants, and therefore without having been exposed to any of this signage." (*Id.* at 24-25.)  Given that Plaintiffs bore the burden of proof regarding exposure to the allegedly deceptive advertising, Chipotle could not have foreseen that this Court would presume exposure to Chipotle's in-restaurant signage in the acknowledged absence of evidence on that point.  Therefore, until this Court issued its Order, it was not foreseeable that Chipotle would need to develop evidence to show that consumers could have purchased Chipotle's food products without setting foot inside one of its restaurants.  Once Chipotle's need affirmatively to develop that evidence became apparent, Chipotle promptly asserted its right to do so.

This Motion is based upon this Notice of Motion and Motion; the attached Memorandum of Points and Authorities; the concurrently-filed Declarations of Nicole West and Charles Cavanagh; all the pleadings and papers on file in this action; and upon such oral argument and other matters as may be presented to the Court at the time of the hearing.

Dated:  December 6, 2018         MESSNER REEVES, LLP
                                 DLA PIPER LLP (USA)

                                 By: _____
                                     Charles C. Cavanagh
                                     Attorneys for Defendant
                                     CHIPOTLE MEXICAN GRILL, INC.

## STATEMENT OF THE ISSUES TO BE DECIDED

This Motion raises the following issues:

1. Whether good cause exists for modifying the scheduling order for the limited purpose of allowing Chipotle to depose Mr. Primozich.

2. Whether good cause exists for modifying the scheduling order for the limited purpose of permitting Chipotle to issue document subpoenas to its third-party delivery partners.

# **TABLE OF CONTENTS**

I. INTRODUCTION ................................................................................................................. 1

II. RELEVANT FACTUAL BACKGROUND AND PROCEDURAL HISTORY ....................... 2

     A.    Purchases Of Chipotle Food Products Outside Of Chipotle Restaurants................ 2

     B.    Paul Primozich. ........................................................................................................ 5

     C.    Chipotle's Requests To Re-Open Discovery. .......................................................... 7

III. ARGUMENT ........................................................................................................................ 7

     A.    Trial Is Not Imminent............................................................................................... 8

     B.    Chipotle's Request To Re-Open Discovery Is Opposed. ........................................ 8

     C.    Plaintiffs Will Not Be Prejudiced By The Requested Limited Re-Opening Of Discovery. ........................................................................................................... 8

     D.    To The Extent That It Was Foreseeable, Chipotle Has Been Diligent In Pursuing The Requested Discovery. ....................................................................... 8

     E.    The Discovery Requested By Chipotle Will Lead To Relevant Evidence. ........... 11

IV. CONCLUSION ................................................................................................................... 12

# TABLE OF AUTHORITIES

**Page**

Federal Cases

*Cabral v. Supple LLC*, 608 Fed. Appx. 482 (9th Cir. 2015) ................................................. 2, 9, 11

*Comcast Corp. v. Behrend*, 569 U.S. 27 (2013) ................................................................................ 9

*ConAgra Foods, Inc.*, 302 F.R.D. 537 (C.D. Cal. Aug. 1, 2014) ....................................................... 2

*Druyan v. Jagger*, 508 F. Supp. 2d 228 (S.D.N.Y. 2007) ............................................................... 12

*Federal Trade Comm'n v. AMG Servs.*, 2016 WL 4087268 (D. Nev. July 29, 2016) .................... 11

*Gouin v. Nolan Assocs., LLC*, 25 F.R.D. 521 (D. Mass. 2017) ......................................................... 9

*Hannon v. Chater*, 887 F. Supp. 1303 (N.D. Cal. 1995) ................................................................... 7

*Hernandez v. Mario's Auto Sales, Inc.*, 617 F. Supp. 2d 488 (S.D. Tex. 2009) ............................... 9

*Johnson v. Mammoth Recreations, Inc.*, 975. F.2d 604 (9th Cir. 1992) ........................................... 7

*Lehman Brothers Holdings, Inc. v. Universal Am. Mortg. Co.*, 300 F.R.D. 678 (D. Colo. 2014).. 10

*Mazza v. Am. Honda Motor Co.*, 666 F.3d 581 (9th Cir. 2012) ............................................. 3, 9, 11

