UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARTIN SCHNEIDER, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>CHIPOTLE MEXICAN GRILL, INC.,<br><br>Defendant. | Case No. 16-cv-02200-HSG<br><br>**DECISION AND ORDER APPROVING IN PART PLAINTIFFS' NOTICE ADMINISTRATOR AND AMENDED CLASS NOTICE PLAN**<br><br>Re: Dkt. No. 178 |

## I. BACKGROUND

On January 9, 2019, Plaintiffs filed an administrative motion to approve the notice administrator, class notice plan, and schedule. Dkt. No. 150. Defendant opposed and alleged that Plaintiffs' notice plan misrepresented the class definitions and that the notice plan was "too vague." Dkt. No. 151. The Court held a hearing on that motion on January 24, 2019. Dkt. No. 156. Consistent with the Court's recommendation, and in an apparent effort to address Defendant's concerns, Plaintiffs moved to modify the class definitions, and the Court granted the motion in part and denied it in part on February 2, 2019. Dkt. Nos. 159, 164. In its order, the Court certified the following classes:

> California: All persons in California who purchased Chipotle's Food Products containing meat and/or dairy ingredients in its restaurants during the Class Period.
>
> Maryland: All persons in Maryland who purchased Chipotle's Food Products containing meat and/or dairy ingredients in its restaurants during the Class Period.
>
> New York: All persons in New York who purchased Chipotle's Food Products containing meat and/or dairy ingredients in its restaurants during the Class Period.[1]

---

[1] The Class Period is from April 27, 2015 to June 30, 2016, inclusive.

Dkt. No. 164 at 4. The language "in its restaurants" was added to each class definition. The Court also held that it did not need to add the standard language excluding various categories of people to the class definition itself. *Id*. at 2 n.1.

Defendant also filed a motion seeking to modify the scheduling order so that it could re-open discovery. Dkt. No. 143. The Court denied the motion at the hearing on March 21, 2019. Dkt. No. 168. At that same hearing, the Court directed the parties to meet and confer in a good faith attempt to come to a consensus and file a joint notice plan by March 25, 2019. Dkt. Nos. 168, 173. If the parties could not reach agreement on the notice plan, the Court directed Defendant to file a competing proposal. *Id*. Defendant filed a response informing the Court that the parties had reached an agreement on a class notice plan as to: (1) a digital media advertising campaign; and (2) publication notice in the *Oakland Tribune* over a four week period. Dkt. No. 172 at 1–2.[2] Because there were still disagreements, the Court ordered Plaintiffs to file an amended administrative motion to approve notice administrator and class notice plan, to include all proposed notice forms modified to be consistent with current class definitions and an exact mock-up of the proposed direct email notice, including the subject line and body of the email. Dkt. No. 177. Plaintiffs filed their amended motion on April 3, 2019, Dkt. No. 178, and Defendant filed their response on April 4, 2019, Dkt. No. 179.

The parties disagree on the following components of the notice plan: (1) the wording of the internet banner ads; (2) the proposed provision of direct email notice to approximately 550,000 individuals who purchased food in California, Maryland, and New York from online or app menus during the Class Period; (3) the length of time of the digital media advertising campaign; and (4) whether a press release through PR Newswire should be part of the plan.

**II. DISCUSSION**

Under Federal Rule of Civil Procedure 23(c)(2)(B), for any class certified under Rule 23(b)(3), the Court "must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through

---

[2] Plaintiffs did not dispute these methods in their response. *See* Dkt. No. 176.

reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). The notice must clearly and concisely state:

> (i) the nature of the action;
> (ii) the definition of the class certified;
> (iii) the class claims, issues, or defenses;
> (iv) that a class member may enter an appearance through an attorney if the member so desires;
> (v) that the court will exclude from the class any member who requests exclusion;
> (vi) the time and manner for requesting exclusion; and
> (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

*Id*. Individual notice must be sent to all class members "whose names and addresses may be ascertained through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). "If the names and addresses of class members cannot be determined by reasonable efforts, notice by publication is sufficient to satisfy the requirements of the due process clause and Rule 23." *Jermyn v. Best Buy Stores, L.P.*, No. 08 CIV. 00214 CM, 2010 WL 5187746, at *3 (S.D.N.Y. Dec. 6, 2010) (citing *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 317–18 (1950)). District courts have "broad power and discretion vested in them by [Rule 23]" in determining the contours of appropriate class notice. *See Reiter v. Sonotone Corp.*, 442 U.S. 330, 345 (1979).

