Laurence D. King (SBN 206423)
Matthew B. George (SBN 239322)
Mario M. Choi (SBN 243409)
**KAPLAN FOX & KILSHEIMER LLP**
350 Sansome Street, Suite 400
San Francisco, CA 94104
Telephone: 415-772-4700
Facsimile: 415-772-4707
*lking@kaplanfox.com*
*mgeorge@kaplanfox.com*
*mchoi@kaplanfox.com*

Frederic S. Fox (*pro hac vice*)
Donald R. Hall (*pro hac vice*)
**KAPLAN FOX & KILSHEIMER LLP**
850 Third Avenue, 14th Floor
New York, NY 10022
Telephone: 212-687-1980
Facsimile: 212-687-7714
*ffox@kaplanfox.com*
*dhall@kaplanfox.com*

Hartley M. K. West (SBN 191609)
**KOBRE & KIM LLP**
150 California Street, 19th Floor
San Francisco, CA 94111
Telephone: 415-582-4781
*hartley.west@kobrekim.com*

Matthew I. Menchel (*pro hac vice*)
**KOBRE & KIM LLP**
201 South Biscayne Boulevard, Suite 1900
Miami, FL 33131
Telephone: 305-967-6108
*matthew.menchel@kobrekim.com*

*Attorneys for Plaintiffs and the Classes*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

MARTIN SCHNEIDER, SARAH DEIGERT, THERESA GAMAGE, and NADIA PARIKKA, Individually and on Behalf of All Others Similarly Situated,

Plaintiffs,

v.

CHIPOTLE MEXICAN GRILL, INC., a Delaware Corporation,

Defendant.

Case No. 4:16-cv-02200-HSG (KAW)

**NOTICE OF MOTION AND UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF PROPOSED SETTLEMENT, TO AMEND COMPLAINT FOR SETTLEMENT PURPOSES, AND TO MODIFY CLASS DEFINITIONS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

Judge: Hon. Haywood S. Gilliam, Jr.
Courtroom: 2, 4th Floor
Date: January 16, 2020
Time: 2:00 p.m.

## NOTICE OF MOTION AND UNOPPOSED MOTION

**TO ALL PARTIES AND THEIR RESPECTIVE ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on January 16, 2020, at 2 p.m., in Courtroom 2 of the United States District Court for the Northern District of California, Ronald V. Dellums Federal Building and U.S. Courthouse, 1301 Clay Street, Oakland, California 94612, the Honorable Haywood S. Gilliam, Jr., presiding, Plaintiffs Martin Schneider, Sarah Deigert, Theresa Gamage, and Nadia Parikka ("Plaintiffs") will and hereby do move for an Order pursuant to Rule 23 of the Federal Rules of Civil Procedure ("Rule"): (i) preliminarily approving the proposed Settlement; (ii) certifying a modified Settlement Class for settlement purposes only; (iii) approving the form and manner of notice to the Class; and (iv) scheduling a final approval hearing before the Court. Plaintiffs further move for an Order granting leave to file a First Amended Complaint in connection with the proposed Settlement.

The proposed Settlement is within the range of what is fair, reasonable, and adequate such that notice of its terms may be disseminated to Class members and a hearing for final approval of the proposed Settlement scheduled. And, in connection with the Settlement, the parties agree that Plaintiffs seek leave to file an amended complaint. Defendant Chipotle Mexican Grill, Inc. ("Defendant" or "Chipotle") does not oppose this Motion.

This Motion is based upon this Notice of Motion and Unopposed Motion, the Memorandum of Points and Authorities set forth below, the accompanying Declaration of Laurence D. King in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Settlement, to Amend Complaint for Settlement Purposes, and to Modify Class Definitions, dated September 11, 2019 ("King Declaration"), and the exhibits thereto, the pleadings and records on file in this Action, and other such matters and argument as the Court may consider at the hearing of this motion.

## STATEMENT OF ISSUES TO BE DECIDED

1.    Whether leave should be given to file a First Amended Complaint in connection with the proposed Settlement;

2.    Whether the proposed Settlement is within the range of fairness, reasonableness and adequacy as to warrant: (a) the Court's preliminary approval; (b) certification of a modified

Settlement Class for settlement purposes only; (b) the dissemination of Notice of its terms to proposed Settlement Class Members; and (c) setting a hearing date for final approval of the Settlement as well as application of attorneys' fees and reimbursement of expenses;

3.      Whether the proposed Notice adequately apprises the Settlement Class Members of the terms of the Settlement and their rights with respect to it;

4.      Whether the proposed Plan to Allocate Settlement proceeds should be preliminarily approved; and

5.      Whether the Claim Forms are sufficient.

# TABLE OF CONTENTS

Page

I. INTRODUCTION ..... 1

II. BACKGROUND ..... 3

A. Summary of the Litigation ..... 3

B. Settlement Negotiations and Mediation ..... 5

III. SUMMARY OF AND REASONS FOR THE SETTLEMENT ..... 5

IV. ARGUMENT ..... 6

A. Leave to File First Amended Complaint in Connection with Proposed Settlement is Warranted ..... 6

B. The Class Definition as Contemplated by the Settlement Satisfies Rule 23 and Certification is Warranted ..... 6

C. The Law Favors and Encourages Settlement ..... 9

D. The Proposed Settlement Should Be Preliminarily Approved ..... 10

1. The Proposed Settlement, the Product of a Mediator's Proposal, was Vigorously Negotiated, and is Supported by Experienced Counsel ..... 10

2. The Proposed Settlement Class Provides a Favorable Recovery for the Settlement Class and Falls Within a Range of Possible Approval ..... 12

3. The Proposed Settlement Does Not Unjustly Favor Any Class Members, Including Plaintiffs ..... 14

4. The Stage of the Proceedings and the Discovery Completed ..... 15

E. The Proposed Notice to the Class is Adequate ..... 17

F. The Plan to Allocate Settlement Funds Should Be Preliminarily Approved ..... 18

G. The Intended Request for Attorneys' Fees and Expenses ..... 19

H. The Proposed Claims Administrator ..... 20

I. Past Distributions ..... 21

V. PROPOSED SCHEDULE OF EVENTS AND FINAL APPROVAL PROCEEDINGS ..... 22

VI. CONCLUSION ..... 23

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Altamirano v. Shaw Indus., Inc.*,
No. 13-cv-00939-HSG, 2015 WL 4512372 (N.D. Cal. July 24, 2015) ....... 6

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997) ....... 8, 9

*Astiana v. Kashi Co.*,
295 F.R.D. 490 (S.D. Cal. 2013) ....... 8

*Bellinghausen v. Tractor Supply Co.*,
306 F.R.D. 245 (N.D. Cal. 2015) ....... 14

*Carter v. Anderson Merchandisers, LP*,
No. EDCV 08-0025-VAP (OPx), 2010 WL 1946784 (C.D. Cal. May 11, 2010) ....... 7

*Cook v. Niedert*,
142 F.3d 1004 (7th Cir. 1998) ....... 14

*Cox v. Clarus Mktg. Group, LLC*,
291 F.R.D. 473 (S.D. Cal. 2013) ....... 15

*Ebarle v. Lifelock, Inc.*,
No. 15-cv-00258-HSG, 2016 WL 234364 (N.D. Cal. Jan. 20, 2016) ....... 11

*Eddings v. Health Net, Inc.*,
No. CV 10-1744-JST (RZX), 2013 WL 3013867 (C.D. Cal. June 13, 2013) ....... 15

*Ellis v. Naval Air Rework Facility*,
87 F.R.D. 15 (N.D. Cal. 1980), *aff'd*, 661 F.2d 939 (9th Cir. 1981) ....... 10

*Fulford v. Logitech, Inc.*,
No. 08-cv-02041 MMC, 2010 WL 807448 (N.D. Cal. Mar. 5, 2010) ....... 15

*Harris v. Vector Mktg. Corp.*,
No. C-08-5198 EMC, 2011 WL 1627973 (N.D. Cal. 2011) ....... 10

