# Exhibit 6

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARTIN SCHNEIDER, SARAH DEIGERT, THERESA GAMAGE, and NADIA PARIKKA, Individually and on Behalf of All Others Similarly Situated,<br><br>*Plaintiffs*,<br><br>v.<br><br>CHIPOTLE MEXICAN GRILL, INC., a Delaware Corporation,<br><br>*Defendant*. | Case No. 4:16-cv-02200-HSG (KAW)<br><br>**DECLARATION OF STEVEN WEISBROT OF ANGEION GROUP, LLC IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT** |

I, Steven Weisbrot, Esq., declare under penalty of perjury as follows:

1. I am a partner at the class action notice and settlement administration firm Angeion Group, LLC ("Angeion"). I am fully familiar with the facts contained herein based upon my personal knowledge.

2. I have been responsible in whole or in part for the design and implementation of hundreds of court-approved notice and administration programs including some of the largest and most complex notice plans in recent history. I have taught numerous accredited Continuing Legal Education courses on the Ethics of Legal Notification in Class Action Settlements, using Digital Media in Due Process Notice Programs, as well as Claims Administration, generally. I am the author of multiple articles on Class Action Notice, Claims Administration, and Notice Design in publications such as Bloomberg, BNA Class Action Litigation Report, Law360, the ABA Class Action and Derivative Section Newsletter, and I am a frequent speaker on notice issues at conferences throughout the United States and internationally.

1

3. I was certified as a professional in digital media sales by the Interactive Advertising Bureau ("IAB") and I am co-author of the Digital Media section of Duke Law's *Guidelines and Best Practices—Implementing 2018 Amendments to Rule 23*.

4. I have given public comment and written testimony to the Judicial Conference Committee on Rules of Practice and Procedure on the role of direct mail, email, broadcast media, digital media and print publication, in effecting Due Process notice, and I have met with representatives of the Federal Judicial Center to discuss the 2018 amendments to Rule 23 and suggest an educational curriculum for the judiciary concerning notice procedures.

5. Prior to joining Angeion's executive team, I was employed as Director of Class Action services at Kurtzman Carson Consultants, an experienced notice and settlement administrator. Prior to my notice and claims administration experience, I was employed in private law practice.

6. My notice work comprises a wide range of settlements that include product defect, mass disasters, false advertising, employment, antitrust, tobacco, banking, firearm, insurance, and bankruptcy cases. I have been at the forefront of infusing digital media, as well as big data and advanced targeting, into class action notice programs. For example, the Honorable Sarah Vance stated in her December 31, 2014 Order in *In Re: Pool Products Distribution Market Antitrust Litigation*, MDL No. 2328:

> To make up for the lack of individual notice to the remainder of the class, the parties propose a print and web-based plan for publicizing notice. The Court welcomes the inclusion of web-based forms of communication in the plan…. The Court finds that the proposed method of notice satisfies the requirements of Rule 23(c)(2)(B) and due process.
>
> The direct emailing of notice to those potential class members for whom Hayward and Zodiac have a valid email address, along with publication of notice in print and on the web, is reasonably calculated to apprise class members of the settlement.

As detailed below, courts have repeatedly recognized my work in the design of class action notice programs:

(a) On February 24, 2017, The Honorable Ronald B. Rubin in *James Roy et al. v.*

2

1  *Titeflex Corporation et al.*, No. 384003V (Md. Cir. Ct.), noted when granting preliminary approval
2  to the settlement:

> What is impressive to me about this settlement is in addition to all the usual recitation of road racing litanies is that there is going to be a) public notice of a real nature and b) about a matter concerning not just money but public safety and then folks will have the knowledge to decide for themselves whether to take steps to protect themselves or not. And that's probably the best thing a government can do is to arm their citizens with knowledge and then the citizens can make a decision. To me that is a key piece of this deal. ***I think the notice provisions are exquisite.*** (Emphasis added).

(b)  Likewise, on July 21, 2017, The Honorable John A. Ross in *In Re Ashley Madison Customer Data Security Breach Litigation*, MDL No. 2669 (E.D. Mo.), stated in the Court's Order granting preliminary approval of the settlement:

> The Court further finds that the method of disseminating Notice, as set forth in the Motion, the Declaration of Steven Weisbrot, Esq. on Adequacy of Notice Program, dated July 13, 2017, and the Parties' Stipulation—including an extensive and targeted publication campaign composed of both consumer magazine publications in People and Sports Illustrated, as well as serving 11,484,000 highly targeted digital banner ads to reach the prospective class members that will deliver approximately 75.3% reach with an average frequency of 3.04 —***is the best method of notice practicable under the circumstances and satisfies all requirements provided in Rule 23(c)(2)(B) and all Constitutional requirements including those of due process***. (Emphasis added).
>
> The Court further finds that the Notice fully satisfies Rule 23 of the Federal Rules of Civil Procedure and the requirements of due process; provided, that the Parties, by agreement, may revise the Notice, the Claim Form, and other exhibits to the Stipulation, in ways that are not material or ways that are appropriate to update those documents for purposes of accuracy.

