UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARTIN SCHNEIDER, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>CHIPOTLE MEXICAN GRILL, INC.,<br><br>Defendant. | Case No. 16-cv-02200-HSG<br><br>**ORDER GRANTING PRELIMINARY APPROVAL OF SETTLEMENT**<br><br>Re: Dkt. No. 205 |

Pending before the Court is the unopposed motion for preliminary approval of class action settlement filed by Plaintiffs.[1] Dkt. No. 205. The parties have reached a settlement regarding Plaintiffs' claims and now seek the required court approval. For the reasons set forth below, the Court **GRANTS** Plaintiffs' motion for preliminary approval of class action settlement.

## I.  BACKGROUND

### A.  Factual Background

Plaintiffs bring this consumer class action against Defendant Chipotle Mexican Grill, Inc. alleging that Defendant's "non-GMO" claims about its food products were false and misleading. *See generally* Dkt. No. 1 ("Compl."). According to Plaintiffs, Chipotle consistently advertised its food products as "non-GMO" and "GMO free." *Id*. ¶¶ 31–40. However, these claims were purportedly false, because as alleged, the meat and dairy products "are all sourced from animals that are fed with a genetically engineered or GMO derived feed," and the soft drinks contain corn syrup, a GMO. *Id*. ¶¶ 41–43. Plaintiffs contend that had they known of the "true character and

---

[1] Proposed-intervenor Melissa Cruz filed a motion to intervene and opposition to Plaintiffs' motion for preliminary approval of class action settlement. Dkt. Nos. 199, 207. She later withdrew her motion and opposition on November 27, 2019. Dkt. No. 211.

quality of the ingredients," they would not have purchased, or would have paid less for, Chipotle's food products. *Id*. ¶ 49.

Based on those facts, the complaint asserts the following ten causes of action: (1) California's Consumer Legal Remedies Act, Cal. Civ. Code § 1750 *et seq*.; (2) California's False Advertising Law, Cal. Bus. & Prof. Code § 17500 *et seq*.; (3) California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq*.; (4) Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201 *et seq*.; (5) Maryland's Consumer Protection Act, MD. Code Ann. § 13-101 *et seq*.; (6) New York's Consumer Protection Statute, N.Y. Gen. Bus. Law § 349; (7) New York's False Advertising Law, N.Y. Gen. Bus. Law § 350 *et seq*.; (8) unjust enrichment; (9) misrepresentation; and (10) declaratory relief. *Id*. ¶¶ 69–146.

## B. Procedural History

Plaintiffs Martin Schneider, Sarah Deigert, Theresa Gamage, Nadia Parikka, Laurie Reese, and Tiffanie Zangwill initially filed this action on April 22, 2016. [2] *See generally* Compl. Defendant moved to dismiss the complaint, and the Court granted the motion in part and denied it in part on November 4, 2016. Dkt. No. 36. The Court granted Defendant's motion to dismiss Plaintiffs' claims for injunctive relief, but otherwise denied the motion. *Id*. Plaintiffs filed a motion seeking reconsideration of the Court's order dismissing injunctive relief, Dkt. No. 87, which the Court granted, Dkt. No. 136. The Court amended its previous ruling and denied Defendant's motion to dismiss Plaintiffs' claims for injunctive relief. Dkt. No. 136.

On November 17, 2017, Chipotle filed a motion for summary judgment and Plaintiffs filed a motion for class certification. Dkt. Nos. 92, 95. The parties also filed their *Daubert* motions. Dkt. Nos. 100, 101, 117. On September 29, 2018, the Court denied Defendant's motion for summary judgment, granted Plaintiffs' motion for class certification, and denied both parties' *Daubert* motions. Dkt. No. 136. The Court certified the following three classes of consumers who purchased Defendant's products between April 27, 2015 and June 30, 2016 (the "Class Period"):

---

[2] On July 7, 2017, Plaintiffs Laurie Reese (California) and Tiffanie Zangwill (Florida) dismissed their claims against Chipotle with prejudice. Dkt. No. 67.

> California: All persons in California who purchased Chipotle's Food Products containing meat and/or dairy ingredients during the Class Period.
>
> Maryland: All persons in Maryland who purchased Chipotle's Food Products containing meat and/or dairy ingredients during the Class Period.
>
> New York: All persons in New York who purchased Chipotle's Food Products containing meat and/or dairy ingredients during the Class Period.

*Id*. at 14, 30. The Court appointed Named Plaintiffs Schneider, Deigert, Gamage, and Parikka to represent the class and appointed their attorneys at Kaplan Fox as Class Counsel. *Id*. On October 15, 2018, Defendant filed a petition in the Court of Appeals for permission to appeal the Court's class certification order, and the petition was denied. Dkt. Nos. 137, 167.

