Laurence D. King (SBN 206423)
Matthew B. George (SBN 239322)
Mario M. Choi (SBN 243409)
**KAPLAN FOX & KILSHEIMER LLP**
1999 Harrison Street, Suite 1560
Oakland, CA 94612
Telephone:  415-772-4700
Facsimile:  415-772-4707
*lking@kaplanfox.com*
*mgeorge@kaplanfox.com*
*mchoi@kaplanfox.com*

Frederic S. Fox (*pro hac vice*)
Donald R. Hall (*pro hac vice*)
**KAPLAN FOX & KILSHEIMER LLP**
850 Third Avenue, 14th Floor
New York, NY 10022
Telephone:  212-687-1980
Facsimile:  212-687-7714
*ffox@kaplanfox.com*
*dhall@kaplanfox.com*

Hartley M. K. West (SBN 191609)
**KOBRE & KIM LLP**
150 California Street, 19th Floor
San Francisco, CA 94111
Telephone: 415-582-4781
*hartley.west@kobrekim.com*

Matthew I. Menchel (*pro hac vice*)
**KOBRE & KIM LLP**
201 South Biscayne Boulevard, Suite 1900
Miami, FL 33131
Telephone: 305-967-6108
*matthew.menchel@kobrekim.com*

*Attorneys for Plaintiffs and the Settlement Class*

## UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF CALIFORNIA
### OAKLAND DIVISION

| | |
|---|---|
| MARTIN SCHNEIDER, SARAH DEIGERT, THERESA GAMAGE, and NADIA PARIKKA, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>CHIPOTLE MEXICAN GRILL, INC., a Delaware Corporation,<br><br>Defendant. | Case No. 4:16-cv-02200-HSG (KAW)<br><br>**NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Judge: Hon. Haywood S. Gilliam, Jr.<br>Courtroom: 2, 4th Floor<br>Date: July 30, 2020<br>Time: 2:00 p.m. |

1

**NOTICE OF MOTION AND MOTION**

2

**TO ALL PARTIES AND THEIR RESPECTIVE ATTORNEYS OF RECORD:**

3

    **PLEASE TAKE NOTICE** that on July 30, 2020, at 2 p.m., in Courtroom 2 of the United

4

States District Court for the Northern District of California, Ronald V. Dellums Federal Building

5

and U.S. Courthouse, 1301 Clay Street, Oakland, California 94612, the Honorable Haywood S.

6

Gilliam, Jr., presiding, Plaintiffs Martin Schneider, Sarah Deigert, Theresa Gamage, and Nadia

7

Parikka ("Plaintiffs") will and hereby do move for an Order pursuant to Rule 23(h)(1) and 54(d)(2)

8

of the Federal Rules of Civil Procedure ("Rule") awarding: (i) attorneys' fees to Class Counsel[1] in

9

the amount of $1,950,000, which is 30% of the $6,500,000 common fund settlement;

10

(ii) unreimbursed expenses totaling $636,556.28 that Class Counsel reasonably and necessarily

11

incurred in furtherance of the prosecution of this Action; and (iii) service awards of $5,000 for each

12

of the four Class Representatives.

13

    This motion is based upon this Notice of Motion and Motion, the Memorandum of Points

14

and Authorities set forth below, the accompanying Declaration of Laurence D. King in Support of

15

Plaintiffs' Motion for Attorneys' Fees, Expenses, and Service Awards, dated April 24, 2020 ("King

16

Declaration"), and the exhibits thereto, the pleadings and records on file in this Action, and other

17

such matters and argument as the Court may consider at the hearing of this motion.

18

**STATEMENT OF ISSUES TO BE DECIDED**

19

    1.    Whether the Court should award $1,950,000, which is 30% of the $6,500,000

20

common fund settlement, to Class Counsel as attorneys' fees;

21

    2.    Whether the Court should award $636,556.28 in unreimbursed expenses that Class

22

Counsel reasonably and necessarily incurred in furtherance of the prosecution of this Action; and

23

    3.    Whether the Court should award $5,000 to each of the four Settlement Class

24

Representatives as service awards for their time and effort over the past four years in pursuing this

25

Action.

26

27

28

---

[1] All capitalized terms are defined in the Settlement Agreement and Release ("Settlement" or "Stipulation"), filed September 11, 2019 (Dkt. 205-2), unless otherwise noted.

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ........................................................................................................ 1

II. PROSECUTION AND SETTLEMENT OF THE ACTION ........................................ 2

    A. Discovery And Motion Practice ........................................................................ 2

    B. Settlement Negotiations And Mediation ........................................................... 5

III. ARGUMENT .............................................................................................................. 5

    A. Class Counsel Should Be Awarded Attorneys' Fees From The Common Fund ...................................................................................................... 5

    B. The Class Should Use The Percentage Of The Fund Method To Calculate Reasonable Attorneys' Fees ........................................................... 6

    C. The Requested Attorneys' Fees Are Reasonable ............................................. 7

        1. Class Counsel Achieved A Favorable Result For The Class ................. 8

        2. There Was Substantial Risk In This Case ........................................... 9

        3. The Settlement Required Skill And High-Quality Work To Achieve .......................................................................................... 10

        4. Class Counsel Worked On A Contingent Basis .................................. 12

        5. The Award Is On Par With Awards In Similar Cases ........................ 13

        6. The Reaction Of The Class ............................................................... 14

    D. A Lodestar Cross-Check Confirms The Reasonableness Of The Request ........... 14

    E. Counsels' Litigation Expenses Are Reasonable And Should Be Reimbursed ................................................................................................... 16

    F. The Court Should Also Grant Each Class Representative A Service Award ....... 17

IV. CONCLUSION ......................................................................................................... 19

NOTICE OF MOT. AND MOT. FOR ATTY FEES, EXPENSES, AND SERVICE AWARDS; MPA ISO THEREOF

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Barbosa v. Cargill Meat Solutions Corp.*,
  297 F.R.D. 431 (E.D. Cal. 2013) ............................................................... 11

*Bellinghausen v. Tractor Supply Co.*,
  306 F.R.D. 245 (N.D. Cal. 2015)........................................................... 12, 18

*Boeing v. Van Gemert*,
  444 U.S. 472 (1980).................................................................................... 5

*Bower v. Cycle Gear, Inc.*,
  No. 14-CV-02712-HSG, 2016 WL 4439875 (N.D. Cal. Aug. 23, 2016) ................................. 10

*Cheng Jianchen v. Rentech, Inc.*,
  No. CV 17-1490-GW(FFMx), 2019 WL 5173771 (C.D. Cal. Oct. 10, 2019) ........................ 8

*Ching v. Siemens Indus. Inc.*,
  No. 11-cv-04838-MEJ, 2014 WL 2926210 (N.D. Cal. June 27, 2014) ................................... 13

*Cuzick v. Zodiac U.S. Seat Shells, LLC*,
  No. 16CV-03793-HSG, 2018 WL 2412137 (N.D. Cal. May 29, 2018) ................................... 18

*Destefano v. Zynga, Inc.*,
  No. 12-CV-04007-JSC, 2016 WL 537946  (N.D. Cal. Feb. 11, 2016)............................ 7, 9, 10

*Dickey v. Advanced Micro Devices, Inc.*,
  No. 15-cv-04922-HSG, 2020 WL 870928 (N.D. Cal. Feb. 21, 2020)........................................ 15

*Dugan v. Lloyds TSB Bank, PLC*,
  No. C 12-02537-WHA, 2014 WL 1647652 (N.D. Cal. Apr. 24, 2014) ................................... 13

*Eashoo v. Iovate Health Scis. U.S.A., Inc.*,
  No. CV-15-01726 BRO (PJWx), 2016 WL 6205785 (C.D. Cal. Apr. 5, 2016).................... 8, 9

*Fitzhenry-Russell v. Coca-Cola Co.*,
  No. 17-cv-00603-EJD, 2019 WL 6111378  (N.D. Cal. June 13, 2019)....................................... 8

