Laurence D. King (SBN 206423)
Matthew B. George (SBN 239322)
Mario M. Choi (SBN 243409)
**KAPLAN FOX & KILSHEIMER LLP**
1999 Harrison Street, Suite 1560
Oakland, CA 94612
Telephone:  415-772-4700
Facsimile:  415-772-4707
lking@kaplanfox.com
mgeorge@kaplanfox.com
mchoi@kaplanfox.com

Frederic S. Fox (*pro hac vice*)
Donald R. Hall (*pro hac vice*)
**KAPLAN FOX & KILSHEIMER LLP**
850 Third Avenue, 14th Floor
New York, NY 10022
Telephone:  212-687-1980
Facsimile:  212-687-7714
ffox@kaplanfox.com
dhall@kaplanfox.com

Hartley M. K. West (SBN 191609)
**KOBRE & KIM LLP**
150 California Street, 19th Floor
San Francisco, CA 94111
Telephone: 415-582-4781
hartley.west@kobrekim.com

Matthew I. Menchel (*pro hac vice*)
**KOBRE & KIM LLP**
201 South Biscayne Boulevard, Suite 1900
Miami, FL 33131
Telephone: 305-967-6108
matthew.menchel@kobrekim.com

*Attorneys for Plaintiffs and the Settlement Class*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## OAKLAND DIVISION

MARTIN SCHNEIDER, SARAH DEIGERT, THERESA GAMAGE, and NADIA PARIKKA, Individually and on Behalf of All Others Similarly Situated,

Plaintiffs,

v.

CHIPOTLE MEXICAN GRILL, INC., a Delaware Corporation,

Defendant.

Case No. 4:16-cv-02200-HSG (KAW)

**NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

Judge: Hon. Haywood S. Gilliam, Jr.
Courtroom: 2, 4th Floor
Date: July 30, 2020
Time: 2:00 p.m.

**NOTICE OF MOTION AND MOTION**

**TO ALL PARTIES AND THEIR RESPECTIVE ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on July 30, 2020, at 2 p.m., in Courtroom 2 of the United States District Court for the Northern District of California, Ronald V. Dellums Federal Building and U.S. Courthouse, 1301 Clay Street, Oakland, California 94612, the Honorable Haywood S. Gilliam, Jr., presiding, Plaintiffs and Settlement Class Representatives Martin Schneider, Sarah Deigert, Theresa Gamage, and Nadia Parikka ("Plaintiffs") will and hereby do move for an Order pursuant to Rule 23 of the Federal Rules of Civil Procedure ("Rule"): (i) granting final approval of the proposed Settlement[1] with Defendant Chipotle Mexican Grill, Inc. ("Defendant" or "Chipotle"); (ii) finally approving Plaintiffs' Plan of Allocation; and (iii) dismissing with prejudice Plaintiffs' claims against Defendant.

This motion is based upon this Notice of Motion and Motion, the Memorandum of Points and Authorities set forth below, the accompanying Declaration of Laurence D. King in Support of Plaintiffs' Motion for Final Approval of Settlement, dated June 1, 2020 ("King Declaration"), and the exhibits thereto, the Motion for Attorneys' Fees, Expenses, and Service Awards, filed April 24, 2020 ("Fees Motion") (Dkt. 224), and accompanying Declaration of Laurence D. King in Support of Plaintiffs' Motion for Attorneys' Fees, Expenses, and Service Awards ("King Fees Declaration") (Dkt. 224-1), and the exhibits thereto, the pleadings and records on file in this Action, and other such matters and argument as the Court may consider at the hearing of this motion.

**STATEMENT OF ISSUES TO BE DECIDED**

1.      Whether the Court should grant final approval of the Settlement.

2.      Whether the Court should finally approve the Plan of Allocation.

3.      Whether the Court should dismiss with prejudice Plaintiffs' claims against Defendant.

---

[1]  All capitalized terms are defined in the Settlement Agreement and Release ("Settlement" or "Stipulation"), filed September 11, 2019 (Dkt. 205-2), unless otherwise noted.

**TABLE OF CONTENTS**

Page

MEMORANDUM OF POINTS AND AUTHORITIES .............................................. 1

I.      INTRODUCTION ................................................................................................ 1

II.     BACKGROUND ................................................................................................. 3

III.    CLASS NOTICE AND CLAIMS ADMINISTRATION.................................... 3

        A.      Notice And Settlement Administration.................................................... 3

        B.      Claims, Objections, And Requests For Exclusion .................................. 5

IV.     ARGUMENT ...................................................................................................... 5

        A.      Legal Standard For Final Approval Of Class Settlements ...................... 5

        B.      The Settlement Is Fair, Reasonable, And Adequate, And Should Be
                Approved .................................................................................................. 6

                1.      The Settlement Resulted From Informed, Arms'-Length
                        Negotiations .................................................................................. 8

                2.      The Relief Under The Settlement Is Adequate And Balances The
                        Risks And Expense Of Trial ....................................................... 11

                        a.      The Strength Of Plaintiffs' Case And The Risk Of
                                Continuing Litigation Weighs In Favor Of Approval.................. 11

                        b.      The Settlement Amount Constitutes A Substantial,
                                Immediate Recovery For The Class And Weighs In Favor
                                Of Approval ..................................................................... 13

                        c.      The Experienced View Of Counsel And Response Of Class
                                Members Weigh In Favor Of Approval ......................................... 15

                        d.      The Claims Process Is Convenient And Effective, And The
                                Requested Attorneys' Fees Are Reasonable .................................. 17

                3.      The Settlement Treats All Class Members Equally .................................. 18

        C.      The Court Approved Notice Program Satisfies Due Process And
                Adequately Provided Notice To Class Members .................................. 18

        D.      The Plan Of Allocation Is Fair, Reasonable, And Adequate, And Should Be
                Finally Approved .................................................................................. 20

V.      CONCLUSION .................................................................................................. 21

NOTICE OF MOT. AND MOT. FOR FINAL APPR. OF SETTLEMENT; MPA ISO THEREOF

**Cases**

*Bautista v. Harvest Mgmt. Sub LLC*,
   No. CV12-10004 FMO (CWx), 2014 WL 12579822 (C.D. Cal. July 14, 2014) ..................... 17

*Bostick v. Herbalife Int'l of Am., Inc.*,
   No. CV 13-2488 BRO (SHx), 2015 WL 12731932 (C.D. Cal. May 14, 2015)........................ 15

*Bower v. Cycle Gear, Inc.*,
   No. 14-cv-02712-HSG, 2016 WL 4439875 (N.D. Cal. Aug. 23, 2016).................................. 11

*Briseno v. ConAgra Foods, Inc.*,
   844 F.3d 1121 (9th Cir. 2017).............................................................................. 19, 20

*Broomfield v. Craft Brew Alliance, Inc.*,
   No. 17-cv-01027-BLF, 2020 WL 1972505 (N.D. Cal. Feb. 5, 2020) .............................. passim

*Brown v. Hain Celestial Grp., Inc.*,
   No. 3:11-CV-03082-LB, 2016 WL 631880 (N.D. Cal. Feb. 17, 2016)................................. 12

*Campbell v. Facebook, Inc.*,
   951 F.3d 1106 (9th Cir. 2020)........................................................................................ 10

*Churchill Vill., LLC v. Gen. Elec.*,
   361 F.3d 566 (9th Cir. 2004)........................................................................................ 7, 8

*Class Plaintiffs v. Seattle*,
   955 F.2d 1268 (9th Cir. 1992)...................................................................................... 6, 8

*Curtis–Bauer v. Morgan Stanley & Co., Inc.*,
   No. 06–C–3903 TEH, 2008 WL 4667090 (N.D. Cal. Oct. 22, 2008) ................................. 13

*Dickey v. Advanced Micro Devices, Inc.*,
   No. 15-cv-04922-HSG, 2020 WL 870928 (N.D. Cal. Feb. 21, 2020)........................ 7, 9, 14, 17

*Downey Surgical Clinic, Inc. v. Optuminsight, Inc.*,
   No. CV09-5457PSG (JCx), 2016 WL 5938722 (C.D. Cal. May 16, 2016) ........................... 14

*Free Range Content, Inc. v. Google, LLC*,
   No. 14-cv-02329-BLF, 2019 WL 299504 (N.D. Cal. Mar. 21, 2019).............................. 9, 15

