UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MARTIN SCHNEIDER, et al.,

Plaintiffs,

v.

CHIPOTLE MEXICAN GRILL, INC.,

Defendant.

Case No.  16-cv-02200-HSG

**ORDER GRANTING MOTION FOR FINAL SETTLEMENT APPROVAL, AND GRANTING IN PART AND DENYING IN PART ATTORNEYS' FEES, COSTS, AND INCENTIVE AWARDS**

Re: Dkt. Nos. 224, 226

Pending before the Court are Plaintiffs' motions for final approval of class action settlement and for attorneys' fees, costs and expenses, and a class representative enhancement payment.  Dkt. Nos. 224, 226.  The Court held a final approval hearing on July 30, 2020.  Dkt. No. 230.  At the final approval hearing, the Court directed the parties to submit an amended distribution proposal, which the parties filed on August 13, 2020.  Dkt. No. 231.  For the reasons set forth below, the Court **GRANTS** the final approval motion.  The Court also **GRANTS IN PART AND DENIES IN PART** Plaintiff's motion for attorneys' fees, costs and expenses, and the Named Plaintiffs' incentive award.

I.    **BACKGROUND**

A.    **Factual Background**

Plaintiffs brought this consumer class action against Defendant Chipotle Mexican Grill, Inc. ("Defendant" or "Chipotle") alleging that Defendant's "non-GMO" claims about its food products were false and misleading.  *See generally* Dkt. No. 1 ("Compl.").[1]  According to

---

[1] On February 3, 2020, Plaintiffs filed an amended complaint as part of the settlement agreement. Dkt. No. 220; SA § II.F.  The amended complaint redefines the class definition to be consistent with the Settlement Class (as defined below), and also removes the cause of action under Florida

United States District Court
Northern District of California

1  Plaintiffs, Chipotle consistently advertised its food products as "non-GMO" and "GMO free."  *Id*.

2  ¶¶ 31–40.  However, these claims were purportedly false because as alleged, the meat and dairy

3  products "are all sourced from animals that are fed with a genetically engineered or GMO derived

4  feed," and the soft drinks contain corn syrup, a GMO.  *Id*. ¶¶ 41–43.  Plaintiffs contend that had

5  they known of the "true character and quality of the ingredients," they would not have purchased,

6  or would have paid less for, Chipotle's food products.  *Id*. ¶ 49.

7      Based on those facts, the complaint asserted the following ten causes of action:

8  (1) California's Consumer Legal Remedies Act, Cal. Civ. Code § 1750 *et seq*.; (2) California's

9  False Advertising Law, Cal. Bus. & Prof. Code § 17500 *et seq*.; (3) California's Unfair

10  Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq*.; (4) Florida's Deceptive and Unfair

11  Trade Practices Act, Fla. Stat. § 501.201 *et seq*.;[2] (5) Maryland's Consumer Protection Act, MD.

12  Code Ann. § 13-101 *et seq*.; (6) New York's Consumer Protection Statute, N.Y. Gen. Bus. Law

13  § 349; (7) New York's False Advertising Law, N.Y. Gen. Bus. Law § 350 *et seq*.; (8) unjust

14  enrichment; (9) misrepresentation; and (10) declaratory relief.  *Id*. ¶¶ 69–146.

15      **B.    Procedural History**

16      Plaintiffs Martin Schneider, Sarah Deigert, Theresa Gamage, Nadia Parikka, Laurie Reese,

17  and Tiffanie Zangwill initially filed this action on April 22, 2016.[3]  *See generally* Compl.

18  Defendant moved to dismiss the complaint, and the Court granted the motion in part and denied it

19  in part on November 4, 2016.  Dkt. No. 36.  The Court granted Defendant's motion to dismiss

20  Plaintiffs' claims for injunctive relief, but otherwise denied the motion.  *Id*.  Plaintiffs filed a

21  motion seeking reconsideration of the Court's order dismissing the injunctive relief claims, Dkt.

22  No. 87, which the Court granted, Dkt. No. 136.  The Court amended its previous ruling and denied

23  Defendant's motion to dismiss Plaintiffs' claims for injunctive relief.  Dkt. No. 136.

24      On November 17, 2017, Chipotle filed a motion for summary judgment and Plaintiffs filed

25

26  _____

27  law, as the only Named Plaintiff who resided in Florida dismissed her claims.  Reference to "Compl." will be to the original complaint.
[2] As noted, this cause of action was removed from the amended complaint.

28  [3] On July 7, 2017, Plaintiffs Laurie Reese (California) and Tiffanie Zangwill (Florida) dismissed their claims against Chipotle with prejudice.  Dkt. No. 67.

a motion for class certification.  Dkt. Nos. 92, 95.  The parties also filed their *Daubert* motions.

Dkt. Nos. 100, 101, 117.  On September 29, 2018, the Court denied Defendant's motion for

summary judgment, granted Plaintiffs' motion for class certification, and denied both parties'

*Daubert* motions.  Dkt. No. 136.  The Court certified the following three classes of consumers

who purchased Defendant's products between April 27, 2015 and June 30, 2016 (the "Class

Period"):

> California: All persons in California who purchased Chipotle's Food
> Products containing meat and/or dairy ingredients during the Class
> Period.
>
> Maryland: All persons in Maryland who purchased Chipotle's Food
> Products containing meat and/or dairy ingredients during the Class
> Period.
>
> New York: All persons in New York who purchased Chipotle's Food
> Products containing meat and/or dairy ingredients during the Class
> Period.