*Red v. Kraft Foods, Inc.*, 2012 WL 8019257 (C.D. Cal. Apr. 12, 2012) .......................................... 3

*Smith v. United States*, 834 F.2d 166 (10th Cir. 1987) ..................................................................... 8

*U.S. ex rel. Pogue v. Diabetes Treatment Ctrs. of Am.*, 576 F. Supp. 2d 128 (D.D.C. 2008) .......... 7

*United States ex rel. Schumer v. Hughes Aircraft Co.*, 63 F.3d 1512 (9th Cir. 1995) ..................... 8

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) ...................................................................... 9

*Williams v. Gerber Prods. Co.*, 552 F.3d 934 (9th Cir. 2008) ....................................................... 12

State Cases

*Cohen v. DIRECTV, Inc.*, 178 Cal. App. 4th 966 (2009) ........................................................ 2, 10, 11

*In re Tobacco II Cases*, 46 Cal. 4th 298 (2009) ............................................................................... 9

*Luskin's, Inc. v. Consumer Protection Div.*, 353 Md. 335 (1999) .................................................. 12

Rules

Fed. R. Civ. Proc. 16 ......................................................................................................................... 7

Fed. R. Civ. Proc. 16(b)(4) ............................................................................................................ 7

Fed. R. Civ. Proc. 16(d) ................................................................................................................ 7

Fed. R. Civ. Proc. 23 .................................................................................................................... 9

Fed. R. Civ. Proc. 23(c)(1)(C) .................................................................................................... 11

Fed. R. Civ. Proc. 26(b)(1) ......................................................................................................... 11

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Chipotle moves to modify the scheduling order to permit it to conduct limited additional third-party discovery in order to develop further the record regarding evidentiary issues that became apparent through this Court's September 29, 2018 Order (D.E. 136).  Specifically, Chipotle seeks (1) to depose Paul Primozich, a member of the California class certified by this Court and a percipient witness to plaintiff Sarah Deigert's understanding of, and reaction to, Chipotle's alleged use of GMOs, as well as to some of Plaintiff Deigert's purchases at Chipotle, whose previously-scheduled deposition was quashed in response to Plaintiffs' motion and (2) to subpoena documents from its third-party delivery partners to address the fact that, in the Order, this Court placed on Chipotle the burden of producing evidence that consumers may purchase its food products without ever setting foot inside its restaurants.

Good cause exists for modifying the scheduling order to permit Chipotle to conduct this limited additional third-party discovery.  Specifically, Chipotle has been diligent in seeking to depose Mr. Primozich and has not already done so only because Plaintiffs succeeded in quashing Chipotle's prior deposition subpoena.  With respect to its third-party delivery partners, the need for Chipotle to develop that evidence was not foreseeable because it was Plaintiffs' burden to prove classwide exposure to Chipotle's alleged misrepresentations.  Accordingly, Chipotle could not reasonably have anticipated that this Court would construe an absence of evidence that all Chipotle customers must have entered a Chipotle restaurant against Chipotle.  (Order [D.E. 136], pp. 24-25.) Since the need for this evidence was made known to Chipotle, Chipotle has diligently sought to develop it.

Other factors that district courts sometimes consider in determining whether to grant motions to re-open discovery also weigh in favor of allowing Chipotle to conduct this limited additional third-party discovery.  Trial is not imminent.  Plaintiffs will not be prejudiced, and will be only minimally burdened, by the requested discovery.  At most, Plaintiffs will be required to review any documents produced in response to Chipotle's subpoenas to its third-party delivery partners and to attend one day of a deposition of a single third-party witness.  The additional discovery is also very

1  likely to lead to relevant evidence.  Evidence regarding consumers purchasing Chipotle's food
2  products without ever setting foot inside a Chipotle restaurant goes directly to the issue of exposure
3  discussed in this Court's Order, and may require this Court to decertify, or to re-define, the classes
4  certified thereby.  Mr. Primozich's testimony regarding Plaintiff Deigert is also directly relevant to
5  her purchasing habits at Chipotle; her understanding of, and reaction to, Chipotle's alleged use of
6  GMOs; and to the circumstances under which she retained her current counsel.  Mr. Primozich is
7  also himself a member of the certified California class, such that his own interpretation of Chipotle's
8  "non-GMO ingredients" representation is relevant to the reasonable consumer standard under which
9  its liability for Plaintiffs' claims will be determined.  In light of these considerations, the mere fact
10 that Plaintiffs oppose Chipotle's request for a limited re-opening of discovery is not compelling.