### A. Substance of the Proposed Notices

The parties have generally agreed on the substance of the proposed notices attached to the Supplemental Declaration of Carla A. Peak, filed April 3, 2019, Dkt. No. 178-1 ("Peak Declaration"). *See* Dkt. No. 178 at 3. The Court has reviewed the proposed notices and finds that these notices satisfy the requirements of Rule 23(c)(2)(B): (1) the publication notice, Dkt. No. 178-1, Ex. 3; (2) the long form notice, Dkt. No. 178-1, Ex. 5; and (3) the internet banner ads, Dkt. No. 178-1, Ex. 2, with the following modified language:[3]

> If you bought Chipotle food containing meat and/or dairy in a Chipotle store in California, Maryland or New York in 2015 or 2016, your rights may be affected by a class action lawsuit.

### B. Direct Email Notice

The parties' main dispute is whether direct email notice to the 550,000 online purchasers is

---

[3] Defendant contends that the language of the internet banner ads should include the Class Period for clarity and accuracy. Dkt. No. 179 at 2–3. The Court agrees with Defendant.

3

appropriate under Rule 23. Defendant contends that it is improper because it is over-inclusive and the 550,000 online purchasers are not within the "class definition [of] in-store purchasers." Dkt. No. 172 at 4–5. Plaintiffs allege that there is a "reasonable, direct relationship" between the 550,000 online purchasers and the certified classes, making the proposed email notice the "best notice practicable under the circumstances." Dkt. No. 176 at 2.

Direct notice is inappropriate when it is overly broad or overinclusive. *Yeoman v. Ikea U.S. W., Inc.*, No. 11CV701 WQH BGS, 2013 WL 5944245, at *5–6 (S.D. Cal. Nov. 5, 2013); *see also Jermyn*, 2010 WL 5187746, at *3. Further, "it is not necessary to send individual notice [ ] to an overinclusive group of people simply because that group contains some additional class members whose identities are unknown." *Jermyn*, 2010 WL 5187746, at *6 (quotations omitted and brackets in original). Individual notice to an overinclusive list of class members may be proper if the list "indisputably contain[s] the universe of class members." *Macarz v. Transworld Systems, Inc.*, 201 F.R.D. 54, 60–61 (D. Conn. 2001).

Defendant avers, and Plaintiffs do not dispute, that no list of identifiable class members exists. *See* Dkt. No. 172 at 2 ("Chipotle does *not* have customer information for in-restaurant purchasers") (emphasis in original). Defendant contends that there is no method to verify whether the 550,000 online purchasers are also class members. Dkt. No. 172 at 5. In fact, these 550,000 online purchasers are defined by a characteristic that on its face does *not* establish membership in the certified class. The class definition was modified to make clear that class members are people who purchased Chipotle meat and/or dairy products *in restaurants*, because the alleged misrepresentations at issue were in-store signs displayed in Chipotle restaurants during the Class Period. Dkt. No. 164. So exclusively online purchasers are expressly excluded from the class. As such, there is "no link between the list of [online purchasers] (which includes individuals excluded from the class definition) and class members." *See Jermyn*, 2010 WL 5944245, at *7.

The key question, therefore, is whether it is reasonable to use an email list of individuals sharing a characteristic that does not establish membership in the class as a basis for providing purported direct notice to class members. Plaintiffs claim that it would "defy common sense if many of the same persons who used Chipotle's online or app menus in this time frame also did *not*

4

make qualifying purchases in a Chipotle restaurant." Dkt. No. 176 at 1–2 (emphasis in original). The Court agrees that it is logical that Chipotle online purchasers may also have purchased food in a Chipotle restaurant. But that is not the right inquiry under Rule 23. The fact that there *may* be some overlap between the 550,000 online purchasers and the certified class does not make direct notice to those individuals proper. *See In re Domestic Air Transportation Antitrust Litigation*, 141 F.R.D. 534, 546 (N.D. Ga 1992) (finding that sending direct notice to individuals who may or may not be class members is improper). The correct question under Rule 23 is whether the list of 550,000 online purchasers would "indisputably" contain all known class members, and the Court finds that it would not. *See Jermyn*, 2010 WL 5944245, at *7. Plaintiffs have offered no evidence that the group of 550,000 online purchasers inevitably subsumes the entire universe of class members, or even a single class member. Nor do they show that direct notice to this group would reach only those who purchased Chipotle's food online *and* in restaurants (a group that is included in the certified class), as opposed to those who purchased exclusively online (a group that, by definition, is excluded from the certified class). Merely alleging that Chipotle has publicly stated its online platforms "were intended to complement the experience of in-stores purchasers" does not guarantee, or even suggest, that all online purchasers also purchased in restaurants. *See* Dkt. No. 176 at 1. Since there is "no way to assure that notice to the list would definitely result in notice to a substantial number of class members," direct notice to the 550,000 online purchasers is improper under Rule 23. *See In re Domestic Air*, 141 F.R.D. at 546.