*In re Heritage Bond Litig.*,
No. 02-ML-1475 DT, 2005 WL 1594403 (C.D. Cal. June 10, 2005) ....... 9

*In re Hyundai and Kia Fuel Economy Litig.*,
926 F.3d 539 (9th Cir. 2019) ....... 8, 9

*In re Online DVD-Rental Antitrust Litig.*,
779 F.3d 934 (9th Cir. 2015) ....... 14, 15

*In re Pac. Enters. Sec. Litig.*,
47 F.3d 373 (9th Cir. 1995) ....... 10

**TABLE OF AUTHORITIES**
**(cont.)**

**Page**

*In re Portal Software Sec. Litig.*,
No. C-03-5138 VRW, 2007 U.S. Dist. LEXIS 51794 (N.D. Cal. June 30, 2007)..................... 15

*In re Portal Software Sec. Litig.*,
No. C-03-5138 VRW, 2007 U.S. Dist. LEXIS 88886 (N.D. Cal. Nov. 26, 2007).................... 16

*In re Tableware Antitrust Litig.*,
484 F. Supp. 2d 1078 (N.D. Cal. 2007) ........................................................................... 10

*In re Toys R Us-Delaware, Inc.-(FACTA) Litig.*,
295 F.R.D. 438 (C.D. Cal. 2014) ............................................................................. 18, 22

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*,
No. 2672 CRB (JSC), 2016 U.S. Dist. LEXIS 148374 (N.D. Cal. Oct. 25, 2016).................... 16

*Lane v. Facebook, Inc.*,
696 F.3d 811 (9th Cir. 2012).............................................................................................. 17

*Larsen v. Trader Joe's Co.*,
No. 11-cv-05188-WHO, 2014 WL 3404531 (N.D. Cal. July 11, 2014)............................... 3, 14

*Linney v. Cellular Alaska P'ship*,
151 F.3d 1234 (9th Cir. 1998)............................................................................................ 13

*McCabe v. Six Continents Hotels, Inc.*,
No. 12-cv-04818 NC, 2015 WL 3990915 (N.D. Cal. June 30, 2015) ....................................... 6

*McDonald v. CP OpCo, LLC*,
No. 17-cv-04915-HSG, 2019 WL 2088421 (N.D. Cal. May 13, 2019) .................................. 20

*Miller v. Ghirardelli Chocolate Co.*,
No. 12-cv-04936-LB, 2015 WL 758094 (N.D. Cal. Feb. 20, 2015).................................... 2, 14

*Officers for Justice v. Civil Serv. Comm'n*
688 F.2d 615 (9th Cir. 1982)......................................................................................... 9, 12

*Pulaski & Middleman, LLC v. Google, Inc.*,
802 F.3d 979 (9th Cir. 2015).............................................................................................. 12

*Radcliffe v. Experian Info. Solutions, Inc.*,
715 F.3d 1157 (9th Cir. 2013)...................................................................................... 14, 15

*Rodriguez v. W. Publ'g Corp.*,
563 F.3d 948 (9th Cir. 2009).............................................................................................. 10

*Schaffer v. Litton Loan Serv., LP.*,
No. CV 05-07673 MMM (JCx), 2012 WL 10274679 (C.D. Cal. Nov. 13, 2012) .................... 13

*Schneider v. Chipotle Mexican Grill, Inc.*
No. 16-cv-02200-HSG, 2019 WL 1512265 (N.D. Cal. Apr. 8, 2019)..................................... 18

**TABLE OF AUTHORITIES**
**(cont.)**

**Page**


*Schneider v. Chipotle Mexican Grill, Inc.*,
328 F.R.D. 520 (N.D. Cal. 2018) ........ passim

*Schneider v. Chipotle Mexican Grill, Inc.*,
No. 16-cv-02200-HSG, 2016 WL 6563348 (N.D. Cal. Nov. 4, 2016) ........ 3

*Smith v. CRST Van Expedited, Inc.*,
No. 10-CV-1116-IEG (WMC), 2013 WL 163293 (S.D. Cal. Jan. 14, 2013) ........ 20

*Spann v. JC Penney Corp.*,
314 F.R.D. 312 (C.D. Cal. 2016) ........ 9, 10, 11, 22

*Staton v. Boeing, Co.*,
327 F.3d 938 (9th Cir. 2003) ........ 15

*Stearns v. Ticketmaster Corp.*,
655 F.3d 1013 (9th Cir. 2011), *cert. denied*, 132 S. Ct. 1970 (2012) ........ 7

*Villegas v. J.P. Morgan Chase & Co.*,
No. CV 09–00261 SBA (EMC), 2012 WL 58783906 (N.D. Cal. Nov. 21, 2012) ........ 11

*Vizcaino v. U.S. Dist. Ct. for W.D. Wash.*,
173 F.3d 713 (9th Cir. 1999) ........ 7, 13

*Wright v. Linkus Enters., Inc.*,
259 F.R.D. 468 (E.D. Cal. 2009) ........ 10

*Zeisel v. Diamond Foods, Inc.*,
No. C 10-01192 JSW, 2012 WL 4902970 (N.D. Cal. Oct. 16, 2012) ........ 3, 14


**Statutes**


California Business & Professions Code
§ 17203 ........ 7


**Rules**


Federal Rules of Civil Procedure
Rule 15(a)(2) ........ 6
Rule 23 ........ 3, 8, 9, 18
Rule 23(a) ........ 6, 8
Rule 23(b)(2) ........ 6, 8
Rule 23(b)(3) ........ 6, 8
Rule 23(c)(1)(C) ........ 7
Rule 23(c)(2) ........ 4
Rule 23(c)(2)(B) ........ 16
Rule 23(e) ........ 9
Rule 23(e)(1) ........ 16
Rule 23(f) ........ 4, 12
Rule 23(h)(1) ........ 17
Rule 30(b)(6) ........ 3

**TABLE OF AUTHORITIES**
**(cont.)**

**Page**

**Other Authorities**

Shannon Wheatman and Tiffaney Janowicz, "What We've Noticed: Estimating Claims – What Every Attorney Should Know." Rust Consulting (Feb. 2015) .......... 21

- vii - Case No. 4:16-cv-02200-HSG (KAW)
NOTICE OF MOT. AND MOT. FOR PRELIM. APP. OF SETTLEMENT; MPA ISO THEREOF

**MEMORANDUM OF POINTS AND AUTHORITIES**

Plaintiffs respectfully submit this Memorandum of Points and Authorities in support of their unopposed motion for preliminary approval of the Settlement, to amend the Complaint, and to certify, for settlement purposes only, a modified class definition in the above-captioned action ("Action"), and entry of the [Proposed] Order Certifying Provisional Settlement Class, Preliminarily Approving Class Action Settlement and Providing for Notice to the Settlement Class ("Preliminary Approval Order"). The Preliminary Approval Order will: (i) grant preliminary approval of the proposed class action settlement on the terms set forth in the Stipulation of Settlement, dated September 11, 2019 ("Stipulation" or "Settlement"); (ii) certify a modified proposed Settlement Class, for settlement purposes only; (iii) approve the form and manner of notice of the proposed Settlement to the Class; and (iv) schedule a hearing date for final approval of the Settlement ("Final Approval Hearing") and a schedule for various deadlines in connection with the Settlement.

Defendant has represented that it supports preliminary approval, amending the complaint, and modifying the class definition for settlement purposes only, and does not otherwise oppose Plaintiffs' motion.

## I. INTRODUCTION

After more than three years of hard-fought and contentious litigation, the parties have reached an agreement to resolve the Classes' claims against Chipotle pursuant to the accompanying Stipulation. *See* King Decl., Ex. 1. The Settlement provides for the non-reversionary payment of six million five hundred thousand dollars ($6,500,000.00) in cash for the benefit of the Class.

The Settlement was reached only after extensive, aggressive litigation and prolonged, well-informed, and extensive arm's-length negotiations—including three in-person mediation sessions and additional negotiations—between experienced and knowledgeable counsel finally facilitated by mediator Judge Jay C. Gandhi (Ret.) of JAMS at the last two sessions. The Settlement, based upon a mediator's proposal, was reached less than three months before trial, and after the completion of fact and expert discovery, the briefing on class certification and summary judgment, briefing on Defendant's motion for decertification, and during the parties' pre-trial preparations.