(c)  In the *In Re Chrysler-Dodge-Jeep EcoDiesel Marketing, Sales Practices, and Products Liability Litigation*, Case No. 17-md-02777-EMC (N.D. Cal.), in the Court's February 11, 2019 Order, the Honorable Edward M. Chen ruled:

3

> [In addition] the Court finds that the language of the class notices (short and long-form) is appropriate and that the means of notice – which includes mail notice, electronic notice, publication notice, and social media "marketing" – is the "best notice . . . practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B); see also Proc. Guidance for Class Action Sett. ¶¶ 3-5, 9 (addressing class notice, opt-outs, and objections). The Court notes that the means of notice has changed somewhat, as explained in the Supplemental Weisbrot Declaration filed on February 8, 2019, so that notice will be more targeted and effective. See generally Docket No. 525 (Supp. Weisbrot Decl.) (addressing, inter alia, press release to be distributed via national newswire service, digital and social media marketing designed to enhance notice, and "reminder" first-class mail notice when AEM becomes available).

(d) On June 26, 2018, in his Order granting preliminary approval of the settlement in *Mayhew v. KAS Direct, LLC, et al.*, Case No. 16-cv-6981 (VB) (S.D.N.Y.), The Honorable Vincent J. Briccetti ruled:

> In connection with their motion, plaintiffs provide the declaration of Steven Weisbrot, Esq., a principal at the firm Angeion Group, LLC, which will serve as the notice and settlement administrator in this case. (Doc. #101, Ex. F: Weisbrot Decl.) According to Mr. Weisbrot, he has been responsible for the design and implementation of hundreds of class action administration plans, has taught courses on class action claims administration, and has given testimony to the Judicial Conference Committee on Rules of Practice and Procedure on the role of direct mail, email, and digital media in due process notice. Mr. Weisbrot states that the internet banner advertisement campaign will be responsive to search terms relevant to "baby wipes, baby products, baby care products, detergents, sanitizers, baby lotion, [and] diapers," and will target users who are currently browsing or recently browsed categories "such as parenting, toddlers, baby care, [and] organic products." (Weisbrot Decl. ¶ 18). According to Mr. Weisbrot, the internet banner advertising campaign will reach seventy percent of the proposed class members at least three times each. (Id. ¶ 9). Accordingly, the Court approves of the manner of notice proposed by the parties as it is reasonable and the best practicable option for confirming the class members receive notice.

7. By way of background, Angeion is an experienced class action notice and claims administration company formed by a team of executives that have had extensive tenures at five

4

other nationally recognized claims administration companies. Collectively, the management team at Angeion has overseen more than 2,000 class action settlements and distributed over $10 billion to class members. The executive profiles as well as the company overview are available at http://www.angeiongroup.com/our_team.htm.

8. This declaration will describe the notice program that we suggest using in this matter, including the considerations that informed the development of the plan and why it will provide Due Process of Law to the Class. In my professional opinion, the Notice Plan described herein is the best practicable notice under the circumstances and fulfills all due process requirements.

## SUMMARY OF THE NOTICE PROGRAM

9. The Notice Program is the best notice that is practicable under the circumstances, fully comports with due process, Fed. R. Civ. P. 23, and the Northern District's Procedural Guidance for Class Action Settlements. The Notice Program uses state of the art internet advertising coupled with print publication to reach Class Members. The Notice Program also includes an informational website and toll-free telephone line where Class Members can learn more about their rights and responsibilities in the litigation. In short, the Notice Program is the best notice that is practicable under the circumstances and exceeds many notice campaigns routinely approved in other, similar settlements.

10. The comprehensive media notice program is designed to deliver an approximate 70.69% reach with an average frequency of 3.0 times. What this means in practice, is that 70.69% of our Target Audience (discussed in greater detail below) will see an advertisement concerning the instant Settlement, on average 3.0 times each.