Plaintiffs filed an administrative motion to approve the notice administrator, class notice plan, and schedule on January 9, 2019. Dkt. No. 150. Defendant opposed the motion and alleged that the notice plan was "too vague" and misrepresented the class definitions. Dkt. No. 151. Consistent with the Court's recommendation, and in an apparent effort to address Defendant's concerns, Plaintiffs moved to modify the class definitions. Dkt. No. 159. The Court granted in part and denied in part Plaintiffs' motion to modify the class definitions and certified the following classes:

> California: All persons in California who purchased Chipotle's Food Products containing meat and/or dairy ingredients in its restaurants during the Class Period.
>
> Maryland: All persons in Maryland who purchased Chipotle's Food Products containing meat and/or dairy ingredients in its restaurants during the Class Period.
>
> New York: All persons in New York who purchased Chipotle's Food Products containing meat and/or dairy ingredients in its restaurants during the Class Period.

Dkt. No. 164 at 4. The language "in its restaurants" was added to each class definition. *Id*. The Court also held that it did not need to add the standard language excluding various categories of people to the class definition itself. *Id*. at 2 n.1.

The Court then directed the parties to file either a joint notice plan or competing proposals if they could not agree on a notice plan. Dkt. No. 168. The parties filed their competing

3

1  proposals, and Plaintiffs filed an amended motion to approve notice administrator and class notice
2  plan. Dkt. No. 177. On April 8, 2019, the Court granted in part and denied in part the amended
3  administrative motion to approve notice administrator and class notice plan. Dkt. No. 180.
4  Specifically, the Court denied Plaintiffs' motion to provide direct email notice to the
5  approximately 550,000 individuals in California, Maryland, and New York who purchased food
6  from Chipotle in those states from online or app menus. *Id*. at 7. It also found Plaintiffs' proposal
7  to issue a press release unwarranted under Rule 23. *Id*. at 8.

Defendant filed a motion to decertify the class on April 25, 2019, briefing for which was completed on May 15, 2019. Dkt. Nos. 184, 191, 192. The parties participated in a second mediation session before the Honorable Jay C. Gandhi (Ret.) of JAMS on July 2, 2019.[3] Dkt. No. 146. They were able to reach an agreement in principle to settle the case on a classwide basis, and agreed to stay any pending dates, including the hearing on Defendant's motion to decertify the classes. *Id*. Plaintiffs moved for preliminary approval on September 11, 2019. Dkt. No. 205.

### C. Settlement Agreement

Following extensive formal discovery and with the assistance of a mediator, the parties entered into a settlement agreement on September 11, 2019. Dkt. No. 205-2 ("SA"). The key terms are as follows:

Class Definition: The Settlement Class is defined as:

> [A]ll persons in the United States who purchased Chipotle's Food Products in its restaurants during the Class Period.

SA § I.AA. Excluded from the Class are all persons who validly opt out of the Settlement in a timely manner; governmental entities; counsel of record for the parties; Defendant and any of its parents, affiliates, subsidiaries, independent service providers and all of its respective employees, officers, and directors; any Judge or judicial officer presiding over the matter, and all of their immediate families and judicial staff; and any natural person or entity that entered into a release with Defendant prior to the Effective Date concerning the Food Products. *Id.*

---

[3] The parties' first mediation session with Judge Gandhi was on January 29, 2019. Dkt. No. 205 at 5. The parties also participated in court-connected mediation on May 9, 2017. Dkt. No. 65.

Settlement Benefits: Defendant will make a $6,500,000 non-reversionary payment. *Id*. § I.EE. The settlement payment includes payments to Class Members, settlement administrative expenses estimated at around $400,000–$600,000, incentive awards, and any attorneys' fees and costs awards. *Id*. §§ III.D, III.G; Dkt. No. 205-12 at ¶ 31. Individual claims are capped at $2.00 each and subject to a pro rata decrease. Dkt. No. 205-3, Ex. A. Each class member may only submit five (5) valid claims without proof or purchase, and ten (10) valid claims with proof of purchase. *Id*. Each household is capped at fifteen (15) claims. *Id*.

*Cy Pres* Distribution: Settlement checks that are not cashed within 120 days of mailing will be void and those funds will be donated to Public Justice, a non-profit legal organization, and Public Counsel, a pro bono law firm (each to receive 50%). SA § III.F; Dkt. No. 218 at 1–2.