*Fowler v. Wells Fargo Bank, N.A.*,
  No. 17-CV-02092-HSG, 2019 WL 330910 (N.D. Cal. Jan. 25, 2019)..................................... 15

*Garner v. State Farm Mut. Auto. Ins. Co.*,
  No. CV 08 1365-CW, 2010 WL 1687829 (N.D. Cal. Apr. 22, 2010) ..................................... 14

*Gergetz v. Telenav, Inc.*,
  No. 16-CV-04261-BLF, 2018 WL 4691169 (N.D. Cal. Sept. 27, 2018).................................. 16

*Hanlon v. Chrysler Group, Inc.*,
  150 F.3d 1011 (9th Cir. 1998).......................................................................... 7

*Harris v. Marhoefer*,
  24 F.3d 16 (9th Cir. 1994).............................................................................. 17

*Hefler v. Wells Fargo & Co.*,
  No. 16-CV-05479-JST, 2018 WL 6619983 (N.D. Cal. Dec. 18, 2018) ............................. 14, 15

NOTICE OF MOT. AND MOT. FOR ATTY FEES, EXPENSES, AND SERVICE AWARDS; MPA ISO THEREOF

*Hendricks v. Starkist Co.*,
No. 13-CV-00729-HSG, 2016 WL 5462423 (N.D. Cal. Sept. 29, 2016), *aff'd sub nom.*
*Hendricks v. Ference*, No. 16-16992, 2018 WL 5115482 (9th Cir. Oct. 19, 2018) ........... 13, 18

*In re Aftermarket Auto. Lighting Prod. Antitrust Litig.*,
No. 09 MDL 2007-GW(PJWX), 2014 WL 12591624 (C.D. Cal. Jan. 10, 2014) ...................... 6

*In re Am. Apparel, Inc. S'holder Litig.*,
No. CV-1006352 MMM (JCGx) 2014 WL 10212865 (C.D. Cal. July 28, 2014).................... 12

*In re Capacitors Antitrust Litig.*,
No. 3:14-CV-03264-JD, 2018 WL 4790575 (N.D. Cal. Sept. 21, 2018) .............................. 6, 14

*In re Heritage Bond Litig*,
No. 02-ML-1475-DT(RCX), 2005 WL 1594403 (C.D. Cal. June 10, 2005) .......................... 12

*In re Korean Air Lines Co., Ltd. Antitrust Litig.*,
No. CV 07-05107 SJO AGRX, 2013 WL 7985367 (C.D. Cal. Dec. 23, 2013) ........................ 6

*In re LendingClub Sec. Litig.*,
No. C 16-02627 WHA, 2018 WL 4586669 (N.D. Cal. Sept. 24, 2018)................................... 17

*In re Lenovo Adware Litig.*,
No. 15-md-02624-HSG, 2019 WL 1791420 (N.D. Cal. Apr. 24, 2019) ........................... passim

*In re Media Vision Tech. Sec. Litig.*,
913 F. Supp. 1362 (N.D. Cal. 1995) ........................................................................................ 16

*In re Nexus 6P Prods. Liab. Litig.*,
No. 17-cv-02185-BLF, 2019 WL 6622842 (N.D. Cal. Nov. 12, 2019).............................. passim

*In re Omnivision Techs., Inc.*,
559 F. Supp. 2d 1036 (N.D. Cal. 2008) .............................................................................. passim

*In re Online DVD-Rental Antitrust Litig.*,
779 F.3d 934 (9th Cir. 2015)................................................................................................... 17

*In re Toys R Us-Del., Inc.--Fair & Accurate Credit Transactions Act (FACTA) Litig.*,
295 F.R.D. 438 (C.D. Cal. 2014) ......................................................................................... 8, 14

*In re Washington Pub. Power Supply Sys. Sec. Litig.*,
19 F.3d 1291 (9th Cir. 1994)................................................................................................... 12

*Isquierdo v. W.G. Hall, LLC*,
No. 15-CV-00335-BLF, 2017 WL 4390250 (N.D. Cal. Oct. 3, 2017)..................................... 16

*Jasper v. C.R. England, Inc.*,
No. CV 08-5266-GW(CWX), 2014 WL 12577426 (C.D. Cal. Nov. 3, 2014) ......................... 12

*Johnson v. Fujitsu Tech. & Bus. of Am., Inc.*,
No. 16-CV-03698-NC, 2018 WL 2183253 (N.D. Cal. May 11, 2018)..................................... 17

*Johnson v. Gen. Mills, Inc.*,
No. SACV 10-00061-CJC, 2013 WL 3213832 (C.D. Cal. June 17, 2013) .................... 8, 13, 16

**TABLE OF AUTHORITIES - (cont.)**

Page(s)

*Kakani v. Oracle Corp.*,
   No. 06-06493WHA, 2007 WL 4570190 (N.D. Cal. Dec. 21, 2007) .......................................... 10

*Larsen v. Trader Joe's Co.*,
   No. 11-CV-05188-WHO, 2014 WL 3404531 (N.D. Cal. July 11, 2014).................................. 11

*McKibben v. McMahon*,
   No. EDCV 14-2171 JGB (SPx), 2019 WL 1109683 (C.D. Cal. Feb. 28, 2019) ...................... 15

*Moreyra v. Fresenius Med. Care Holdings, Inc.*,
   No. SACV-10-517 JVS (RZx), 2013 WL 12248139 (C.D. Cal. Aug. 7, 2013) ........................ 11

*Patel v. Trans Union, LLC*,
   No. 14-CV-00522-LB, 2018 WL 1258194 (N.D. Cal. Mar. 11, 2018) ..................................... 13

*Powers v. Eichen*,
   229 F.3d 1249 (9th Cir. 2000)................................................................................................... 7

*Reilly v. Chipotle Mexican Grill, Inc.*,
   711 F. App'x 525 (11th Cir. 2017) ............................................................................................ 9

*Roberti v. OSI Sys., Inc.*,
   No. CV13-09174 MWF (MRWx), 2015 WL 8329916 (C.D. Cal. Dec. 8, 2015) ................... 10

*Rosado v. Ebay Inc.*,
   No. 5:12-CV04005-EJD, 2016 WL 3401987 (N.D. Cal. June 21, 2016)................................ 16

*Salamanca v. Sprint/United Mgmt. Co.*,
   No. 15-CV-05084-JSW, 2018 WL 1989568 (N.D. Cal. Mar. 9, 2018).............................. 17, 18

*Schneider v. Chipotle Mexican Grill, Inc.*,
   328 F.R.D. 520  (N.D. Cal. 2018)............................................................................................. 4

*Schneider v. Chipotle Mexican Grill, Inc.*,
   No. 16-cv-02200-HSG, 2016 WL 6563348 (N.D. Cal. Nov. 4, 2016)...................................... 3

*Schneider v. Chipotle Mexican Grill, Inc.*,
   No. 16-cv-02200-HSG, 2019 WL 1512265 (N.D. Cal. Apr. 8, 2019)....................................... 4

*Schneider v. Chipotle Mexican Grill, Inc.*,
   No. 16-cv-02200-HSG, 2020 WL 511953 (N.D. Cal. Jan. 30, 2020) ....................................... 5

*Sheikh v. Tesla, Inc.*,
   No. 17-CV-02193-BLF, 2018 WL 5794532 (N.D. Cal. Nov. 2, 2018).................................... 15

*Staton v. Boeing Co.*,
   327 F.3d 938 (9th Cir. 2003)..................................................................................................... 5

*Steiner v. Am. Broad. Co.*,
   248 F. App'x 780 (9th Cir. 2007) ............................................................................................ 15

*Tait v. BSH Home Appliances Corp.*,
   No. SACV10-0711 DOC (ANx), 2015 WL 4537463 (C.D. Cal. July 27, 2015) ...................... 6

*Thomas v. MagnaChip Semiconductor Corp.*,
  No. 14-CV-01160-JST, 2018 WL 2234598 (N.D. Cal. May 15, 2018) ............................ 6, 7, 17

*Valentine v. NebuAd Inc.*,
  No. 3:08-cv-05113 TEH (LB), 2011 WL 13244509 (N.D. Cal. Nov. 21, 2011)...................... 13