*Graves v. United Indus. Corp.*,
   No. 2:17-cv-06983-CAS-SKx, 2020 WL 953210 (C.D. Cal. Feb. 24, 2020)........................ 13

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998)........................................................................................ 7

*Hefler v. Wells Fargo & Co.*,
   No. 16-CV-05479-JST, 2018 WL 6619983 (N.D. Cal. Dec. 18, 2018) ........................... 17, 20

*Hendricks v. Starkist Co.*,
   No. 13-CV-00729-HSG, 2016 WL 5462423 (N.D. Cal. Sept. 29, 2016), *aff'd sub nom.*
   *Hendricks v. Ference*, 754 F. App'x 510 (9th Cir. 2018).................................................. 11, 12

**Page(s)**

*Holloway v. Bristol-Myers Corp.*,
   485 F.2d 986 (D.C. Cir. 1973) ................................................................................................. 16

*Hunter v. Nature's Way Prods., LCC*,
   No. 3:16-cv-532-WQH-AGS, 2020 WL 71160 (S.D. Cal. Jan. 6, 2020) ................................. 19

*In re Aftermarket Auto. Lighting Prod. Antitrust Litig.*,
   No. 09 MDL 2007-GW(PJWX), 2014 WL 12591624 (C.D. Cal. Jan. 10, 2014) .................... 20

*In re Bluetooth Headset Prods. Liab. Litig.*,
   654 F.3d 935 (9th Cir. 2011) .................................................................................................... 10

*In re Citric Acid Antitrust Litig.*,
   145 F. Supp. 2d 1152 (N.D. Cal. 2001) .............................................................................. 18, 20

*In re Extreme Networks, Inc. Sec. Litig.*,
   No. 15-CV-04883-BLF, 2019 WL 3290770 (N.D. Cal. July 22, 2019) ............................. 13, 18

*In re Hyundai & Kia Fuel Econ. Litig.*,
   926 F.3d 539 (9th Cir. 2019) .................................................................................................... 11

*In re Lenovo Adware Litig.*,
   No. 15-md-02624-HSG, 2019 WL 1791420 (N.D. Cal. Apr. 24, 2019) ........................... passim

*In re Linkedin User Privacy Litig.*,
   309 F.R.D. 573 (N.D. Cal. 2015) ............................................................................................. 17

*In re Mego Fin. Corp. Sec. Litig.*,
   213 F.3d 454 (9th Cir. 2000) .................................................................................................. 8, 9

*In re Netflix Privacy Litig.*,
   No. 5:11-CV-00379 EJD, 2013 WL 1120801 (N.D. Cal. Mar. 18, 2013) .................................. 8

*In re Nexus 6P Prods. Liab. Litig.*,
   No. 17-cv-02185-BLF, 2019 WL 6622842 (N.D. Cal. Nov. 12, 2019) ................................. 7, 18

*In re Omnivision Techs., Inc.*,
   559 F. Supp. 2d 1036 (N.D. Cal. 2008) .............................................................................. 13, 15

*In re Online DVD-Rental Antitrust Litig.*,
   779 F.3d 934 (9th Cir. 2015) ...................................................................................................... 1

*In re Tableware Antitrust Litig.*,
   484 F. Supp. 2d 1078 (N.D. Cal. 2007) ................................................................................... 18

*In re Toys R Us-Delaware, Inc.—Fair and Accurate Credit Transactions Act (FACTA) Litig.*,
   295 F.R.D. 438 (C.D. Cal. 2014) ....................................................................................... 10, 13

*In re Volkswagen "Clean Diesel" Mktg., Sales Practice & Prods. Liab. Litig.*,
   229 F. Supp. 3d 1052 (N.D. Cal. 2017) ..................................................................................... 6

*Johnson v. Gen. Mills, Inc.*,
   No. SACV 10-00061-CJC, 2013 WL 3213832 (C.D. Cal. June 17, 2013) ............................... 14

Page(s)

*Larsen v. Trader Joe's Co.*,
No. 11-CV-05188-WHO, 2014 WL 3404531 (N.D. Cal. July 11, 2014) ................................. 14

*Linney v. Cellular Alaska P'ship*,
151 F.3d 1234 (9th Cir. 1998) .............................................................................................. 8, 15

*Littlejohn v. Ferrara Candy Co.*,
No. 3:18-cv-00658-AJB-WVG, 2019 WL 2514720 (S.D. Cal. June 17, 2019) ....................... 19

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
221 F.R.D. 523 (C.D. Cal. 2004) ............................................................................................ 12

*Noll v. eBay, Inc.*,
309 F.R.D. 593 (N.D. Cal. 2015) ............................................................................................ 15

*Norris v. Mazzola*,
No. 15-CV-04962-JSC, 2017 WL 6493091 (N.D. Cal. Dec. 19, 2017) ...................................... 6

*Officers for Justice v. Civil Serv. Com'n of the City and Cty. of San Francisco*,
688 F.2d 615 (9th Cir. 1982) ................................................................................................ 7, 13

*Phillips Petro. Co. v. Shutts*,
472 U.S. 797 (1985) ................................................................................................................. 18

*Retta v. Millennium Prods., Inc.*,
No. CV15-1801 PSG AJWx, 2017 WL 5479637 (C.D. Cal. Aug. 22, 2017) ......................... 12

*Roes, 1-2 v. SFBSC Mgmt., LLC*,
944 F.3d 1035 (9th Cir. 2019) ................................................................................................ 10

*Sadowska v. Volkswagen Grp. of Am., Inc.*,
No. CV 11-00665-BRO AGRX, 2013 WL 9600948 (C.D. Cal. Sept. 25, 2013) ..................... 13

*Schneider v. Chipotle Mexican Grill, Inc.*,
No. 16-cv-02200-HSG, 2019 WL 570751 (N.D. Cal. Feb. 12, 2019) ..................................... 10

*Schneider v. Chipotle Mexican Grill, Inc.*,
No.16-cv-02200-HSG, 2019 WL 1512265 (N.D. Cal. Apr. 8, 2019) .......................................... 4

*Schneider v. Chipotle Mexican Grill, Inc.*,
No. 16-cv-02200-HSG, 2020 WL 511953 (N.D. Cal. Jan. 31, 2020) ............................... passim

*Schneider v. Chipotle Mexican Grill, Inc.*,
328 F.R.D. 520 (N.D. Cal. 2018) ...................................................................................... 10, 12

*Shvager v. ViaSat, Inc.*,
No. CV 12-10180 MMM (PJWx), 2014 WL 12585790 (C.D. Cal. Mar. 10, 2014) ................ 14

*Spann v. J.C. Penney Corp.*,
314 F.R.D. 312 (C.D. Cal. 2016) ............................................................................................ 11

*Stovall-Gusman v. W.W. Granger, Inc.*,
No. 13-cv-02540-HSG, 2015 WL 3776765 (N.D. Cal. June 17, 2015) ................................... 14

**Page(s)**

*Vasquez v. Coast Valley Roofing*,
   670 F. Supp. 2d 1114 (E.D. Cal. 2009) ........................................................................... 6

**Statutes**

28 U.S.C.
   § 1715(a) (Class Action Fairness Act of 2005, "CAFA") ............................................ 4, 17

15 U.S.C.
   § 45 (Fed. Trade Comm'n Act, Section 5) ................................................................ 1, 5, 16

California Civil Code
   § 1781(d) (California Consumers Legal Remedies Act) ..................................................... 4

**Rules**

Federal Rules of Civil Procedure
   Rule 23 ......................................................................................................................... 6
   Rule 23(a) ..................................................................................................................... 1
   Rule 23(b)(3) ................................................................................................................ 1
   Rule 23(c)(2) .............................................................................................................. 19
   Rule 23(e) .................................................................................................. 5, 7, 8, 19
   Rule 23(e)(2) ........................................................................................................... 7, 9
   Rule 23(e)(2)(A)-(B) ..................................................................................................... 8
   Rule 23(e)(2)(C)(i) ..................................................................................................... 11
   Rule 23(e)(2)(C)(ii) .................................................................................................... 17
   Rule 23(e)(2)(C)(ii)-(iv) ............................................................................................ 20
   Rule 23(e)(2)(C)(iv) .................................................................................................... 18
   Rule 23(e)(2)(D) ......................................................................................................... 18
   Rule 23(e)(3) ............................................................................................................... 18
   Rule 23(h) .................................................................................................................. 19

**Treatises**

MANUAL FOR COMPLEX LITIGATION, FOURTH
   § 23.63 (Fed. Jud. Ctr. 2004) .......................................................................................... 6

William B. Rubenstein, Albert Conte & Herbert Newberg, 4 NEWBERG ON CLASS ACTIONS
   §§ 13:39–40 (5th ed. 2014) ............................................................................................. 6

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

On January 31, 2020, the Court granted preliminary approval of the proposed Settlement, provisionally certifying the proposed Settlement Class pursuant to )Rule 23(a) and 23(b)(3) for settlement purposes and directed Class Notice to the Settlement Class (Dkt. 219). *See Schneider v. Chipotle Mexican Grill, Inc.*, No. 16-cv-02200-HSG, 2020 WL 511953 (N.D. Cal. Jan. 31, 2020). Pursuant to the Joint Stipulation and Order Setting Dates ("Scheduling Order") (Dkt. 222), the Court scheduled the Final Approval Hearing for July 30, 2020.