*Id*. at 14, 30.  The Court appointed named Plaintiffs Schneider, Deigert, Gamage, and Parikka

("Named Plaintiffs") to represent the class and appointed their attorneys at Kaplan Fox as class

counsel ("Class Counsel")  *Id*.  On October 15, 2018, Defendant filed a petition in the Court of

Appeals for permission to appeal the class certification order, and the petition was denied.  Dkt.

Nos. 137, 167.

    Plaintiffs filed an administrative motion to approve the notice administrator, class notice

plan, and schedule on January 9, 2019.  Dkt. No. 150.  Defendant opposed the motion and alleged

that the notice plan was "too vague" and misrepresented the class definitions.  Dkt. No. 151.

Consistent with the Court's recommendation, Plaintiffs moved to modify the class definitions.

Dkt. No. 159.  The Court granted in part and denied in part Plaintiffs' motion to modify the class

definitions and certified the following classes:

> California: All persons in California who purchased Chipotle's Food
> Products containing meat and/or dairy ingredients in its restaurants
> during the Class Period.
>
> Maryland: All persons in Maryland who purchased Chipotle's Food
> Products containing meat and/or dairy ingredients in its restaurants
> during the Class Period.
>
> New York: All persons in New York who purchased Chipotle's Food
> Products containing meat and/or dairy ingredients in its restaurants

during the Class Period.

Dkt. No. 164 at 4.  The language "in its restaurants" was added to each class definition.  *Id*.  The Court also held that it did not need to add the standard language excluding various categories of people to the class definition itself.  *Id*. at 2 n.1.

The Court then directed the parties to file either a joint notice plan or competing proposals if they could not agree on a notice plan.  Dkt. No. 168.  The parties filed their competing proposals, and Plaintiffs filed an amended motion to approve notice administrator and class notice plan.  Dkt. No. 177.  On April 8, 2019, the Court granted in part and denied in part the amended administrative motion to approve notice administrator and class notice plan.  Dkt. No. 180.  Specifically, the Court denied Plaintiffs' motion to provide direct email notice to the approximately 550,000 individuals in California, Maryland, and New York who purchased food from Chipotle in those states from online or app menus.  *Id*. at 7.  It also found Plaintiffs' proposal to issue a press release unwarranted under Rule 23.  *Id*. at 8.

Defendant filed a motion to decertify the class on April 25, 2019, briefing for which was completed on May 15, 2019.  Dkt. Nos. 184, 191, 192.  The parties participated in a second mediation session before the Honorable Jay C. Gandhi (Ret.) of JAMS on July 2, 2019.[4]  Dkt. No. 146.  They were able to reach an agreement in principle to settle the case on a classwide basis, and agreed to stay any pending dates, including the hearing on Defendant's motion to decertify the classes.  *Id*.  Plaintiffs moved for preliminary approval on September 11, 2019, Dkt. No. 205, which the Court granted on January 31, 2020.  Dkt. No. 212.

## C.   Settlement Agreement

Following extensive formal discovery and with the assistance of a mediator, the parties entered into a settlement agreement on September 11, 2019.  Dkt. No. 205-2 ("SA").  The key terms are as follows:

Class Definition:  The "Settlement Class" is defined as all persons in the United States who purchased Chipotle's Food Products in its restaurants during the Class Period.  SA § I.AA.

---

[4] The parties' first mediation session with Judge Gandhi was on January 29, 2019.  Dkt. No. 205 at 5.  The parties also participated in court-connected mediation on May 9, 2017.  Dkt. No. 65.

United States District Court
Northern District of California

United States District Court
Northern District of California

Excluded from the Settlement Class are all persons who validly opt out of the settlement in a timely manner; governmental entities; counsel of record for the parties; Defendant and any of its parents, affiliates, subsidiaries, independent service providers and all of its respective employees, officers, and directors; any Judge or judicial officer presiding over the matter, and all of their immediate families and judicial staff; and any natural person or entity that entered into a release with Defendant prior to the Effective Date concerning the Food Products. *Id.*

Settlement Benefits: Defendant will make a $6,500,000 non-reversionary payment. *Id.* § I.EE. Individual claims were originally capped at $2.00 each and subject to a pro rata decrease. Dkt. No. 205-3, Ex. A. After amending the settlement, the parties have doubled the settlement award per valid claim from $2.00 to $4.00. Dkt. No. 231 at 2. Each class member may only submit five (5) valid claims without proof of purchase, and ten (10) valid claims with proof of purchase. *Id.* Each household is capped at fifteen (15) claims. Dkt. No. 205-3, Ex. A. This resulted in a total potential award to class members in the amount of approximately $2,865,896.00. Dkt. No. 231 at 2.

*Cy Pres* Distribution: Settlement checks that are not cashed within 120 days of mailing will be void and those funds will be donated to Public Justice, a non-profit legal organization, and Public Counsel, a pro bono law firm (each to receive 50%). SA § III.F; Dkt. No. 218 at 1–2.

Release: All Settlement Class members will release:

> all claims, demands, actions, and causes of action of any kind or nature whatsoever, whether at law or equity, known or unknown, direct, indirect, or consequential, liquidated or unliquidated, foreseen or unforeseen, developed or undeveloped, arising under common law, regulatory law, statutory law, or otherwise, whether based on federal, state or local law, statute, ordinance, regulation, code, contract, common law, or any other source, or any claim that Plaintiffs or Settlement Class Members ever had, now have, may have, or hereafter can, shall or may ever have against the Discharged Parties in any other court, tribunal, arbitration panel, commission, agency, or before any governmental and/or administrative body, or any other adjudicatory body, on the basis of, connected with, arising from, or in any way whatsoever relating to the purchase of the Food Products marketed as non-GMO during the Class Period and the claims alleged in the operative complaint in the Action, and, more particularly, but without in any way limiting the generality of the foregoing, arising from, directly or indirectly, or in any way whatsoever pertaining or relating to the claims alleged in the complaint in the Action including, but not limited to, communications, disclosures, nondisclosures,

representations, statements, claims, omissions, messaging, design, testing, marketing, labeling, advertising, promotion, packaging, displays, brochures, studies, manufacture, distribution, operation, performance, functionality, notification, providing, offering, dissemination, replacement, sale and/or resale by the Discharged Parties of the Food Products, any claims for rescission, restitution or unjust enrichment for all damages of any kind, violations of any state's deceptive, unlawful and/or unfair business and/or trade practices, false, misleading or fraudulent advertising, consumer fraud and/or consumer protection statutes, any violation of the Uniform Commercial Code, any breaches of express, implied and/or any other warranties, any similar federal, state or local statutes, codes, damages, costs, expenses, extracontractual damages, compensatory damages, exemplary damages, special damages, penalties, punitive damages and/or damage multipliers, disgorgement, declaratory relief, expenses, interest, and/or attorneys' fees and costs against the Discharged Parties pertaining to or relating to the claims alleged in the operative complaint in the Action, notwithstanding that Plaintiffs and the Settlement Class acknowledge that they may hereafter discover facts in addition to or different from those that they now know or believe to be true concerning the subject matter of the Action and/or the Released Claims herein.

SA § III.C.1.  The "Discharged Parties" are defined as:

Defendant and all its present and former parent companies, subsidiaries, shareholders, officers, directors, employees, agents, servants, registered representatives, attorneys, insurers, affiliates, successors, personal representatives, heirs and assigns, retailers, suppliers, distributors, endorsers, consultants, and any and all other entities or persons upstream and downstream in the production/distribution channels.

*Id*.

In addition, Defendant agrees to release class representatives, Settlement Class members, and Class Counsel from:

all claims, demands, actions, and causes of action of any kind or nature whatsoever, whether at law or equity, known or unknown, direct, indirect, or consequential, liquidated or unliquidated, foreseen or unforeseen, developed or undeveloped, arising under common law, regulatory law, statutory law, or otherwise, whether based on federal, state or local law, statute, ordinance, regulation, code, contract, common law, or any other source, or any claim that Defendant ever had, now has, may have, or hereafter can, shall or may ever have against Class Representatives, Settlement Class Members, and Class Counsel in any other court, tribunal, arbitration panel, commission, agency, or before any governmental and/or administrative body, or any other adjudicatory body, on the basis of, connected with, arising from, or in any way whatsoever relating to the institution or prosecution of the Action, notwithstanding that Defendant acknowledges that it may hereafter discover facts in addition to or different from those that it now knows or believes to be true concerning the subject matter of the Action and/or the Released Claims herein.

*Id.* § IIII.C.2

Class Notice:  The third-party settlement administrator implemented a digital media campaign.  SA § IV.C; Dkt. No. 205-12 at ¶¶ 13–21.  The third-party settlement administrator also provided for publication notice in *People* magazine and the *East Bay Times* newspaper.  SA § IV.A; Dkt. No. 205-12 at ¶¶ 22–23.  The notice included the nature of the action, a summary of the settlement terms, and instructions on how to object to or opt out of the settlement, including relevant deadlines.  Dkt. No. 205-3, Ex. A; Dkt. No. 205-4, Ex. B.

Opt-Out Procedure:  The deadline for a class member to submit a request for exclusion was 120 days after preliminary approval or no less than sixty (60) days after the notice deadline.  SA § I.T, I.U.

Incentive Award:  The Named Plaintiffs applied for incentive awards of $5,000.  *Id.* § III.G.2.

Attorneys' Fees and Costs:  Class Counsel filed an application for attorneys' fees in the amount of $1,950,000, as well as $636,556.28 in costs.  Dkt. No. 224.

## II.    ANALYSIS

### A.    Final Settlement Approval

#### i.    Class Certification

Final approval of a class action settlement requires, as a threshold matter, an assessment of whether the class satisfies the requirements of Federal Rule of Civil Procedure 23(a) and (b).  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019–1022 (9th Cir. 1998).  Because no facts that would affect these requirements have changed since the Court preliminarily approved the settlement on January 31, 2020, this order incorporates by reference its prior analysis as set forth in the order granting preliminary approval.  Dkt. No. 219.

#### ii.    The Settlement

"The claims, issues, or defenses of a certified class may be settled . . . only with the court's approval."  Fed. R. Civ. P. 23(e).  The Court may finally approve a class settlement "only after a hearing and on finding that it is fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2); *Officers for Justice v. Civil Serv. Comm'n of the City and County of San Francisco*, 688 F.2d 615, 625 (9th

United States District Court
Northern District of California

Cir. 1982) ("The district court's role in evaluating a proposed settlement must be tailored to fulfill the objectives outlined above.  In other words, the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties . . . ").  To assess whether the proposed settlement comports with Rule 23(e), the Court "may consider some or all" of the following factors:  (1) the strength of plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed, and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.  *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 963 (9th Cir. 2009); *see also Hanlon*, 150 F.3d at 1026.  "The relative degree of importance to be attached to any particular factor" is case specific.  *Officers for Justice*, 688 F.2d at 625.

In addition, "[a]dequate notice is critical to court approval of a class settlement under Rule 23(e)." *Hanlon*, 150 F.3d at 1025.  As discussed below, the Court finds that the proposed settlement is fair, adequate, and reasonable, and that class members received adequate notice.