11       For these reasons, and for the additional reasons discussed below, Chipotle respectfully
12 requests that this Court grant its motion to modify the scheduling order to permit it to conduct
13 limited additional third-party discovery.

14       **II.  RELEVANT FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

15 A.    <u>Purchases Of Chipotle Food Products Outside Of Chipotle Restaurants.</u>

16       One of Chipotle's arguments in opposition to Plaintiffs' motion for class certification was
17 that Plaintiffs have not proven common exposure to the "Non-GMO Claims." (Class Cert. Opp.
18 [D.E. 106], pp. 8-9 & 20-21.)  Specifically, Chipotle argued that, because the "Non-GMO Claims"
19 are not affixed to its products, it could not be assumed that all putative class members were
20 necessarily exposed to those claims and that, without evidence of common exposure, class
21 certification would be inappropriate.  (*See id.* at 8-9 [citing *Cohen v. DIRECTV, Inc.*, 178 Cal. App.
22 4th 966, 980 (2009) {California law "does not authorize an award … on behalf of a consumer who
23 was never exposed … to an allegedly wrongful business practice"}] & 20 [citing *Cabral v. Supple*
24 *LLC*, 608 Fed. Appx. 482, 483 (9th Cir. 2015) {"[I]t is critical that the misrepresentation in question
25 be made to all of the class members."}; *In re ConAgra Foods, Inc.*, 302 F.R.D. 537, 568 (C.D. Cal.
26 Aug. 1, 2014) {proposed classes are overbroad if they "include members who were never exposed to
27 the alleged misrepresentation"}; *Red v. Kraft Foods, Inc.*, 2012 WL 8019257, at *5 (C.D. Cal. Apr.
28

12, 2012) {finding a class that included consumers who were not exposed to misleading statements overbroad}].)

Addressing the issue of exposure in its Order, this Court acknowledged that "'[t]he relevant class must be defined in such a way as to include only members who were exposed to advertising that is alleged to be materially misleading,'" that "[t]his case does not involve the type of massive advertising campaign that gives rise to a presumption of exposure to all class members," and that "Plaintiffs therefore must show classwide exposure to the misleading statements/omissions." (D.E. 136, p. 24 [quoting *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 596 (9th Cir. 2012)].) Nevertheless, this Court concluded that "Plaintiffs have sufficiently alleged class-wide exposure," despite the fact that "[n]either party has offered any evidence or argument that members of the proposed classes could have purchased Chipotle meat and/or dairy products without setting foot inside the restaurants, and therefore without having been exposed to any of [Chipotle's in-restaurant] signage." (*Id.* at 24-25.)

In fact, there are various means by which consumers may purchase Chipotle food products outside of Chipotle's restaurants, some of which involve never setting foot inside a Chipotle restaurant and others of which involve entering the restaurant only after the purchase has been completed or the purchasing decision has been made. (*See* Declaration of Nicole West.)

Chipotle has official third-party delivery partners, through whom consumers may place, pay for, and receive orders for Chipotle food products, all without the consumer ever setting foot inside a Chipotle restaurant. (West Decl., ¶ 3.) Specifically, consumers may use the smartphone application of one of Chipotle's official third-party delivery partners to order and to pay for Chipotle food products, which the third-party delivery partner will then pick up from the appropriate Chipotle restaurant and deliver to the consumer. (*Id.*) Chipotle has been working with official third-party delivery partners since 2015. (*Id.* at ¶ 4.) Chipotle's current official third-party delivery partners are Postmates, Door Dash, and Tapingo. (*Id.*) Each of Chipotle's official third-party delivery partners should be in possession of information regarding each of the Chipotle orders it has processed, including a description of what was ordered, the restaurant location that fulfilled the order, and the amount charged by Chipotle for the order. (*Id.*)