Defendant cites a number of similar cases in which courts rejected direct notice to a list of individuals who might or might not be class members, unless there was evidence that the list included all known class members. *See, e.g.*, *Yeoman*, 2013 WL 5944245, at *5 (rejecting individual notice when there was no evidence showing who on the list was actually a class member); *In re Domestic Air*, 141 F.R.D. at 539 (direct notice to list that did not "indisputably contain[] the names and address of the universe of class members" was improper); *Macarz*, 201 F.R.D. at 61 (direct notice to "twenty-five percent over-inclusive" list was proper because it was undisputed that the list also contained all class members); *Jermyn*, 2010 WL 5187746, at *7 (because the list would not contain all known class members, individual notice to the list was not

5

permitted).

Plaintiffs, in contrast, cite cases that do not support their position here, as those cases involved direct notice to *known* class members in the context of settlement. *See, e.g.*, *In re Sony PS3 Litig.*, No. 10-CV-01811-YGR, 2017 WL 5598726, at *16 (N.D. Cal. Nov. 21, 2017) (approving settlement notice by email to all known class members); *McCrary v. Elations Co., LLC*, No. EDCV130242JGBSPX, 2016 WL 769703, at *4, 7 (C.D. Cal. Feb. 25, 2016) (approving mail notice to settlement class members with known mail or email address); *In re Magsafe Apple Power Adapter Litig.*, No. 5:09-CV-01911-EJD, 2015 WL 428105, at *10 (N.D. Cal. Jan. 30, 2015) (approving notice plan that included emailing and mailing notice to known class members). Plaintiffs' cases are inapposite where, as here, there is no list of known class members.

Plaintiffs' speculation that the 550,000 online purchasers also could be class members is insufficient to prove that the group indisputably contains all known class members so as to justify the proposed direct notice. Despite Plaintiffs' attempts to characterize the 550,000 online purchasers differently, *see* Dkt. No. 178 at 3 (referring to these purchasers as "class members"), these individuals *are not* undoubtedly class members. Thus, direct notice to the approximately 550,000 online purchasers is improper under Rule 23.

### C. Length of Time for Digital Media Advertising Campaign

The parties also dispute whether the digital media advertising campaign, detailed in paragraph 12 of the Peak Declaration, Dkt. No. 178-1, should be 60 days or 30 days. Defendant contends that the parties agreed to 30 days, Dkt. No. 172 at 1, but Plaintiffs request 60 days, Dkt. No. 178-1 ¶ 12. The Court finds that 60 days is a reasonable period to target likely class members, especially given the Court's finding that direct email notice to the 550,000 online purchasers is not permitted under Rule 23.

### D. Press Release

Plaintiffs contend that a press release would "extend coverage of this action" and is therefore proper under Rule 23. Dkt. No. 178 at 3. Defendant alleges that a nationwide press release is not a reliable way to provide notice to class members, especially when a court finds that local publication would suffice. Dkt. No. 172 at 6; Dkt. No. 179 at 2. The Court agrees with

6

Defendant. Although local publication here is in California only, Plaintiffs proffer no persuasive argument as to why a national press release would be an appropriate form of notice, especially given the extensive internet advertising campaign that would target likely class members in California, Maryland, and New York. *See* Peak Decl. ¶¶ 12–14. Plaintiffs cite no case in which a court approved a press release as a component of a notice plan. The Court finds that the press release would not provide any supplemental value in reaching class members and would be substantially overinclusive, especially in a case that is localized geographically. Accordingly, the Court rejects Plaintiffs' proposal to include a press release as part of the notice plan.[4]

### III. CONCLUSION

The Court **GRANTS IN PART AND DENIES IN PART** Plaintiffs' administrative motion to approve notice administrator and class notice plan. The Court **ORDERS** the following:

1. The Court approves the form and substance of the following documents attached to the Supplemental Declaration of Carla A. Peak Regarding Class Certification Notice Program, filed April 3, 2019, Dkt. No. 178-1: (1) the publication notice, Dkt. No. 178-1, Ex. 3; and (2) the long form notice, Dkt. No. 178-1, Ex. 5.