During the course of the litigation, Plaintiffs, through Kaplan Fox & Kilsheimer LLP and Kobre & Kim LLP ("Counsel"), and/or their agents had, among other things: (i) conducted a wide-ranging investigation into the Class' claims; (ii) filed a comprehensive complaint; (iii) successfully opposed Defendant's motion to dismiss; (iv) engaged in a comprehensive discovery program, including 17 depositions throughout the United States, responding to hundreds of discovery requests, reviewing hundreds of thousands of pages of documents, and engaging in motion practice over discovery issues; (v) successfully sought reconsideration of the Court's order dismissing injunctive relief; (vi) successfully briefed Plaintiffs' motion for class certification and opposed Defendant's efforts to seek appellate interlocutory review of the Court's order granting class certification; (vii) successfully opposed Defendant's motion for summary judgment; (viii) briefed Defendant's motion for decertification; (ix) consulted with experts; and (x) prepared for trial. As a result, Plaintiffs and Counsel had a thorough understanding of the relative strengths and weaknesses of the claims asserted at the time the Settlement was reached.

Plaintiffs submit that this is a very good recovery for the Settlement Class in light of the substantial risks of decertification and trial. Indeed, unlike in other similar cases where litigants failed at various stages of the litigation,[1] here, Plaintiffs have succeeded to the point of preparing for trial. Moreover, the settlement compares quite favorably to other food mislabeling class actions. Chipotle charged approximately $10 for an entrée during the Class Period. Each Settlement Class Member is eligible to obtain $2 back on each qualifying purchase and may submit a claim for up to five qualifying purchases ($10) without any documentation. Further, each Settlement Class Member can obtain up to $20 for ten qualifying purchases with proof of payment, subject to a 15-claim ($30) cap per household. Plaintiffs believe this recovery is quite good considering the limited damages available to each class member at trial, and the ease of filing a claim for up to $10 without proofs of purchase. Such a recovery is in line with, if not better than, other food mislabeling settlements approved in this District. *See, e.g.*, *Miller v. Ghirardelli Chocolate Co.*, No. 12-cv-

[1] *See Reilly v. Chipotle Mexican Grill, Inc.*, No. 1:15-cv-23425 (S.D. Fla.) (denying class certification and granting summary judgment); *Pappas v. Chipotle Mexican Grill, Inc.*, No. 16-cv-0612 (S.D. Cal.) (dismissal prior to class certification); *Joseph v. Chipotle Mexican Grill, Inc.*, No. 15-cv-62604 (S.D. Fla.) (voluntary dismissal while motion to dismiss was pending).

04936-LB, 2015 WL 758094 (N.D. Cal. Feb. 20, 2015) (final approval of $5.25 million settlement); *Larsen v. Trader Joe's Co.*, No. 11-cv-05188-WHO, 2014 WL 3404531 (N.D. Cal. July 11, 2014) (final approval of $3.375 million settlement); *Zeisel v. Diamond Foods, Inc.*, No. C 10-01192 JSW, 2012 WL 4902970 (N.D. Cal. Oct. 16, 2012) (final approval of $2.6 million settlement).  Indeed, Plaintiffs' legal theory was largely untested at the time the case was filed, and Chipotle has vigorously contested the claims through the eve of trial.

Based on an informed evaluation of the facts and governing legal principles, and their recognition of the substantial risk and expense of continued litigation, the parties respectfully submit that the proposed Settlement is fair, reasonable, and adequate under Rule 23.  Accordingly, Plaintiffs move for preliminary approval and submit this Memorandum of Points and Authorities in support thereof.

## II.   BACKGROUND

### A.   Summary of the Litigation

Plaintiffs filed their class action complaint on April 22, 2016 (Dkt. 1).  Plaintiffs alleged that Defendant's "non-GMO" in-store campaign, from April 27, 2015 until June 30, 2016 (the "Class Period"), was false and misleading and was in violation of, among others, the consumer protection laws of California, New York, and Maryland.  *See id.* ¶¶ 15-49, 69-96, 107-146.

On May 17, 2016, Defendant filed a motion to dismiss (Dkt. 15).  The Court granted in part and denied in part Defendant's motion on November 4, 2016, dismissing Plaintiffs' request for injunctive relief but otherwise denying the motion (Dkt. 36).  *See Schneider v. Chipotle Mexican Grill, Inc.*, No. 16-cv-02200-HSG, 2016 WL 6563348, at *3 (N.D. Cal. Nov. 4, 2016).  Chipotle answered the Complaint on December 1, 2016 (Dkt. 40) and discovery commenced thereafter.

Pursuant to Court order (Dkt. 48), extensive discovery was completed prior to briefing on Plaintiffs' motion for class certification and Defendant's motion for summary judgment.  Discovery included the production and review of hundreds of thousands of pages of documents from the parties and non-parties, preparing for and defending Plaintiffs' depositions, taking a Rule 30(b)(6) deposition of Chipotle and the depositions of its fact witnesses, the submission of expert reports, the taking or defending of the experts' depositions, and the serving or responding to hundreds of

discovery requests.  In addition, Plaintiffs served multiple subpoenas on non-parties and deposed and/or defended several non-party witnesses.  And, Plaintiffs conducted multiple meet and confers with Defendant and filed no less than four joint discovery letters and other requests for resolution before this Court and the magistrate judge (Dkt. 60-62, 66, 70-74, 77, 80).

On October 30, 2017, Plaintiffs filed a motion for leave to file a motion for reconsideration of the Court's order dismissing Plaintiffs' request for injunctive relief (Dkt. 85), which the Court granted on November 1, 2017 (Dkt. 86).  Plaintiffs filed their motion for reconsideration on November 8, 2017 (Dkt. 87).

Nine days later, Defendant filed its motion for summary judgment (Dkt. 92).  The same day, Plaintiffs filed their motion for class certification (Dkt. 95).  On December 22, 2017, Defendant filed two motions to exclude Plaintiffs' experts (Dkt. 100, 101).  Plaintiffs filed their motion to exclude Defendant's experts on January 17, 2018 (Dkt. 117).  The Court heard the various motions on February 8, 2018 (Dkt. 131).  On September 29, 2018, the Court resolved these motions (Dkt. 136): The Court granted reconsideration, denied summary judgment, granted class certification, and denied the motions to exclude.  *See Schneider v. Chipotle Mexican Grill, Inc.*, 328 F.R.D. 520, 543 (N.D. Cal. 2018).

On October 15, 2018, Defendant filed a Rule 23(f) petition before the Ninth Circuit seeking permission to appeal that portion of the Court's decision granting class certification (Dkt. 137).  And, on December 6, 2018, Defendant sought to reopen discovery (Dkt. 143).  The Court of Appeals denied Defendant's petition on March 20, 2019 (Dkt. 167).  The next day, the Court heard and denied Defendant's motion to reopen discovery from the bench (Dkt. 168).

On January 9, 2019, Plaintiffs submitted an administrative motion to approve Plaintiffs' selection of notice administrator, the proposed notice plan pursuant to Rule 23(c)(2), as well as a proposed scheduling order that would plan out the schedule from execution of notice until trial (Dkt. 150).  The Court held a hearing on the administrative motion on January 24, 2019 and, due to Chipotle's response to the administrative motion, ordered, among other things, Plaintiffs to file a motion to modify the class definitions (Dkt. 159).  Plaintiffs filed the motion on January 31, 2019 (Dkt. 159), and, on February 12, 2019, the Court granted Plaintiff's motion in part (Dkt. 164).

On March 28, 2019, the Court entered a pre-trial and trial schedule stipulated by the parties (Dkt. 174), setting a September 16, 2019 trial date as well as a number of other pre-trial deadlines. The parties engaged in further discussions and motion practice over the contours of notice administration (Dkt. 172, 175-79), which the Court resolved on April 8, 2019 (Dkt. 180). Class notice was disseminated beginning April 15, 2019 (Dkt. 188).