11. The Federal Judicial Center states that a publication notice plan that reaches 70% of class members is one that reaches a "high percentage" and is within the "norm". Barbara J. Rothstein & Thomas E. Willging, Federal Judicial Center, "Managing Class Action Litigation: A Pocket Guide or Judges", at 27 (3d Ed. 2010).

## CLASS DEFINITION

12. The "Settlement Class" here is defined as follows: All persons in the United States who purchased Chipotle's Food Products in its restaurants during the Class Period (April 25, 2015 to June 30, 2016, inclusive). Excluded from the Settlement Class are all persons who validly opt out of the Settlement in a timely manner; governmental entities; counsel of record (and their respective law firms) for the Parties; Defendant and any of its parents, affiliates, subsidiaries, independent service providers and all of its respective employees, officers, and directors; the presiding judge in the Action or judicial officer presiding over the matter, and all of their immediate families and judicial staff; and any natural person or entity that entered into a release with Defendant prior to the Effective Date concerning the Food Products.

## MEDIA NOTICE TARGET AUDIENCE

13. This matter contemplates a robust digital media campaign to reach Settlement Class Members. The Settlement Class as defined in the Class Definition section, *supra*, in paragraph 12, was used as the starting point to create the media notice program. Specifically, to create the media notice program and verify its effectiveness, our media team analyzed data from 2019 comSCORE//GfK MRI Media + Fusion, which was used to profile the class and arrive at the Target Audience definition. Specifically, the following target definition was used to profile Class Members and create an appropriate Target Audience:

- Fast Food & Drive-In Restaurants Total Restaurants Last 6 Months [Chipotle Mexican Grill]

14. Based on the target definition, the potential audience size is estimated at 30,100,000, which is intentionally overinclusive and, based on objective syndicated data, will allow the parties to report the reach and frequency to the court, with the confidence that the reach within the Target Audience and the number of exposure opportunities complies with due process and exceeds the Federal Judicial Center's threshold as to reasonableness in notification programs.

15. Understanding the socio-economic characteristics, interests and practices of a target group aids in the proper selection of media to reach that target. Here, the Target Audience has the following characteristics:

- Adults 18-54 with an average age of 39

- 50.91% are married
- 56.88% have a college degree
- 67.78% live in households with total income above $75K
- 78.29% are employed, with most working full time (63.78%)
- 51.96% are female

16. To identify the best vehicles to deliver messaging to the Target Audience, we reviewed the media quintiles, which measure the degree to which an audience uses media relative to the general population. Here, the objective, syndicated data clearly shows that members of our Target Audience are "heavy" internet users, utilizing the internet approximately 25 hours per week compared to the national average of 20 hours. The Target Audience also reads an average of 5 magazine issues per month.

17. Given the strength of digital as well as our Target Audience's known heavy internet use, we recommended utilizing a robust internet advertising campaign combined with print publication in a widely read national consumer magazine to reach Class Members. This media schedule will allow us to deliver an effective reach level for notice messaging while maximizing efficiencies.

## ONLINE NOTICE

18. A programmatic partner is recommended for online media. Through this partnership, we will be able to focus solely on the reaching the prototypical individual Class Member, rather than allocating resources to determine which websites would be most appropriate based on a demographic profile. In short, we rely on advanced targeting, machine learning, and a known and verifiable Target Audience profile to ensure we are reaching members of our Target Audience online. In fact, purchasing display and mobile inventory programmatically provides the highest reach, allows for multiple advanced targeting layers, and offers the most cost-efficient rates to reach potential Class Members. Specifically, multiple targeting layers will be implemented to help ensure delivery to the most appropriate users, including the use of search targeting, category contextual targeting, keyword contextual targeting, and site retargeting. Inventory will run on desktop and mobile devices to reach the most qualified audience where they surf, shop and play. Search terms will be relevant to *Chipotle*. Moreover, targeting users who are currently browsing or have recently

browsed content in categories such as fast food will also help qualify impressions to ensure messaging is served to the most relevant audience. Where available, purchase data will also be utilized to further qualify impressions.

19. The internet banner notice portion of the Notice Program will be implemented using a 60-day desktop and mobile campaign, utilizing standard IAB sizes (160x600, 300x250, 728x90, 300x600, 320x50 and 300x50). A 3x frequency cap will be imposed to maximize reach. The banner notice portion is designed to result in serving approximately 59,598,000 impressions.

20. To combat the possibility of non-human viewership of the digital advertisements and to verify effective unique placements, Angeion utilizes Integral Ad Science ("IAS"), the leading ad verification company to prevent fraudulent activity[1]. IAS has received the Media Rating Council "MRC"[2] accreditation for Sophisticated Invalid Traffic (SIVT) detection for desktop and mobile web traffic.