Release: All Settlement Class Members will release:

> all claims, demands, actions, and causes of action of any kind or nature whatsoever, whether at law or equity, known or unknown, direct, indirect, or consequential, liquidated or unliquidated, foreseen or unforeseen, developed or undeveloped, arising under common law, regulatory law, statutory law, or otherwise, whether based on federal, state or local law, statute, ordinance, regulation, code, contract, common law, or any other source, or any claim that Plaintiffs or Settlement Class Members ever had, now have, may have, or hereafter can, shall or may ever have against the Discharged Parties in any other court, tribunal, arbitration panel, commission, agency, or before any governmental and/or administrative body, or any other adjudicatory body, on the basis of, connected with, arising from, or in any way whatsoever relating to the purchase of the Food Products marketed as non-GMO during the Class Period and the claims alleged in the operative complaint in the Action, and, more particularly, but without in any way limiting the generality of the foregoing, arising from, directly or indirectly, or in any way whatsoever pertaining or relating to the claims alleged in the complaint in the Action including, but not limited to, communications, disclosures, nondisclosures, representations, statements, claims, omissions, messaging, design, testing, marketing, labeling, advertising, promotion, packaging, displays, brochures, studies, manufacture, distribution, operation, performance, functionality, notification, providing, offering, dissemination, replacement, sale and/or resale by the Discharged Parties of the Food Products, any claims for rescission, restitution or unjust enrichment for all damages of any kind, violations of any state's deceptive, unlawful and/or unfair business and/or trade practices, false, misleading or fraudulent advertising, consumer fraud and/or consumer protection statutes, any violation of the Uniform Commercial Code, any breaches of express, implied and/or any other warranties, any similar federal, state or local statutes, codes, damages, costs, expenses, extracontractual damages, compensatory damages, exemplary damages, special damages, penalties, punitive damages

5

and/or damage multipliers, disgorgement, declaratory relief, expenses, interest, and/or attorneys' fees and costs against the Discharged Parties pertaining to or relating to the claims alleged in the operative complaint in the Action, notwithstanding that Plaintiffs and the Settlement Class acknowledge that they may hereafter discover facts in addition to or different from those that they now know or believe to be true concerning the subject matter of the Action and/or the Released Claims herein.

SA § III.C.1. The "Discharged Parties" are defined as:

> Defendant and all its present and former parent companies, subsidiaries, shareholders, officers, directors, employees, agents, servants, registered representatives, attorneys, insurers, affiliates, successors, personal representatives, heirs and assigns, retailers, suppliers, distributors, endorsers, consultants, and any and all other entities or persons upstream and downstream in the production/distribution channels

*Id*.

In addition, Defendant agrees to release Class Representatives, Settlement Class Members, and Class Counsel from:

> all claims, demands, actions, and causes of action of any kind or nature whatsoever, whether at law or equity, known or unknown, direct, indirect, or consequential, liquidated or unliquidated, foreseen or unforeseen, developed or undeveloped, arising under common law, regulatory law, statutory law, or otherwise, whether based on federal, state or local law, statute, ordinance, regulation, code, contract, common law, or any other source, or any claim that Defendant ever had, now has, may have, or hereafter can, shall or may ever have against Class Representatives, Settlement Class Members, and Class Counsel in any other court, tribunal, arbitration panel, commission, agency, or before any governmental and/or administrative body, or any other adjudicatory body, on the basis of, connected with, arising from, or in any way whatsoever relating to the institution or prosecution of the Action, notwithstanding that Defendant acknowledges that it may hereafter discover facts in addition to or different from those that it now knows or believes to be true concerning the subject matter of the Action and/or the Released Claims herein.

*Id*. § IIII.C.2

Class Notice: A third-party settlement administrator will implement a digital media campaign. SA § IV.C; Dkt. No. 205-12 at ¶¶ 13–21. The third-party settlement administrator will also provide for publication notice in *People* magazine and the *East Bay Times* newspaper. SA § IV.A; Dkt. No. 205-12 at ¶¶ 22–23. The notice will include: the nature of the action, a summary of the settlement terms, and instructions on how to object to and opt out of the settlement,

6

including relevant deadlines. Dkt. No. 205-3, Ex. A; Dkt. No. 205-4, Ex. B.

<u>Opt-Out Procedure</u>: The deadline for a class member to submit a request for exclusion is 120 days after preliminary approval or no less than sixty (60) days after the Notice deadline. SA § I.T, I.U.

<u>Incentive Award</u>: The Named Plaintiffs will apply for incentive awards of no more than $5,000. *Id.* § III.G.2.

<u>Attorneys' Fees and Costs</u>: Class Counsel will file an application for attorneys' fees not to exceed one third of the settlement fund ($1,950,000), as well as costs. *Id.* § III.G.1.