*Vizcaino v. Microsoft Corp.*,
  290 F.3d 1043 (9th Cir. 2002)...................................................................... 7, 9, 13, 14

*Wallace v. Countrywide Home Loans, Inc.*,
  No. SACV-08-1463 JLS (MLGx), 2015 WL 13284517 (C.D. Cal. Apr. 17, 2015) ................ 10

*Wannemacher v. Carrington Mortg. Servs., LLC*,
  No. SA CV 12-2016 FMO (ANx), 2014 WL 12586117 (C.D. Cal. Dec. 22, 2014) ................ 13

*Weeks v. Kellogg Co.*,
  No. CV 09-08102 MMM RZX, 2013 WL 6531177 (C.D. Cal. Nov. 23, 2013) .................. 8, 13

*Williams v. MGM-Pathe Commc'ns Co.*,
  129 F.3d 1026 (9th Cir. 1997)............................................................................................ 7

**Rules**

Federal Rules of Civil Procedure
  Rule 23(c)(2)............................................................................................................. 4
  Rule 23(f) ................................................................................................................ 4
  Rule 30(b)(6)............................................................................................................ 3

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2

## I.    INTRODUCTION

3        Plaintiffs and Class Counsel have obtained an $6,500,000 Settlement that returns a

4   substantial portion of recoverable damages to consumers who purchased Food Products from

5   Defendant Chipotle Mexican Grill, Inc. ("Defendant" or "Chipotle").  The Settlement was reached

6   at an advanced stage of the litigation, after extensive fact and expert discovery and motion practice,

7   and prior to trial.  Given Chipotle's continuing disagreement with the Court's class certification

8   decision, and the risks of proceeding to trial, the result is a good outcome for the Settlement Class,

9   and the Settlement has been well received to date with nearly 126,000 claims filed in the first few

10  weeks after Notice was issued.

11       Given these achievements after years of hard-fought litigation on challenging legal and

12  factual grounds, Plaintiffs respectfully move for an order granting: (1) attorneys' fees in the amount

13  of $1,950,000, or 30% of the Settlement Fund; (2) reimbursement of $636,556.28 in litigation

14  expenses that were reasonably and necessarily incurred in prosecuting this Action; and (3) service

15  awards of $5,000 for each of the four Class Representatives.  The requested fee amount, which

16  reflects a modest upward adjustment from the 25% benchmark, is fair and reasonable in light of the

17  recovery, the challenges Plaintiffs faced in this consumer class action, the risk to their counsel in

18  representing them on a contingent basis, and prevailing attorneys' fee jurisprudence in this District

19  and Circuit.  Further supporting the reasonableness of the requested fee, it represents just 61%

20  percent of Class Counsel's lodestar (i.e., a negative multiplier).  In addition, Plaintiffs respectfully

21  request that the Court approve a $5,000 service award to each of the four Class Representatives in

22  recognition of their significant time and effort over the past four years in pursuing the litigation and

23  assisting with extensive discovery in order to obtain to a positive outcome for the Settlement Class,

24  including sitting for full-day depositions which were by no means perfunctory.

25       Plaintiffs brought this lawsuit to remedy the harm resulting from Chipotle's representations

26  that all of its Food Products sold during the Class Period were "Non-GMO."  The non-reversionary

27  $6,500,000 Settlement Fund allows Settlement Class Members who make valid claims to receive

28  $2 for each qualifying purchase, up to five qualifying purchases ($10) without any documentation,

up to $20 for ten qualifying purchases with proof of payment and subject to a 15-claim ($30) cap per household. This is a substantial recovery considering that Chipotle charged approximately $10 for an entrée during the Class Period, and Plaintiffs' experts calculated the alleged overcharge at approximately $0.23 per entrée.

As the Court is aware, consumer class actions are risky to prosecute. In their litigation against Chipotle—a well-resourced company which over the course of the litigation was represented by three national law firms that vigorously defended itself and disclaimed any liability—Plaintiffs withstood a motion to dismiss and a summary judgment motion, and obtained class certification, which the Ninth Circuit declined to review on an interlocutory basis despite Chipotle's request for it to do so. Class Counsel's efforts in bringing this Action to a favorable result required a substantial amount of time and resources with no guarantee of a recovery.

For the reasons articulated below, the requested fee, expense award, and service awards are fair and reasonable, and accordingly should be approved.

## II. PROSECUTION AND SETTLEMENT OF THE ACTION

This case has been hard fought and time consuming since its inception. Class Counsel has devoted thousands of hours and significant out-of-pocket expenses to develop and prosecute the litigation and negotiate a favorable settlement for the Settlement Class. A brief summary of the pertinent work, supported by contemporaneous time records detailed in the accompanying Declaration of Laurence D. King ("King Decl."), is provided below.

### A. Discovery And Motion Practice

After a prior iteration of this lawsuit was dismissed,[2] Plaintiffs filed their class action complaint on April 22, 2016 (Dkt. 1). Plaintiffs alleged that Defendant's "Non-GMO" campaign, from April 27, 2015 until June 30, 2016 (the "Class Period"), was false and misleading and was in

---

[2] *Gallagher v. Chipotle Mexican Grill, Inc.*, No. 3:15-cv-03952-HSG (N.D. Cal.). *See* King Decl. ¶¶ 5-8. Although *Gallagher* was dismissed without prejudice for pleading deficiencies, subsequent to the dismissal named Plaintiff Gallagher determined that she no longer wished to proceed. The Court directed that the appropriate vehicle to introduce new plaintiffs was a separate lawsuit, rather than including them in a *Gallagher* amendment. (*Gallagher* Dkt. 44). Plaintiffs have not included in their lodestar calculation work that was specific to the *Gallagher* case, but have included certain factual research used in the Complaint herein. Had we included all of the *Gallagher* time, the requested fee would represent an even lower multiplier on lodestar (*i.e.*, a higher negative number).

violation of, among others, the consumer protection laws of California, New York, and Maryland. *See id.* ¶¶ 15-49, 69-96, 107-146.

On May 17, 2016, Defendant filed a motion to dismiss (Dkt. 15).  On November 4, 2016, the Court granted in part and denied in part Defendant's motion, dismissing Plaintiffs' request for injunctive relief but otherwise denying the motion (Dkt. 36).  *See Schneider v. Chipotle Mexican Grill, Inc.*, No. 16-cv-02200-HSG, 2016 WL 6563348, at *3 (N.D. Cal. Nov. 4, 2016).  Chipotle answered the Complaint on December 1, 2016 (Dkt. 40) and discovery commenced thereafter.

Pursuant to Revised Joint Proposed Partial Pretrial Schedule and Order entered December 15, 2016 (Dkt. 48), extensive discovery was completed prior to briefing on Plaintiffs' motion for class certification and Defendant's motion for summary judgment.  Discovery included the production and review of hundreds of thousands of pages of documents from the Parties and non-parties, preparing for and defending Plaintiffs' depositions, taking a Rule 30(b)(6) deposition of Chipotle and the depositions of four fact witnesses in Denver and New York, submitting and reviewing the expert reports of five experts (two for Plaintiffs and three for Chipotle), the taking or defending of the experts' depositions in Washington, D.C., Palo Alto, Costa Mesa, and San Francisco, and serving or responding to hundreds of written discovery requests.  *See* King Decl. ¶¶ 11-14.  In addition, Plaintiffs and Chipotle served multiple subpoenas on non-parties and deposed and/or defended several non-party witnesses in Pittsburgh, New York, and Los Angeles. *Id.* And, the Parties met and conferred over numerous discovery disputes.  *Id.* While they resolved many without Court intervention, collectively the Parties filed no less than four joint discovery letters and other requests for resolution before this Court and Magistrate Judge Westmore (Dkt. 60-62, 66, 70-74, 77, 80).