Plaintiffs filed their Fees Motion on April 24, 2020, detailing the history of the litigation and the Settlement Class's reception to the Settlement as of that time. Since then, the reaction of the Settlement Class Members to the notice of the Settlement has continued to be positive, with nearly 251,000 Claim Forms filed, one request for exclusion sought, and no objections received.[2] Pursuant to the Scheduling Order, Plaintiffs now submit this memorandum in support of, among other things, final approval of the Settlement.

The Settlement is "fair, reasonable, and adequate," and represents a very good recovery for the Settlement Class. *See In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 945 (9th Cir. 2015). The Settlement provides for a cash Settlement Fund of $6.5 million. The Settlement delivers considerable relief to the Settlement Class: indeed, eligible claimants will receive an amount greater than the price premium calculated by Plaintiffs' expert. Had the Settlement not been achieved, Settlement Class Members would face substantial uncertainty and delay waiting for a successful result in this litigation. Indeed, the Settlement Class would have continued to face significant litigation risk in the form of the potential decertification of the certified classes, *Daubert* motions, trial, and appeals.

---

[2] Class Counsel have received letters disagreeing with the Settlement amount per claim and have either requested mediation or allege that they are owed damages under the "Federal Trade Commission Act Section 5: Unfair or Deceptive Act or Practices." *See* King Decl., Ex. B. For the reasons set forth below, because these letters do not meet the requirements for a valid "objection" or a valid "opt out" under the terms of the Settlement, or are otherwise invalid, the Court should reject them. *See* Settlement § V ("Procedures for Objecting to or Requesting Exclusion from Settlement").

1       The Settlement terms, Class Notice, and the Claims Process have been negotiated in

2  satisfaction of the Northern District's Procedural Guidance for Class Action Settlements

3  ("Procedural Guidance").[3]  The Settlement with Chipotle was negotiated at arms-length, delivers a

4  favorable result to the Settlement Class, and will avoid further protracted litigation.  Based on

5  Plaintiffs' expert, Class Counsel estimated a maximum, best case $24.5 million recovery at trial for

6  the three states originally at issue in this Action, had Plaintiffs prevailed.  *See* King Fees Decl. ¶ 32.

7  Using assumptions provided by Chipotle, and based on a nationwide Settlement Class, Plaintiffs

8  extrapolated that the maximum recoverable damages would be approximately $87.5 million.  *Id.*;

9  *see also* Suppl. Decl. of Laurence D. King in Further Supp. of Pltfs' Unopp. Mot. for Prelim. Appr.

10  of Proposed Settlement, to Amend Compl. for Settlement Purposes, and to Modify Cl. Definitions,

11  dated Dec. 12, 2019 (Dkt. 213), ¶¶ 3-4.  The Settlement thus represents approximately 7.4% of

12  Plaintiffs' estimated recoverable damages.  *Id.*  Settlement Class Members nonetheless would

13  obtain a significant recovery, considering that Plaintiffs' expert calculated the price premium of an

14  average $10 meal at Chipotle to be only $0.23 (2.47%).  *See* Decl. of Laurence D. King in Support

15  of Pls' Mot. for Cl. Cert., dated Nov. 17, 2017, Ex. 41 (Report of Dr. Jon A. Krosnick, dated

16  Aug. 11, 2017 ("Krosnick Rpt.")) (Dkt. 95-42)).

17       Under the supervision of Class Counsel, Court-approved Class Action Settlement

18  Administrator Angeion Group, LLC ("Angeion") has carried out the Class Notice plan approved

19  by the Court.  Class Notice has included: (1) digital internet advertising, (2) newspaper publication,

20  once in *People* magazine and four times in the *East Bay Times*, (3) the maintenance of the

21  Settlement Website, and (4) a toll-free hotline accessible 24 hours a day, 7 days a week.  Response

22  to Class Notice and to the Settlement has been strong, particularly for a notice program without any

23  direct notice.  Should the Court grant final approval, over 250,000 Settlement Class Members will

24  be eligible to receive monetary payments.

25       Plaintiffs respectfully request that the Court grant final approval of the Settlement.

---

[3] https://cand.uscourts.gov/forms/procedural-guidance-for-class-action-settlements/

1

## II.  BACKGROUND

2      Plaintiffs have detailed the background of this Action in their Motion for Preliminary

3   Approval of Proposed Settlement, to Amend Complaint for Settlement Purposes, and to Modify

4   Class Definitions ("Preliminary Approval Motion") (Dkt. 205), and in their Fees Motion.  Plaintiffs

5   accordingly provide the following background only to the extent relevant to the instant motion.  *See*

6   Procedural Guidance ("If the plaintiffs choose to file two separate motions, they should not repeat

7   the case history and background facts in both motions.").

8      The Parties agreed to resolve the Action after four years of active litigation and three in-

9   person mediations.  *See* Fees Mot. at 2-5; King Fees Decl. ¶¶ 9-31.  Plaintiffs' efforts in the Action

10  included completing substantial factual and expert discovery, extensive motion practice, and trial

11  preparation, as well as the three in-person mediations.  *Id.*

12     Plaintiffs filed their Preliminary Approval Motion on September 11, 2019.  The Parties

13  appeared at the preliminary approval hearing on December 5, 2019 (Dkt. 212).  On January 31,

14  2020, the Court granted preliminary approval of the Settlement, provisionally certifying the

15  Settlement Class and directing Class Notice to be issued to Settlement Class Members pursuant to

16  the Settlement and Preliminary Approval Motion.  *Schneider*, 2020 WL 511953, at *12.  Pursuant

17  to the Scheduling Order, the Court directed Class Notice be issued to Settlement Class Members

18  no later than March 31, 2020.

19     Plaintiffs filed the Fees Motion on April 24, 2020.  In the Fees Motion, Plaintiffs provided

20  the Court with a detailed background of the Action and the results of the Class Notice and Claims

21  Process to date.  The current results of the Class Notice and Claims Process are detailed below.

22  After the Court grants final approval of the Settlement, Class Counsel will provide a post-

23  distribution accounting within 21 days after the distribution of the Settlement Awards.  King Decl.

24  ¶ 7; *see also* Settlement § XXV (Settlement Timeline).

25  ## III.  CLASS NOTICE AND CLAIMS ADMINISTRATION

26      ### A.  Notice And Settlement Administration

27     The Court's Preliminary Approval Order appointed Angeion to serve as Class Action

28  Settlement Administrator and to provide Class Notice to the Settlement Class.  As detailed in the

Declaration of Steven Weisbrot of Angeion Group, LLC Regarding Settlement Administration, dated June 1, 2020 ("Weisbrot Declaration"), submitted as Exhibit A to the King Declaration, Class Notice has been successfully implemented.  Settlement Class Members have been notified of their rights by Website Notice, Newspaper Publication Notice, and via an extensive digital media plan to publish Notice of the Settlement.  *See id.* ¶¶ 5-11.

Angeion operates the dedicated Settlement Website, www.chipotlenongmoclassaction.com,[4] as well as a dedicated toll-free number.  *Id.* ¶¶ 7, 9.  These resources provide information about the Settlement and Claims Process to Settlement Class Members in real time and allow them access to the Claim Form and other documents.  *Id.*  Among other things, the Long Form Notice, Claim Form, Preliminary Approval Motion, Preliminary Approval Order, Stipulation, Amended Class Action Complaint, and the Fees Motion have been posted on the Settlement Website for public viewing and download.  *Id.*  The Settlement Website is included on all forms of Class Notice provided to Settlement Class Members.  As of May 31, 2020, there have been 226,387 unique visitors to the Website and approximately 509,603-page views.  *Id.* ¶ 8.