### a.  Adequacy of Notice

Under Federal Rule of Civil Procedure 23(e), the Court "must direct notice in a reasonable manner to all class members who would be bound by the proposal."  Fed. R. Civ. P. 23(e)(1).  Rule 23(c)(2)(B) requires "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  The notice must "clearly and concisely state in plain, easily understood language" the nature of the action, the class definition, and the class members' right to exclude themselves from the class.  Fed. R. Civ. P. 23(c)(2)(B).  Although Rule 23 requires that reasonable efforts be made to reach all class members, it does not require that each class member actually receive notice.  *See Silber v. Mabon*, 18 F.3d 1449, 1454 (9th Cir. 1994) (noting that the standard for class notice is "best practicable" notice, not "actually received" notice).

8

1    The Court finds that the notice plan previously approved by the Court was implemented

2    and that the notice thus satisfied Rule 23(c)(2)(B).  At preliminary approval, the Court approved

3    the proposed notice plan, which called for an extensive digital media plan to publish the notice of

4    settlement.  Among other things, the Long Form Notice, Claim Form, Preliminary Approval

5    Motion, Preliminary Approval Order, Stipulation, Amended Class Action Complaint, and the Fees

6    Motion were posted on the Settlement Website for public viewing and download.  *See* Declaration

7    of Steven Weisbrot of Angeion Group, LLC Regarding Settlement Administration, dated June 1,

8    2020 (Dkt. No. 226-2, "Weisbrot Decl.") ¶¶ 5-11.  A link to the Settlement Website was included

9    in all forms of Class Notice provided to Settlement Class members.  As of May 31, 2020, there

10    were 226,387 unique visitors to the Website and approximately 509,603-page views.  *Id.* ¶ 8.

11    Angeion's media plan included digital internet advertising designed to create 59,598,000

12    impressions on various websites, and which targeted a potential audience size of approximately

13    30,100,000 individuals.  *Id.* ¶ 6; Dkt. 205-12 ¶¶ 14, 19.  The audience size number was reached by

14    using various data points to profile the class and arrive at a target audience of individuals likely to

15    have eaten at Chipotle.  Dkt. No. 205-12 ¶¶ 13, 21.  The notice program was accordingly designed

16    to deliver an approximate reach of at least 70.69%, with an average frequency of 3.0 times,

17    meaning that a high percentage (at least 70.69%) of the target audience would see an

18    advertisement regarding the settlement (on average 3.0 times per person).  *Id.* ¶¶ 10, 27.  On or

19    about March 27, 2020, Angeion also placed the advertisement in *People* magazine, and placed

20    advertisements in the *East Bay Times* for four weeks, as required by the California Consumers

21    Legal Remedies Act, Cal. Civ. Code § 1781(d).  Weisbrot Decl. ¶ 5.  In the end, the notice

22    program delivered approximately 61,640,940 digital impressions, with an average estimated

23    frequency of 3.0 per person, and was likely viewed by approximately 72.64% of the Settlement

24    Class taking into account these internet advertisements and the notice in *People* magazine

25    (separate and apart from the publications in the *East Bay Times*, Settlement Website and the toll-

26    free hotline).  *Id.* ¶ 11.[5]

27    _____

28    [5] The Court also finds that the appropriate government officials were properly and timely notified
     of the settlement agreement, pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14

The Court also finds that additional notice of the amendment to the settlement is not warranted because, given the limited nature of the amendment and the fact that it made the settlement more favorable, no reasonable class member who chose not to opt out after receiving notice of the original settlement would decide to opt out based on the modified and improved settlement.  *See, e.g.*, *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 330-31 (N.D. Cal. 2018) (declining to order supplemental notice where, in response to court's concerns, class settlement was modified to reduce *cy pres* and increase payments to claiming class members); *Klee v. Nissan North America, Inc.*, No. CV 12-08238 AMT (PJWx), 2015 WL 4538426, *5 (C.D. Cal. July 7, 2015) ("[W]hen a settlement is amended to make it more valuable, it is unnecessary to give additional notice to those class members that received adequate notice of the original proposed settlement and decided not to opt out.").  In light of these facts, the Court finds that the parties' notice process was "'reasonably calculated, under all the circumstances,' to apprise all class members of the proposed settlement."  *Roes, 1-2 v. SFBSC Management, LLC*, 944 F.3d 1035, 1045 (9th Cir. 2019) (citation omitted).

15

### b.  Fairness, Adequacy, and Reasonableness

16
17

Having found the notice procedures adequate under Rule 23(e), the Court next considers whether the entire settlement comports with Rule 23(e).

18

### 1.  Strength of Plaintiff's Case and Litigation Risk

19
20
21
22
23
24
25

Approval of a class settlement is appropriate when plaintiffs must overcome significant barriers to make their case.  *Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 851 (N.D. Cal. 2010).  Additionally, difficulties and risks in litigating weigh in favor of approving a class settlement.  *Rodriguez*, 563 F.3d at 966.  "Generally, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results."  *Ching v. Siemens Indus., Inc.*, No. 11-cv-04838-MEJ, 2014 WL 2926210, at *4 (N.D. Cal. June 27, 2014) (quotations omitted).

26

The Court finds that the amount offered in settlement is reasonable in light of the

27

28

U.S.C. § 1715.  The Court has reviewed the substance of the notice and finds that it complied with all applicable requirements of CAFA.

United States District Court
Northern District of California

complexity of this litigation and the substantial risk Plaintiffs would face in litigating the case given the nature of the asserted claims.  Represented by three national, respected firms, Defendant vigorously defended itself from the outset of the case, and continued litigation would have undoubtedly presented significant risks and resulted in years of delays.  After nearly four years, the settlement, which makes available to the Class a $6.5 million, non-reversionary common fund from which each eligible claiming class member will receive a pro rata share, has ensured a favorable recovery for the class.  *See Rodriguez*, 563 F.3d at 966 (finding litigation risks weigh in favor of approving class settlement).  Accordingly, these factors weigh in favor of approving the settlement.  *See Ching*, 2014 WL 2926210, at *4 (favoring settlement to protracted litigation).