Another way in which consumers may purchase Chipotle food products without ever setting foot inside of a Chipotle restaurant is through certain offsite marketing promotions, such as when Chipotle sets up a "pop-up" booth at a food festival or concert venue. (*Id.* at ¶ 5.) The number, location, and number of people served at such promotions varies from year-to-year. (*Id.*)

Consumers may also purchase Chipotle food products directly through their smartphones. (*Id.* at ¶ 6.) Using Chipotle's mobile application, consumers may select Chipotle products for purchase and designate an appropriate time and Chipotle restaurant from which to pick up their orders. (*Id.* at ¶ 6.) As of late-2017, Chipotle requires consumers to pay for all mobile orders at the time the order is placed, meaning that both the purchasing decision and payment are necessarily completed before the consumer ever sets foot inside the restaurant. (*Id.* at ¶ 7.) Prior to late-2017, consumers who placed mobile orders had the option of paying at either the time of order or the time of pick-up. (*Id.*)

Similarly, consumers may also purchase Chipotle food products on their computers or smartphone browser, using Chipotle's Online Ordering application (*Id.* at ¶ 8.) As with the smartphone app, online customers choose their Chipotle products and designate an appropriate time and Chipotle restaurant from which to pick up their orders. (*Id.*) Also as with mobile orders, as of late-2017, Chipotle requires consumers to pay for all online orders at the time the order is placed, whereas, prior to that time, online customers had the option of paying at either the time of order or the time of pick-up. (*Id.* at ¶ 9.)

Another way in which consumers may place and pay for orders of Chipotle food products before ever setting foot inside a Chipotle restaurant is through catering. (*Id.* at ¶ 10.) Although catering orders may be placed and/or paid for at Chipotle's restaurants, they may also be placed and/or paid for online or telephonically, through Chipotle's catering call center. Consumers may pick their catering orders up from a Chipotle restaurant, or they may choose to have them delivered.(*Id.*)

Finally, consumers may make purchasing decisions before setting foot inside a Chipotle restaurant by placing an order through a telephone call, or a fax sent, to a Chipotle restaurant. (*Id.* at ¶ 11.) Orders placed in such a manner are paid for at the time of pick-up. (*Id.*)

B.  Paul Primozich.

In their Complaint, Plaintiffs allege that Plaintiff Deigert "made a few purchases during the Class Period," including purchases at a Chipotle restaurant in San Francisco and a large order in connection with a party she hosted for "for her co-workers and staff." (D.E. 1, ¶ 51.) Plaintiffs also alleged that Plaintiff Deigert relied on Chipotle's "non-GMO ingredients" representation in deciding to continue her purchases at Chipotle and that she would not have purchased Chipotle's menu items at the price she paid, or purchased them at all, had she known that the Non-GMO Claims allegedly are deceptive. (*Id.*)  In their Complaint, Plaintiffs excluded from the putative classes described therein "counsel for Plaintiffs" and the "legal representatives, successors, or assigns of any … excluded persons." (*Id.* at ¶ 60.)

In its Initial Disclosures, Chipotle identified as persons likely to have discoverable information not only Plaintiff Deigert, but her "[u]nidentified co-workers and staff," as referenced in the Complaint, as well as "[u]nknown customers of Chipotle." (Chipotle's Initial Disclosures [Cavanagh Decl., Ex. A], pp. 3-4 & 13.)

At her deposition, Plaintiff Deigert testified that she sometimes patronized Chipotle restaurants in San Francisco with Paul Primozich, whom she described as a friend and former co-worker. (Deigert Depo. [Cavanagh Decl., Ex. B], pp. 71:17-72:9, 73:6-9, 95:2-10, 228:2-6.) Plaintiff Deigert also testified that, after she read an article questioning the veracity of Chipotle's "non-GMO ingredients" announcement, Mr. Primozich was the only non-attorney with whom she ever spoke about Chipotle's alleged use of GMOs. (*Id.* at 70:24-71:25, & 72:20-73:5, 73:17-74:2.) Indeed, it was Mr. Primozich who, as a result of that conversation, referred Plaintiff Deigert to her counsel, with whom she had a preexisting social relationship. (*Id.* at 218:20-219:20, 232:8-20.)