2. The Court approves the form and substance of the proposed internet banner ads, Dkt. No. 178-1, Ex. 2, with the following modified language:

> If you bought Chipotle food containing meat and/or dairy in a Chipotle store in California, Maryland or New York in 2015 or 2016, your rights may be affected by a class action lawsuit.

3. The Court denies Plaintiffs' motion to provide direct email notice to the approximately 550,000 individuals in California, Maryland, and New York who purchased food from Chipotle in California, New York, and Maryland during the Class Period from online or app menus, Dkt. No. 178-1, Ex. 1, because the proposed email notice is improper under Rule 23. Defendant does not have to provide information about the 550,000 online purchasers to the Notice

---

[4] Although Plaintiffs characterize the press release as one that would be "issued throughout the Class States," the press release will be disseminated via PR Newswire, and the Court fails to see how an online website would restrict the press release to only those three states. *See* Peak Decl. ¶ 17 ("To further extend coverage, a press release will be issued throughout the Class States to a variety of media via PR Newswire."); *see also* Dkt. No. 178 at 2 ("KCC will distribute a press release to a variety of media throughout the class states.")

1  Administrator.

2  4. The Court denies Plaintiffs' motion to issue a press release as part of the notice
3  plan, Dkt. No. 178-1, Ex. 4, as unwarranted under Rule 23.

4  5. The proposed form and content of the long form notice meets the requirements of
5  Federal Rule of Civil Procedure 23(c)(2)(B), as it clearly and concisely states in plain and easily
6  understood language the nature of the action, the definition of the classes certified, the class
7  claims, issue or defenses, that a class member may enter an appearance through an attorney if the
8  member so desires, that the Court will exclude from the class any member who requests exclusion,
9  the time and manner for requesting exclusion and the binding effect of a class judgment on
10 members under Federal Rule of Civil Procedure 23(c)(3). The long form and other approved
11 notices, and the method and schedule set forth below for notifying the Class of the pendency of
12 the Action as a class action meet the requirements of Rule 23 and due process, constitute the best
13 notice practicable under the circumstances, and shall constitute due and sufficient notice to all
14 persons and entities entitled thereto.

15 6. The Court approves the retention of KCC Class Action Services as Notice
16 Administrator in this class action.

17 7. The Notice Administrator shall cause the Notice Plan to be executed as of April 15,
18 2019.

19 8. The Notice Administrator shall cause a copy of the long form notice to be posted
20 on the website that the Notice Administrator shall design and maintain for this lawsuit from which
21 Class Members may download copies of the long form notice.

22 9. The Notice Administrator shall cause a copy of the publication notice to appear in
23 *The Oakland Tribune* for four consecutive weeks within 10 days of the execution of the notice
24 plan.

25 10. The Notice Administrator shall implement an internet media effort of digital media
26 advertising to be distributed over desktop and mobile devices, including tablets and smartphones,
27 via Google Display Network and Facebook over a period of 60 days, targeting likely Class
28 Members in California, Maryland, and New York, as detailed in paragraph 12 of the Supplemental

Declaration of Carla Peak, Dkt. No. 178-1.

11. The Notice Administrator shall establish and host a case specific toll-free number to allow Class Members to learn more and to request further information about the Action.

12. Class Members shall be bound by all determinations and judgments in this Action, whether favorable or unfavorable, unless such persons and entities request exclusion from the Class in a timely and proper manner, as hereinafter provided. A Class Member wishing to make such a request shall either fill out a form on the website or mail the request in written form by first class mail, postmarked no later than seventy (70) calendar days after the Notice Date, to the address designated in the long form notice. Such request for exclusion shall clearly state that the Class Member requests exclusion from the Classes in *Schneider v. Chipotle Mexican Grill, Inc.*, No. 16-cv-02200-HSG, and must clearly state the name, address and signature of the person or entity requesting exclusion. The request for exclusion shall not be effective unless it provides the required information and is made within the time stated above, or the exclusion is otherwise accepted by the Court.

13. Class Counsel shall file with the Court proof of publication of notice within ten (10) business days following the date notice is published. Class Counsel shall also file with the Court a declaration setting forth a list of all persons who have requested exclusion from the Classes within fourteen (14) calendar days following the expiration of the exclusion deadline.

**IT IS SO ORDERED.**

Dated: 4/8/2019

HAYWOOD S. GILLIAM, JR.
United States District Judge