On April 25, 2019, Chipotle filed its motion to decertify the classes (Dkt. 184). At the time of settlement, the decertification motion was fully briefed and was specially set for oral argument on July 18, 2019 (Dkt. 190, 191, 192). Upon the parties having informed the Court of a settlement, all pending dates and motions were terminated (Dkt. 193-95).

### B. Settlement Negotiations and Mediation

The parties engaged in three in-person mediations over the course of this Action. The parties held their first in-person mediation on May 9, 2017 with a mediator from the Court's ADR Unit (Dkt. 65). The parties did not settle. On January 29, 2019, the parties held a second in-person mediation, this time with Judge Gandhi. While some progress was made, the parties did not reach a settlement. The parties continued negotiations through Judge Gandhi while litigating the Action and preparing for trial. On July 2, 2019, the parties held a third in-person mediation with Judge Gandhi, where Judge Gandhi made a mediator's proposal during the in-person mediation. The parties accepted the mediator's proposal, culminating in the execution of a settlement term sheet.

## III. SUMMARY OF AND REASONS FOR THE SETTLEMENT

The Settlement provides for the non-reversionary payment of $6.5 million in cash for the benefit of the Class. The Stipulation also provides for payment of Counsel's fees and expenses, releases, the parameters of the Class Notice program, payment of the costs for notice and claims administration, and, under limited circumstances, a *cy pres* remedy.

Based upon their investigation, Plaintiffs and Counsel concluded that the terms and conditions of this Stipulation are fair, reasonable, and adequate to the Class and in their best interests. The parties agreed to settle the Action pursuant to the terms and provisions of the Stipulation, after considering: (i) the substantial benefits that Class members will receive from resolution of the Action; (ii) the risks of continued litigation; and (iii) the desirability of permitting

the Settlement to be consummated as provided by the terms of the Stipulation.

The parties accepted the mediator's proposal and settled the claims with an understanding of the strengths and weaknesses of their claims and defenses. While Plaintiffs believe that the claims have merit, Plaintiffs concluded that a risk existed that the proposed Settlement Class could recover less than the Settlement, or nothing at all, if the Action continued.  Because the Settlement falls within the range of possible approval, and is otherwise fair and reasonable, the Court should grant preliminary approval of the Settlement.

## IV.   ARGUMENT

### A.   Leave to File First Amended Complaint in Connection with Proposed Settlement is Warranted

As part of the Settlement Agreement, the parties agreed that Plaintiffs will seek the Court's permission to file an amended complaint, which would redefine the class definition to be consistent with the proposed Settlement Class as described in the Stipulation.  Stip. § 2.F.; *see* King Decl., Ex. 2 (proposed Amended Class Action Complaint).

Rule 15(a)(2) permits plaintiffs to amend their pleading with the opposing party's written consent.   "Where the parties have agreed to file an amended complaint as part of the class settlement, judges in this district have granted leave to amend, subject to the terms of the settlement."  *McCabe v. Six Continents Hotels, Inc.*, No. 12-cv-04818 NC, 2015 WL 3990915, at *4 (N.D. Cal. June 30, 2015) (citations omitted); *Altamirano v. Shaw Indus., Inc.*, No. 13-cv-00939-HSG, 2015 WL 4512372, at *10 (N.D. Cal. July 24, 2015).

Because the parties agreed through provisions of the Stipulation requiring the Court to consider the content pled in the Amended Class Action Complaint, the Court should grant the motion for leave to file.

### B.   The Class Definition as Contemplated by the Settlement Satisfies Rule 23 and Certification is Warranted

On September 29, 2018, the Court granted class certification pursuant to Rules 23(a), 23(b)(2), and 23(b)(3).  *Schneider*, 328 F.R.D. at 543.  Thereafter, the Court modified the class definitions (Dkt. 164).  Ordinarily, there would be no reason to revisit the class definitions at this

juncture. *See Carter v. Anderson Merchandisers, LP*, No. EDCV 08-0025-VAP (OPx), 2010 WL 1946784, at *4 (C.D. Cal. May 11, 2010). However, the Settlement is conditioned upon Plaintiffs filing an amended complaint and, in connection with the amended complaint, the Court amending the three state class definitions, for settlement purposes only, to and approving the following definition:

> All persons in the United States who purchased Chipotle's Food Products in its restaurants during the Class Period.

Stip. § I.AA.[2] Excluded from the Settlement Class are all persons who validly opt out of the Settlement in a timely manner; governmental entities; counsel of record (and their respective law firms) for the Parties; Defendant and any of its parents, affiliates, subsidiaries, independent service providers and all of its respective employees, officers, and directors; the presiding judge in the Action or judicial officer presiding over the matter, and all of their immediate families and judicial staff; and any natural person or entity that entered into a release with Defendant prior to the Effective Date concerning the Food Products. *Id.*

The Court can amend or alter the class definition at any time before a decision on the merits. Fed. R. Civ. P. 23(c)(1)(C); *Vizcaino v. U.S. Dist. Ct. for W.D. Wash.*, 173 F.3d 713, 721 (9th Cir. 1999) (citing Rule 23(c)(1), giving court "explicit permission to alter or amend a certification order before [a] decision on the merits"). Here, the requested modification should be granted because it is appropriate to include and award settlement proceeds to those consumers who were likely exposed to the same or similar Non-GMO Claims and practices as Plaintiffs and the certified Classes throughout the United States. Moreover, Chipotle's headquarters are located in California. And, the various states require similar elements or proof with respect to Plaintiffs' consumer fraud and unjust enrichment claims. *Cf.* Cal. Bus. & Prof. Code § 17203 (authorizing the Court to restore to any person any money "which may have been acquired" as a result of unfair competition); *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1020 (9th Cir. 2011), *cert. denied*, 132 S. Ct. 1970

[2] "Food Products" is defined as "all beverages sold by Chipotle, including but not limited to non-diet sodas, and foods sold by Chipotle containing meat and/or dairy ingredients, including but not limited to burritos, burrito bowls (a burrito without the tortilla), tacos, salads, and quesadillas." *Id.* § I.P.

(2012) (recognizing that "relief under the UCL is available without individualized proof of deception, reliance, and injury."); *see also In re Hyundai and Kia Fuel Economy Litig.*, 926 F.3d 539, 564-65 (9th Cir. 2019) (applying California law to nationwide class).

This is all the more important because, in many states, the time to bring similar claims has passed due to the statutes of limitation; thus, it would be unlikely that these consumers would receive any compensation for the alleged wrongdoing committed by Chipotle. It is also appropriate for Chipotle to buy and obtain peace with respect to all consumers who were likely exposed to such practices, and the Settlement was negotiated with these principles in mind.[3]

While the new class definition must satisfy Rule 23 requirements, *Astiana v. Kashi Co.*, 295 F.R.D. 490, 492 (S.D. Cal. 2013), those requirements are easily met here because the parties essentially seek only to add more people who were likely exposed to the same practices, and who have the same claims, as Plaintiffs and the certified Classes. Thus, the Court's prior analyses as to the Rule 23(a) requirements have not changed. *See Schneider*, 328 F.R.D. at 536-38.

The requirements under Rule 23(b)(2) have also been met. A plaintiff must show that "the party opposing the class has acted or refused to act on grounds that generally apply to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). This requirement applies whether or not the parties contest settlement approval. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620-22 (1997). Here, while Defendant has argued otherwise, the question remains as to whether declaratory relief is appropriate respecting the class as a whole. *Schneider*, 328 F.R.D. at 538-39.