21. To track campaign success, we will implement conversion pixels throughout the case filing website to better understand audience behavior and identify those members of the Target Audience who are most likely to convert. The programmatic algorithm will change based on success and failure to generate conversions throughout the process. Successful conversion on the Claim Submission button will be the primary goal, driving optimizations.

## PUBLICATION NOTICE

22. To identify the best print vehicle for delivering notice to the Target Audience, objective syndicated data (see paragraph 13 *supra*) was used to analyze and filter publications to determine the titles with the highest reach against our Target Audience. *People* was chosen as the best title for

---

[1] Integral Ad Science (IAS) is a global technology and data company that builds verification, optimization, and analytics solutions to empower the advertising industry to effectively influence consumers everywhere, on every device. They solve the most pressing problems for brands, agencies, publishers, and technology companies by verifying that every impression has the opportunity to be effective, optimizing towards opportunities to consistently improve results, and analyzing digital's impact on consumer actions. Built on data science and engineering, IAS is headquartered in New York, with global operations in ten countries.

[2] The Media Rating Council was established in the early 1960's at the behest of the U.S. Congress. The objective or purpose to be promoted or carried on by Media Rating Council is: To secure for the media industry and related users audience measurement services that are valid, reliable and effective. To evolve and determine minimum disclosure and ethical criteria for media audience measurement services. To provide and administer an audit system designed to inform users as to whether such audience measurements are conducted in conformance with the criteria and procedures developed.

this Notice Program due it its strong reach towards the Target Audience. One 1/2-page black and white insertion is recommended. The below chart details the magazine circulation in the general public and within our Target Audience.

| Publication | Circulation | Target Audience |
|---|---|---|
| People | 3,510,533 | 4,153,000 |

23. Additionally, in order to satisfy the notice requirements of the California Consumer Legal Remedies Act ("CLRA"), the notice program will utilize four ¼ page ads in the *East Bay Times*. These ads will feature notice of the settlement and will run for four consecutive weeks.

## RESPONSE MECHANISMS

24. The Notice Program will also implement the creation of a case-specific website, where Class Members can easily view general information about this class action Settlement, review relevant Court documents, and view important dates and deadlines pertinent to the Settlement. The website will be designed to be user-friendly and make it easy for Class Members to find information about the case or file a claim directly on the site. The website will also have a "Contact Us" page whereby Class Members can send an email with any additional questions to a dedicated email address.

25. A toll-free hotline devoted to this case will be implemented to further apprise Class Members of the rights and options in the Settlement. The toll-free hotline will utilize an interactive voice response ("IVR") system to provide Class Members with responses to frequently asked questions and provide essential information regarding the Settlement. This hotline will be accessible 24 hours a day, 7 days a week.

## REACH AND FREQUENCY

26. The Notice Program incorporates advanced internet notice coupled with print publication in a leading consumer magazine to provide notice to Class Members. This declaration describes the reach and frequency evidence which courts systemically rely upon in reviewing class action publication notice programs for adequacy. The reach percentage and the number of exposure opportunities meet or exceed the guidelines as set forth in the Federal Judicial Center's *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide*.

27. Specifically, the Notice Program is designed to deliver a 70.69% reach with an average frequency of 3.00 times each. The *East Bay Times* publications, informational website and toll-free hotline are not calculated in the reach percentage but will nonetheless aid in informing the Class Members of their rights and options under the settlement.

28. It is my opinion that the Notice Program is fully compliant with Rule 23 of the Federal Rules of Civil Procedure, provides Due Process of Law, and is the best notice that is practicable under the circumstances.

**CONCLUSION**

29. The Notice Program outlined above includes a media notice campaign consisting of state-of-the-art digital banner ads in conjunction with print publication to provide proper notice to Class Members.

30. In my opinion, the Notice Plan will provide full and proper notice to Settlement Class Members before the claims, opt-out, and objection deadlines. Moreover, it is my opinion that Notice Program is the best notice that is practicable under the circumstances, fully comports with due process, Fed. R. Civ. P. 23, and the Northern District's Procedural Guidance for Class Action Settlements. After the Notice Plan, Angeion will provide a final report verifying its effective implementation.

31. The anticipated administrative expenses of this matter based on the scope of the settlement administration contemplated in Angeion's cost estimate will be approximately $600,000.

I hereby declare under penalty of perjury that the foregoing is true and correct.

Dated: September 6, 2019

_____
STEVEN WEISBROT