## II. AMENDED COMPLAINT

As part of the settlement agreement, the parties agreed that Plaintiffs will file an amended complaint, redefining the class definition to be consistent with the Settlement Class. SA § II.F; Dkt. No. 205-8, Ex. 2 ("Amended Complaint" or "AC"). The Amended Complaint also removes the cause of action under Florida law, as the only Named Plaintiff who resided in Florida dismissed her claims.

Federal Rule of Civil Procedure 15(a)(2) permits a plaintiff to amend her pleading with the opposing party's written consent. "Where the parties have agreed to file an amended complaint as part of the class settlement, judges in this district have granted leave to amend, subject to the terms of settlement." *McCabe v. Six Continents Hotels, Inc.*, No. 12-CV-04818 NC, 2015 WL 3990915, at *4 (N.D. Cal. June 30, 2015); *see also Miller v. Ghirardeli Chocolate Co.,* 12–cv–04936 LB, 2014 WL 4978433, at *7 (N.D.Cal. Oct. 2, 2014) (granting leave to amend for settlement purposes, but voiding the amendment if no final settlement occurs). In determining whether to grant leave to amend, courts have considered whether any amendment will "materially change the scope of the certified classes." *Harris v. Vector Mktg. Corp.*, No. C-08-5198 EMC, 2011 WL 1627973, at *7 (N.D. Cal. Apr. 29, 2011).

The Court grants Plaintiffs' request for leave to file their Amended Complaint. In the event that the proposed settlement is not finally approved by the Court or in the event that the settlement becomes null and void by its own terms, the Amended Complaint will be dismissed.

### III. PROVISIONAL CLASS CERTIFICATION

The plaintiff bears the burden of showing by a preponderance of the evidence that class certification is appropriate under Federal Rule of Civil Procedure 23. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350–51 (2011). Class certification is a two-step process. First, a plaintiff must establish that each of the four requirements of Rule 23(a) is met: numerosity, commonality, typicality, and adequacy of representation. *Id.* at 349. Second, she must establish that at least one of the bases for certification under Rule 23(b) is met. Where, as here, a plaintiff seeks to certify a class under Rule 23(b)(3), she must show that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).[4]

"The criteria for class certification are applied differently in litigation classes and settlement classes." *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 556 (9th Cir. 2019) ("*Hyundai II*"). When deciding whether to certify a litigation class, a district court must consider manageability at trial. *Id*. However, this concern is not present in certifying a settlement class. *Id*. at 556–57. In deciding whether to certify a settlement class, a district court "must give heightened attention to the definition of the class or subclasses." *Id*. at 557 (citation omitted).

Because the parties' Settlement Class differs from the certified classes, the Court must determine whether provisional certification of the Settlement Class is appropriate. Here, the material difference is that the parties seek to certify a nationwide class, whereas the certified classes are purchasers living in the states in which Named Plaintiffs reside. The Court finds that its prior analysis under Rule 23(a) also applies to the Settlement Class, and thus incorporates its previous analysis as set forth in the order certifying the classes. *See* Dkt. No. 136 at 17–21. As for Rule 23(b), the significant inquiry is whether the Settlement Class, now a nationwide class, still satisfies the predominance requirement.

---

[4] Plaintiffs' motion asserts that they also seek certification of the Settlement Class under Rule 23(b)(2). *See* Dkt. No. 205 at 8. At the Court's direction, Plaintiffs submitted a supplemental brief clarifying that they seek certification only under Rule 23(b)(3). Dkt. No. 216 at 1.

8

### A. Rule 23(b)(3) Certification

To certify a class, a plaintiff must satisfy the two requirements of Rule 23(b)(3). First, "questions of law or fact common to class members [must] predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). And second, "a class action [must be] superior to other available methods for fairly and efficiently adjudicating the controversy." *Id*.

#### i. Predominance

The "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (citation and quotations omitted). The Supreme Court has defined an individualized question as one where "members of a proposed class will need to present evidence that varies from member to member." *Id.* (citation and quotations omitted). A common question, on the other hand, is one where "the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof." *Id.* (citation and quotations omitted).

The Court concludes that for purposes of settlement, common questions predominate here, because the Settlement Class Members were exposed to uniform representations concerning Chipotle's non-GMO claims and suffered the same injuries.[5] *See* Dkt. No. 205 at 8; Dkt. No. 136 at 23–24; *see also Hyundai II*, 926 F.3d at 559. Although the Class Members will need to rely upon individual evidence to some extent to calculate their individual damages, the "mere fact that there might be differences in damage calculations is not sufficient to defeat class certification." *Hyundai II*, 926 F.3d at 560 (quotations and citations omitted).