Pursuant to an order granting Plaintiffs' motion for leave to file a motion for reconsideration concerning the Court's November 4, 2016 motion to dismiss order (Dkt. 86), Plaintiffs filed their motion for reconsideration on November 8, 2017 (Dkt. 87).  On November 17, 2017, Plaintiffs moved for class certification while Defendant moved for summary judgment (Dkt. 92, 95).  On December 22, 2017, Defendant filed two motions to exclude Plaintiffs' experts (Dkt. 100, 101), and Plaintiffs filed their motion to exclude Defendant's experts on January 17, 2018 (Dkt. 117).

1
2
3
4
5

Briefing on these motions totaled hundreds of pages and was supported by dozens of exhibits and extensive deposition testimony.   On September 29, 2018, the Court resolved these motions (Dkt. 136), granting reconsideration, denying summary judgment, granting class certification, and denying the motions to exclude.  *See Schneider v. Chipotle Mexican Grill, Inc.*, 328 F.R.D. 520, 543 (N.D. Cal. 2018).

6
7
8
9
10
11

On October 15, 2018, Defendant filed a Rule 23(f) petition before the Ninth Circuit seeking permission to appeal that portion of the Court's decision granting class certification (Dkt. 137). And, after bringing on new counsel, on December 6, 2018, Defendant sought to reopen discovery (Dkt. 143).  The Court of Appeals denied Defendant's petition on March 20, 2019 (Dkt. 167).  The next day, the Court heard and denied Defendant's motion to reopen discovery from the bench (Dkt. 168).

12
13
14
15
16
17
18
19
20
21
22
23

Even the negotiations over class notice in this case were time consuming and contentious. On January 9, 2019, Plaintiffs submitted an administrative motion to approve Plaintiffs' selection of notice administrator, the proposed notice plan pursuant to Rule 23(c)(2), as well as a proposed scheduling order that would plan out the schedule from execution of notice until trial (Dkt. 150). The Court held a hearing on the administrative motion on January 24, 2019 and, due to Chipotle's response to the administrative motion, ordered, among other things, Plaintiffs to file a motion to modify the class definitions (Dkt. 156).  Plaintiffs filed the motion on January 31, 2019 (Dkt. 159), and, on February 12, 2019, the Court granted Plaintiff's motion in part (Dkt. 164).  The Parties thereafter engaged in further discussions and motion practice over the contours of notice administration (Dkt. 172, 175-79), which the Court resolved on April 8, 2019 (Dkt. 180).  *See Schneider v. Chipotle Mexican Grill, Inc.*, No. 16-cv-02200-HSG, 2019 WL 1512265, at *5-6 (N.D. Cal. Apr. 8, 2019).

24
25
26
27

As the Parties began preparing for trial in earnest, the highly-respected law firm of Kobre & Kim joined Plaintiffs' trial team.  King Decl. ¶ 23.  On March 28, 2019, the Court entered a pre-trial and trial schedule stipulated by the Parties (Dkt. 174), setting a September 16, 2019 trial date as well as a number of other pre-trial deadlines.

28

On April 25, 2019, Chipotle filed its motion to decertify the classes (Dkt. 184).  At the time

of settlement, the decertification motion was fully briefed and was specially set for oral argument on July 18, 2019 (Dkt. 190, 191, 192). Plaintiffs were also preparing for trial. Upon the Parties having informed the Court of a settlement, all pending dates and motions were terminated (Dkt. 193-95).

Plaintiffs filed their motion for, among other things, preliminary approval on September 11, 2019 (Dkt. 205). The Court heard the motion on December 5, 2019 (Dkt. 212), and, after Plaintiffs provided supplemental information at the Court's request, on January 31, 2020, granted the motion (Dkt. 219). *See Schneider v. Chipotle Mexican Grill, Inc.*, No. 16-cv-02200-HSG, 2020 WL 511953, at *12 (N.D. Cal. Jan. 30, 2020).

## B.  Settlement Negotiations And Mediation

The Parties engaged in three in-person mediations over the course of this Action, each of which required substantial preparation, briefing, and travel for one or both Parties. The Parties held their first in-person mediation on May 9, 2017 with Samuel R. Miller, a mediator from the Court's ADR Unit (Dkt. 65). The Parties did not settle. On January 29, 2019, the Parties held their next in-person mediation, this time in Los Angeles with the Honorable Jay C. Gandhi (Ret.) of JAMS. King Decl. ¶ 24. While some progress was made, the Parties did not reach a settlement. *Id.* The Parties continued negotiations through Judge Gandhi while litigating the Action and preparing for trial. *Id.* On July 2, 2019, the Parties held a second in-person mediation with Judge Gandhi (third overall), at the end of which Judge Gandhi made a mediator's proposal. The Parties accepted the mediator's proposal, culminating in the execution of a settlement term sheet. *Id.* ¶ 28.

## III.  ARGUMENT

## A.  Class Counsel Should Be Awarded Attorneys' Fees From The Common Fund

Where Class Counsel's efforts have helped create a common fund, the doctrine of unjust enrichment entitles them to reasonable attorneys' fees from the fund. *See Staton v. Boeing Co.*, 327 F.3d 938, 267 (9th Cir. 2003) ("the common fund doctrine ensures that each member of the winning party contributes proportionately to the payment of attorneys' fees"); *Boeing v. Van Gemert*, 444 U.S. 472, 478 (1980) ("a litigant or lawyer who recovers a common fund … is entitled to a reasonable attorney's fee from the fund as a whole"). Class Counsel's efforts in this case over

the course of nearly four years, including 4568.30 hours of work, and in the face of vigorous opposition from Chipotle, have resulted in a common fund settlement of $6.5 million for Settlement Class Members.  Class Counsel therefore respectfully submit that a modest upward adjustment of the 25% "benchmark" to 30% of the common fund is fair and reasonable.

## B.   The Class Should Use The Percentage Of The Fund Method To Calculate Reasonable Attorneys' Fees

As this Court has recognized, courts in the Ninth Circuit have the "discretion in a common fund case to choose either the (1) percentage-of-the-fund, or (2) lodestar method when calculating reasonable attorneys' fees."  *In re Lenovo Adware Litig.*, No. 15-md-02624-HSG, 2019 WL 1791420, at *7 (N.D. Cal. Apr. 24, 2019) (citing *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002)).  "Using either method, the ultimate inquiry is whether the end result is reasonable."  *In re Capacitors Antitrust Litig.*, No. 3:14-CV-03264-JD, 2018 WL 4790575, at *2 (N.D. Cal. Sept. 21, 2018); *see In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1047 (N.D. Cal. 2008) (same).

Nevertheless, "[t]he use of the percentage-of-the-fund method in common-fund cases is the prevailing practice in the Ninth Circuit for awarding attorneys' fees...."  *In re Korean Air Lines Co., Ltd. Antitrust Litig.*, No. CV 07-05107 SJO AGRX, 2013 WL 7985367, at *1 (C.D. Cal. Dec. 23, 2013) (citations omitted); *see In re Aftermarket Auto. Lighting Prod. Antitrust Litig.*, No. 09 MDL 2007-GW(PJWX), 2014 WL 12591624, at *5 (C.D. Cal. Jan. 10, 2014) ("use of the percentage method in common fund cases appears to be dominant").  Courts prefer the percentage method because it confers "significant benefits … including consistency with contingency fee calculations in the private market, aligning the lawyers' interests with achieving the highest award for the class members, and reducing the burden on the courts that a complex lodestar calculation requires."  *Tait v. BSH Home Appliances Corp.*, No. SACV10-0711 DOC (ANx), 2015 WL 4537463, at *11 (C.D. Cal. July 27, 2015).

Here, because the settlement amount is fixed at $6.5 million and provides direct cash to consumers, the monetary benefit to the Settlement Class is easily quantifiable.  This weighs in favor of employing the percentage of the fund method.  *See, e.g., Thomas v. MagnaChip Semiconductor*

*Corp.*, No. 14-CV-01160-JST, 2018 WL 2234598, at \*3 (N.D. Cal. May 15, 2018) ("Because the benefit to the class is easily quantified in common-fund settlements,' the Ninth Circuit permits district courts 'to award attorneys a percentage of the common fund in lieu of the often more time-consuming task of calculating the lodestar.") (citation omitted); *Destefano v. Zynga, Inc.*, No. 12-CV-04007-JSC, 2016 WL 537946, at \*17 (N.D. Cal. Feb. 11, 2016) ("Because this case involves a common settlement fund with an easily quantifiable benefit to the Class, the Court will primarily determine attorneys' fees using the percentage method but will incorporate a lodestar cross-check to ensure the reasonableness of the award.").