In addition, Angeion's media plan included digital internet advertising serving 59,598,000 impressions on various websites, which targeted a potential audience size of 30,100,000.  *Id.* ¶ 6; *see also* Decl. of Steven Weisbrot of Angeion Group, LLC in Supp. of Mot. for Prelim. Appr. of Cl. Action Settlement, filed Sept. 11, 2019 (Dkt. 205-12), ¶¶ 14, 19.  Additionally, on or about March 27, 2020, Angeion placed an advertisement in *People* magazine, and also placed advertisements in the *East Bay Times* for four weeks, as required by the California Consumers Legal Remedies Act, Cal. Civ. Code § 1781(d).  *Id.* ¶ 5.  Finally, Angeion caused notice to be served pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1715(a), on relevant government authorities.  *Id.* ¶ 4.

---

[4] The Website was established and operated by KCC Class Action Services ("KCC") until the Court granted preliminary approval of the Settlement, whereby Angeion took over operation of and reestablished the Website (Dkt. 180).  *See Schneider v. Chipotle Mexican Grill, Inc.*, No.16-cv-02200-HSG, 2019 WL 1512265, at *5 (N.D. Cal. Apr. 8, 2019) (appointing KCC as Notice Administrator).

Roughly 72.64% of the Settlement Class was contacted through the dissemination of internet advertisements and notice in *People* magazine, separate and apart from the publications in the *East Bay Times*, Settlement Website, and via the toll-free hotline.  *Id.* ¶ 11.

### B.   Claims, Objections, And Requests For Exclusion

The deadline to submit claims, request exclusion, or file an objection was May 30, 2020. *Id.* ¶ 13.[5]  As of May 31, 2020, the Settlement Administrator received one timely request for exclusion from the Settlement and no objections.[6]  *Id.*

The Claim Form was designed to allow for ease of use by Settlement Class Members to submit claims online or by mail (Dkt. 205-5).  As of May 31, 2020, Angeion has received 250,975 Claims, 4,386 Claims of which are supported with proofs of purchase.  Weisbrot Decl. ¶ 12.  These Claims are subject to review and audit by Angeion.  *Id.*

Subject to Angeion's review and audit of received Claims, Class Counsel estimate that most of the Net Settlement Fund (Settlement Fund minus Settlement Costs) will likely be distributed to claimants, with a remainder for *cy pres*.  King Decl. ¶ 5.  Once Angeion completes its review and audit of the received Claims, Plaintiffs will update the Court with more exact numbers in their reply in further support of final approval.  *Id.*

### IV.   ARGUMENT

### A.   Legal Standard For Final Approval Of Class Settlements

A class action may not be dismissed, compromised, or settled without approval of the Court. Fed. R. Civ. P. 23(e).  The settlement approval procedure includes three steps: (1) certification of a settlement class and preliminary approval of the proposed settlement; (2) dissemination of notice to class members; and (3) a formal fairness hearing, also known as a final approval hearing, at which class members may be heard regarding the settlement, and at which counsel may present

---

[5] Because mailed claims, exclusions, and objections must be postmarked by May 30, there may still be claims, exclusions, or objections in transit.  Angeion will make a supplemental declaration for any additional claims, exclusions, or objections received with Plaintiffs' reply in further support of this motion.  Should there be any further requests for exclusion and/or objections, Plaintiffs will respond to them in their reply.

[6] As noted above, Class Counsel received several letters disagreeing with the Settlement amount per claim and either seeking mediation or greater damages under Section 5 of the Federal Trade Commission Act.  *See* King Decl., Ex. B.

argument concerning the fairness, adequacy, and reasonableness of the settlement.  *Vasquez v. Coast Valley Roofing*, 670 F. Supp. 2d 1114, 1124-25 (E.D. Cal. 2009); *see also* MANUAL FOR COMPLEX LITIGATION, FOURTH § 23.63 (Fed. Jud. Ctr. 2004).  This procedure safeguards Settlement Class Members' due process rights and enables the Court to fulfill its role as the guardian of class interests.  *See* William B. Rubenstein, Albert Conte & Herbert Newberg, 4 NEWBERG ON CLASS ACTIONS §§ 13:39–40 (5th ed. 2014).

The Court completed the first two steps when it granted preliminary approval of the Settlement, preliminarily certified the Settlement Class, and approved Plaintiffs' Class Notice program (Dkt. 219).  *Schneider*, 2020 WL 511953, at *12.  There are no new facts that would alter the conclusion that certification of the Settlement Class is warranted.  And, the Class Notice program was extensive and thorough under the circumstances, which entailed posting notice online at the Settlement Website, creating and publishing banner ads on websites advertising notice of the Settlement, and placing advertisements in the *East Bay Times* and in *People* magazine.  *See* Weisbrot Decl. ¶¶ 5-7.

The Settlement Administrator has confirmed that Class Notice program was successful.  *Id.* ¶ 11.  Therefore, the Class Notice program fully complied with Rule 23 and due process.  *Id.* ¶ 15.

## B.    The Settlement Is Fair, Reasonable, And Adequate, And Should Be Approved

The Ninth Circuit favors compromise and settlement of complex class actions.  *Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992) (citations omitted); *see also In re Volkswagen "Clean Diesel" Mktg., Sales Practice & Prods. Liab. Litig.*, 229 F. Supp. 3d 1052, 1061 (N.D. Cal. 2017) (citing *Allen v. Bedolla*, 787 F.3d 1218, 1223 (9th Cir. 2015)); *Norris v. Mazzola*, No. 15-CV-04962-JSC, 2017 WL 6493091, at *4 (N.D. Cal. Dec. 19, 2017) ("Judicial policy strongly favors settlement of class actions.").  Accordingly, courts are to give:

> proper deference to the private consensual decision of the parties....  [T]he court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned.

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998) (citation and internal quotations omitted).

A court may approve the parties' settlement only after it determines that it is "fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e); *Officers for Justice v. Civil Serv. Com'n of the City and Cty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982).  In making this determination, courts in this Circuit balance the following factors:

> (1) the strength of the plaintiffs' case;
> (2) the risk, expense, complexity, and likely duration of further litigation;
> (3) the risk of maintaining class action status throughout the trial;
> (4) the amount offered in settlement;
> (5) the extent of discovery completed and the stage of the proceedings;
> (6) the experience and views of counsel;
> (7) the presence of a governmental participant; and
> (8) the reaction of the class members to the proposed settlement.

*Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (citing *Hanlon*, 150 F.3d at 1026); *Dickey v. Advanced Micro Devices, Inc.*, No. 15-cv-04922-HSG, 2020 WL 870928, at *4 (N.D. Cal. Feb. 21, 2020); *In re Lenovo Adware Litig.*, No. 15-md-02624-HSG, 2019 WL 1791420, at *4 (N.D. Cal. Apr. 24, 2019).

The recent amendments to Rule 23(e) direct courts to consider a similar list of factors:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
> > (i) the costs, risks, and delay of trial and appeal;
> > (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
> > (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
> > (iv) any agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2); *In re Nexus 6P Prods. Liab. Litig.*, No. 17-cv-02185-BLF, 2019 WL 6622842, at *6 (N.D. Cal. Nov. 12, 2019).  The Advisory Committee's notes clarify that this list of factors does not "displace" the *Churchill* factors, "but instead aim to focus the court and attorneys on 'the core concerns of procedure and substance that should guide the decision whether to approve the proposal.'" *Broomfield v. Craft Brew Alliance, Inc.*, No. 17-cv-01027-BLF, 2020 WL 1972505, at *6 (N.D. Cal. Feb. 5, 2020) (quoting Rule 23(e)(2) Adv. Cmte Notes to 2018 Am.).  An

evaluation of both the *Churchill* factors and the factors set forth in Rule 23(e) confirms that the Settlement is fair, reasonable, and adequate.

**1.    <u>The Settlement Resulted From Informed, Arms'-Length Negotiations</u>**

The Court must ensure that the Settlement is not "the product of collusion among the negotiating parties." *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000); *see Class Plaintiffs*, 955 F.2d at 1290.   And under Rule 23(e)(2)(A)-(B), the Court considers whether Plaintiffs and Class Counsel adequately represented the Settlement Class and whether the Settlement was negotiated at arm's length.   "These considerations overlap with certain *Churchill* factors, such as the noncollusive nature of negotiations, the extent of discovery completed, and the stage of proceedings." *Broomfield*, 2020 WL 1972505 at *7 (citing *Churchill*, 361 F.3d at 575).