### 2.   Risk of Maintaining Class Action Status

In considering this factor, the Court looks to the risk of maintaining class certification if the litigation were to proceed.  Prior to reaching the settlement, Defendant had sought to decertify the classes (Dkt. No. 184), and there was no guarantee that the Court would have upheld its prior decision certifying this action as a class action.  Moreover, as the Court made clear when it granted class certification, Plaintiffs' damages calculations were subject to challenge.  The Court questioned the import of Plaintiffs' damages model, noting that the results presented by Plaintiffs' expert were "ambiguous at best" and would be "subject to myriad challenges on cross-examination."  *Schneider*, 328 F.R.D. at 534, 541.  There was also substantial risk inherent in whether Plaintiffs' experts would survive another round of pretrial *Daubert* motions, and it was uncertain whether Plaintiffs would have successfully obtained any damages at trial.  Here, the settlement avoids prolonging the delay in recovery and instead provides certain and immediate relief to consumers.  Accordingly, this factor also weighs in favor of settlement.

### 3.   Settlement Amount

The amount offered in the settlement is another factor that weighs in favor of approval. Based on the facts in the record and the parties' arguments at the final fairness hearing, the Court finds that the $6.5 million settlement amount, which represents 7.4% of estimated damages based on a nationwide class falls "within the range of reasonableness" in light of the risks and costs of litigation.  *See* Dkt. No. 226 at 13; *see, e.g.*, *Villanueva v. Morpho Detection, Inc.*, No. 13-cv-

United States District Court
Northern District of California

05390-HSG, 2016 WL 1070523 *4 (N.D. Cal. March 18, 2016) (citing cases).  The parties initially estimated that the maximum recovery of each individual Class Member would be approximately $10 for class members without receipts, and $20 with proofs of purchase, up to a maximum of $30 per household.  *See* SA §§ I.Z., III.E.1.  After amending the settlement, the parties have doubled the settlement award per valid claim from $2.00 to $4.00.  Dkt. No. 231 at 2.[6] This amount is not insubstantial given that Plaintiffs' expert determined that the price premium for an average $10 Food Product purchase at Chipotle was $0.23.  *See* Dkt. No. 95-42.

Further, where a class action settlement contains a *cy pres* award provision, the "*cy pres* award must be guided by (1) the objectives of the underlying statute(s) and (2) the interests of the silent class members, and must not benefit a group too remote from the plaintiff class."  *Dennis v. Kellogg Co.*, 697 F.3d 858, 865 (9th Cir. 2012) (internal quotations omitted).  For any residual funds, the settlement before the Court contemplates that the funds will be distributed to both Public Justice and Public Counsel.  Public Justice and Public Counsel share the interests of the class members in preventing consumer fraud, in the context of mislabeling of food products.  The Court finds that the *cy pres* distribution to Public Justice and Public Counsel satisfies the Ninth Circuit's requirements.[7]  Its work is relevant to the harm alleged in this case and will provide a benefit to the interests of aggrieved consumers.

### 4.  Extent of Discovery Completed and Stage of Proceedings

The Court finds that Class Counsel had sufficient information to make an informed decision about the merits of the case.  *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000).  The parties completed broad fact and expert discovery, which included propounding or responding to hundreds of discovery requests, producing and reviewing hundreds of thousands of pages of documents, producing or reviewing five expert reports, taking or defending 17 depositions, engaging in numerous discovery meet-and-confers, and seeking judicial intervention multiple times.  Declaration of Laurence D. King in Support of Motion for Fees (Dkt.

---

[6] This results in a total award to class members in the amount of approximately $2,865,896.00.  *Id.*
[7] The parties anticipate a *cy pres* distribution of approximately $419,787.96.  To the extent more funds go to the *cy pres* recipients, the parties anticipate this "adding a few thousand dollars at most."  Dkt. No. 231 at 2.

No. 224-1, "King Fees Decl.") ¶¶ 11-14.  The parties settled only after exchanging substantial fact and expert discovery, including the production of documents, the exchange of multiple sets of interrogatories, the depositions of Named Plaintiffs, and the disclosure of expert reports.  The Court finds that the parties received, examined, and analyzed information, documents, and materials sufficient to allow them to assess the likelihood of success on the merits.  This factor weighs in favor of approval.

### 5.  Experience and Views of Counsel

The Court next considers the experience and views of counsel.  "[P]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation."  *Rodriguez*, 563 F.3d at 967 (quotations omitted).  Here, Class Counsel have extensive experience representing plaintiffs and classes in complex litigation and consumer class actions (Dkt. Nos. 205-9, 205-10) and support this settlement.  *See* King Decl. ¶ 7.  More importantly, Class Counsel have been vigorously prosecuting this case for over four years.  The Court recognizes, however, that courts have diverged on the weight to assign counsel's opinions.  *Compare Carter v. Anderson Merch.*, LP, 2010 WL 1946784, at *8 (C.D. Cal. May 11, 2010) ("Counsel's opinion is accorded considerable weight."), *with Chun-Hoon*, 716 F. Supp. 2d at 852 ("[T]his court is reluctant to put much stock in counsel's pronouncements. . . .").  This factor's impact is therefore modest, but favors approval.

### 6.  Reaction of Class Members

The reaction of the class members supports final approval.  "[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members."  *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528–29 (C.D. Cal. 2004); *In re Linkedin User Privacy Litig.*, 309 F.R.D. 573, 589 (N.D. Cal. 2015) ("A low number of opt-outs and objections in comparison to class size is typically a factor that supports settlement approval.").