Thereafter, Chipotle served on Mr. Primozich a deposition subpoena (Primozich Subpoena [Cavanagh Decl., Ex. D]), which Plaintiffs immediately moved to quash.

In the parties' Joint Discovery Letter, Chipotle argued that it should be allowed to depose Mr. Primozich because he is a direct percipient witness who could substantiate or refute details regarding some of Plaintiff Deigert's alleged purchases from Chipotle; because, as the only non-attorney with whom Plaintiff Deigert spoke regarding Chipotle's alleged use of GMOs, he is the

only person who can corroborate her purported understanding of the allegedly false advertising at issue in this case; because, as a patron of Chipotle, his own purchasing habits and interpretation of the "Non-GMO Claims" are relevant to the "reasonable consumer" standard under which Chipotle's liability will be determined; and because he is familiar with both the circumstances under which Plaintiff Deigert was referred to her counsel and their preexisting relationship.  (D.E. 66, pp. 3-5.)

Plaintiffs' primary argument in support of quashing the deposition subpoena was that, as the domestic partner and beneficiary of one of Plaintiffs' attorneys, "Mr. Primozich is expressly excluded from the Plaintiffs' class definition." (*Id.* at 2 [citing Complaint, ¶ 60].)  Plaintiffs scoffed at Chipotle's concern that they might move to certify a class that included Mr. Primozich as "pretextual" and informed the Court that they had "assured Chipotle in writing they would not do so, as it is common course to exclude family and employees of counsel from participating in a class action to avoid this very sort of issue." (*Id.*)  Plaintiffs further argued that, "[g]iven that Mr. Primozich is not and will never be a class member," his "experiences at Chipotle are irrelevant to the lawsuit" and that deposing him regarding Plaintiff Deigert "would be entirely duplicative." (*Id.*)

In response to the parties' Joint Discovery Letter, Magistrate Judge Westmore quashed Chipotle's subpoena to Mr. Primozich, in part, because, relying on paragraph 60 of the Complaint and the written assurances of Plaintiffs' counsel that Mr. Primozich would not be included in the class, "Defendant's argument that Mr. Primozich could be a class member is unavailing." (Order Regarding Joint Discovery Letter [D.E. 70], pp. 4-5.)[1]

Plaintiffs filed their Motion for Class Certification on November 17, 2017.  (D.E. 95.)  Mr. Primozich was not excluded by definition from any of the proposed classes described therein.

Mr. Primozich is not excluded from the California class certified in this Court's Order.  (D.E. 136, p. 30.)

---

[1] Through the Joint Discovery Letter, Plaintiffs also moved to quash Chipotle's deposition subpoena to Sandra Coller, the girlfriend of Plaintiff Martin Schneider (Joint Discovery Letter [D.E. 66], pp. 1-2), but Magistrate Judge Westmore allowed that deposition to proceed (Order Regarding Joint Discovery Letter [D.E. 70], pp. 7-10).

C. <u>Chipotle's Requests To Re-Open Discovery.</u>

In the Order, this Court scheduled a Case Management Conference for October 30, 2018. (D.E. 136, p. 30.) In the Subsequent Joint Case Management Statement submitted in advance of that Conference, Chipotle indicated its intention to move to re-open discovery for the limited purposes of further developing the record with respect to evidentiary issues raised in the Order and of deposing an additional percipient witness and putative class member. (D.E. 138, pp. 8 & 9.) At the Case Management Conference, Chipotle's counsel expressed Chipotle's desire to re-open discovery for limited purposes and was instructed by this Court to make any such request through a noticed motion. (Cavanagh Decl., ¶ 7.)

### III.  ARGUMENT

On July 21, 2017, this Court issued an Order Granting Motion To Extend Discovery Deadlines, which extended the fact discovery cutoff to August 4, 2017. (D.E. 69.)

Pursuant to Federal Rule of Civil Procedure 16, a pretrial order "controls the course of the action unless the court modifies it," and it "may be modified only for good cause and with the judge's consent." Fed. R. Civ. Proc 16(b)(4), (d) ; *see also Hannon v. Chater*, 887 F. Supp. 1303 (N.D. Cal. 1995) (Scheduling orders entered before the final pretrial conference may be modified upon a showing of good cause.). "[R]eopening discovery ... [therefore] require[s] a showing of good cause…." *U.S. ex rel. Pogue v. Diabetes Treatment Ctrs. of Am.,* 576 F. Supp. 2d 128, 133 (D.D.C. 2008).