Finally, predominance under Rule 23(b)(3) holds true with the proposed Settlement Class. Plaintiffs' claims continue to be based on the same facts and the same legal and remedial theories as the claims of the Settlement Class because they are all based on Chipotle's alleged and uniform use of deceptive advertisements. *Schneider*, 328 F.R.D. at 539-41; *see also Hyundai*, 926 F.3d at 559-60. And the superiority requirement of Rule 23(b)(3) remains satisfied because the ultimate

[3] If for any reason the Court does not approve the settlement, each party shall retain all their respective rights as they existed as of the date of the execution of the Settlement Agreement, including maintenance of the Classes certified by the Court on February 12, 2019. Stip. § VI.

recovery by Settlement Class Members would be dwarfed by the cost of litigating on an individual basis, any Settlement Class Member who wishes to opt out may do so pursuant to the proposed Notice plan, and there is currently one potentially related case pending state court.[4] *Schneider*, 328 F.R.D. at 541-42; *see also Spann v. JC Penney Corp.*, 314 F.R.D. 312, 323 (C.D. Cal. 2016) (noting that, "in the context of settlement, the other requirements of Rule 23(b)(3) . . . are rendered moot and are irrelevant" (internal quotations and citations omitted)).[5]

In sum, because the Court's prior Rule 23 analysis applies with equal force to the Settlement Class, the Class Definition should be modified as requested.

**C. <u>The Law Favors and Encourages Settlement</u>**

Rule 23 requires judicial approval of any compromise of claims brought on a class-wide basis. Rule 23(e) ("The claims . . . of a certified class may be settled . . . only with the court's approval."). In deciding whether to approve a proposed settlement, the Ninth Circuit has a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *Hyundai*, 926 F.3d at 556; *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982); *In re Heritage Bond Litig.*, No. 02-ML-1475 DT, 2005 WL 1594403, at *2 (C.D. Cal. June 10, 2005). "[T]here is an overriding public interest in settling and quieting litigation," and this is "particularly true in class action suits." *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976). Moreover, the Ninth Circuit expressly recognizes that:

> [I]n making its assessment pursuant to Rule 23(e), the Court's[] "intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as whole, is fair, reasonable and adequate to all concerned."

*Heritage Bond*, 2005 WL 1594403, at *2 (quoting *Officers for Justice*, 688 F.2d at 625). Recognizing that "[p]arties represented by competent counsel are better positioned than courts to

---

[4] To the extent the plaintiff in the action styled *Cruz v. Chipotle Mexican Grill*, No. 19STCV25669 (Super. Ct., LA Cty.), seeks to intervene and somehow "carve out" a specific litigation, the parties oppose intervention for the reasons stated in their respective oppositions (Dkts. 203 & 204).

[5] Since modification is in the settlement context, the Court need not consider Rule 23's manageability requirement. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

produce a settlement that fairly reflects each party's expected outcome in [the] litigation," courts favor approval of settlements. *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995).

**D. The Proposed Settlement Should Be Preliminarily Approved**

At the preliminary approval stage, the court "evaluate[s] the terms of the settlement to determine whether they are within a range of possible judicial approval." *Wright v. Linkus Enters., Inc.*, 259 F.R.D. 468, 472 (E.D. Cal. 2009). Although "[c]loser scrutiny is reserved for the final approval hearing[,]" *Harris v. Vector Mktg. Corp.*, No. C-08-5198 EMC, 2011 WL 1627973, *7 (N.D. Cal. 2011), the showing at the preliminary approval stage—given the amount of time, money, and resources involved in, for example, sending out new class notices—should be good enough for final approval. *Spann*, 314 F.R.D. at 319.

At this stage, the Court may grant preliminary approval of a settlement and direct notice to the class if "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007) (citing MANUAL FOR COMPLEX LITIGATION, 2d § 30.44 (2d ed. 1985)). The Court does not need to "specifically weigh[] the merits of the class's case against the settlement amount and quantif[y] the expected value of fully litigating the matter." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009). Instead, the Court must only evaluate whether the Settlement is "the product of an arms-length, non-collusive, negotiated resolution[]." *Id.*

As demonstrated below, the proposed Settlement is a fair and just result. Given the complexity of this litigation, the potential difficulty of proving certain elements of the Class's claims, and the continued risks if the parties proceeded to trial, the Settlement represents a favorable resolution of this Action and eliminates the risk that the Class might otherwise recover nothing.

**1. The Proposed Settlement, the Product of a Mediator's Proposal, was Vigorously Negotiated, and is Supported by Experienced Counsel**

Courts recognize that the opinion of experienced counsel supporting settlement after vigorous arm's-length negotiation is entitled to considerable weight. *See, e.g., Ellis v. Naval Air*

*Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980), *aff'd*, 661 F.2d 939 (9th Cir. 1981) ("the fact that experienced counsel involved in the case approved the settlement after hard-fought negotiations is entitled to considerable weight"); *Spann*, 314 F.R.D. at 323-24 (same). Courts have also recognized that agreements based upon a mediator's proposal demonstrate non-collusive conduct. *See, e.g.*, *Ebarle v. Lifelock, Inc.*, No. 15-cv-00258-HSG, 2016 WL 234364, at *6 (N.D. Cal. Jan. 20, 2016) (finding that acceptance of a mediator's proposal following mediation sessions "strongly suggests the absence of collusion or bad faith"); *Spann*, 314 F.R.D. at 324 (same).

Here, the parties actively litigated the Action, and Counsel, who have extensive class action and litigation experience, *see* King Decl., Exs. 3 & 4, conducted an extensive investigation into and prosecution of the alleged claims. Counsel also engaged in a rigorous negotiation process with Defense Counsel, and fully considered and evaluated the fairness of the Settlement to the Settlement Class. The parties' settlement negotiations were protracted and hard-fought and included the determined assistance of an experienced mediator. At Judge Gandhi's direction, the parties submitted comprehensive mediation and supplemental statements. After submitting their statements, counsel for all parties attended in-person mediations before Judge Gandhi on January 29, 2019, and again on July 2, 2019, and gave detailed and thoughtful presentations on the perceived strengths and weaknesses of their respective cases. It was only after several additional months of intense discussions and a meditator's proposal that the parties were ultimately able to reach an agreement. *See Villegas v. J.P. Morgan Chase & Co.*, No. CV 09–00261 SBA (EMC), 2012 WL 5878390, at *6 (N.D. Cal. Nov. 21, 2012) (noting that private mediation "tends to support the conclusion that the settlement process was not collusive").

Additionally, throughout the Action and settlement negotiations, Defendant has been vigorously represented by no less than three national law firms, their representation of Defendant being no less rigorous than Counsel's representation of the proposed Settlement Class. Because the Settlement is the product of serious, informed, and non-collusive negotiations among experienced counsel and the product of a mediator's proposal, it deserves preliminary approval.

**2. The Proposed Settlement Class Provides a Favorable Recovery for the Settlement Class and Falls Within a Range of Possible Approval**

As the Ninth Circuit has articulated, "the very essence of a settlement is compromise, 'a yielding of absolutes and an abandoning of highest hopes.'" *Officers for Justice*, 688 F.2d at 624 (quoting *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977)).

> [I]t is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements. The proposed settlement is [thus] not to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators.

*Id.* at 625.

Here, the Class Settlement Amount of $6.5 million is substantial by any measure and certainly falls within a range of possible approval. This is particularly true given the real and substantial risk that Plaintiffs could have successfully proven liability at trial yet still recovered nothing because the fact and amount of restitution that could be recovered in this case are still uncertain. *Accord Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979, 986 (9th Cir. 2015). Indeed, as the Court noted in its order granting class certification and denying summary judgment, the "import of" Plaintiff's expert's results "is ambiguous at best," and, moreover, would be "subject to myriad challenges on cross-examination." *Schneider*, 328 F.R.D. at 534, 541. Accordingly, there would always be uncertainty as to whether Plaintiffs would recover any restitution even if liability were proven at trial.

Moreover, Chipotle continues to dispute the Court's decision granting class certification, arguing that certification was unwarranted because Plaintiffs failed to demonstrate commonality and predominance. Indeed, as further articulated in Defendant's motion to decertify the classes (Dkt. 184), Defendant continues to believe that the Court incorrectly found that there was a common question of law or fact to the classes warranting certification, *id.* at 12-15, and that, even if there were common questions, the Court incorrectly determined that those questions predominated over individual issues, including "exposure, reliance, materiality, causation, and inquiry." *Id.* at 15-25. Moreover, Defendant has argued that injunctive relief no longer is applicable given its purported cessation of the alleged unlawful activity. *Id.* at 25. While Plaintiffs

firmly believe that their liability case is exceptionally strong and that the Court properly found that class certification was warranted, which was upheld by the Ninth Circuit when it denied Defendant's 23(f) petition to appeal (Dkt. 167), nonetheless there is always the uncertainty that the Court may reverse itself and conclude otherwise. *See Vizcaino*, 173 F.3d at 721.