#### ii. Superiority

The superiority requirement tests whether "a class action is superior to other available

---

[5] Prior to the Ninth Circuit's en banc opinion in *Hyundai II*, district courts in California were required to conduct a "rigorous predominance analysis" to analyze whether variations in state consumer protection laws precluded class certification. *See In re Hyundai & Kia Fuel Econ. Litig*., 881 F.3d 679, 707 (9th Cir.) ("*Hyundai I*"), *on reh'g en banc*, 926 F.3d 539 (9th Cir. 2019). But the en banc opinion in *Hyundai II* held that district courts do not need "to address choice-of-law issues beyond those raised by objectors" before certifying a settlement class. *Hyundai II*, 926 F.3d at 561–62. Thus, the Court at this stage need not analyze whether any differences in state laws prevent provisional class certification.

9

methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The Court considers four non-exclusive factors: (1) the interest of each class member in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against the class; (3) the desirability of concentrating the litigation of the claims in the particular forum; and (4) the difficulties likely to be encountered in the management of a class action. *Id.*

The Court concludes that a class action enables the most efficient use of Court and attorney resources and reduces costs to the Class Members by allocating costs among them. Further, this forum is appropriate, and there are no obvious difficulties in managing this class action.

The Court finds that the predominance and superiority requirements of Rule 23(b)(3) are met.

### B. Class Representative and Class Counsel

Because the Court finds that Plaintiffs meet the commonality, typicality, and adequacy requirements of Rule 23(a), the Court appoints the Named Plaintiffs as class representatives. When a court certifies a class, it must also appoint class counsel. Fed. R. Civ. P. 23(c)(1)(B). Factors that courts must consider when making that decision include:

> (i) the work counsel has done in identifying or investigating potential claims in the action;
> (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;
> (iii) counsel's knowledge of the applicable law; and
> (iv) the resources that counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)(1)(A).

Counsel have investigated and litigated this case throughout its existence and have submitted declarations detailing their expertise in representing plaintiffs in class action suits, especially consumer class actions. *See* Dkt. No. 205-9, Ex. 3; Dkt. No. 205-10, Ex. 4. Accordingly, the Court appoints the law firms of Kaplan Fox and Kilsheimer LLP and Kobre & Kim LLP as Class Counsel.

## IV. PRELIMINARY SETTLEMENT APPROVAL

### A. Legal Standard

Federal Rule of Civil Procedure 23(e) provides that "[t]he claims, issues, or defenses of a certified class—or a class proposed to be certified for purposes of settlement—may be settled . . . only with the court's approval." Fed. R. Civ. P. 23(e). "The purpose of Rule 23(e) is to protect the unnamed members of the class from unjust or unfair settlements affecting their rights." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1100 (9th Cir. 2008). Accordingly, before a district court approves a class action settlement, it must conclude that the settlement is "fundamentally fair, adequate and reasonable." *In re Heritage Bond Litig.*, 546 F.3d 667, 674–75 (9th Cir. 2008).

Where the parties reach a class action settlement prior to class certification, district courts apply "'a higher standard of fairness' and 'a more probing inquiry than may normally be required under Rule 23(e).'" *Dennis v. Kellogg Co.*, 697 F.3d 858, 864 (9th Cir. 2012) (citation omitted). Such settlement agreements "must withstand an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing the court's approval as fair." *Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1048–49 (9th Cir. 2019) (quoting *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011)). A more "'exacting review' is warranted 'to ensure that class representatives and their counsel do not secure a disproportionate benefit at the expense of the unnamed plaintiffs who class counsel had a duty to represent.'" *Id.* (citations and quotations omitted).

Courts may preliminarily approve a settlement and notice plan to the class if the proposed settlement: (1) appears to be the product of serious, informed, non-collusive negotiations; (2) does not grant improper preferential treatment to class representatives or other segments of the class; (3) falls within the range of possible approval; and (4) has no obvious deficiencies. *In re Lenovo Adware Litig.*, No. 15-MD-02624-HSG, 2018 WL 6099948, at *7 (N.D. Cal. Nov. 21, 2018) (citation omitted). Courts lack the authority, however, to "delete, modify or substitute certain provisions. The settlement must stand or fall in its entirety." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).

11

### B. Analysis

Because the parties seek to certify a nationwide Settlement Class that is broader than the certified class, the Court applies the heightened standard in assessing whether to grant preliminary approval of the class settlement. *See Roes*, 944 F.3d at 1049.

#### i. Evidence of Conflicts and Signs of Collusion

The first factor the Court considers is whether there is evidence of collusion or other conflicts of interest. *See id*. The Ninth Circuit has directed district courts to look for "subtle signs of collusion," which include whether counsel will receive a disproportionate distribution of the settlement, whether the parties negotiate a "'clear sailing' arrangement (i.e., an arrangement where defendant will not object to a certain fee request by class counsel)," and whether the parties agree to a reverter that returns unclaimed funds to the defendant. *Id*.