### C.   <u>The Requested Attorneys' Fees Are Reasonable</u>

In applying the percentage of the fund method, the Ninth Circuit has established 25% as a benchmark percentage, which may be adjusted depending on the circumstances of a case. *Vizcaino*, 290 F.3d at 1047.[3]   The 25% benchmark represents "a starting point for analysis" and "[s]election of the benchmark or any other rate must be supported by findings that take into account all of the circumstances of the case." *Id.* at 1048.   "The benchmark should be adjusted when the percentage recovery would be 'either too small or too large in light of the hours devoted to the case or other relevant factor.'" *Thomas*, 2018 WL 2234598, at \*3 (citing *Six Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990)).

Here, the requested fee amount of 30% is within "the usual range" in common fund cases. *Vizcaino*, 290 F.3d at 1048; *see Omnivision Techs.*, 559 F. Supp. 2d at 1046 (observing that "in most common fund cases, the award exceeds that [25 percent] benchmark").   In determining whether to depart from the 25% benchmark, courts consider: "(1) the results achieved; (2) the risk of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee and the financial burden carried by the plaintiffs; and (5) awards made in similar cases." *Lenovo*, 2019 WL 1791420, at \*8 (citing *Vizcaino*, 290 F.3d at 1050-51); *In re Nexus 6P Prods. Liab. Litig.*, No. 17-cv-02185-BLF, 2019 WL 6622842, at \*11 (N.D. Cal. Nov. 12, 2019) (same).   Careful

---

[3] *See also Powers v. Eichen*, 229 F.3d 1249, 1257 (9th Cir. 2000); *Hanlon v. Chrysler Group, Inc.*, 150 F.3d 1011, 1029 (9th Cir. 1998); *Williams v. MGM-Pathe Commc'ns Co.*, 129 F.3d 1026, 1027 (9th Cir. 1997).

consideration of each of these factors supports the conclusion that an upward adjustment of the benchmark to 30% is warranted.

### 1.    Class Counsel Achieved A Favorable Result For The Class

The Settlement represents a very favorable result for the Settlement Class and supports Class Counsel's requested attorney fee award.  "The overall result and benefit to the class from the litigation is the most critical factor in granting a fee award."  *Omnivision Techs.*, 559 F. Supp. 2d at 1046.   The Settlement creates an $6.5 million non-reversionary common fund that represents approximately 7.4 percent of the maximum class-wide damages.  King Decl. ¶ 32.  The size of the fund supports the requested fee award.  *See, e.g.*, *Omnivision Techs.*, 559 F. Supp. 2d at 1042 (approving 6% of maximum possible recovery); *In re Toys R Us-Del., Inc.--Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 454 (C.D. Cal. 2014) (approving settlement where damages amounted to be between 5% to 30% of the recovery that could have been obtained); *Cheng Jianchen v. Rentech, Inc.*, No. CV 17-1490-GW(FFMx), 2019 WL 5173771, at *7 (C.D. Cal. Oct. 10, 2019) (settlement was approximately 10% of total maximum damages potentially available); *Fitzhenry-Russell v. Coca-Cola Co.*, No. 17-cv-00603-EJD, 2019 WL 6111378, at *3 (N.D. Cal. June 13, 2019) (settlement approximately 4% of total maximum damages); *Eashoo v. Iovate Health Scis. U.S.A., Inc.*, No. CV-15-01726 BRO (PJWx), 2016 WL 6205785, at *9 (C.D. Cal. Apr. 5, 2016) ($2.5 million settlement in a consumer fraud case constituted "a significant recovery"); *Weeks v. Kellogg Co.*, No. CV 09-08102 MMM RZX, 2013 WL 6531177, at *15 (C.D. Cal. Nov. 23, 2013) (settlement was approximately 10% of total damages).

With respect to individual recoveries, participating Settlement Class Members who make valid claims will receive $2 back on each qualifying purchase, up to five qualifying purchases ($10) without any documentation, up to $20 for ten qualifying purchases with proof of payment and subject to a 15-claim ($30) cap per household.  Dkt. 205-2 at 13; *see Johnson v. Gen. Mills, Inc.*, No. SACV 10-00061-CJC, 2013 WL 3213832, at *3 (C.D. Cal. June 17, 2013) (finding settlement that allowed recovery without proof of purchase to be "a good result for the class").  Such a payment would be substantial relative to recoverable damages considering that Plaintiff's expert estimated

1    that the price premium for a consumer's purchase at Chipotle was $0.23 (2.47%), given the average

2    purchase price of $10.  *See* King Decl. ¶ 34 (citing Dkt. 135-18, at ¶ 82).

3         The Settlement is a particularly good outcome given the difficulties of the case.  This was

4    not a class action where a settlement was quickly reached with little activity or effort.  Chipotle

5    strenuously defended itself and has consistently maintained that Settlement Class Members

6    suffered no injury.  Chipotle's three major law firms litigated the case aggressively, engaging in

7    extensive discovery of Plaintiffs and third parties, and in significant and substantial motion practice.

8    Considering the challenges Plaintiffs faced over the course of the litigation and would be required

9    to overcome in continued litigation, the Settlement can only be seen as a favorable result for the

10   Class.  *See Destefano*, 2016 WL 537946, at *17 (result was "favorable considering the potential

11   vulnerabilities of Lead Plaintiff's case"); *Lenovo*, 2019 WL 1791420, at *8 (noting favorable result

12   given that the case had "been actively litigated for the past four years, and required complex legal

13   and factual research and analysis by Class Counsel").

14                      **2.    There Was Substantial Risk In This Case**

15        The risk associated with the litigation is another key consideration in determining whether

16   the requested fee award is reasonable.  *Vizcaino*, 290 F.3d at 1048 ("Risk is a relevant

17   circumstance" in applying the percentage of the fund method); *see Eashoo*, 2016 WL 6205785, at

18   *9 ("The risk that further litigation might result in no recovery is a significant factor in assessing

19   the fairness and reasonableness of an award of attorneys' fees.") (internal quotation marks and

20   citation omitted).  Class Counsel faced numerous hurdles over the course of the litigation that could

21   have substantially narrowed or precluded any recovery in this case, supporting the requested fee.

22   Indeed, the first iteration of this lawsuit was summarily dismissed by this Court on the pleadings,[4]

23   and copycat litigations filed in Florida and California were also dismissed at various stages of

24   activity.  *See Reilly v. Chipotle Mexican Grill, Inc.*, 711 F. App'x 525 (11th Cir. 2017) (affirming

25   grant of summary judgment and denial of class certification); *Pappas v. Chipotle Mexican Grill,*

26

27   _____

     [4]  *See* King Decl. ¶¶ 5-8; *Gallagher v. Chipotle Mexican Grill, Inc.*, No. 3:15-cv-03952-HSG,

28   Dkt. 44 (N.D. Cal. Apr. 4, 2016).

*Inc.*, No. 16-cv0612 (S.D. Cal.) (dismissal prior to class certification); *Joseph v. Chipotle Mexican Grill, Inc.*, No. 15-cv-62604 (S.D. Fla.) (voluntary dismissal while motion to dismiss was pending).