"Courts have afforded a presumption of fairness and reasonableness of a settlement agreement where that agreement was the product of non-collusive, arms' length negotiations conducted by capable and experienced counsel." *In re Netflix Privacy Litig.*, No. 5:11-CV-00379 EJD, 2013 WL 1120801, at *4 (N.D. Cal. Mar. 18, 2013) (citing, *e.g.*, *Garner v. State Farm Mut. Auto. Ins. Co.*, No. CV 08 1365 CW (EMC), 2010 WL 1687832, at *13 (N.D. Cal. Apr. 22, 2010)).   The presumption is warranted here because the Settlement was reached only after extensive motion practice and discovery had permitted the Parties a full opportunity to make an informed decision about settlement. *See* Fees Motion at 2-5; King Fees Decl. ¶¶ 9-31; *see also Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998) (finding final approval appropriate where the parties have "sufficient information to make an informed decision about settlement") (citation omitted).   As "settlement negotiations were conducted free of collusion," the Court should evaluate the final approval factors "under the presumption of fairness and reasonableness." *Netflix Privacy*, 2013 WL 1120801, at *4.

Here, the Parties mediated three times in person before two mediators to arrive at the Settlement.   Although the Parties provided their respective positions to the mediator at their first mediation, the Parties did not reach a settlement as the Parties were in the midst of discovery and motion practice. *See* King Fees Decl. ¶¶ 11-15.   The Parties had more clarity concerning the strengths and weaknesses of their positions at their second in-person mediation, with the completion

- 8 -

of discovery and the Court's decision granting Plaintiffs' motion for class certification and denying Defendant's motion for summary judgment.  *Id.* ¶¶ 11-23.  Nonetheless, while some progress was made during that mediation, the Parties did not settle.  *Id.* ¶ 24.  It was only after continuous negotiations through the mediator, briefing on Chipotle's motion for decertification, and during trial preparations that the third in-person mediation culminated in the Settlement via a mediator's proposal.  *Id.* ¶¶ 27-28.  These multiple mediation sessions and the hard-fought compromise entered into by the Parties demonstrate that the Settlement "was not tainted by collusion or conflicts of interest."  *Dickey*, 2020 WL 870928, at *7; *see* Fed. R. Civ. P. 23(e)(2) Adv. Cmte. Notes to 2018 Am. (advising that "the involvement of a neutral … mediator or facilitator in those negotiations may bear on whether they were conducted in a manner that would protect and further the class interests"); *Free Range Content, Inc. v. Google, LLC*, No. 14-cv-02329-BLF, 2019 WL 1299504, at *6 (N.D. Cal. Mar. 21, 2019) (holding the presence of mediator weighs in favor of applying a presumption of correctness).

At the time the Parties reached settlement, the Parties had investigated and tested the strength of Plaintiffs' claims through fact and expert discovery, a motion for class certification, Defendant's request for appellate review of the Court's class certification decision, a summary judgment motion, and Defendant's pending motion to decertify.  *See* Fees Motion at 3-4; *Mego Fin. Corp.*, 213 F.3d at 459 (affirming settlement approval where "Class Counsel conducted significant investigation, discovery and research" and "had worked with damages and accounting experts throughout the litigation"); *Broomfield*, 2020 WL 1972505, at *7 (holding that there was "vigorous" prosecution "through extensive motion practice – including a motion to dismiss, a motion for class certification, a petition for permission to appeal the Class Certification Order, and an *en banc* petition for rehearing").  Indeed, the Parties completed broad fact and expert discovery, which included propounding or responding to hundreds of discovery requests, producing and reviewing hundreds of thousands of pages of documents, producing or reviewing five expert reports, taking or defending 17 depositions, engaging in numerous discovery meet-and-confers with Defendant, and seeking judicial intervention multiple times.  King Fees Decl. ¶¶ 11-14.  The Parties also engaged in substantial and extensive motion practice, including the above-mentioned motions

for class certification, summary judgment, and for decertification.  Here, settlement negotiations were informed and at arm's length.

Finally, although there is a so-called "clear sailing" provision in the Settlement, there are no indicia of collusion.  *See In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946-47 (9th Cir. 2011); *Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1050-56 (9th Cir. 2019).  First, the Court already determined in its Preliminary Approval Order that there were no indicia of collusion, and nothing has changed that would alter this determination.  *Schneider*, 2020 WL 511953, at *8-9.  And, unlike in *Bluetooth* or *Roes*, the Court here had already granted class certification prior to Plaintiffs' Preliminary Approval Motion (Dkts. 136, 164).  *See Schneider v. Chipotle Mexican Grill, Inc.*, 328 F.R.D. 520, 543 (N.D. Cal. 2018), as amended by *Schneider v. Chipotle Mexican Grill, Inc.*, No. 16-cv-02200-HSG, 2019 WL 570751 (N.D. Cal. Feb. 12, 2019).  "As the Ninth Circuit has made clear, the 'procedural burden' under Rule 23(e) 'is more strict when a settlement is negotiated *absent* class certification.'"  *Broomfield*, 2020 WL 1972505, at *22 (quoting *Bedolla*, 787 F.3d at 1224) (emphasis in original); *see Bluetooth*, 654 F.3d at 946 (describing higher level of scrutiny for "settlement agreement ... negotiated prior to formal class certification"); *Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1121-22 (9th Cir. 2020) (noting that the "case does not implicate the 'higher standard of fairness' that applies when parties settle a case before the district court has formally certified a litigation class") (citing *Hanlon*, 150 F.3d at 1026; NEWBERG ON CLASS ACTIONS § 13:13).  "This is true even if the class certified prior to settlement is narrower than the class certified for settlement purposes."  *Broomfield*, 2020 WL 1972505, at *22 (citing *Kumar v. Salov N. Am. Corp.*, No. 14-CV-2411-YGR, 2017 WL 2902898, at *4 (N.D. Cal. July 7, 2017), *aff'd*, 737 F. App'x 341 (9th Cir. 2018)).

Class Counsel have also requested a fee proportionate to the non-reversionary fund and within the range ordinarily granted in this Circuit.  *See Lenovo*, 2019 WL 1791420, at *8 (noting 20-30% of settlement amount is "usual range") (citing *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002)).  Finally, the requested award comes from the non-reversionary Settlement Fund, and Defendant will not receive any fees that are not awarded, but instead will be distributed in accordance with the provisionally approved Plan of Allocation.  *In re Toys R Us-Delaware,*

- 10 -

1  *Inc.—Fair and Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 558 (C.D. Cal.

2  2014) (finding that the "absence of a 'kicker provision' in the parties' settlement … reduces the

3  likelihood that plaintiffs and [defendant] colluded to confer benefits on each other at the expense

4  of class members").

5        Accordingly, the Settlement "is not the product of collusion or fraud, but rather is the result

6  of a successful arm's-length negotiation." *Bower v. Cycle Gear, Inc.*, No. 14-cv-02712-HSG, 2016

7  WL 4439875, at *5 (N.D. Cal. Aug. 23, 2016); *see In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d

8  539, 569 (9th Cir. 2019).

9          **2.**    **The Relief Under The Settlement Is Adequate And Balances The Risks**

10                **And Expense Of Trial**

11        The relief Plaintiffs and Class Counsel obtained for Settlement Class Members further

12  weighs in favor of final approval as it provides substantial, immediate relief for Settlement Class

13  Members.  The Settlement is a very good result, especially when balanced against the risks and

14  delays associated with continued litigation.

15          **a.**    **The Strength Of Plaintiffs' Case And The Risk Of Continuing**

16                **Litigation Weighs In Favor Of Approval**

17        Under Rule 23(e)(2)(C)(i), courts in the "Ninth Circuit evaluate 'the strength of the

18  plaintiff's case; the risk, expense, complexity, and likely duration of further litigation; [and] the

19  risk of maintaining class action status throughout the trial.'" *Broomfield*, 2020 WL 1972505, at *8

20  (quoting *Hanlon*, 150 F.3d at 1026); *Lenovo*, 2019 WL 1791420, at *5.  "Approval of a class

21  settlement is appropriate when plaintiffs must overcome significant barriers to make their case."