At the time of preliminary approval, using the proposed Class Notice procedures, Plaintiffs anticipated between a 1-2% claims rate based on their counsel's experience and similar cases, although Plaintiffs pointed out that the claims rate might be higher or lower due to Chipotle's

United States District Court
Northern District of California

reputation and lack of direct notice, respectively.  Dkt. No. 205 at 21-22.  Here, the 0.83% claims rate (which represents the estimated size of the targeted population of potential class members compared to the actual claim submissions) is on par with other consumer cases, and does not otherwise weigh against approval.  *See, e.g*., *Broomfield*, 2020 WL 1972505, at *7 (approving settlement with response rate of "about two percent"); *Bostick v. Herbalife Int'l of Am., Inc*., No. CV 13-2488 BRO (SHx), 2015 WL 12731932, at *27 (C.D. Cal. May 14, 2015) (approving settlement with "response rate of less than 1%").

The deadline to object to the settlement was May 30, 2020.  Dkt. No. 222.  The settlement administrator received no objections, and one timely request for exclusion.  Weisbrot Decl. ¶ 13; *id*., Ex. D.  The Court received one objection to the settlement, but that objection only addresses Class Counsels' fees.  Dkt. No. 227.  Class Counsel have also received eleven letters concerning the settlement, with nine seeking "mediation" and noting that the $2 per claim settlement award is inadequate given the allegations of the Complaint, and two alleging that under Section 5 of the Federal Trade Commission Act they are owed greater damages.  *See* Declaration of Laurence D. King in Support (Dkt. No. 226-1, "King Decl.") ¶¶ 3, 4; *id*., Ex. B.  Given the number of Settlement Class members, these eleven letters, even if they are construed as "objections," represent 0.000037% of the over 30 million Settlement Class members that notice was reasonably designed to reach.

As to the letters concerning the per claim amount, as discussed, that number increased to $4 per claim after the objections were received, and the Court finds that the amount is satisfactory given that Plaintiffs' expert determined that the price premium for an average $10 Food Product purchase at Chipotle was $0.23.  *See* Dkt. No. 95-42.  As to the letters seeking mediation and alleging that the senders are owed greater damages pursuant to the Federal Trade Commission Act ("FTCA"), these Settlement Class members could have sought to opt out of the settlement to bring their own claims but did not do so.  Further, the Court rejects the objections purporting to seek greater damages under the FTCA because "private actions to vindicate rights asserted under the Federal Trade Commission Act may not be maintained."  *Holloway v. Bristol-Myers Corp*., 485 F.2d 986, 987 (D.C. Cir. 1973); *Corzine v. Whirlpool Corp*., No. 15-cv-05764-BLF, 2019 WL

7372275, at *7 (N.D. Cal. Dec. 31, 2019) (noting that "[f]ederal courts routinely hold that the opt-out remedy is sufficient to protect class members who are unhappy with the negotiated class action settlement terms") (internal quotations omitted).[8]

Thus, having considered the letters, and even assuming that they should be construed as objections, the Court finds that they do not require rejecting the settlement.  Given the absence of any well-founded objections and only one request for exclusion, the Class response weighs strongly in favor of final approval.  *See Rodriguez*, 563 F.3d at 967 (finding that final approval was favored where there were 54 objections out of 52,000 claims); *Chun-Hoon*, 716 F. Supp. 2d at 852 (final approval granted where 4.86% of the class requested exclusion); *In re Nexus 6P Prod. Liab. Litig.*, No. 17-cv-02185-BLF, 2019 WL 6622842 at *10 (N.D. Cal. Nov. 12, 2019) (zero objections and 31 opt-outs in a class of approximately 511,000 people "confirms that the settlement is fair and reasonable.").

After considering and weighing the above factors, the Court finds that the settlement agreement is fair, adequate, and reasonable, and that the Settlement Class members received adequate notice.  Accordingly, the motion for final approval of the class action settlement is **GRANTED**.

### c.  Subtle Signs of Collusion

Although the Court need not apply any heightened standard because the parties reached a settlement after class certification, the Court nonetheless considers whether there is evidence of collusion or other conflicts of interest.  The complex legal and factual posture of this case, the amount of discovery completed, the extensive motion practice, and the fact that the settlement is the result of arm's-length negotiations between the parties all support a finding that the settlement was not tainted by collusion or conflicts of interest.  It was only after continuous negotiations through the mediator, briefing on Defendant's motion for decertification, and substantial trial

---

[8] Class Counsel received an additional eleven letters after the final approval motion was filed. Dkt. No. 228 at 4.  One writer who disagreed with the Settlement Amount did not provide a reason for his disagreement.  *See* Dkt. No. 228-3.  Four of the letters seek to mediate their own individual claims.  *Id.*  And six of the letter writers seek greater damages pursuant to the FTCA.  *Id.*  For the same reasons discussed above, to the extent the Court construes these letters as objections, they are denied.

United States District Court
Northern District of California

preparation that a third in-person mediation culminated in the settlement via a mediator's proposal. King Fees Decl. ¶¶ 27-28.

The Court finds that these facts, in addition to the Court's observations throughout the litigation, reveal no evidence of collusion in the settlement, implicit or otherwise. *See In re Bluetooth Headset Products Liability Litig.*, 654 F.3d 935, 947 (9th Cir. 2011). This finding is also supported by, among other things, the fact that the settlement provides substantial monetary benefits to Settlement Class members and those benefits are not disproportionately low compared to the attorneys' fees and expenses sought by Class Counsel or the Plaintiffs.