Generally, good cause can be shown for modifying a pretrial schedule "'if it cannot reasonably be met despite the diligence of the party seeking the extension.'" *Johnson v. Mammoth Recreations, Inc.*, 975. F.2d 604, 609 (9th Cir. 1992) (quoting Fed. R. Civ. Proc. 16, Advisory Committee Notes (1983 Amendment)). In determining whether to grant motions to re-open discovery, courts consider factors such as:

> 1) whether trial is imminent, 2) whether the request is opposed, 3) whether the non-moving party would be prejudiced, 4) whether the moving party was diligent in obtaining discovery within the guidelines established by the court, 5) the foreseeability of the need for additional discovery in light of the time allowed for discovery by the district court, and 6) the likelihood that the discovery will lead to relevant evidence.

*United States ex rel. Schumer v. Hughes Aircraft Co.*, 63 F.3d 1512, 1526 (9th Cir. 1995), *rev'd on other grounds*, 520 U.S. 939 (1997) (quoting *Smith v. United States*, 834 F.2d 166, 169 (10th Cir. 1987)).

Here, consideration of the foregoing factors weighs in favor of modifying the scheduling order to permit the limited re-opening of third-party discovery requested by Chipotle.

A.  Trial Is Not Imminent.

The Court has not yet scheduled the trial of this matter. Therefore, this factor weighs in favor of re-opening discovery.

B.  Chipotle's Request To Re-Open Discovery Is Opposed.

In the Subsequent Joint Case Management Statement, Plaintiffs objected to Chipotle's stated intention of moving to re-open discovery. (D.E. 138, pp. 8 & 9.) Presumably, Plaintiffs will therefore oppose this motion, and this factor weighs against re-opening discovery.

C.  Plaintiffs Will Not Be Prejudiced By The Requested Limited Re-Opening Of Discovery.

The limited additional third-party discovery that Chipotle seeks to conduct will not prejudice Plaintiffs in any way and will impose little burden on them. Chipotle seeks leave to issue document subpoenas to a few of its third-party delivery partners and to depose one third-party witness. If permitted, the only burdens that this additional discovery will impose upon Plaintiffs are the needs to review any documents produced by the third-party delivery partners and to attend the deposition of the third-party witness. Particularly in light of the fact that trial is not imminent, these burdens are minimal, and, therefore, weigh in favor of a limited re-opening of discovery.

D.  To The Extent That It Was Foreseeable, Chipotle Has Been Diligent In Pursuing The Requested Discovery.

The fourth and fifth factors also weigh in favor of re-opening discovery because Chipotle has been diligent in pursuing that discovery to the extent that it was foreseeable.

With respect to Mr. Primozich, Chipotle timely disclosed as potential witnesses Plaintiff Deigert's "[u]nidentified co-workers and staff" and "[u]nknown customers of Chipotle" in its Initial Disclosures and sought to depose him promptly after his identity became known to it. (Chipotle's Initial Disclosures [Cavanagh Decl., Ex. A], pp. 4-5 & 13; Deigert Depo. [Cavanagh Decl., Ex. B],

pp. 71:17-72:9, 73:6-9, 95:2-10, 228:2-6; Primozich Subpoena [Cavanagh Decl., Ex. D].)  Chipotle did not proceed with deposing Mr. Primozich only because Plaintiffs persuaded Magistrate Judge Westmore to quash its deposition subpoena, including on the grounds that Mr. Primozich would not be a member of any plaintiff class.  (Joint Discovery Letter [D.E. 66], p. 2; Order Regarding Joint Discovery Letter [D.E. 70], pp. 4-5.)  After this Court certified a California class from which Mr. Primozich was not excluded (Order [D.E. 136], p. 30), Chipotle promptly renewed its request to depose Mr. Primozich (Subsequent Joint Case Management Statement [D.E. 138], pp. 8 & 9; Cavanagh Decl., ¶ 7).  Therefore, Chipotle has been diligent in seeking to depose Mr. Primozich, and this factor weighs in favor of re-opening discovery to allow Chipotle to depose him.  *Cf. Gouin v. Nolan Assocs., LLC*, 25 F.R.D. 521, 524 (D. Mass. 2017) (extension of deadlines for completion of discovery was warranted where plaintiff acted diligently with respect to seeking depositions of potential witnesses, but defendant did not make its corporate witnesses available to be deposed in a timely manner); *Hernandez v. Mario's Auto Sales, Inc.*, 617 F. Supp. 2d 488, 493-494 (S.D. Tex. 2009) (Defendants in products liability action were diligent in attempting to schedule and secure plaintiff's deposition, and, thus, extension of discovery deadline in pretrial order was warranted, where defendants filed a motion to compel deposition, and their failure to depose plaintiff was through no fault of their own, since plaintiff simply failed to appear on the noticed date.).