In evaluating the Settlement, it is of course relevant to consider what Settlement Class Members will actually recover. While there will not be injunctive relief given Defendant's claim that it has ceased advertising the Non-GMO Claims, only Settlement Class Members who make a claim will receive cash, and the amount that they receive will depend on the fees and costs awarded by the Court, the number of Claims submitted, and the amount that Claimants spent. Nonetheless, the Settlement guarantees an immediate recovery to those making claims of an amount much greater than the theoretical recovery a Claimant could have recovered per purchase had Plaintiffs prevailed at trial.[6] And, the Court's reliance on these figures must be tempered by the additional costs and delay of trial coupled with the risk that Plaintiffs could prove liability yet still recover nothing. *See, e.g.*, *Schaffer v. Litton Loan Serv., LP.*, No. CV 05-07673 MMM (JCx), 2012 WL 10274679, at *11 (C.D. Cal. Nov. 13, 2012) ("Estimates of a fair settlement figure are tempered by factors such as losing at trial, the expense of litigating the case, and the expected delay in recovery (often measured in years)."); *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) ("The fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved.") (citation omitted).

In sum, a number of factors militate toward Settlement. Given Defendant's decertification motion, it is at best uncertain whether the Court would uphold its prior opinion certifying this Action. And, even if Plaintiffs successfully proved their case at trial, the amount of restitution recovered, if any, could vary widely depending on other factors, including the Court's discretion as to whether and how much to award in restitution, if any. Importantly, even if anything were recovered, it would take years to secure, as Chipotle would undoubtedly appeal any adverse

[6] *See* Decl. of Laurence D. King in Support of Pls' Mot. for Cl. Cert., dated Nov. 17, 2017, Ex. 41 (Report of Dr. Jon A. Krosnick, dated Aug. 11, 2017) [Dkt. 95-42] (noting a 2.47% price premium).

judgment. In comparison, the Settlement provides a guaranteed, fixed, immediate and substantial recovery of $6.5 million, which is in line with, if not better than, other food mislabeling settlements approved in this Circuit and District. *See, e.g.*, *Miller*, 2015 WL 758094; *Larsen*, 2014 WL 3404531; *Zeisel*, 2012 WL 4902970.

The Settlement is fair and reasonable, and within the range of possible approval.

**3. <u>The Proposed Settlement Does Not Unjustly Favor Any Class Members, Including Plaintiffs</u>**

The Settlement Agreement authorizes a Service Award for Plaintiffs in an amount to be determined by the Court but not to exceed a total of $20,000, or $5,000 per Plaintiff. Stip. § III.G.2. "Incentive awards typically range from $2,000 to $10,000." *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 267 (N.D. Cal. 2015) (collecting cases). The Settlement is not conditioned on the Court's approval of the full (or any) amount of a Service Award. Stip. § III.G.2.

In evaluating whether the Settlement grants preferential treatment to Plaintiffs, the Court may consider whether there is a "significant disparity between the incentive award[] and the payments to the rest of the class members" such that it creates a conflict of interest. *Radcliffe v. Experian Info. Solutions, Inc.*, 715 F.3d 1157, 1165 (9th Cir. 2013). More important considerations, however, are "the number of class representatives, the average incentive award amount, and the proportion of the total settlement that is spent on incentive awards." *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 947 (9th Cir. 2015) (quoting *Staton v. Boeing, Co.*, 327 F.3d 938, 977 (9th Cir. 2003)). The Court may also consider "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation." *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998). Finally, the Court must evaluate whether a conflict exists due to the incentive award being conditioned on the class representative's approval and support of the Settlement. *Radcliffe*, 715 F.3d at 1161.

While the $5,000 requested per Plaintiff represents many times more than the estimated monetary benefit per Claimant, this does not rise to the level of unduly preferential treatment. Indeed, courts have approved similar or greater disparities between incentive awards and individual

class member payments. *See, e.g.*, *Cox v. Clarus Mktg. Group, LLC*, 291 F.R.D. 473, 483 (S.D. Cal. 2013) (approving a $5,000 incentive award where class members would receive a maximum payment of $36); *see also Fulford v. Logitech, Inc.*, No. 08-cv-02041 MMC, 2010 WL 807448, at *3 n.1 (N.D. Cal. Mar. 5, 2010) (collecting cases awarding incentive award payments ranging from $5,000 to $40,000).

More importantly, there are only four class representatives who seek, at most, only three-thousandths (0.003%) of the $6.5 million Class Settlement Amount. This amount is reasonable considering how miniscule the award is in relation to the full amount of the Settlement Fund. *See Online DVD-Rental*, 779 F.3d at 947-948 (approving incentive awards that were roughly 417 times larger than $12 individual awards because the awards were reasonable, the number of representatives were relatively small, and the total amount of incentive awards "ma[d]e up a mere 0.17% of the total settlement fund"); *cf. Staton*, 327 F.3d at 976-77 (reversing approval of incentive awards that averaged $30,000 each for 29 class representatives, totaling $890,000, or roughly 6% of a potential $14.8 million settlement). Thus, the Settlement does not improperly grant preferential treatment to Plaintiff or segments of the Class. *In re Portal Software Sec. Litig.*, No. C-03-5138 VRW, 2007 U.S. Dist. LEXIS 51794, at *14-15 (N.D. Cal. June 30, 2007).

The amount requested is also appropriate given the time and risk of Plaintiffs' participation in this Action. Plaintiffs spent more than three years prosecuting this Action, and have spent many hours reviewing pleadings, responding to hundreds of discovery requests, reviewing and producing documents, and sitting for all-day depositions. These factors further support and justify the amount requested. *See, e.g.*, *Eddings v. Health Net, Inc.*, No. CV 10-1744-JST (RZX), 2013 WL 3013867, at *7 (C.D. Cal. June 13, 2013) (approving $6,000 service award from $600,000 settlement to compensate the named plaintiff for her time, effort and risk in prosecuting the action). Finally, Plaintiffs' approval of the Settlement was not conditioned on them receiving an incentive award. Stip. § III.G.2. Accordingly, Plaintiffs' interests do not conflict with or diverge from the interests of the Settlement Class. *Radcliffe*, 715 F.3d at 1161.

**4. <u>The Stage of the Proceedings and the Discovery Completed</u>**

The stage of the proceedings and discovery completed are additional factors supporting the

Settlement.  As discussed above, Counsel (or its agents) engaged in extensive investigation, research, and analysis of the Class' claims, resulting in the Court upholding the Complaint.

Plaintiffs thereafter aggressively pursued discovery from Defendant through requests for production of documents, interrogatories, and requests for admission.  Regarding document production, it was only through intense meet and confers as well as discovery motion practice that resulted in hundreds of thousands of pages of fact-related material produced by Defendant for review.  Plaintiffs also subpoenaed relevant non-parties, reviewed expert reports, and took the depositions of Defendant's witnesses.  This discovery helped Plaintiffs evaluate the merits of their claims.  Importantly, discovery helped Plaintiffs successfully brief their motion for class certification and in opposition to Chipotle's motion for summary judgment.

Further, the parties engaged in no less than three in-person mediations.  The parties presented their best arguments to an objective audience in the form of the mediator, Judge Gandhi.  Judge Gandhi gave the parties a reasonable assessment of the strengths and weaknesses of their case, and further, provided a mediator's proposal which the parties accepted.  Considering this, the litigants had sufficient bases to make informed decisions about the relative merits of the case and the fairness of the Settlement.