As discussed above, the proposed settlement is non-reversionary with all unclaimed funds awarded to a *cy pres* recipient. SA §§ I.EE, III.F. However, the Settlement Agreement contains a clear sailing arrangement, which states that "Defendant shall not object to a [motion for attorneys' fees and costs] so long as the amount requested for attorneys' fees is less than or equal to [$1,950,000 USD], which is 30% of the value of the Settlement Fund, plus costs." *Id*. § III.G.1.

#### 1. Clear Sailing Provision

Clear sailing provisions are not prohibited, though they "'by [their] nature deprive[ ] the court of the advantages of the adversary process' in resolving fee determinations and are therefore disfavored." *Id.* at 1050 (quoting *In re Bluetooth*, 654 F.3d at 949) (alterations in original). The Ninth Circuit has noted that clear sailing arrangements are "important warning signs of collusion," because "'[t]he very existence of a clear sailing provision increases the likelihood that class counsel will have bargained away something of value to the class.'" *Id*. at 1051 (quoting *In re Bluetooth*, 654 F.3d at 948). Accordingly, when confronted with a clear sailing provision, the district court has a heightened duty to "scrutinize closely the relationship between attorneys' fees and benefit to the class, being careful to avoid awarding 'unreasonably high' fees simply because they are uncontested." *Id.* (citation and quotations omitted).

Here, counsel requests fees of $1,950,000 and costs of $650,000. Dkt. No. 205 at 19.

12

When deciding to award attorney's fees and costs, the Court has discretion in a common fund case to choose either (1) the lodestar method or (2) the percentage-of-the-fund. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002). Under the percentage-of-recovery method, twenty-five percent of a common fund is the benchmark for attorneys' fees award. *See*, *e.g.*, *In re Bluetooth Headset*, 654 F.3d at 942 ("[C]ourts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record of any 'special circumstances' justifying a departure."). Counsel asserts that they have performed a lodestar cross-check on the requested sum and represent that counsel spent 4,930.2 hours litigating this action, and incurred fees of $3,422,756.50, meaning that the requested fee is below the lodestar amount. Dkt. No. 205 at 20; Dkt. No. 205-11, Ex. 5.

The Court recognizes that Class Counsel obtained results for the prospective Class Members, as discussed below in Section IV(B)(iii). And Class Counsel did assume substantial risk in litigating this action on a contingency fee basis, and incurring costs without the guarantee of payment for its litigation efforts. Further, the agreement does not contemplate a disproportionate cash allocation between counsel and the class, as was the case in *Roes*. *See Roes*, 944 F.3d at 1051 ("Here, more of the available $2 million in settlement cash ultimately went to attorneys' fees ($950,000) than would be distributed to class members ($864,115)."). Even if the Court were to award 30% in attorneys' fees, the majority of the settlement cash will still be distributed to Class Members. The Court is cognizant of its obligations to review class fee awards with particular rigor, and at the final approval stage will carefully scrutinize the circumstances and determine what attorneys' fee awards is appropriate in this case. Accordingly, given that counsel will not receive a disproportionate amount of the settlement agreement and that the settlement is non-reversionary, the Court does not find that the clear sailing provision weighs against preliminary approval.

### 2. *Cy Pres* Distribution

The Court must also evaluate whether the parties' proposed *cy pres* recipients are appropriate. A *cy pres* award must qualify as "the next best distribution" to giving the funds to class members. *Dennis*, 697 F.3d at 865. "Not just any worthy recipient can qualify as an

13

appropriate *cy pres* beneficiary," and there must be a "'driving nexus between the plaintiff class and the *cy pres* beneficiaries.'" *Id.* (citation omitted). That is to say, a *cy pres* award must be "'guided by (1) the objectives of the underlying statute(s) and (2) the interests of the silent class members, and must not benefit a group too remote from the plaintiff class[.]'" *Id.* (citations omitted). A *cy pres* distribution is not appropriate if there is "'no reasonable certainty' that any class member would benefit from it." *Id*. (citation omitted).