There is inherent risk in pursuing consumer fraud class actions. *See Kakani v. Oracle Corp.*, No. 06-06493WHA, 2007 WL 4570190, at *4 (N.D. Cal. Dec. 21, 2007) (noting that consumer fraud cases are more uncertain than certain other types of class actions). Here, Class Counsel assumed the risk of challenging Chipotle, a well-resourced defendant that would have continued to vigorously defend its business practices had the litigation gone forward. Chipotle contested its liability from the very beginning, asserting that Settlement Class Members had suffered no injury and lacked standing to bring their claims, and filing a motion to dismiss, an opposition to class certification, a motion for summary judgment, and a motion for decertification of the classes. Absent settlement, Chipotle would have had the opportunity to argue its motion for decertification, increasing the possibility Settlement Class Members might recover nothing had litigation continued. The risk of little or no recovery weighs in favor of the requested fee award. *See Destefano*, 2016 WL 537946, at *17 (noting the "substantial" risk associated with "obtaining [and maintaining] class certification"); *Bower v. Cycle Gear, Inc.*, No. 14-CV-02712-HSG, 2016 WL 4439875, at *7 (N.D. Cal. Aug. 23, 2016) (noting risks of obtaining class certification, surviving summary judgment, prevailing at trial, and "withstanding a potential appeal"); *Roberti v. OSI Sys., Inc.*, No. CV13-09174 MWF (MRWx), 2015 WL 8329916, at *6 (C.D. Cal. Dec. 8, 2015) (the defendant's "vigorous opposition" represented a "substantial" risk weighing in favor of the requested attorney's fees).

### 3. The Settlement Required Skill And High-Quality Work To Achieve

Class Counsel's experience, and the skill they brought to bear in this case, also favor the award sought. *See Wallace v. Countrywide Home Loans, Inc.*, No. SACV-08-1463 JLS (MLGx), 2015 WL 13284517, at *9 (C.D. Cal. Apr. 17, 2015) (noting customary factors reflecting counsel's skill such as developing the facts and legal claims, conducting discovery, reviewing documents, retaining experts, motion practice, and negotiating and drafting the settlement). Class Counsel have significant expertise in consumer class actions. *See* Dkt. Nos. 205-9, 205-10; *see, e.g.*, *In re: Apple Inc. Device Perf. Litig.*, No. 18-md-02827-EJD, Dkt. 100 (N.D. Cal. May 15, 2018) (appointing

1    Kaplan Fox co-lead counsel for, among other things, its "extensive knowledge of and experience
2    in prosecuting complex litigation and class actions"); *see also Nexus 6P*, 2019 WL 6622842, at *12
3    ("Class Counsel are experienced in the prosecution of consumer class actions, and '[s]uch expertise
4    proved particularly beneficial in this action…'") (quoting *Zepeda v. PayPal, Inc.*, No. C 10-1668
5    SBA, 2017 WL 1113293, at *20 (N.D. Cal. Mar. 24, 2017)).  The quality of their representation is
6    reflected in the work they performed throughout the case and, ultimately, in the favorable settlement
7    for the Settlement Class.  *See Moreyra v. Fresenius Med. Care Holdings, Inc.*, No. SACV-10-517
8    JVS (RZx), 2013 WL 12248139, at *3 (C.D. Cal. Aug. 7, 2013) (noting that the result is "[t]he
9    single clearest factor reflecting the quality of class counsels' services") (quoting *In re Heritage
10   Bond Litig*, No. 02-ML-1475-DT(RCX), 2005 WL 1594389, at *12 (C.D. Cal. June 10, 2005)).

11            As discussed above, "[t]he settlement was not reached lightly," as Chipotle's aggressive
12   defense required significant skill and experience to effectively navigate.  *Id.* at *3 (observing that
13   counsel's skill was reflected in "diligently investigating and developing the claims"; "efficient
14   discovery"; and "well-researched legal arguments"); *see* King Decl. ¶¶ 9-31.  Over the course of
15   four years, Class Counsel advanced the litigation in the face of multiple dismissals of copycat
16   matters and obtained certification of three state classes.  Class Counsel withstood a motion to
17   dismiss and prevailed on the motion for class certification and Chipotle's motion for summary
18   judgment, overcoming legal arguments concerning, among other things, the definition of "non-
19   GMO," standing, and damages.

20            Thus, the reasonableness of the requested fee is supported by the hotly contested nature of
21   the case, Class Counsel's successful arguments against Chipotle's motion to dismiss, opposition to
22   class certification, and motion for summary judgment, the protracted settlement negotiations, and
23   the extensive discovery in this case, including the review and analysis of hundreds of thousands of
24   pages of documents from Defendant and 17 depositions of fact and expert witnesses, including the
25   four named Plaintiffs.  King Decl. ¶¶ 9-31; *see, e.g.*, *Larsen v. Trader Joe's Co.*, No. 11-CV-05188-
26   WHO, 2014 WL 3404531, at *8 (N.D. Cal. July 11, 2014) (upward departure from benchmark
27   justified in part by "the lengthy settlement negotiations"); *Barbosa v. Cargill Meat Solutions Corp.*,
28   297 F.R.D. 431, 449 (E.D. Cal. 2013) (class counsel used their "specialized skill" in the particular

area of law which represented an asset to class members and weighed in favor of the fee request);
*Omnivision Techs.*, 559 F. Supp. 2d at 1047 ("That Plaintiffs' case withstood two such motions,
despite other weaknesses, is some testament to Lead Counsel's skill.  This factor also supports the
requested fee."); *Jasper v. C.R. England, Inc.*, No. CV 08-5266-GW(CWX), 2014 WL 12577426,
at *8 (C.D. Cal. Nov. 3, 2014) (class counsel's work in support of class certification and
withstanding challenges to the defendant's liability demonstrated the skill required and work
performed in the case); *In re Heritage Bond Litig*, No. 02-ML-1475-DT(RCX), 2005 WL 1594403,
at *19 (C.D. Cal. June 10, 2005) (fact investigation, detailed complaints, extensive motion practice,
review of numerous documents, and the taking of multiple depositions demonstrated class
counsel's legal skills).

The quality of opposing counsel should also be considered when evaluating the performance
of Class Counsel.  *See In re Am. Apparel, Inc. S'holder Litig.*, No. CV-1006352 MMM (JCGx)
2014 WL 10212865, at *22 (C.D. Cal. July 28, 2014) ("In addition to the difficulty of the legal and
factual issues raised, the court should also consider the quality of opposing counsel as a measure
of the skill required to litigate the case successfully.") (citing *Wing v. Asarco Inc.*, 114 F.3d 986,
989 (9th Cir. 1997)).  Chipotle was represented in this case by no less than three national, respected
law firms (DLA Piper LLP, Messner Reeves LLP, and Sheppard, Mullin, Richter & Hampton LLP)
with significant resources and substantial experience defending consumer class actions.  This
factor, therefore, weighs in favor of the requested fee award.  *See Heritage Bond*, 2005 WL
1594403, at *20 ("There is also no dispute that the plaintiffs in this litigation were opposed by
highly skilled and respected counsel with well-deserved local and nationwide reputations for
vigorous advocacy in the defense of their clients.").

### 4.    Class Counsel Worked On A Contingent Basis

"When counsel takes cases on a contingency fee basis, and litigation is protracted, the risk
of non-payment after years of litigation justifies a significant fee award."  *Bellinghausen v. Tractor
Supply Co.*, 306 F.R.D. 245, 261 (N.D. Cal. 2015); *see In re Washington Pub. Power Supply Sys.
Sec. Litig.*, 19 F.3d 1291, 1299 (9th Cir. 1994) ("It is an established practice in the private legal
market to reward attorneys for taking the risk of non-payment by paying them a premium over their

normal hourly rates for winning contingency cases."); *Ching v. Siemens Indus. Inc.*, No. 11-cv-04838-MEJ, 2014 WL 2926210, at *8 (N.D. Cal. June 27, 2014) ("Courts have long recognized that the public interest is served by rewarding attorneys who assume representation on a contingent basis with an enhanced fee to compensate them for the risk that they might be paid nothing at all for their work."). Class Counsel took this matter on a contingency basis and advanced all necessary expenses for four years. King Decl. ¶ 42. "This substantial outlay, when there is a risk that none of it will be recovered, further supports the award of the requested fees." *Nexus 6P*, 2019 WL 6622842, at *13 (quoting *Omnivision Techs.*, 559 F. Supp. 2d at 1047).