22  *Hendricks v. Starkist Co.*, No. 13-CV-00729-HSG, 2016 WL 5462423, at *4 (N.D. Cal. Sept. 29,

23  2016), *aff'd sub nom. Hendricks v. Ference*, 754 F. App'x 510 (9th Cir. 2018).

24        As detailed in their Preliminary Approval Motion and the Fee Motion, Plaintiffs overcame

25  significant challenges to achieve the Settlement.  Represented by three national, respected firms,

26  Defendant vigorously defended itself from the outset of the case and continued litigation would

27  have undoubtedly presented significant risks and resulted in years of delays.  *See, e.g.*, *Spann v.*

28  *J.C. Penney Corp.*, 314 F.R.D. 312, 326 (C.D. Cal. 2016) ("The settlement the parties have reached

is even more compelling given the substantial litigation risks in this case."); *Brown v. Hain Celestial Grp., Inc.*, No. 3:11-CV-03082-LB, 2016 WL 631880, at *6 (N.D. Cal. Feb. 17, 2016) (noting that the defendant "vigorously" disputed liability).  In addition, Plaintiffs obtained class certification and withstood a motion for summary judgment, and the Parties were preparing for a trial set for September 16, 2019.  King Fees Decl. ¶¶ 19, 26.

However, it is unclear whether Plaintiffs would have been able to maintain class certification through the entirety of the Action.  *See Retta v. Millennium Prods., Inc.*, No. CV15-1801 PSG AJWx, 2017 WL 5479637, at *5 (C.D. Cal. Aug. 22, 2017) (noting that because "an 'order that grants or denies class certification may be altered or amended before the final judgment[,]' Fed. R. Civ. P. 23(c)(1)(C)" and "[b]ecause Defendants may vigorously contest class certification should this case proceed to trial, this factor favors final approval of the Settlement Agreement").  Indeed, prior to reaching the Settlement, Defendant had sought to decertify the classes (Dkt. 184), and there was no guarantee that the Court would have upheld its prior decision certifying this Action as a class action.

Moreover, as the Court made clear when it granted class certification, there were issues concerning Plaintiffs' damages calculations.  Indeed, the Court questioned the "import of" Plaintiffs' damages model, noting that the results by Plaintiffs' expert was "ambiguous at best," and, furthermore, would be "subject to myriad challenges on cross-examination."  *Schneider*, 328 F.R.D. at 534; *id.* at 541.  In turn, whether Plaintiffs' experts would have survived another round of Defendant's pretrial *Daubert* motions or whether Plaintiffs would have successfully obtained any damages at trial is questionable.

Finally, Plaintiffs would have had to prevail at trial and on appeal, and there is no assurance that Plaintiffs would have succeeded at either stage.  Here, the Settlement avoids prolonging the delay in recovery and instead provides certain and immediate relief to consumers.  *See, e.g.*, *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 527 (C.D. Cal. 2004) ("Avoiding such a trial and the subsequent appeals in this complex case strongly militates in favor of settlement rather than further protracted and uncertain litigation."); *Hendricks*, 2016 WL 5462423, at *4-5 ("To prevail, Plaintiff would be required to successfully move for class certification, survive

1   summary judgment, and receive a favorable verdict capable of withstanding a potential appeal.  The

2   risks and costs associated with class action litigation weigh strongly in favor of settlement.");

3   *Sadowska v. Volkswagen Grp. of Am., Inc.*, No. CV 11-00665-BRO AGRX, 2013 WL 9600948, at

4   *4 (C.D. Cal. Sept. 25, 2013) ("If the Court were deny approval for the settlement, there is a strong

5   possibility that the class members would lose their chance at recovery entirely.").

6          "Generally, unless the settlement is clearly inadequate, its acceptance and approval are

7   preferable to lengthy and expensive litigation with uncertain results."  *Lenovo*, 2019 WL 1791420,

8   at *4 (quoting *Ching v. Siemens Indus., Inc.*, No. 11-cv-04838-MEJ, 2014 WL 2926210, at *4 (N.D.

9   Cal. June 27, 2014) (quotations omitted)); *Curtis–Bauer v. Morgan Stanley & Co., Inc.*, No. 06–

10  C–3903 TEH, 2008 WL 4667090, at *4 (N.D. Cal. Oct. 22, 2008) ("Settlement avoids the

11  complexity, delay, risk and expense of continuing with the litigation and will produce a prompt,

12  certain, and substantial recovery for the Plaintiff class.").  The above litigation risks weigh in favor

13  of approving the Settlement.

14          **b.      The Settlement Amount Constitutes A Substantial, Immediate
                       Recovery For The Class And Weighs In Favor Of Approval**
15

16          "Crucial to the determination of adequacy is the ratio of plaintiffs' expected recovery

17  *balanced* against the value of the settlement offer."  *In re Extreme Networks, Inc. Sec. Litig.*,

18  No. 15-CV-04883-BLF, 2019 WL 3290770, at *9 (N.D. Cal. July 22, 2019) (internal quotation

19  marks and citation omitted).  However, "[i]t is well-settled law that a cash settlement amounting to

20  only a fraction of the potential recovery does not per se render the settlement inadequate or unfair."

21  *Officers for Justice*, 688 F.2d at 628.

22          Here, the $6.5 million Settlement (7.4% of estimated damages based on a nationwide class,

23  26.5% of estimated damages at trial) is a sizeable recovery when considering the challenges

24  detailed above.  *See, e.g.*, *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1042 (N.D. Cal.

25  2008) (approving settlement that constituted 6% of maximum potential damages); *Toys R Us*,

26  295 F.R.D. at 454 (noting that award representing between 5% and 30% of recovery "is not a *de

27  minimis* amount" and "weighs in favor of approval"); *Graves v. United Indus. Corp.*, No. 2:17-cv-

28  06983-CAS-SKx, 2020 WL 953210, at *6 (C.D. Cal. Feb. 24, 2020) (granting final approval of

$2.5 million settlement); *Downey Surgical Clinic, Inc. v. Optuminsight, Inc.*, No. CV09-5457PSG (JCx), 2016 WL 5938722 at *5 (C.D. Cal. May 16, 2016) (granting final approval where recovery was as low as 3.21% of potential recovery at trial); *Stovall-Gusman v. W.W. Granger, Inc.*, No. 13-cv-02540-HSG, 2015 WL 3776765, at *4 (N.D. Cal. June 17, 2015) (granting final approval of a net settlement amount representing 7.3% of the plaintiffs' potential recovery at trial); *Shvager v. ViaSat, Inc.*, No. CV 12-10180 MMM (PJWx), 2014 WL 12585790, at *10 (C.D. Cal. Mar. 10, 2014) (approving settlement representing "2.8% of the recovery that might have been obtained had the case continued").  Additionally, Settlement Class Members can participate in the Settlement without being required to provide documentation showing that they made a purchase at Chipotle. *See Johnson v. Gen. Mills, Inc.*, No. SACV 10-00061-CJC, 2013 WL 3213832, at *3 (C.D. Cal. June 17, 2013) (that class members could recover "without proof of purchase" supported the conclusion that the settlement was "a good result for the class"); *Larsen v. Trader Joe's Co.*, No. 11-CV-05188-WHO, 2014 WL 3404531, at *4 (N.D. Cal. July 11, 2014) (similar); *Broomfield*, 2020 WL 1972505, at *9 (similar).

The Settlement represents a good result for Settlement Class Members in that Settlement Class Members will receive up to $10 without receipts, $20 with proofs of purchase, and a maximum of $30 per household.  *See* Settlement §§ I.Z., III.E.1.  This amount is substantial given that Plaintiffs' expert determined that the price premium for an average $10 Food Product purchase at Chipotle was $0.23 (2.47%).  *See* Krosnick Rpt.

Where there is a *cy pres* award provision in a class action settlement, "the '*cy pres* award must be guided by (1) the objectives of the underlying statute(s) and (2) the interests of the silent class members, and must not benefit a group too remote from the plaintiff class.'"  *Dickey*, 2020 WL 8707927, at *6 (quoting *Dennis v. Kellogg Co.*, 697 F.3d 858, 865 (9th Cir. 2012)).  In its Preliminary Approval Order, the Court found that the Parties' selection of Public Justice and Public Counsel satisfied the Ninth Circuit's requirements, as the entities "share the interests of the Class Members in preventing consumer fraud, in the context of mislabeling of food products."  *Schneider*, 2020 WL 511953, at *9.  Nothing has changed that would warrant a different determination.