### B. Attorneys' Fees, Costs and Expenses, and Class Representative Enhancement Payment

In its motion, Class Counsel asks the Court to approve an award of $1,950,000 in attorneys' fees and $636,556.28 in costs. Dkt. No. 224 at i. Class Counsel also seeks a $5,000 incentive award for each of the Named Plaintiffs. *Id.*

#### i. Attorneys' Fees

##### a. Legal Standard

"In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). In a state law claim—like this one—state law also governs the calculation of attorneys' fees. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002). Nevertheless, the Court may still look to federal authority for guidance in awarding attorneys' fees. *See Apple Computer, Inc. v. Superior Court*, 126 Cal. App. 4th 1253, 1264 n.4 (2005) ("California courts may look to federal authority for guidance on matters involving class action procedures.").

Under California law, the "percentage of fund method" is proper in class actions. *Laffitte v. Robert Half Int'l Inc.*, 1 Cal. 5th 480, 506 (2016). In addition, "trial courts have discretion to conduct a lodestar cross-check on a percentage fee." *Id.* The "lodestar figure is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer." *In re Bluetooth*, 654 F.3d at 941 (citing *Staton v. Boeing Co.*, 327 F.3d

United States District Court
Northern District of California

1    938, 965 (9th Cir. 2003)).  Trial courts "also retain the discretion to forgo a lodestar cross-check

2    and use other means to evaluate the reasonableness of a requested percentage fee."  *Laffitte*, 1 Cal.

3    5th at 506.

4              **b.  Discussion**

5              Class Counsel here seeks $1,950,000 in fees, or 30% of the settlement fund.  *See* Dkt. No.

6    224 at i.  This is higher than the 25% benchmark for a reasonable fee award under the percentage-

7    of-recovery method.  *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048-50 (9th Cir. 2002)

8    (recognizing 25% fee as the accepted "benchmark" in common fund cases); *Kerr v. Screen Extras*

9    *Guild, Inc.*, 526 F.2d 67 (9th Cir. 1975) (lodestar approach); *In re Bluetooth*, 654 F.3d at 942.

10             In calculating its lodestar, Class Counsel contends that it collectively expended a combined

11   total of 4,568.30 hours.  King Fees Decl. ¶¶ 45, 47-48.  Given the advanced posture of the case

12   and the amount of substantive litigation activity, the 4,568.30 hours expended by Class Counsel

13   were reasonable and necessary to the prosecution of this case.  *See Edenborough v. ADT, LLC*,

14   No. 16-cv-02233-JST, 2019 WL 4164731, at *4 (N.D. Cal. July 22, 2019) (finding reasonable

15   Class Counsel's expenditure of 5,585 hours in a three-year-old class action resulting in $16

16   million common fund settlement); *Hendricks v. Starkist Co.*, No. 13-cv-00729-HSG, 2016 WL

17   5462423, at *12 (N.D. Cal. Sept. 29, 2016) (finding reasonable Class Counsel's expenditure of

18   3,366 hours in a three-year-old class action resulting in $12 million common fund settlement).

19             With respect to hourly rates, the rates requested are between $425-$695 for associates and

20   $830-$1,275 for partners.  King Fees Decl. ¶¶ 45, 46; *id.* Ex. A.  These numbers yield a lodestar of

21   $3,183,091.00, meaning that the requested amount of $1,950,000 is about 61% of the lodestar.

22   King Decl. ¶¶ 47-48.  The Court finds that the billing rates used by Class Counsel to calculate the

23   lodestar are on the high end, although in line with prevailing rates in this district for personnel of

24   comparable experience, skill, and reputation.  *See, e.g.*, *Hefler v. Wells Fargo & Co.*, No. 16-CV-

25   05479-JST, 2018 WL 6619983, at *14 (N.D. Cal. Dec. 18, 2018) (rates from $650 to $1,250 for

26   partners or senior counsel, $400 to $650 for associates); *In re Volkswagen "Clean Diesel" Mktg.,*

27   *Sales Practices, & Prod. Liab. Litig.*, No. 2672 CRB (JSC), 2017 WL 1047834, at *5 (N.D. Cal.

28   Mar. 17, 2017) (billing rates ranging from $275 to $1600 for partners, $150 to $790 for associates,

United States District Court
Northern District of California

17

and $80 to $490 for paralegals reasonable "given the complexities of this case and the extraordinary result achieved for the Class").

Class Counsel is not seeking to recover the full lodestar amount.  Accordingly, this negative multiplier suggests that the fee request is reasonable.  *See, e.g.*, *Nexus 6P*, 2019 WL 6622842, at *13 (30% award was reasonable when the requested amount represented a negative lodestar multiplier); *Rosado v. Ebay Inc*., No. 5:12-CV04005-EJD, 2016 WL 3401987, at *8 (N.D. Cal. June 21, 2016) (conducting a lodestar cross-check and finding that a negative multiplier "strongly suggests the reasonableness of the negotiated fee."); *Isquierdo v. W.G. Hall, LLC*, No. 15-CV-00335-BLF, 2017 WL 4390250, at *8 (N.D. Cal. Oct. 3, 2017) (fact that the requested amount constituted a reduction in the lodestar amount weighed in favor of its reasonableness).