      As to Chipotle's third-party delivery partners, the need for Chipotle to develop that evidence was not foreseeable until this Court issued its Order.  A party moving for class certification must affirmatively demonstrate compliance with the applicable prerequisites of Federal Rule of Civil Procedure 23 .  *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (Movants "must affirmatively demonstrate … that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc."); *Comcast Corp. v. Behrend*, 569 U.S. 27, 35 (2013) ("[A] party seeking to maintain a class action must affirmatively demonstrate his compliance with Rule 23.").  Moreover, in the false advertising context, "[i]n the absence of the kind of massive advertising campaign at issue in [*In re Tobacco II Cases*, 46 Cal. 4th 298 (2009)], the relevant class must be defined in such a way as to include only members who were exposed to the advertising that is alleged to be materially misleading." *Mazza*, 666 F.3d at 596; *see also Cabral*, 608 Fed. Appx. at 483 (vacating

-9-

certification order where the record did "not support a determination that all of the class members saw or otherwise received the misrepresentation" because "it is critical that the misrepresentation in question be made to all of the class members"); *Cohen*, 178 Cal. App. 4th at 980 ("common issues of fact do not predominate" where "the class would include subscribers who never saw [any] advertisements … and subscribers who only saw and/or relied upon advertisements that contained no" misrepresentation). Given that "[t]his case does not involve the type of massive advertising campaign that gives rise to a presumption of exposure to all class members," it was Plaintiffs' burden to "show classwide exposure to the misleading statements/omissions." (Order [D.E. 136], p. 24.) Therefore, it was not foreseeable that Chipotle would need to develop evidence to show that consumers could have purchased Chipotle's food products without setting foot inside one of its restaurants. Chipotle's need to develop that evidence became apparent only after this Court concluded that Plaintiffs had "sufficiently alleged class-wide exposure" to Chipotle's in-restaurant signage, despite the fact that "[n]either party has offered any evidence or argument that members of the proposed classes could have purchased Chipotle meat and/or dairy products without setting foot inside the restaurants, and therefore without having been exposed to any of this signage." (*Id.* at 24-25.) Once Chipotle's need affirmatively to show that consumers may purchase its food products without ever setting foot inside one of its restaurants became apparent, Chipotle promptly asserted its right to develop that evidence. (Subsequent Joint Case Management Statement [D.E. 138], pp. 8 & 9; Cavanagh Decl., ¶ 7.) Therefore, Chipotle has been diligent in requesting leave to develop evidence regarding its third-party delivery partners, and this factor weighs in favor of re-opening discovery to permit Chipotle to issue document subpoenas to those partners. *Cf. Lehman Brothers Holdings, Inc. v. Universal Am. Mortg. Co.*, 300 F.R.D. 678, 682-683 (D. Colo. 2014) (Good cause warranted modification of scheduling order to extend discovery deadline for the limited purpose of deposing plaintiff's corporate designee regarding alleged loan defects where the need for additional discovery was not foreseeable because, during discovery, plaintiff had asserted allegations of defects not previously alleged).

E.   **The Discovery Requested By Chipotle Will Lead To Relevant Evidence.**

The limited additional third-party discovery requested by Chipotle is directly relevant to issues that are central to this case.