In a class action setting, courts look for indications that the parties carefully investigated the claims before reaching a resolution; significant written discovery (such as requests for production, interrogatories, and requests for admission) weighs in favor of approving the settlement.  *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*, No. 2672 CRB (JSC), 2016 U.S. Dist. LEXIS 148374, at *758-59 (N.D. Cal. Oct. 25, 2016) ("extensive review of discovery materials indicates [Plaintiffs have] sufficient information to make an informed decision about the Settlement. As such, this factor favors approving the Settlement."); *In re Portal Software Sec. Litig.*, No. C-03-5138 VRW, 2007 U.S. Dist. LEXIS 88886, at *10-11 (N.D. Cal. Nov. 26, 2007).

In light of these considerations, the Settlement is reasonable and within the range of possible approval.  The parties therefore respectfully ask the Court to grant preliminary approval of the Settlement and direct that notice be given to the Class.

**E. <u>The Proposed Notice to the Class is Adequate</u>**

Rule 23(c)(2)(B) requires that notice of a settlement be "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." *See also* Rule 23(e)(1) ("The court must direct notice in a reasonable manner to all class members who would be bound by the propos[ed settlement]."). Notice "must 'generally describe[] the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'" *Lane v. Facebook, Inc.*, 696 F.3d 811, 826 (9th Cir. 2012) (quoting *Rodriguez*, 563 F.3d at 962).

The parties negotiated the form of Notice to be disseminated to all persons falling within the proposed Class definition. *See* Stip § 4. The parties propose to supplement the Notice with digital media advertising as well as an additional description of the Action and proposed Settlement to be published four times in *The East Bay Times* and once in *People* magazine. *Id.* § 4.A. The Claims Administrator will also send out CAFA notices. *Id.* § 4.E. Counsel will also make copies of the Notice and Proof of Claim available for download via the website maintained by the Claims Administrator ("Website"). *Id.* § 4.B. The Website address is set forth in the Notice and in the digital media advertising. *Id.* In addition, the Website will provide the Complaint and other important pleadings, as well as important information regarding the Action and proposed Settlement. *Id.* And, the Website will allow claimants to submit claims to the Claims Administrator. *Id.*

Rule 23(h)(1) requires that "[n]otice of the motion [for attorneys' fees] must be served on all parties and, for motions by class counsel, directed to class members in a reasonable manner." The proposed Notice satisfies the requirements of Rule 23(h)(1), as it notifies Class Members that Counsel will apply to the Court for attorneys' fees not to exceed 30% of the Settlement Amount, plus costs, to be paid from the Settlement Fund. *Id.*, Ex. B. The proposed Notice describes the proposed Settlement and sets forth, among other things: (1) the nature, history, and status of the litigation; (2) the definition of the Class and who is excluded from the Class; (3) the reasons the parties have proposed the Settlement; (4) the Settlement amount; (5) the estimated reimbursement per individual; (6) the Class' claims and issues; (7) the parties' disagreement over damages and

liability; (8) the maximum amount of attorneys' fees and costs that Counsel intends to seek in connection with final settlement approval; (9) the $5,000 Service Awards for Plaintiffs in connection with their representation of the Class; (10) the plan for allocating the Settlement proceeds to the Class; and (11) the date, time, and place of the final settlement hearing. *Id.*

The proposed Notice discusses the rights Class Members have concerning the Settlement, including to: (1) request exclusion and the manner for submitting such a request; (2) object to the Settlement, or any aspect thereof, and the manner for filing and serving an objection; and (3) participate in the Settlement and instructions on how to complete and submit a Proof of Claim to the Claims Administrator. The Notice also provides contact information for Counsel, as well as the postal address for the Court. *Id*. The notice program proposed in connection with the Settlement and the form and content of the Notice and Proof of Claim therefore satisfy the requirements of Rule 23. *Accord Schneider v. Chipotle Mexican Grill, Inc.*, No. 16-cv-02200-HSG, 2019 WL 1512265, at *5-6 (N.D. Cal. Apr. 8, 2019). Courts routinely find that comparable notice procedures meet the requirements of due process and Rule 23, including that which the Court approved in connection with the class notice plan. *See id.*; *see In re Toys R Us-Delaware, Inc.-(FACTA) Litig.*, 295 F.R.D. 438, 449 (C.D. Cal. 2014). Accordingly, in granting preliminary approval of the Settlement, Plaintiffs similarly request that the Court approve the proposed form and method of giving notice to the Class.

### F. The Plan to Allocate Settlement Funds Should Be Preliminarily Approved

The plan to allocate the Settlement funds also warrants preliminary approval as it establishes the manner in which each participating Class Member may receive reimbursement. Claims will be computed using the method described in the Settlement. Stip. § III.E. Specifically, each Settlement Class Member is eligible to obtain $2 back on each qualifying purchase and may submit a claim for up to five qualifying purchases ($10) without any documentation. Further, each Settlement Class Member can obtain up to $20 for ten qualifying purchases with proof of payment, subject to a 15-claim ($30) cap per household. The Plan complies with the requirements of case law governing the approval of such allocation, as it has a reasonable and rational basis for distribution and provides any consumer who had purchased a Food Product from Chipotle during the Class

Period with reimbursement even without a receipt.

Courts have approved similar settlement terms in class actions alleging consumer deception. For instance, in *In re Aurora Dairy Corp. Organic Milk Marketing & Sales Practices Litigation*, No. 4:08-md-01907 (E.D. Mo. 2013), the Eastern District of Missouri granted final approval of a class action settlement in which the plaintiff brought causes of action under various state consumer protection statutes and for breach of warranty based on alleged misrepresentation of the manner in which the dairy cows used in the defendant's production process were raised and fed. *See id.*, Feb. 26, 2013 (Dkt. 356). The approved settlement certified a nationwide class of all purchasers of the product prior to September 1, 2012, providing class members with settlement value amounting to $7.5 million in rebates ($10 for those consumers lacking proof of purchase). *Id.*

In *In re Nutella Marketing & Sales Practices Litigation*, No. 3:11-cv-01086 (D.N.J. 2012), the plaintiffs there brought a class action for violation of state consumer protection statutes and breach of warranty alleging that television and print advertisements for the chocolate-hazelnut spread Nutella® were false and misleading by suggesting that the product is nutritious and an appropriate part of a balanced breakfast. *See id.*, July 30, 2012 (Dkt. 104); Feb. 3, 2012 (Dkt. 67). The settlement terms that were granted final approval by the District of New Jersey included certification of a nationwide class of Nutella® purchases over a four-year period (slightly shorter for a California subclass also certified) and a total value of $6.95 million in cash refunds ($4 per jar up to $20 per household). *See id.*

Pursuant to Court approval, the Settlement provides that if any funds remain in the Cash Award Fund by reason of uncashed distribution checks after 120 days of its mailing, such funds will be used to pay any additional settlement administration fees, costs, and expenses. Stip. § III.F. Any remaining balance will then be donated to a *cy pres* recipient jointly agreed upon and requested by the parties. *Id.*

**G. <u>The Intended Request for Attorneys' Fees and Expenses</u>**

Counsel intends to request an attorney fee award not to exceed 30% of the Settlement Amount ($1,950,000), plus out-of-pocket expenses up to $650,000, respectfully suggesting that both amounts are reasonable.

To provide the Court with more precise information about their hours and lodestar, Counsel carefully reviewed their time records. As of August 31, 2019, Counsel had devoted 4930.2 hours to litigating this Action, for a lodestar of $3,422,756.50. *See* King Decl., Ex. 5. Counsel's request for a fee of $1,950,000 therefore represents a *deflator* of 0.57 on their current lodestar. *See Smith v. CRST Van Expedited, Inc.*, No. 10-CV-1116-IEG (WMC), 2013 WL 163293, at *5 (S.D. Cal. Jan. 14, 2013) ("Under the percentage method, California has recognized that most fee awards based on either a lodestar or percentage calculation are 33 percent.") (citing *In re Consumer Privacy Cases*, 175 Cal. App. 4th 545, 556 n. 13 (2009)); *McDonald v. CP OpCo, LLC*, No. 17-cv-04915-HSG, 2019 WL 2088421 (N.D. Cal. May 13, 2019) (finding "noteworthy that the requested fees are lower than the lodestar").