Here, the parties have selected Public Justice, a "well-known 38-year old non-profit legal organization," and Public Counsel, the "Nation's Largest Pro Bono Law Firm," as their two *cy pres* recipients. Dkt. No. 218 at 1–2. Public Justice is based in Washington, D.C., and has an office in Oakland, California. *Id*. Its mission is to pursue "high impact lawsuits to combat social and economic injustice, protect the Earth's sustainability, and challenge predatory corporate conduct and government abuses." *Id*. at 1. Any *cy pres* funds will be designated to Public Justice's "Food Project," which focuses on "supporting a vision of animal agriculture that is regenerative, humane, and owned by independent farmers." *Id*. Public Counsel is based primarily in Los Angeles, California, and has a Consumer Rights and Economic Justice division that "assists with a wide variety of consumer matters," including consumer fraud and unfair business practices. *Id*. at 1–2 Counsel are not associated with Public Justice, though defense counsel is one of Public Counsel's seventy-five board members. *Id*. However, defense counsel does not receive compensation for her role as a board member, and she "will not dictate or influence how any potential *cy pres* funds at the Public Counsel will be disbursed." *Id*. at 2.

The Court preliminarily finds that the entities share the interests of the Class Members in preventing consumer fraud, in the context of mislabeling of food products. Accordingly, the Court preliminarily finds that there is a sufficient nexus between these two *cy pres* recipients and the Settlement Class.

### ii. Preferential Treatment

The Court next considers whether the settlement agreement provides preferential treatment to any class member. The Ninth Circuit has instructed that district courts must be "particularly vigilant" for signs that counsel have allowed the "self-interests" of "certain class members to

14

infect negotiations." *In re Bluetooth*, 654 F.3d at 947. For that reason, courts in this district have consistently stated that preliminary approval of a class action settlement is inappropriate where the proposed agreement "improperly grant[s] preferential treatment to class representatives." *Lenovo*, 2018 WL 6099948, at *8 (citation and quotations omitted).

Although the Settlement Agreement authorizes Named Plaintiffs to seek incentive awards of no more than $5,000 for their roles as Named Plaintiffs in this lawsuit, *see* SA § III.G, the Court will ultimately determine whether they are entitled to such an award and the reasonableness of the amount requested. Incentive awards "are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action." *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 958–59 (9th Cir. 2009). Plaintiffs must provide sufficient evidence to allow the Court to evaluate Plaintiffs' award "individually, using 'relevant factors includ[ing] the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . [and] the amount of time and effort the plaintiff expended in pursuing the litigation . . . .'" *Stanton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003) (citation omitted). The Court will consider the evidence presented at the final fairness hearing and evaluate the reasonableness of any incentive award request. Nevertheless, because incentive awards are not per se unreasonable, the Court finds that this factor weighs in favor of preliminary approval. *See Rodriguez*, 563 F.3d at 958 (finding that "[i]ncentive awards are fairly typical in class action cases" and "are discretionary" (emphasis omitted)).

### iii. Settlement within Range of Possible Approval

The third factor the Court considers is whether the settlement is within the range of possible approval. To evaluate whether the settlement amount is adequate, "courts primarily consider plaintiffs' expected recovery balanced against the value of the settlement offer." *Lenovo*, 2018 WL 6099948, at *8. This requires the Court to evaluate the strength of Plaintiffs' case.

Here, the total settlement amount constitutes approximately 7.4% of the "best-case" nationwide recovery. Dkt. No. 213 at ¶ 4. Plaintiffs' counsel estimates a claims submission rate of 1–2%, and a potential target audience of 30,100,000. Dkt. No. 205 at 21; *see* Dkt. No. 205-12 at ¶ 14. The maximum amount each Class Member can recover without any documentation of

purchase is $10. Dkt. No. 205 at 2. With documentation, the maximum amount a Class Member can recover is $20, subject to a $30 cap per household. *Id*. Plaintiffs acknowledge that there is substantial risk they would face in continuing to litigate this case, such as maintaining class treatment and prevailing at trial. Dkt. No. 205 at 12. The Court finds that the settlement amount, given these risks, weighs in favor of granting preliminary approval.

### iv. Obvious Deficiencies

The fourth and final factor that the Court considers is whether there are obvious deficiencies in the settlement agreement. The Court finds no obvious deficiencies, and therefore finds that this factor weighs in favor of preliminary approval.

\* \* \*

Having weighed the relevant factors, the Court preliminarily finds that the settlement agreement is fair, reasonable, and adequate, and **GRANTS** preliminary approval. The Court **DIRECTS** the parties to include both a joint proposed order and a joint proposed judgment when submitting their motion for final approval.