**5.      The Award Is On Par With Awards In Similar Cases**

In evaluating the reasonableness of the fee application, courts frequently consider fee awards in similar cases. *See, e.g.*, *Wannemacher v. Carrington Mortg. Servs., LLC*, No. SA CV 12-2016 FMO (ANx), 2014 WL 12586117, at *10 (C.D. Cal. Dec. 22, 2014). "[I]n most common fund cases, the award exceeds th[e] benchmark." *Omnivision Techs.*, 559 F.Supp.2d at 1047. Here, the requested fee award of 30% is within the usual range of "20-30%" in common fund cases. *Vizcaino*, 290 F.3d at 1047. The requested amount is also within the range awarded in consumer class actions. *See, e.g.*, *Lenovo*, 2019 WL 1791420, at *8-9 (finding award of 30% reasonable in case involving CLRA and UCL claims); *Nexus 6P*, 2019 WL 6622842, at *13 (finding 30% award reasonable in consumer protection case); *Patel v. Trans Union, LLC*, No. 14-CV-00522-LB, 2018 WL 1258194, at *4 (N.D. Cal. Mar. 11, 2018) (awarding 1/3 of the settlement fund in consumer action matter involving erroneous information on credit reports); *Hendricks v. Starkist Co.*, No. 13-CV-00729-HSG, 2016 WL 5462423, at *12 (N.D. Cal. Sept. 29, 2016) (finding award of 30% reasonable in consumer fraud case), *aff'd sub nom. Hendricks v. Ference*, No. 16-16992, 2018 WL 5115482 (9th Cir. Oct. 19, 2018); *Weeks*, 2013 WL 6531177, at *29-30 (concluding that 30% of settlement fund was reasonable in consumer fraud case); *Dugan v. Lloyds TSB Bank, PLC*, No. C 12-02537-WHA, 2014 WL 1647652, at *3 (N.D. Cal. Apr. 24, 2014) (finding 35% was reasonable in action alleging UCL claims); *Gen. Mills*, 2013 WL 3213832, at *6 (awarding 30% in case involving CLRA and UCL claims based on deceptive advertising); *Valentine v. NebuAd Inc.*, No. 3:08-cv-05113 TEH (LB), 2011 WL 13244509, at *1 (N.D. Cal. Nov. 21, 2011) (report and

recommendation finding 30% was reasonable for attorneys' fees); *Garner v. State Farm Mut. Auto. Ins. Co.*, No. CV 08 1365-CW, 2010 WL 1687829, at *1 (N.D. Cal. Apr. 22, 2010) (concluding that 30% fee award warranted in class action involving UCL claims).

### 6.     The Reaction Of The Class

As of April 24, 2020, the Settlement Administrator received 145,609 claims.  King Decl. ¶ 39.  To date, there have been no objections to the Settlement or to the request for attorneys' fees, expenses, and service awards, and there have been no opt outs.  *Id.*  The deadline for objections and opt outs to the Settlement is May 30, 2020.  Plaintiffs will file their response to any objections to this motion at the time their reply in support of final approval is to be filed (Dkt. 205 at 30).

### D.     A Lodestar Cross-Check Confirms The Reasonableness Of The Request

"As a final check on the reasonableness of requested attorneys' fees, courts often compare the amount counsel would receive under the percentage-of-recovery method with the amount counsel would have received under the lodestar method."  *Nexus 6P*, 2019 WL 6622842, at *13; *see Vizcaino*, 290 F.3d at 1050 ("Calculation of the lodestar, which measures the lawyers' investment of time in the litigation, provides a check on the reasonableness of the percentage award.").  Under a lodestar cross-check, "a court takes the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate."  *Hefler v. Wells Fargo & Co.*, No. 16-CV-05479-JST, 2018 WL 6619983, at *14 (N.D. Cal. Dec. 18, 2018) (citations omitted).  In performing the cross-check, however, courts "should not, become green-eyeshade accountants" but rather "do rough justice, not to achieve auditing perfection."  *Id.* (citations omitted); *see Capacitors*, 2018 WL 4790575, at *6 (the cross-check does not require "mathematical precision nor bean-counting") (citation omitted); *Toys R Us-Del., Inc*, 295 F.R.D. at 460 ("In cases where courts apply the percentage method to calculate fees, they should use a rough calculation of the lodestar as a cross-check to assess the reasonableness of the percentage award.").

As set forth above, Class Counsel performed a significant amount of work in this Action, including preparing the complaint, defending against Chipotle's motion to dismiss, moving for class certification, engaging and working with experts, opposing Chipotle's motion for summary judgment and motion for decertification, engaging in extensive formal, hard fought discovery,

taking and defending multiple depositions, preparing for trial, and participating in several mediations and settlement negotiations.  King Decl. ¶¶ 9-31.  In total, not including time spent prosecuting the *Gallagher* Action except factual research relating to the Complaint, Class Counsel have spent 4568.30 hours on this case through April 1, 2020.  *Id.* ¶¶ 45, 47, 48; *see McKibben v. McMahon*, No. EDCV 14-2171 JGB (SPx), 2019 WL 1109683, at *13 (C.D. Cal. Feb. 28, 2019) (noting that class counsel's hours did not include "ongoing work with the Class Administrator and class members" and time in connection with final approval).  That is a reasonable amount of time considering the duration, complexity, and contested nature of this litigation.

The reasonable hourly rate is "the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation."  *Fowler v. Wells Fargo Bank, N.A.*, No. 17-CV-02092-HSG, 2019 WL 330910, at *6 (N.D. Cal. Jan. 25, 2019).  Here, Class Counsel's rates are in line with the rates that have been recently awarded to similarly experienced counsel in this District.  King Decl. ¶ 45; *see, e.g.*, *Dickey v. Advanced Micro Devices, Inc.*, No. 15-cv-04922-HSG, 2020 WL 870928, at *8 (N.D. Cal. Feb. 21, 2020) (rates between $275 and $1,000 for attorneys found reasonable); *Lenovo*, 2019 WL 1791420, at *9 (rates "between $150 and $225 per hour for paralegals and $365 to $950 per hour for attorneys" found reasonable); *Fowler*, 2019 WL 330910, *7 (attorney rates of "between $300 per hour and $850 per hour" for associates and partners were reasonable); *Hefler*, 2018 WL 6619983, at *14  (rates "from $650 to $1,250 for partners or senior counsel, from $400 to $650 for associates, and from $245 to $350 for paralegals" were reasonable) (citing *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*, No. 2672 CRB (JSC), 2017 WL 1047834, at *5 (N.D. Cal. Mar. 17, 2017)).

These numbers yield a lodestar of $3,183,091.00, meaning that the requested amount of $1,950,000 is about 61% of the lodestar.[5]  King Decl. ¶¶ 47-48.  "Multipliers of 1 to 4 are commonly found to be appropriate in common fund cases."  *Sheikh v. Tesla, Inc.*, No. 17-CV-02193-BLF, 2018 WL 5794532, at *8 (N.D. Cal. Nov. 2, 2018) (citation omitted); *see also Steiner v. Am. Broad. Co.*, 248 F. App'x 780, 783 (9th Cir. 2007) (even a multiplier of 6.85 was "well within the range

---

[5] As set forth above, to err on the side of conservatism Plaintiffs have not included in their lodestar calculation work performed in connection with the predecessor *Gallagher* lawsuit, except factual research related to the Complaint herein.  *See* n.2, *supra*.

of multipliers that courts have allowed"). Although Class Counsel have devoted four years to prosecuting the case, the requested fee is well below Class Counsel's lodestar. This negative multiplier indicates that the fee request is reasonable. *See, e.g.*, *Nexus 6P*, 2019 WL 6622842, at *13 (30% award was reasonable when the requested amount represented a negative lodestar multiplier); *Lenovo*, 2019 WL 1791420, at *9 (same); *Gen. Mills*, 2013 WL 3213832, at *6 (same); *Rosado v. Ebay Inc.*, No. 5:12-CV04005-EJD, 2016 WL 3401987, at *8 (N.D. Cal. June 21, 2016) (conducting a lodestar cross-check, the court found that a negative multiplier "strongly suggests the reasonableness of the negotiated fee."); *Isquierdo v. W.G. Hall, LLC*, No. 15-CV-00335-BLF, 2017 WL 4390250, at *8 (N.D. Cal. Oct. 3, 2017) (that the requested amount constituted a reduction in the lodestar amount weighed in favor of its reasonableness).