When considering Defendant's defenses and continued class certification challenges, the Settlement delivers a substantial recovery for the Settlement Class.  *See Linney*, 151 F.3d at 1242 (settlement amounting to a fraction of the potential total recovery was reasonable given the significant risks of going to trial); *Noll v. eBay, Inc.*, 309 F.R.D. 593, 606 (N.D. Cal. 2015) ("Immediate receipt of money through settlement, even if lower than what could potentially be achieved through ultimate success on the merits, has value to a class, especially when compared to risky and costly continued litigation.").

### c. The Experienced View Of Counsel And Response Of Class Members Weigh In Favor Of Approval

"Courts within the Ninth Circuit also give weight to the experienced view of counsel and the response of class members."  *Free Range Content*, 2019 WL 1299504, at *7 ("Class counsel's views that the settlement is a good one is entitled to significant weight."); *Omnivision Techs.*, 559 F. Supp. 2d at 1043.  Class Counsel have extensive experience representing plaintiffs and classes in complex litigation and consumer class actions (*see* Dkts. 205-9, 205-10) and support this Settlement.  *See* King Decl. ¶ 7.

The positive reaction from Settlement Class Members further weighs in favor of approval. At the time of preliminary approval, using the proposed Class Notice procedures, Plaintiffs anticipated between a 1-2% claims rate based on their counsel's experience and similar cases, although Plaintiffs pointed out that the claims rate may be higher or lower due to Chipotle's reputation and lack of direct notice, respectively (Dkt. 205 at 21-22).  Here, the 0.83% claims rate is on par with other consumer cases and does not otherwise weigh against approval.  *See, e.g.*, *Broomfield*, 2020 WL 1972505, at *7 (approving settlement with response rate of "about two percent"); *Bostick v. Herbalife Int'l of Am., Inc.*, No. CV 13-2488 BRO (SHx), 2015 WL 12731932, at *27 (C.D. Cal. May 14, 2015) (approving settlement with "response rate of less than 1%").

The deadline to object to the Settlement was May 30, 2020 (Dkt. 222).  The Settlement Administrator has received no objections and one timely request for exclusion.  Weisbrot Decl. ¶ 13; *see also id.,* Ex. D.  And, as of this filing, the Court has also not received any objections to the Settlement.  Class Counsel have received eleven letters concerning the Settlement, with nine

noting that the $2 per claim Settlement Award is inadequate given the allegations of the Complaint and seeking "mediation," and two alleging that, under Section 5 of the Federal Trade Commission Act, they are owed greater damages.  King Decl. ¶¶ 3, 4; *see id.*, Ex. B.

Should the Court construe the letters as objections, the objections should be rejected.  First, because these letters were not formally lodged with the Court as required under the Court-ordered objection procedure provided for in the Settlement (§ V.A) and described in the Long Form Notice (Dkt. 205-4) and on the Settlement Website, the letters should be rejected out of hand.  As for the nine Settlement Class Members seeking to mediate their individual claims, Plaintiffs are unsure whether they are objecting to the Settlement or are actually seeking to opt out; if they want to pursue their own claims, these Settlement Class Members should have followed the Court-ordered opt out procedure.[7]  *See* Settlement § V.B.  And, as for the two Settlement Class Members seeking greater damages under Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, their "objections" must be rejected because "private actions to vindicate rights asserted under the Federal Trade Commission Act may not be maintained."[8]  *Holloway v. Bristol-Myers Corp.*, 485 F.2d 986, 987 (D.C. Cir. 1973).  Finally, contrary to the comments of these Settlement Class Members, the Settlement Award is substantial given the expert-determined price premium, Defendant's vigorous defenses, and the uncertainty of the outcome at trial.  Without more, these letters should be rejected. *See Lenovo*, 2019 WL 1791420, at *7 (finding that objecting to the settlement amount without articulating any other basis for rejecting the settlement did "not affect [the Court's] conclusion that the settlement is fair and reasonable").

Importantly, given the number of Settlement Class Members, these eleven letters, even if they were construed as "objections," calculate to 0.000037% of the over 30 million Settlement Class Members that received Class Notice.  "[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class

---

[7] In addition, Plaintiffs note that five of the handwritten letters are written in the same handwriting, in the same verbatim language, and originating from New York.  *See* King Decl., Ex. B (Mary Conquest, Maria Conquest, Edwin Fernandez, Crystal John, Joanne Leach letters).

[8] These Settlement Class Members could have also sought exclusion to bring their own claims against Chipotle.

1    settlement action are favorable to the class members." *Dickey*, 2020 WL 870928, at *6 (quoting

2    *Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 528–29); *see also In re Linkedin User Privacy Litig.*,

3    309 F.R.D. 573, 589 (N.D. Cal. 2015) ("A low number of opt-outs and objections in comparison to

4    class size is typically a factor that supports settlement approval.").

5         Further weighing in favor of approval, none of the federal officials and attorneys general to

6    whom Angeion caused CAFA notice to be provided have objected to the Settlement.   *See*

7    *Bautista v. Harvest Mgmt. Sub LLC*, No. CV12-10004 FMO (CWx), 2014 WL 12579822, at *9

8    (C.D. Cal. July 14, 2014) (absence of objections to the CAFA notice supported approval).

9         **d.      The Claims Process Is Convenient And Effective, And The**
             **Requested Attorneys' Fees Are Reasonable**
10

11        Rule 23(e)(2)(C)(ii) asks whether the methods of distribution and claims processing are

12   effective.  Settlement Class Members have received information regarding the Settlement benefits

13   through the Court-approved Class Notice program.  *See* Settlement § IV.  To obtain those benefits,

14   Settlement Class Members need only submit a Claim Form, which was designed to be as convenient

15   as possible, and, depending on whether a Settlement Class Member has receipts, certify or provide

16   minimal documentation of their purchases.  *Id.* §§ I.F., III.E.1.  As evidenced by the claims rate in

17   this Action and the distribution of claims, the methods of distribution are convenient and effective.

18   *See supra* Section III.B.  Thus, the Settlement's method for processing claims and distributing relief

19   is fair and reasonable.  *See, e.g.*, *Hefler v. Wells Fargo & Co.*, No. 16-CV-05479-JST, 2018 WL

20   6619983, at *7 (N.D. Cal. Dec. 18, 2018).

21        Under Rule 23(e)(2)(C)(ii), the Court must also consider whether the terms of the attorneys'

22   fees requested are reasonable.  As discussed more fully in the Fees Motion and the King Fees

23   Declaration, Plaintiffs respectfully submit that the requested fees of 30% of the Settlement

24   ($1.95 million), reimbursement of $636,556.28 for expenses, and $20,000 incentive awards

25   ($5,000 per Plaintiff) are reasonable given the result achieved in this complex case and the

26   favorable reaction of Settlement Class Members.  Similarly, the Settlement Administrator's

27   estimated $676,408.43 in fees (of which $400,000 is already provided for in the Stipulation) for

28   administration of the Settlement is fair and reasonable.  *See* Weisbrot Decl. ¶ 14.  And, with respect

to Rule 23(e)(2)(C)(iv), there are no agreements, other than the Settlement, required to be identified under Rule 23(e)(3).

### 3.     The Settlement Treats All Class Members Equally

Rule 23(e)(2)(D) requires that the Court consider whether "the proposal treats class members equitably relative to each other." *Nexus 6P*, 2019 WL 6622842, at *9. The crux of the inquiry is whether the agreement "improperly grant[s] preferential treatment to class representatives or segments of the class." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007) (citation omitted). The modest requested incentive awards for Plaintiffs, which are in the range generally awarded in this District (Fees Motion at 17-18), "does not constitute inequitable treatment of class members." *Extreme Networks*, 2019 WL 3290770, at *8.

Nor does the Settlement grant preferential treatment to any other portion of the Settlement Class. *See In re Citric Acid Antitrust Litig.*, 145 F. Supp. 2d 1152, 1154 (N.D. Cal. 2001) ("A plan of allocation that reimburses class members based on the type and extent of their injuries is generally reasonable."). Each Settlement Class Member is eligible to obtain $2 back on each qualifying purchase and may submit a claim for up to five qualifying purchases ($10) without any documentation. Each Settlement Class Member can obtain up to $20 for ten qualifying purchases with proof of payment, and there is a 15-claim ($30) cap per household. The Plan of Allocation complies with the requirements of case law governing the approval of such allocation, as it has a reasonable and rational basis for distribution and provides any consumer who had purchased a Food Product from Chipotle during the Class Period with reimbursement even without a receipt. All Settlement Class Members who have submitted timely and valid claims are entitled to receive monetary compensation and are placed on an equal footing. The Settlement does not favor any segment of Settlement Class Members over any other, which supports final approval.