As the Ninth Circuit has explained, "[t]hough the lodestar figure is presumptively reasonable, the court may adjust it upward or downward by an appropriate positive or negative multiplier reflecting a host of reasonableness factors, including the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment.  *In re Bluetooth*, 654 F.3d at 941–42 (quotations and internal citations omitted). "Foremost among these considerations . . . is the benefit obtained for the class."  *Id.*

The Court is not entirely enthusiastic about the prospect of granting the request for nearly two million dollars in fees, given Class Counsel's initial acquiescence in a plan that would have disproportionately benefitted the *cy pres* recipients rather than Settlement Class members, and viewing the request in light of the results actually achieved in this settlement and the less-than-compelling nature of the substantive claims.  But considering that Class Counsel obtained relief of $4 per product for the Settlement Class members, when the purported estimated price premium for an average $10 product purchase was $0.23, Dkt. No. 95-42, the Court is willing to award the requested fees, based almost entirely on the negative lodestar multiplier (as opposed to on anything about this case or Class Counsel's work that warrants an upward adjustment from the 25% benchmark).  Accordingly, the Court finds that the requested award of 30% of the settlement fund, or $1,950,000, is a reasonable and proportionate cash distribution in light of the $6.5 million settlement amount.  *See Roes*, 944 F.3d at 1056 ("the district court had an obligation to question

the disproportionate cash distribution to attorneys' fees, substantively address concerns that the settlement value was inflated, and clearly explain why the total benefits to the class justified the fees awarded.") (internal citations and quotations omitted).  Therefore, the Court **GRANTS** Class Counsel's motion for attorneys' fees, and awards fees in the amount of $1,950,000.

### ii.  Attorneys' Costs

Class Counsel is entitled to recover "those out-of-pocket expenses that would normally be charged to a fee paying client."  *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (quotations omitted).  Class Counsel seeks reimbursement of $636,556.28 in out-of-pocket costs, including costs advanced in connection with experts, legal research, court reporting services, travel for depositions, copying and mailing, for the costs of notice administration associated with class certification, and other customary litigation expenses.  King Fees Decl. ¶¶ 47, 49-53; *id*. Ex. B. Fifty-three percent of total costs and expenses relate to experts necessarily retained to perform services for Plaintiffs and the Settlement Class related to class certification.  *Id*. ¶ 51.  That included retaining a damages expert (Economics & Technology) as well as a survey expert (Krosnick) and survey services (Berent, SSRS, NORC Consumer Survey).  Other major expenses include online research (16% of the total costs and expenses) and notice administration by KCC Class Action Services (Dkt. No. 180) (14% of the total costs and expenses).  *Id*. ¶ 52.  The Court is satisfied that these costs were reasonably incurred and **GRANTS** the motion for costs in the amount of $636,556.28.

### iii.  Incentive Award

Class Counsel requests an incentive award of $5,000 for each of the Named Plaintiffs. "[N]amed plaintiffs . . . are eligible for reasonable incentive payments."  *Staton*, 327 F.3d at 977; *Rodriguez*, 563 F.3d at 958 ("Incentive awards are fairly typical in class action cases.").  Incentive awards are designed to "compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general."  *Rodriguez*, 563 F.3d at 958–59. Nevertheless, the Ninth Circuit has cautioned that "district courts must be vigilant in scrutinizing all incentive awards to determine whether they destroy the adequacy of the class representatives

19

. . . ." *Radcliffe v. Experian Info. Solutions, Inc.*, 715 F.3d 1157, 1165 (9th Cir. 2013) (quotations omitted). This is particularly true where "the proposed service fees greatly exceed the payments to absent class members." *Id.* The district court must evaluate an incentive award using "relevant factors includ[ing] the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . [and] the amount of time and effort the plaintiff expended in pursuing the litigation . . . ." *Id.* at 977.

The Court shares the Ninth Circuit's concern that "if class representatives expect routinely to receive special awards in addition to their share of the recovery, they may be tempted to accept suboptimal settlements at the expense of the class members whose interests they are appointed to guard." *See Staton v. Boeing Co.*, 327 F.3d 938, 975 (9th Cir. 2003). The Court questions the appropriateness of multi-thousand dollar incentive awards in a case like this one in which absent Settlement Class members are receiving a very small monetary award, and where the actual value of the purported harm at issue is questionable (to the extent it even mattered in any way to the vast majority of Chipotle's customers, which is far from clear given Plaintiffs' labeling theory). In a consumer case like this, there is no reason to believe that any financial or reputational risk is likely to attach to the Named Plaintiffs (unlike, for example, the circumstance faced by an employee suing a current or former employer in a wage-and-hour class action case). Moreover, as mentioned above, the Named Plaintiffs apparently were willing to sign off on a settlement that would have funneled a disproportionate amount of the settlement fund to *cy pres* recipients rather than to Settlement Class members, based solely on the arbitrary cap insisted upon by Defendant. Granting the Named Plaintiffs' request for incentive awards under these circumstances would amount to drastically preferential treatment as compared to the other Settlement Class members, who will receive up to $4.00 per product. If $4.00 per product is a positive result for the absent Settlement Class members, it should be a positive result for the Named Plaintiffs. Accordingly, considering all the circumstances of this case, the Court finds that an incentive award of $5,000 (or any amount) is unwarranted, and in its discretion **DENIES** the request for incentive awards.

### III.   CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Final Approval of Class Action

Settlement is **GRANTED**.  Plaintiff's Motion for Class Counsel's Attorneys' Fees, Costs and Expenses, and Incentive Award is **GRANTED IN PART AND DENIED IN PART**.  The Court awards attorneys' fees in the amount of $1,950,000, costs in the amount of $636,556.28, and denies the request to award the Named Plaintiffs an incentive award of $5,000.

The parties are directed to implement this Final Order and the settlement agreement in accordance with the terms of the settlement agreement.  The parties are further directed to file a stipulated final judgment within 21 days from the date of this order.

**IT IS SO ORDERED.**

Dated:  11/4/2020

HAYWOOD S. GILLIAM, JR.
United States District Judge

United States District Court
Northern District of California

21