As noted above, evidence of common exposure to the alleged misrepresentations is critical in false advertising actions such as this one. *See*, *e.g.*, *Mazza*, 666 F.3d at 596; *Cabral*, 608 Fed. Appx. at 483; *Cohen*, 178 Cal. App. 4th at 980. If this Court is going to presume class-wide exposure in the absence of contrary evidence (Order [D.E. 136], pp. 24-25), Chipotle must be afforded an opportunity to develop and to present that critical evidence. *Cf. Federal Trade Comm'n v. AMG Servs.*, 2016 WL 4087268, at *1 (D. Nev. July 29, 2016) (FTC established good cause to re-open discovery to permit it to serve subpoenas to obtain financial information regarding non-party entities associated with one of the defendants where the FTC needed the information to complete its asset recovery efforts, but the defendant refused to complete financial information on behalf of his affiliated non-party entities on the grounds that doing so would have violated his Fifth Amendment rights.). When Chipotle demonstrates that consumers can, in fact, purchase its food products without ever setting foot inside its restaurants (and, therefore, without having been exposed to any of its in-restaurant signage), the Court will have to consider whether to decertify, or to re-define, the classes certified in its Order. *See* Fed. R. Civ. Proc. 23(c)(1)(C) ("An order that grants or denies class certification may be altered or amended before final judgment.").

Mr. Primozich's deposition will also lead to evidence that is relevant in several respects. According to Plaintiff Deigert's own testimony, Mr. Primozich sometimes accompanied her to Chipotle and is the only non-attorney with whom she has discussed Chipotle's alleged use of GMOs. Therefore, Mr. Primozich is the only person who can provide testimony that can either corroborate or refute Plaintiff Deigert's alleged understanding of, and reaction to, what has been said about Chipotle's use of GMOs and non-GMO ingredients and is one of the few people who can either corroborate or refute Plaintiff Deigert's alleged purchases at Chipotle. (Deigert Depo. [Cavanagh Decl., Ex. B], pp. 70:24-74:2, 95:2-10, 228:2-6.) Chipotle is entitled to discover, and to present at trial, evidence that may impeach Plaintiff Deigert's uncorroborated testimony. *See* Fed. R. Civ. Proc. 26(b)(1) (proper scope of discovery includes "any nonprivileged matter that is relevant to any

party's … defense").[2]  In addition, as a member of the California class that has been certified by this Court, Mr. Primozich's own understanding of the challenged Non-GMO Claims is relevant to the "reasonable consumer" standard by which Chipotle's liability will be determined.  *See Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008); *Luskin's, Inc. v. Consumer Protection Div.*, 353 Md. 335, 345-358 (1999); *Druyan v. Jagger*, 508 F. Supp. 2d 228, 244 (S.D.N.Y. 2007).

Because the limited third-party discovery that Chipotle seeks to conduct will develop evidence that is directly relevant to key issues in this case, this factor weighs in favor of re-opening discovery.

### IV.  CONCLUSION

For the foregoing reasons, Chipotle respectfully requests that the Court modify the operative scheduling order to re-open discovery for the limited purposes of permitting Chipotle to serve document subpoenas on its third-party delivery partners and allowing Chipotle to depose Paul Primozich.

Dated:  December 6, 2018

MESSNER REEVES, LLP
DLA PIPER LLP (USA)

By: _____
Charles C. Cavanagh
Attorneys for Defendant
CHIPOTLE MEXICAN GRILL, INC.

---

[2] Magistrate Judge Westmore permitted Chipotle to depose Ms. Coller over Plaintiffs' objection. (Joint Discovery Letter [D.E. 66], pp. 1-2; Order Regarding Joint Discovery Letter [D.E. 70], pp. 7-10.)  Ms. Coller's deposition testimony contradicted Plaintiff Schneider's testimony in several important respects, including regarding the number of times they have patronized Chipotle, whether those visits were motivated by Chipotle's "non-GMO ingredients" announcement, and whether they have returned to Chipotle since learning of the alleged falsity of the "Non-GMO Claims."  (*Compare* Schneider Depo. [Cavanagh Decl., Ex. C], pp. 30:3-32:18 & 97:11-21 *with* Coller Depo. [Cavanagh Decl., Ex. E], pp. 102:15-24, 104:3-6 & 109:16-19.)