The types of expenses that Counsel seek reimbursement for are necessarily incurred in litigation and routinely charged to clients billed by the hour. These expenses include, among others, court fees, service of process, experts and consultant fees, mediation costs, online legal and factual research, travel costs, reproduction costs, and messenger, courier and overnight mail expenses. *See* King Decl., Ex. 5.[7] These expenses were critical to Counsel's success in not only obtaining class certification, but in achieving this Settlement.

Counsel's lodestar will undoubtedly increase (increasing the deflator), as will Counsel's expenses, as the settlement process progresses, including time they spend attending the preliminary approval hearing and, if the Court grants preliminary approval, as they oversee the Claims Administrator's work, respond to class member inquiries about the case, prepare the motion for final approval of the settlement, and attend the Final Approval Hearing.

**H. <u>The Proposed Claims Administrator</u>**

In connection with this Motion, Plaintiffs also request that the Court authorize the retention of Angeion Group ("Angeion") as Claims Administrator for the Settlement. Angeion, which has not served as administrator in any of Counsel's class action settlements over the prior two years, has extensive experience and is a nationally recognized notice and claims administration firm. *See*

[7] Counsel's expenses do not include the costs associated with notice administration by Court-approved administrator KCC Class Action Services. *See id.*

King Decl., Ex. 6.

Before selecting Angeion as the Claims Administrator for this Action, Counsel solicited bids from a total of five potential settlement administrators and engaged in further negotiations for the benefit of the proposed Class. Counsel, then in consultation with Defendant, carefully considered each bid, evaluating each administrator's assumptions, experience, and pricing. Angeion offered reasonable pricing, extensive experience in class actions, and a cost-effective publication notice program. *Id.*

Angeion has estimated that it will cost approximately $600,000 to fully administer the Settlement in this Action. *Id.* The amount, which will come out of the Settlement fund, is reasonable, representing approximately 9.2% of the total Settlement.

**I. <u>Past Distributions</u>**

Counsel's recent settlement in *Careathers v. Red Bull North America, Inc.*, No. 1:13-CV-0369 (KPF) (S.D.N.Y.), provides a useful comparison to this Settlement.

| *Careathers v. Red Bull North America, Inc.*,<br>No. 1:13-CV-0369 (KPF) (S.D.N.Y.) | |
|---|---|
| **Settlement Fund** | $13 million |
| **Number of Class Members** | Unknown (millions of class members) |
| **Number of Class Members Notice Was Sent** | None |
| **Methods of Notice** | Publication Notice (print and internet campaign); Settlement Website; Telephone Support |
| **Claim Forms Submitted (Number and %)** | 2.3 million (unknown %) |
| **Amounts Distributed to Cy Pres Recipients** | $475,611.13 total, equally to:<br>• Children's Hospital of Philadelphia<br>• Stanford Health Care/ValleyCare Charitable Foundation<br>• Citymeals on Wheels, New York, NY<br>• Joe DiMaggio's Children's Hospital Foundation, Hollywood, FL<br>• Share Our Strength, Washington, DC |
| **Administrative Costs** | $2.99 million |
| **Attorneys' Fees and Costs** | $3.5 million |

Though Counsel expect the claims rate in this case to be 1%-2% of the potential audience reach of 30,100,000, the rate may be higher given Defendant's brand recognition and the proposed Claims Administrator's notice plan. More likely, however, the claims rate will be depressed

because there will not be direct notice to the proposed Settlement Class. *See, e.g.*, *Toys R Us*, 295 F.R.D. at 468 n. 134 (citing authority that claim rates in consumer litigation generally range from two to 20 percent, but when direct notice is not possible for the entire class, the claim rate may be depressed); *Spann*, 314 F.R.D. at 325 (noting varying claims rate due to lack of direct notice to approximately half the settlement class).[8]

## V. PROPOSED SCHEDULE OF EVENTS AND FINAL APPROVAL PROCEEDINGS

In connection with preliminary approval of the Settlement, the Court must also set dates for certain events. The parties suggest a schedule based on the following intervals:

| Event | Proposed Time for Compliance |
|---|---|
| Deadline for the Claims Administrator to publish Newspaper Notice in the *East Bay Times*, notice in *People* Magazine, and Internet Media Publication Notice. | Not later than sixty (60) calendar days following entry of the Preliminary Approval Order (*see* Preliminary Approval Order, ¶ 14). |
| Deadline for Class Members to submit Claim Forms and proof of purchase, if applicable. | Postmarked or submitted electronically no later than one hundred and twenty (120) calendar days after Preliminary Approval (*see* Preliminary Approval Order, ¶ 14). |
| Deadline to submit opening briefs and supporting documents for motion for attorneys' fees and incentive awards | Not later than 35 days before the deadline to object, noticed for the same date as Final Approval Hearing (see Preliminary Approval Order, ¶ 14). |
| Deadline for Class Members to submit a Request for Exclusion, if desired. | Postmarked no later than one hundred and twenty (120) calendar days after Preliminary Approval (*see* Preliminary Approval Order, ¶ __). |
| Deadline for objectors to either deliver written objections by hand or postmarked/sent by First Class Mail. | Postmarked no later than one hundred and twenty (120) calendar days after Preliminary Approval (*see* Preliminary Approval Order, ¶ 14). |
| Deadline to submit opening briefs and supporting documents in favor of Settlement | Not later than sixty (60) calendar days prior to date of Final Approval Hearing (*see* Preliminary Approval Order, ¶ 14). |
| Deadline to submit responses to motion for final approval and for attorneys' fees and incentive awards | Not later than twenty-five (25) calendar days prior to date of Final Approval Hearing (*see* Preliminary Approval Order, ¶ 14). |
| Deadline to submit replies to any responses to motion for final approval and for an award of attorneys' fees and expenses. | Not later than fourteen (14) calendar days prior to date of Final Approval Hearing (*see* Preliminary Approval Order, ¶ 14). |

[8] *See also* Shannon Wheatman and Tiffaney Janowicz, "What We've Noticed: Estimating Claims – What Every Attorney Should Know." Rust Consulting (Feb. 2015), at https://www.rustconsulting.com/Portals/0/Insights/Estimating%20Claims_RustKinsella_WWN.pdf (last visited July 18, 2019) (noting 0-2% claims rate for consumer claims filing where only publication notice is provided).

| Event | Proposed Time for Compliance |
|---|---|
| Final Approval Hearing | At least one hundred (180) days after the Court's signing of the Preliminary Approval Order (*see* Preliminary Approval Order, ¶ 14). |

## VI. CONCLUSION

For the reasons discussed herein, Plaintiffs respectfully request the Court grant leave to file the amended complaint, to modify the class definition, and for preliminary approval of the proposed Settlement.

Respectfully submitted,

**KAPLAN FOX & KILSHEIMER LLP**

DATED: September 11, 2019

By: */s/ Laurence D. King*
Laurence D. King

Matthew B. George
Mario M. Choi
350 Sansome Street, Suite 400
San Francisco, CA 94104
Telephone: 415-772-4700
Facsimile: 415-772-4707
*lking@kaplanfox.com*
*mgeorge@kaplanfox.com*
*mchoi@kaplanfox.com*

**KAPLAN FOX & KILSHEIMER LLP**
Frederic S. Fox (*pro hac vice*)
Donald R. Hall (*pro hac vice*)
850 Third Avenue, 14th Floor
New York, NY 10022
Telephone: 212-687-1980
Facsimile: 212-687-7714
*ffox@kaplanfox.com*
*dhall@kaplanfox.com*

**KOBRE & KIM LLP**
Hartley M. K. West
150 California Street, 19th Floor
San Francisco, CA 94111
Telephone: 415-582-4781
*hartley.west@kobrekim.com*

**KOBRE & KIM LLP**
Matthew I. Menchel (*pro hac vice*)
201 South Biscayne Boulevard, Suite 1900
Miami, FL 33131
Telephone: 305-967-6108
*matthew.menchel@kobrekim.com*

*Counsel for Plaintiffs and the Classes*