## V. PROPOSED CLASS NOTICE PLAN

For Rule 23(b)(3) class actions, "the court must direct notice to the class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Individual notice must be sent to all class members "whose names and addresses may be ascertained through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). "If the names and addresses of class members cannot be determined by reasonable efforts, notice by publication is sufficient to satisfy the requirements of the due process clause and Rule 23." *Jermyn v. Best Buy Stores, L.P.*, No. 08 CIV. 00214 CM, 2010 WL 5187746, at \*3 (S.D.N.Y. Dec. 6, 2010) (citing *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 317–18 (1950)). District courts have "broad power and discretion vested in them by [Rule 23]" in determining the contours of appropriate class notice. *See Reiter v. Sonotone Corp.*, 442 U.S. 330, 345 (1979). Direct notice is inappropriate when it is overly broad or overly inclusive. *Yeoman v. Ikea U.S. W., Inc.*, No. 11CV701 WQH BGS, 2013 WL 5944245, at \*5–6 (S.D. Cal. Nov. 5, 2013); *see also Jermyn*, 2010 WL 5187746,

16

at *3.

The Court notes that the notice plan does not provide direct notice. During the parties' briefing on the amended class notice plan, Defendant averred, and Plaintiffs did not dispute, that no list of identifiable class members exists. *See* Dkt. No. 172 at 2. And the Court held that direct notice to 550,000 online purchasers would be improper under Rule 23, as those online purchasers are defined by a characteristic that on its face does *not* establish membership in the certified (or settlement) class. Dkt. No. 180 at 4–6.

Given that direct notice appears to be infeasible, the third-party settlement administrator will implement a digital media campaign and provide for publication notice in *People* magazine, a nationwide publication, and the *East Bay Times*. SA § IV.A, C; Dkt. No. 205-12 at ¶¶ 13–23. The publication notices will run for four consecutive weeks. Dkt. No. 205 at ¶ 23. The digital media campaign includes an internet banner notice implemented using a 60-day desktop and mobile campaign. Dkt. No. 205-12 at ¶ 18. It will rely on "Programmatic Display Advertising" to reach the "Target Audience," Dkt. No. 216-1 at ¶ 6, which is estimated to include 30,100,000 people and identified using the target definition of "Fast Food & Drive-In Restaurants Total Restaurants Last 6 Months [Chipotle Mexican Grill]," Dkt. No. 205-12 at ¶ 13. Programmatic display advertising utilizes "search targeting," "category contextual targeting," "keyword contextual targeting," and "site targeting," to place ads. Dkt. No. 216-1 at ¶¶ 9–12. And through "learning" technology, it continues placing ads on websites where the ad is performing well. *Id*. ¶ 7. Put simply, prospective Class Members will see a banner ad notifying them of the settlement when they search for terms or websites that are similar to or related to Chipotle, when they browse websites that are categorically relevant to Chipotle (for example, a website related to fast casual dining or Mexican food), and when they browse websites that include a relevant keyword (for example, a fitness website with ads comparing fast casual choices). *Id*. ¶¶ 9–12. By using this technology, the banner notice is "designed to result in serving approximately 59,598,000 impressions." Dkt. No. 205-12 at ¶ 18.

//

//

17

The Court finds that the proposed notice process is "'reasonably calculated, under all the circumstances,' to apprise all class members of the proposed settlement." *Roes*, 944 F.3d at 1045 (citation omitted).

With respect to the content of the notice itself, the notice must clearly and concisely state in plain, easily understood language:

> (i) the nature of the action;
> (ii) the definition of the class certified;
> (iii) the class claims, issues, or defenses;
> (iv) that a class member may enter an appearance through an attorney if the member so desires;
> (v) that the court will exclude from the class any member who requests exclusion;
> (vi) the time and manner for requesting exclusion; and
> (vii) the binding effect of a class judgment on members[.]

Fed. R. Civ. P. 23(c)(2)(B). The Court finds that the content of the proposed notices, Dkt. No. 205-3, Ex. A; Dkt. No. 205-4, Ex. B, provides sufficient information about the case and thus conforms with due process requirements. *See Hyundai II*, 926 F.3d at 567 ("Notice is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." (citation and quotations omitted)).

## VI. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Plaintiffs' motion for preliminary approval of class action settlement and **GRANTS** Plaintiffs' request to file an amended complaint. Plaintiffs are **DIRECTED** to file their amended complaint within five (5) days. The parties are **DIRECTED** to meet and confer and stipulate to a schedule of dates for each event listed below, which shall be submitted to the Court within seven days of the date of this Order:

| Event | Date |
|---|---|
| Deadline for Settlement Administrator to mail notice to all putative Class Members | |
| Filing deadline for attorneys' fees and costs motion | |
| Filing deadline for incentive payment motion | |
| Deadline for Class Members to opt-out or object to settlement and/or application for attorneys' fees and costs and incentive payment | |
| Filing deadline for final approval motion | |
| Final fairness hearing and hearing on motions | |

The parties are further **DIRECTED** to implement the proposed class notice plan.

**IT IS SO ORDERED.**

Dated: 1/31/2020

HAYWOOD S. GILLIAM, JR.
United States District Judge