In sum, Class Counsel respectfully submit that the requested fee is reasonable in view of the favorable result for the Settlement Class, the skill required to reach the Settlement, the significant risks Class Counsel assumed and the contingent nature of their representation, the four-year duration of the case, and the fact that the requested fee represents a negative multiplier to the lodestar. *Cf. Gergetz v. Telenav, Inc.*, No. 16-CV-04261-BLF, 2018 WL 4691169, at *7 (N.D. Cal. Sept. 27, 2018) ("The Court is persuaded that the benchmark should be increased based on the exceptional results achieved, the risk of litigation, the fine quality of Class Counsel's work, and the contingent nature of the fee.").

### E.   Counsels' Litigation Expenses Are Reasonable And Should Be Reimbursed

"Reasonable costs and expenses incurred by an attorney who creates or preserves a common fund are reimbursed proportionately by those class members who benefit[.]" *In re Media Vision Tech. Sec. Litig.*, 913 F. Supp. 1362, 1366 (N.D. Cal. 1995) (citation omitted). Class Counsel have incurred $636,556.28 in unreimbursed litigation expenses, including costs advanced in connection with experts, legal research, court reporting services, travel for depositions, copying and mailing, for the costs of notice administration associated with class certification, and other customary litigation expenses. King Decl. ¶¶ 47, 49-53; *see id.*, Ex. B.

Fifty-three percent (53%) of total costs and expenses relate to experts necessarily retained to perform services for Plaintiffs and the Settlement Class related to class certification. *Id.* ¶ 51.

That included retaining a damages expert (Economics & Technology) as well as a survey expert (Krosnick) and survey services (Berent, SSRS, NORC Consumer Survey).  Other major expenses include online research (16% of the total costs and expenses) and notice administration by Court-appointed KCC Class Action Services (Dkt. 180) (14% of the total costs and expenses).  *Id.* ¶ 52.

An attorney is also entitled to recover as part of the award of attorney's fees "those out-of-pocket expenses that would normally be charged to a fee paying client."  *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (quotations omitted).  The expenses incurred were reasonable and necessary for prosecuting this case and courts have frequently found such expenses to be recoverable.  *See, e.g.*, *In re LendingClub Sec. Litig.*, No. C 16-02627 WHA, 2018 WL 4586669, at *3 (N.D. Cal. Sept. 24, 2018) (expenses such as expert and consultant fees, court fees, travel and lodging costs, legal research fees, and copying expenses were reasonable and recoverable); *Thomas*, 2018 WL 2234598, at *4 (granting requests for costs consisting of "court fees, online research fees, postage and copying, travel costs, electronic discovery expenses, deposition costs, mediation charges, and travel costs").  The Court should therefore allow reimbursement of counsels' reasonable litigation expenses in the amount requested.

## F.      The Court Should Also Grant Each Class Representative A Service Award

Plaintiffs request service awards of $5,000 for each of the four Settlement Class Representatives.  Such an amount is "presumptively reasonable" in this district.  *Salamanca v. Sprint/United Mgmt. Co.*, No. 15-CV-05084-JSW, 2018 WL 1989568, at *4 (N.D. Cal. Mar. 9, 2018).  Service awards are "intended to compensate class representatives for work undertaken on behalf of a class" and "are fairly typical in class action cases."  *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 943 (9th Cir. 2015) (internal quotation marks and citation omitted).   In considering whether to make a service award, courts consider "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, … and the amount of time and effort the plaintiff expended in pursuing the litigation."  *Johnson v. Fujitsu Tech. & Bus. of Am., Inc.*, No. 16-CV-03698-NC, 2018 WL 2183253, at *8 (N.D. Cal. May 11, 2018) (alterations and citation omitted); *Lenovo*, 2019 WL 1791420, at *9-10 (same).

Each Class Representative was willing to step forward to represent and protect the interests of the Settlement Class by actively monitoring the status of the litigation, communicating regularly with Class Counsel, searching for and producing responsive documents, responding to interrogatories and requests for admission, preparing for and attending full-day depositions, and reviewing significant pleadings prior to their filing.    King Decl. ¶¶ 54-58.    Each Class Representative has submitted a declaration describing their involvement in the Action and the time and effort they each expended in service to the Settlement Class.[6]

Courts have awarded service awards for similar work on behalf of the class and time commitments.    Indeed, "[i]n this district, a $5,000 payment is presumptively reasonable." *Bellinghausen*, 306 F.R.D. at 266; *see, e.g.*, *Lenovo*, 2019 WL 1791420, at *10 (finding $5,000 service award "reasonable" where the plaintiffs "actively monitored the litigation, communicated frequently with Class Counsel, searched for and produced responsive documents, worked with Class Counsel to respond to interrogatories, prepared for and attended depositions, reviewed documents, and participated in the settlement process"); *Cuzick v. Zodiac U.S. Seat Shells, LLC*, No. 16CV-03793-HSG, 2018 WL 2412137, at *5 (N.D. Cal. May 29, 2018) (awarding plaintiff $5,000 service award for active role in the case and assisting class counsel); *Salamanca*, 2018 WL 1989568, at *4 (approving $5,000 service award based on the plaintiff's time assisting class counsel with mediation, providing information, and searching for and producing documents); *Hendricks*, 2016 WL 5462423, at *14 (finding $5,000 service award "fair and reasonable" where the plaintiff took time away from personal and work activities to pursue and litigation this action" such as by working closely with counsel, helping respond to discovery, gathering documents for production, and sitting for a deposition).

The Court should therefore grant service awards of $5,000 for each of the four Settlement Class Representatives.

---

[6] *See* King Decl., Ex. C (Decl. of Martin Schneider, dated Apr. 16, 2020); Ex. D (Decl. of Sarah Deigert, dated April 20, 2020); Ex. E (Decl. of Teresa Gamage, dated Apr. 16, 2020); Ex. F (Decl. of Nadia Parikka, dated Apr. 17, 2020).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## IV.   <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs respectfully ask the Court to issue an Order awarding $1,950,000 in attorneys' fees, reimbursement of $636,556.28 in litigation expenses, and service awards of $5,000 each for the four Class Representatives.

Respectfully submitted,

**KAPLAN FOX & KILSHEIMER LLP**

DATED:  April 24, 2020

By:   /s/ *Laurence D. King*
Laurence D. King

Laurence D. King
Matthew B. George
Mario M. Choi
1999 Harrison Street, Suite 1560
Oakland, CA 94612
Telephone:  415-772-4700
Facsimile:   415-772-4707
*lking@kaplanfox.com*
*mgeorge@kaplanfox.com*
*mchoi@kaplanfox.com*

**KAPLAN FOX & KILSHEIMER LLP**
Frederic S. Fox (*pro hac vice*)
Donald R. Hall (*pro hac vice*)
850 Third Avenue, 14th Floor
New York, NY 10022
Telephone:  212-687-1980
Facsimile:   212-687-7714
*ffox@kaplanfox.com*
*dhall@kaplanfox.com*

**KOBRE & KIM LLP**
Hartley M. K. West
150 California Street, 19th Floor
San Francisco, CA 94111
Telephone: 415-582-4781
*hartley.west@kobrekim.com*

**KOBRE & KIM LLP**
Matthew I. Menchel (*pro hac vice*)
201 South Biscayne Boulevard, Suite 1900
Miami, FL 33131
Telephone: 305-967-6108
*matthew.menchel@kobrekim.com*

*Counsel for Plaintiffs and the Settlement Class*

Case No. 4:16-cv-02200-HSG (KAW)
NOTICE OF MOT. AND MOT. FOR ATTY FEES, EXPENSES, AND SERVICE AWARDS; MPA ISO THEREOF