### C.     The Court Approved Notice Program Satisfies Due Process And Adequately Provided Notice To Class Members

Due process requires the best notice that is practicable under the circumstances. *See Phillips Petro. Co. v. Shutts*, 472 U.S. 797, 812 (1985). It does not require actual notice to each and every

1   class member. *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1128 (9th Cir. 2017) ("neither

2   Rule 23 nor the Due Process Clause requires actual notice to each individual class member").

3        Here, Class Notice includes all the information required under Rules 23(c)(2), 23(e), and

4   23(h), and the Due Process Clause of the U.S. Constitution.  Specifically, Class Notice apprises

5   Settlement Class Members of the pendency of the Action, the Settlement terms, the Fees Motion,

6   their rights under the proposed Settlement, including the right to opt out of the Settlement and to

7   object to the Settlement or Fees Motion, and the binding effect of final approval (Dkts. 205-3, 205-

8   4).  Class Notice further conveys all information necessary for Settlement Class Members to make

9   informed decisions relating to the Settlement, and all information called for under the Procedural

10  Guidance. *Id.*

11       As set forth above and in the Weisbrot Declaration, since the entry of the Preliminary

12  Approval Order, Angeion has implemented the extensive media plan publishing Notice of the

13  Settlement, managed the Settlement Website, and caused Notice to be published in *People*

14  magazine and in the *East Bay Times*. *Id.* ¶¶ 5-7.  To date, there have been almost approximately

15  509,603-page views of the Settlement Website, and approximately 61,640,940 digital impresses.

16  *Id.* ¶¶ 8, 11.

17       The Court found in its Preliminary Approval Order that Plaintiffs' Class Notice plan was

18  the best practicable notice under the circumstances. *Schneider*, 2020 WL 511953, at *10-11; *see*

19  *also* Weisbrot Decl. ¶ 15; *Briseno*, 844 F.3d at 1129.  The procedures implemented above satisfy

20  due process. *See, e.g.*, *Hunter v. Nature's Way Prods., LCC*, No. 3:16-cv-532-WQH-AGS, 2020

21  WL 71160, at *3-4 (S.D. Cal. Jan. 6, 2020) (finding adequate notice published on website, 29-day

22  media campaign, and publication in the *San Diego Union-Tribune*); *Littlejohn v. Ferrara Candy*

23  *Co.*, No. 3:18-cv-00658-AJB-WVG, 2019 WL 2514720, at *5 (S.D. Cal. June 17, 2019) (finding

24  online notice and publication notice adequate where the defendant did "not collect or maintain

25  information sufficient to identify Class Members").

26       Additionally, the publication element of the Class Notice program was tailored to the

27  circumstances of this Action.  Weisbrot Decl. ¶ 15.  Notice was not only posted on the dedicated

28

1    Settlement Website but also targeted to the most appropriate audiences.  *Id.* ¶¶ 6-7; *see also Briseno*,

2    844 F.3d at 1129 ("[N]otice by publication … on a website … is sufficient to satisfy due process.").

3         **D.    The Plan Of Allocation Is Fair, Reasonable, And Adequate, And Should Be Finally Approved**

4

5         A plan for allocating class settlement funds is subject to the fair, reasonable, and adequate

6    standard that applies to approval of the class settlement as a whole.    *See* Fed. R. Civ.

7    P. 23(e)(2)(C)(ii)-(iv); *Citric Acid*, 145 F. Supp. 2d at 1154.  A plan of allocation "need only have

8    a reasonable, rational basis, particularly if recommended by experienced and competent counsel."

9    *In re Aftermarket Auto. Lighting Prod. Antitrust Litig.*, No. 09 MDL 2007-GW(PJWX), 2014 WL

10   12591624, at *4 (C.D. Cal. Jan. 10, 2014) (citation omitted).  Settlement distributions that apportion

11   funds based on the relative amount of damages class members have suffered are fair and reasonable.

12   *Hefler*, 2018 WL 6619983, at *12.

13        Here, under the Plan of Allocation, Settlement Class Members could receive monetary

14   compensation by only submitting a Claim Form with answers to basic questions about class

15   membership and their purchase of Chipotle's Food Products.  Settlement § III.E.1.  Proof of

16   purchase is not required for Settlement Class Members to recover.  *Id.*  Additionally, when

17   submitting the Claim Form (Dkt. 205-5), Settlement Class Members can decide whether to receive

18   payment in the form of a check or by electronic payment.  Settlement § I.Z.  "[I]t is reasonable to

19   allocate the settlement funds to class members based on the extent of their injuries or the strength

20   of their claims on the merits."  *Broomfield*, 2020 WL 1972505, at *8 (quoting *In re Illumina, Inc.*

21   *Sec. Litig.*, No. 3:16-CV-3044-L-MSB, 2019 WL 6894075, at *8 (S.D. Cal. Dec. 18, 2019)).

22        The Claims Period has closed and nearly 251,000 Claims have been submitted.  Weisbrot

23   Decl. ¶ 12.  Angeion will review and audit the Claims.  *Id.*  Of the total claims made to date,

24   approximately 246,589, or 98.3%, submitted claims without proof of purchase, and 4,386, or 1.7%,

25   submitted claims with proof of purchase.  *Id.*

26        The Plan of Allocation proposed in connection with the Settlement is the same as submitted

27   at preliminary approval (Dkt. 205).  The Court provisionally found this Plan of Allocation "fair,

28   reasonable, and adequate and in the best interest of Plaintiffs and the other Settlement Class

1  Members." *Schneider*, 2020 WL 511953, at *10.  The Settlement creates a non-reversionary cash

2  fund of $6.5 million.  After payment of notice and administration costs and any approved award of

3  attorneys' fees, costs, and/or service awards, all funds remaining will be distributed to the

4  Settlement Class and to *cy pres*.  The Settlement Administrator will complete all necessary

5  calculations under the Plan of Allocation and pay eligible claimants in a single installment.  No

6  Settlement Class Members will receive preferential treatment; the only distinguishing feature of

7  Settlement Class Members' recovery is which type of claim they opted to submit.

8      There have been no objections to this plan, and Plaintiffs respectfully request the Court

9  finally approve the Plan of Allocation.  In accordance with the Procedural Guidance, Plaintiffs will

10  submit a post-distribution accounting to the Court within 21 days after the Settlement Fund is

11  distributed to class members.

12  **V.**   **CONCLUSION**

13      For the foregoing reasons, Plaintiffs respectfully ask the Court enter the proposed Final

14  Order and Judgement, thereby finally approving the Settlement, directing payment of the claims,

15  and entering final judgment.

16          Respectfully submitted,

17          **KAPLAN FOX & KILSHEIMER LLP**

18  DATED:  June 1, 2020     By:   /s/ *Laurence D. King*
19               Laurence D. King

20          Laurence D. King
        Matthew B. George
21          Mario M. Choi
        1999 Harrison Street, Suite 1560
22          Oakland, CA 94612
        Telephone:  415-772-4700
23          Facsimile:  415-772-4707
        *lking@kaplanfox.com*
24          *mgeorge@kaplanfox.com*
        *mchoi@kaplanfox.com*

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**KAPLAN FOX & KILSHEIMER LLP**
Frederic S. Fox (*pro hac vice*)
Donald R. Hall (*pro hac vice*)
850 Third Avenue, 14th Floor
New York, NY 10022
Telephone:  212-687-1980
Facsimile:   212-687-7714
*ffox@kaplanfox.com*
*dhall@kaplanfox.com*

**KOBRE & KIM LLP**
Hartley M. K. West
150 California Street, 19th Floor
San Francisco, CA 94111
Telephone: 415-582-4781
*hartley.west@kobrekim.com*

**KOBRE & KIM LLP**
Matthew I. Menchel (*pro hac vice*)
201 South Biscayne Boulevard, Suite 1900
Miami, FL 33131
Telephone: 305-967-6108
*matthew.menchel@kobrekim.com*

*Counsel for Plaintiffs and the Settlement Class*